

1   KHAI LEQUANG (STATE BAR NO. 202922)
    ORRICK, HERRINGTON & SUTCLIFFE LLP
2   777 South Figueroa Street, Suite 3200
    Los Angeles, California 90017
3   Telephone: (213) 629-2020
    Facsimile: (213) 612-2399
4
    STEPHEN G. FORESTA (*pro hac vice motion to*
5   *be filed*)
    PHILIPP SMAYLOVSKY (*pro hac vice motion*
6   *to be filed*)
    ORRICK, HERRINGTON & SUTCLIFFE LLP
7   51 West 52nd St
    New York, NY 10019
8   Telephone: (212) 506-5000
    Facsimile: (212) 506-5151
9
    Attorneys for Plaintiff
10  U.S. BANK NATIONAL ASSOCIATION, AS
    SECURITIES INTERMEDIARY FOR LIMA
11  ACQUISITION LP

12

13                  UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15                       WESTERN DIVISION

16

17  U.S. BANK NATIONAL                CASE NO.
    ASSOCIATION, a national
18  association, as securities intermediary    **COMPLAINT FOR:**
    for LIMA ACQUISITION LP,
19                                    1.  **BREACH OF CONTRACT;**
                Plaintiff,            2.  **BREACH OF THE IMPLIED**
20                                        **COVENANT OF GOOD**
         v.                               **FAITH AND FAIR**
21                                        **DEALING;**
    PHL VARIABLE INSURANCE            3.  **VIOLATION OF CAL. BUS.**
22  COMPANY, a Connecticut               **& PROF. CODE § 17200;**
    corporation,                      4.  **VIOLATION OF CAL. BUS.**
23                                        **& PROF. CODE § 17500.;**
                Defendant.                **AND**
24                                    5.  **DECLARATORY RELIEF**
25                                    **JURY TRIAL DEMANDED**
26

27

28

1   Plaintiff U.S. Bank National Association, as securities intermediary for Lima

2   Acquisition LP ("Plaintiff"), hereby files this complaint against defendant PHL

3   Variable Insurance Company ("Phoenix" or "Defendant"), and alleges as follows:

4                          **NATURE OF THE ACTION**

5       1.      Plaintiff has brought this action seeking compensatory and punitive

6   damages, equitable relief, and statutory penalties based on Defendant's unlawful

7   increases of the cost of insurance rates on a targeted group of Defendant's in-force

8   universal life insurance policies. Defendant's conduct amounts to breaches of

9   contract and other wrongdoing, including unlawful, misleading, and unfair practices

10  in connection with the marketing and selling of flexible premium universal life

11  insurance.

12      2.      Universal life insurance is a form of permanent life insurance also

13  known as "flexible premium" adjustable life insurance. Unlike whole life

14  insurance, which requires fixed monthly premium payments, universal life

15  insurance allows policyholders to pay as much money as they want into their policy

16  account (subject to certain limitations), and, each month, the account accrues

17  interest as provided under the policy. Various charges and fees are then deducted

18  from the policy account, including a "cost of insurance charge" that reflects the

19  price that the insurance company charges for the actual insurance—*i.e.*, the cost to

20  bear the mortality risk. Although there is no fixed monthly premium payment that

21  is due, if the balance in the account is insufficient to cover the policy charges,

22  including the cost of insurance charge, the policy will enter a grace period and lapse

23  unless additional premiums are paid.

24      3.      Universal life insurance is designed to give policyholders flexibility,

25  both in the payment of premiums and the adjustment of death benefits. With

26  respect to premium payments, policyholders can pay more into their account if they

27  wish to accumulate tax-deferred interest, or they can pay just enough to cover their

28  monthly policy charges if they wish to invest their funds elsewhere. Universal life

-2-

insurance is less expensive than whole life insurance because there is no guaranteed fixed rate of growth on funds in the policy account and no guaranteed fixed death benefit. The rate of growth and death benefit may vary based on a number of factors, including how the policyholder funds the account, the interest rate under the policy (which is a variable rate), and the policy charges. In a whole life insurance policy, the death benefit is guaranteed and fixed at the time the policy is issued, and a fixed monthly premium payment is set based on the guaranteed death benefit and a projected fixed rate of growth.

4.     Although universal life insurance permits an insurer to adjust the cost of insurance rates (by an increase or decrease), Plaintiff's policies only allow Defendant to do so based on certain specific factors, the most important of which is Defendant's expectations of future mortality. It is well-known, however, that life expectancy has increased, not decreased, over the past few years since Plaintiff's policies were issued. Despite the fact that this increase in life expectancy has resulted in new mortality tables that would, if anything, support a *decrease* in the cost of insurance rates with respect to Plaintiff's policies, Defendant has instead attempted to *increase* the cost of insurance rates in blatant breach of its obligations under the policies.

5.     Defendant's breaches are particularly egregious given that Defendant marketed and sold its universal life insurance products as insurance "designed to balance protection and cash accumulation with features suited to meet policyholders' evolving personal or business planning needs." Defendant described these products as appropriate for insurance buyers who wished to "minimize long term insurance costs while seeking competitive returns." Defendant also represented that these products would allow policyholders "to lower premiums, as well as adjust the amount and timing of premium payments," and give them "increased choice and policy design flexibility to meet [their] needs."

6.      Having thereby lured policyholders into purchasing such policies, however, once policyholders like Plaintiff in fact adjusted "the amount and timing of premium payments" to fund their accounts simply to cover the policy charges, as they were expressly allowed to do, Defendant improperly raised the cost of insurance rates on these policyholders.  To make matters worse, Defendant has not even made clear the amount of the increase or how it would be applied.

7.      In fact, it is apparent that Defendant raised its cost of insurance rates to make some policies so expensive that policyholders, like Plaintiff, would have no economically rational choice but to lapse or surrender their policies.  As a result, if Defendant's improper scheme succeeds, Defendant will never have to pay the hundreds of millions, if not billions, of dollars in death benefits on those policies, after having already collected millions of dollars in premiums paid to date.

8.      Defendant's misconduct thus constitutes not only express breaches of Plaintiff's policies, but breaches of the implied duty of good faith and fair dealing; unlawful, unfair, and deceptive business practices; and the dissemination of untrue and misleading information.  Plaintiff therefore seeks compensatory and punitive damages, as well as equitable relief.

## PARTIES

9.      Plaintiff U.S. Bank National Association is a national banking association with its principal place of business in Ohio, and is the securities intermediary for Lima Acquisition LP.

10.     On information and belief, defendant Phoenix is a Connecticut corporation with its principal place of business and nerve center in Hartford, Connecticut, and Phoenix is authorized to do business in the State of California and regularly conducts its business in the State of California, including within this judicial district.

- 4 -

COMPLAINT

## JURISDICTION AND VENUE

11.   This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) as Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.   Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) and (a)(2) because Defendant resides in this judicial district, and a substantial part of the events giving rise to the claims occurred in this judicial district.

## GENERAL ALLEGATIONS

### The Policies

13.   Plaintiff is the owner and beneficiary of 11 universal life policies (the "Policies") that were issued by Phoenix between 2005 and 2006.  An index of the Policies is attached hereto as Exhibit 1.

14.   As is typical of universal life insurance policies, the Policies provide that they will remain in force as long as there are sufficient funds in the policy account each month to cover certain monthly deductions described in the Policies. The monthly deductions consist of various charges (*e.g.*, a sales charge, issue charge, and service charge), including a cost of insurance charge.  Any balance in the policy account that is left after the deductions are taken reflects the policy's accumulated "cash value," which accrues interest as provided for under the Policies.  If in any month there are insufficient funds in the account to cover the deductions, the policy will enter a grace period.  If additional premiums are not paid within the grace period, the policy will automatically terminate, or lapse.

### The Cost of Insurance

15.   The largest and most significant charge under the Policies is the cost of insurance charge.  This charge reflects the price that Phoenix charges to cover the risk of paying the amount it would have to pay upon a mortality event (*i.e.*, the "death benefits" or the net amount at risk).  The cost of insurance charge is determined by multiplying the cost of insurance rate times the net amount at risk.

- 5 -

16.     The cost of insurance rates under the policy are initially set based on certain characteristics of the insured, including her or his gender, age, and risk classification (*i.e.*, smoker or non-smoker).  The applicable rate increases every year as the insured ages.

17.     The Policies allow Phoenix to change the applicable cost of insurance rates, but the ability to do so is subject to several strict limitations.  Specifically, one form of the Policies provides:[1]

> No more frequent than once per year and no less frequent than once every five years, We will review the monthly Cost of Insurance Rates to determine if these rates should be changed.  However, the rates will never exceed the Guaranteed Maximum Cost of Insurance Rates shown on the Schedule Pages.  Our right to change rates also is subject to the following terms:
>
> 1.     Any change in rates will be made on a uniform basis for all insureds in the same class.  No change in rates will occur due to any change in the Insured's health or occupation.
>
> 2.     Any change in rates will be determined prospectively. We will not distribute past gains or recoup prior losses, if any, by changing the rates.
>
> 3.     Any change in rates will be based on a change in Our expectations of future investment earnings, mortality, persistency and expense/administrative costs.
>
> 4.     Any change in rates will comply with any procedures and standards that may be on file with the insurance official of the jurisdiction where this policy is delivered.

[1] Among the 11 policies at issue here, there are two versions of the provisions that address cost of insurance rates, and they differ only slightly.  Attached hereto as Exhibit 2 and Exhibit 3 are two of the Policies that provide examples of the two cost of insurance provisions. *See* Exhibit 2, pp. 10-11; Exhibit 3, p. 12.  Some of the policy information is redacted for privacy reasons.

- 6 -

1  Exhibit 2, p. 11.

2      18.    Accordingly, under the clear language of this policy, any change in the

3  cost of insurance rates can only be based on a change in Phoenix's expectations of

4  future investment earnings, mortality, persistency, and expense/administrative

5  costs.  Moreover, any change in the cost of insurance rates must be made on a

6  uniform basis for all insureds in the same class and cannot be used to recoup prior

7  losses by Phoenix.

8              **Phoenix's Marketing and Sales of Universal Life Insurance**

9      19.    Phoenix marketed and sold the Policies as "flexible premium" policies

10 that would appeal to people who sought a competitive return for their assets, wished

11 to minimize their long-term life insurance expenses, and needed flexibility to adjust

12 their policies to their changing needs.  Among other things, in marketing and

13 selling the policies, Phoenix represented that:

14     (a)    Phoenix's universal life products give policyholders the "opportunity

15 to lower premiums, as well as adjust the amount and timing of premium payments."

16 (Press Release dated April 3, 2006);

17     (b)    Phoenix's universal life products are "designed to balance protection

18 and cash accumulation with features suited to meet policyholders' evolving

19 personal or business planning needs."  (Press Release dated April 3, 2006);

20     (c)    Phoenix's universal life products "offer increased choice and policy

21 design flexibility to meet the needs of the high net worth."  (Press Release dated

22 June 19, 2003); and

23     (d)    Phoenix's universal life products are "appropriate for those looking to

24 minimize long term insurance costs while seeking competitive returns."  (Press

25 Release dated June 19, 2003).

26     20.    Phoenix's universal products were also marketed under the trademark,

27 "Phoenix Accumulator UL," which Phoenix describes in its U.S. Patent &

28 Trademark Office registration dated February 25, 2003 as "Underwriting and

- 7 -

COMPLAINT

1    administration of single life universal insurance policies featuring flexible
2    premiums and adjustable-death-benefits."

3                    **Phoenix Breaches the Policies by Raising the Cost of Insurance Rates**

4          21.    Based on the language of the policies, Phoenix's rates, and
5    representations like those above, Plaintiff purchased the Policies and began making
6    premium payments.  As expressly permitted under the Policies, Plaintiff generally
7    paid only the minimum charges.  In early 2010, Phoenix notified Plaintiff that
8    Phoenix was raising the cost of insurance rates on the Policies if Plaintiff did not
9    maintain sufficient "accumulated policy values."  In other words, Phoenix told
10   Plaintiff that if Plaintiff did not *overfund* the Policies with premium payments,
11   thereby maintaining a positive cash balance on the Policies and reducing the net
12   amount at risk that Phoenix would have to pay upon a mortality event, Phoenix
13   would penalize Plaintiff by increasing its cost of insurance rates.  Phoenix's letters
14   did not tell Plaintiff how much the increase would be or what accumulated value
15   would trigger a policy increase, but threatened, "Should your accumulated policy
16   value fall below a certain level, the amount of the increase will vary based on the
17   accumulated amount of your policy value.  In general, maintaining higher levels of
18   policy value in relation to the face amount will reduce or even eliminate any
19   increase."  Phoenix also did not identify any factors that supported an increase in
20   the cost of insurance rates or explain how it determined that an increase in the rates
21   could be justified given the recent decreases in mortality.

22         22.    By increasing the cost of insurance rates only on those policyholders
23   who exercised their right to maintain lower accumulated policy values, Phoenix has
24   breached the Policies in a number of ways.  First, it breached the express terms of
25   the Policies, which provide that the cost of insurance rates will be based only on
26   certain enumerated factors that include Phoenix's expectations of future mortality
27   and persistency.  "Accumulated value" is not a factor on which the cost of
28   insurance rates can be based.

23.     Second, Phoenix breached the express terms of the Policies because the increase in the cost of insurance rates clearly does not apply to an entire class of insureds, but only to those who maintain lower accumulated policy values.

24.     Third, Phoenix breached the Policies by increasing the cost of insurance rates when life expectancy is now longer.  The cost of insurance rates represent the rates that Phoenix charges to cover the risk of paying the death benefit upon a mortality event.  These rates should be driven primarily by Phoenix's expectations of future mortality, and those expectations could not possibly justify an increase in the cost of insurance rates.

25.     It is apparent that by increasing the cost of insurance rates based on accumulated values, Phoenix wants to force Plaintiff and other policyholders to either (a) pay exorbitant premiums that Phoenix knows would no longer justify the ultimate death benefits, or (b) lapse or surrender their policies and forfeit the premiums they have paid.  Phoenix, in turn, will make a huge profit—either through higher premium payments or by eliminating a large group of policies (through lapses or surrenders) and keeping the premiums that have been paid to date.

26.     In short, when policyholders like Plaintiff exercised their right to fund premiums at their discretion and only as needed to cover their monthly charges, Phoenix singled out those policyholders by raising the cost of insurance rates on them.  This rate increase renders the concept of "flexible premiums" illusory.  Policyholders are forced to fund more premiums into their account than they otherwise would have, or else pay prohibitively high cost of insurance rates.  Phoenix has thus deprived Plaintiff and other policyholders of one of the most essential rights of universal life insurance—the right to manage and fund their accounts according to their needs and desires.

27.     Phoenix's scheme also directly contradicts the representations Phoenix made when marketing and selling the Policies.   Plaintiff, like many others,

- 9 -

purchased their policies based on these representations, as well as the language of the policies and Phoenix's rates.  By increasing the rates on Plaintiff and other policyholders after they had purchased their policies and when expectations of future mortality could not possibly justify such an increase, Phoenix is unequivocally repudiating its representations.  The cost of insurance is designed for policyholders to share in the legitimate risks associated with life insurance, not to give the insurance company unilateral power to destroy all the value in its policies simply to increase its profits.   Yet that is exactly what Phoenix is doing here.

## FIRST CAUSE OF ACTION

### For Breach of Contract (Express)

28.　Plaintiff realleges the allegations contained in paragraphs 1 through 27.

29.　The Policies are binding and enforceable contracts.

30.　Defendant's rate increases have materially breached the Policies in several respects, including but not limited to the following breaches of the express terms of the Policies.

31.　First, Defendant breached the Policies by increasing the cost of insurance rates based on a policy's accumulated value because accumulated value is not one of the permissible and enumerated bases for increasing the cost of insurance rates.

32.　Second, Defendant breached the Policies by increasing the cost of insurance rates based on a policy's accumulated value because such an increase does not apply uniformly to a class of insureds.

33.　Third, Plaintiff is informed and believes and on that basis alleges that Defendant breached the Policies because Defendant's increases in the cost of insurance rates were not based on the permissible factors stated in the Policies, such as Defendant's actual expectations of future mortality and persistency.

34.     Fourth, Plaintiff is informed and believes and on that basis alleges that Defendant breached the Policies because Defendant's increases in the cost of insurance rates were designed to recoup past losses.

35.     Plaintiff has performed all of its obligations under the Policies, except to the extent that its obligations have been excused by Defendant's conduct as set forth herein.

36.     As a direct and proximate cause of Defendant's material breaches of the Policies, Plaintiff has been damaged as alleged herein in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

**For Breach of Contract (Implied Covenant of Good Faith and Fair Dealing)**

37.     Plaintiff realleges the allegations contained in paragraphs 1 through 27.

38.     The Policies are binding and enforceable contracts.

39.     Each of the Policies includes an implied covenant that Defendant will act in good faith and deal fairly with Plaintiff.

40.     Defendant breached the implied covenant of good faith and fair dealing by undermining Plaintiff's right to pay premiums as needed to cover their monthly deductions, including the cost of insurance. By increasing the cost of insurance rates based on a policy's accumulated value, Phoenix is, among other things, penalizing and deterring policyholders from exercising their contractual right to maintain a minimal accumulated policy value, which Phoenix has no right to do.

41.     Defendant also breached the implied covenant of good faith and fair dealing by using the cost of insurance rates to make the Policies prohibitively expensive and trying to cause Plaintiff and other policyholders to lapse or surrender their policies so that Defendant can keep the premiums and never have to pay the death benefits.

- 11 -

42.     As a direct and proximate cause of Defendant's breaches of the implied covenant of good faith and fair dealing, Plaintiff has been damaged as alleged herein in an amount to be proven at trial.

43.     Furthermore, because Defendant acted with a conscious disregard of Plaintiff's rights, and its actions constitute oppression, fraud, or malice under Civil Code section 3294, Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION

### For Violation of Cal. Bus. & Prof. Code § 17200

44.     Plaintiff realleges the allegations contained in paragraphs 1 through 27.

45.     California Business & Professions Code section 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice."

46.     Defendant has engaged in unlawful, unfair, and fraudulent business acts and practices, as described in detail herein.

47.     As a direct and proximate cause of Defendant's unlawful, unfair, and fraudulent business acts and practices, Plaintiff has lost money or property and is entitled to an order of restitution requiring Defendant to return all premiums paid on the Policies or, alternatively, the amount of any premiums paid in excess of that allowed under the Policies, or, alternatively, the amount of the diminished value of the Policies.

## FOURTH CAUSE OF ACTION

### For Violation of Cal. Bus. & Prof. Code § 17500

48.     Plaintiff realleges the allegations contained in paragraphs 1 through 27.

49.     California Business & Professions Code section 17500 prohibits, among other things, the public dissemination of any statement that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

- 12 -

50.     On numerous occasions, Defendant represented that its universal life policies offer flexible premiums that would allow policyholders to fund only enough premiums to cover the monthly deductions, that Defendant would not raise the cost of insurance rates other than based on certain factors stated in the Policies, and that Defendant would not raise the cost of insurance rates unless it did so for all insureds in a class.  Defendant made those representations in the Policies, on its website, and in marketing materials and press releases between 2003 and the present.

51.     These statements in connection with the marketing and sales of Defendant's policies were untrue and misleading, and Defendant knew, or by the exercise of reasonable care, should have known that the statements were untrue or misleading.

52.     As a direct and proximate cause of Defendant's false and misleading statements, Plaintiff has lost money or property and is entitled to an order of restitution requiring Defendant to return all premiums paid on the Policies or, alternatively, the amount of any premiums paid in excess of that allowed under the Policies, or, alternatively, the amount of the diminished value of the Policies.

### FIFTH CAUSE OF ACTION

#### For Declaratory Relief

53.     Plaintiff realleges the allegations contained in paragraphs 1 through 27.

54.     For reasons including, but not limited to, those stated herein, there exists an actual dispute and controversy between Plaintiff and Defendant concerning Plaintiff's rights and Defendant's obligations under the Policies, including but not limited to how Defendant must implement any change in the cost of insurance rates and under what circumstances Defendant may change the cost of insurance rates.

- 13 -

55.     Accordingly, Plaintiff seeks a declaration (a) that Defendant cannot raise the cost of insurance rates unless it changes the rates on a uniform basis for an entire class of insureds; (b) that Defendant's cost of insurance rate increases are improper and invalid; and (c) setting forth the specific guidelines that govern the factual circumstances under which Defendant can increase the cost of insurance rates.

56.     Such a declaration will help prevent or limit any future controversies under the Policies by providing guidance as to when and how Defendant can change the cost of insurance rates.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

### On the First Cause of Action

1.     For damages in an amount to be determined at trial;

2.     For an award of pre-judgment and post-judgment interest;

3.     For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law; and

4.     For such other and further relief as the Court may deem proper.

### On the Second Cause of Action

1.     For damages in an amount to be determined at trial;

2.     For an award of pre-judgment and post-judgment interest;

3.     For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law;

4.     For punitive damages; and

5.     For such other and further relief as the Court may deem proper.

### On the Third Cause of Action

1.     For an order of restitution requiring Defendant to return all premiums paid on the Policies or, alternatively, the amount of any premiums paid in excess of

1   that allowed under the Policies, or, alternatively, the amount of the diminished

2   value of the Policies;

3       2.      For an award of prejudgment and post-judgment interest;

4       3.      For the costs of the suit herein incurred, including reasonable

5   attorneys' fees to the extent permitted by law; and

6       4.      For such other and further relief as the Court may deem proper.

7                          **On the Fourth Cause of Action**

8       1.      For an order of restitution requiring Defendant to return all premiums

9   paid on the Policies or, alternatively, the amount of any premiums paid in excess of

10   that allowed under the Policies, or, alternatively, the amount of the diminished

11   value of the Policies;

12       2.      For an assessment of the maximum statutory penalties provided under

13   Cal. Bus. & Prof. Code § 17536;

14       3.      For the costs of the suit herein incurred, including reasonable

15   attorneys' fees to the extent permitted by law; and

16       4.      For such other and further relief as the Court may deem proper.

17                          **On the Fifth Cause of Action**

18       1.      For a declaration (a) that Defendant cannot raise the cost of insurance

19   rates unless it changes the rates on a uniform basis for an entire class of insureds;

20   (b) that Defendant's cost of insurance rate increases are improper and invalid; and

21   (c) setting forth the specific guidelines that govern the factual circumstances under

22   which Defendant can increase the cost of insurance rates.

23       2.      For the costs of the suit herein incurred, including reasonable

24   attorneys' fees to the extent permitted by law; and

25       3.      For such other and further relief as the Court may deem proper.

26

27

28

1    Dated:  November 16, 2011

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON & SUTCLIFFE
LLP

_____
KHAI LEQUANG
Attorneys for Plaintiff
U.S. BANK NATIONAL ASSOCIATION,
AS SECURITIES INTERMEDIARY FOR
LIMA ACQUISITION LP

- 16 -

1

## DEMAND FOR JURY TRIAL

2

Plaintiff hereby demands a jury trial on all issues so triable.

3

4   Dated:  November 16, 2011

ORRICK, HERRINGTON & SUTCLIFFE
LLP

5

6

7

KHAI LEQUANG
Attorneys for Plaintiff
U.S. BANK NATIONAL ASSOCIATION,
AS SECURITIES INTERMEDIARY FOR
LIMA ACQUISITION LP

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

**Exhibit 1**

| Insurance Co. | Policy No. | State of Issuance |
|---|---|---|
| PHL Variable Insurance Co. | 97514078 | CA |
| PHL Variable Insurance Co. | 97513181 | CA |
| PHL Variable Insurance Co. | 97514213 | CA |
| PHL Variable Insurance Co. | 97513947 | CA |
| PHL Variable Insurance Co. | 97514277 | CA |
| PHL Variable Insurance Co. | 97514279 | CA |
| PHL Variable Insurance Co. | 97515342 | CA |
| PHL Variable Insurance Co. | 97515596 | CA |
| PHL Variable Insurance Co. | 97515597 | CA |
| PHL Variable Insurance Co. | 97515795 | CA |
| PHL Variable Insurance Co. | 97519088 | WI |

Exhibit 1
Page 18

# Phoenix Wealth Management

◈ PHOENIX WEALTH MANAGEMENT®

 **PHOENIX**

# PHL VARIABLE INSURANCE COMPANY
**A Stock Company**

| | | |
|---|---|---|
| **Insured** | ▮▮▮▮▮▮▮ | **Total Face Amount at Issue**   $5,000,000 |
| **Policy Number** | 97519088 | **Policy Date**   November 3, 2006 |
| **Death Benefit** | Option A | **Issue Date**   November 3, 2006 |
| **Plan** | Phoenix Accumulator UL | |

The PHL Variable Insurance Company ("the Company") agrees, subject to the conditions and provisions of this policy, to pay the Death Benefit to the Beneficiary in a lump sum upon the death of the Insured if such death occurs while the policy is in force, and to provide the other benefits, rights, and privileges of the policy.  If the Company makes other plans of payment available other than a lump sum, then a Death Beneficiary may request written election of any such other plans in lieu of a lump sum.  The Death Benefit will be payable on receipt at the Main Administrative Office of the Company of due proof of the Insured's death.

We are issuing the policy in consideration of the application and our receipt of the Minimum Initial Premium at our Main Administrative Office.  The provisions of this and the following pages and any attachments make up your contract.

**RIGHT TO RETURN THIS POLICY. This policy may be returned within 10 days (20 days for replacements) after you receive it for a refund of any premium received, less any withdrawals and loans made under this policy.  This policy will be void from its beginning.  You may return the policy by delivering or mailing it to us at the address below or by returning it to the agent or agency office through which it was delivered.**

**Main Administrative Office**

PHL Variable Insurance Company
Variable and Universal Life Administration
P.O. Box 8027
Boston, MA 02266-8027
Telephone (800) 541-0171

Signed for PHL Variable Insurance Company at One American Row, Hartford, Connecticut 06103-2899.

*Philip K Polkinghorn*
President

*John H. Beers*
Secretary

**READ YOUR POLICY CAREFULLY**
It is a legal contract between the Owner and PHL Variable Insurance Company

**Universal Life Insurance Policy**
**Flexible Premiums**
**Death Benefit payable at death of Insured**
**Nonparticipating – not eligible for dividends**
**Benefits, premiums, and the Risk Classification are shown in Section 1**

**TABLE OF CONTENTS**

| Section | Provision |
|---|---|
| 1. | Schedule Pages |
| 2. | Table of Rates |
| 3. | Definitions |
| 4. | Qualification as Life Insurance |
| 5. | Total Face Amount |
| 6. | Death Proceeds |
| 7. | Guaranteed Death Benefit |
| 8. | Death Benefit On or After Age 100 Anniversary |
| 9. | Policy Value |
| 10. | Premiums |
| 11. | Grace Period |
| 12. | Policy Termination |
| 13. | Reinstatement |
| 14. | Loans and Overloan Protection |
| 15. | Surrenders and Withdrawals |
| 16. | Basis of Computations |
| 17. | Owner(s) and Beneficiary(ies) |
| 18. | Assignment |
| 19. | Misstatements |
| 20. | Suicide Exclusion |
| 21. | Incontestability |
| 22. | The Entire Contract |
| 23. | Annual Statement |
| 24. | Claims of Creditors |
| 25. | Right to Defer Payment of Benefits |

Exhibit 2

Page 21

U001ZZT1

## SECTION 1: SCHEDULE PAGES

POLICY NUMBER:   97519088

| | |
|---|---|
| **Insured** | |
| **Age at Policy Date** | |
| **Sex** | |
| **Risk Classification** | Non-Smoker |
| **Additional Ratings** | Not Applicable |
| | |
| **Owner, Beneficiary** | As designated in the application or subsequently changed |
| **Policy Date** | November 3, 2006 |
| **Issue Date** | November 3, 2006 |
| **Death Benefit Option at Issue** | Option A |
| **Life Insurance Qualification Test** | Guideline Premium Test |

| **Total Face Amount** | Basic Face Amount at Issue | $5,000,000 |
|---|---|---|
| | Supplemental Face Amount at Issue | $0 |
| | Total Face Amount at Issue | $5,000,000 |

### Premiums at Issue

| | |
|---|---|
| **Premium Mode** | Quarterly |
| **Minimum Initial Premium** | $18,466.66 |
| **Planned Premium** | $41,667.00 |
| **Monthly Guarantee Premium** | $9,233.33 |

### Other Benefits and Specifications
### (See Rider Information for further details regarding riders)

| | |
|---|---|
| **Preferred Loan Amount at Issue** | $0 |
| **Interest Bonus Start Date** | November 3, 2013 |
| **Guaranteed Death Benefit Period** | 5 Policy Years |
| **Withdrawal Charge Period** | Policy Years 1-10 |
| **Rider 1** | Life Plan Options Rider |
| **Rider 2** | Living Benefit Rider |
| **Rider 3** | Individual Term Rider |

**Notice:** The actual premiums paid will affect the Policy Value, the duration of insurance coverage, and the amount of Death Benefit as described in Section 6. **Even if the Planned Premiums shown above are paid as scheduled, they may not be sufficient to continue the policy in force until the death of the Insured.** Unless the Total Cumulative Premium Test is satisfied during the Guaranteed Death Benefit Period, the policy will continue in force until the death of the Insured only if on each Monthly Calculation Date the Net Policy Value, less Policy Debt, during the first 9 Policy Years is at least equal to all due and unpaid Monthly Deductions. After the first 9 Policy Years, the Net Surrender Value on each Monthly Calculation Date must be at least equal to all due and unpaid Monthly Deductions.

Exhibit 2

Page 22

U001ZZS1

## SECTION 1: SCHEDULE PAGES (continued)

POLICY NUMBER:   97519088

### Policy Charges

**Deductions from Premium Payments**

| | |
|---|---|
| **Sales Charge\*** | 10% of first $246,171.00 of premium paid in the first Policy Year |
| | 7% of any premium paid in excess of $246,171.00 in the first Policy Year |
| | 5% of all premiums paid in Policy Years 2 and thereafter. |

\*No sales charge will apply to any loan carried over as part of the initial premium paid for this policy.

**Monthly Deduction**  (the following charges are deducted monthly from the Policy Value on each Monthly Calculation Date)

| | |
|---|---|
| **Issue Charge** | $50.00   deducted during the first Policy Year only |
| **Service Charge** | $3.50   guaranteed not to exceed $7.00. |
| **Cost of Insurance Charge** | Determined in accordance with Section 9.  Maximum monthly rates per $1,000 of Net Amount at Risk are shown in Section 2. |
| **Rider Charges** | As hereinafter described in this Section 1 under Rider Information |

**Other Deductions**

| | |
|---|---|
| **Overloan Transaction Charge** | 3.5% of the Policy Value, deducted when the overloan protection feature is exercised, as described in Section 14. |
| **Surrender Charge** | The charges shown in this table are as of the beginning of each Policy Year. These Surrender Charges will reduce on a monthly basis to equal zero over time, as shown in this table.  The policy's Surrender Charge is equal to the sum of that shown for the Basic Face Amount and that shown for the Supplemental Face Amount. |

### Table Of Surrender Charges

| Policy Year | Basic Face Amount | Supplemental Face Amount |
|---|---|---|
| 1 | $283,826 | $0 |
| 2 | $271,345 | $0 |
| 3 | $259,094 | $0 |
| 4 | $247,059 | $0 |
| 5 | $235,215 | $0 |
| 6 | $223,557 | $0 |
| 7 | $212,118 | $0 |
| 8 | $200,957 | $0 |
| 9 | $190,154 | $0 |
| 10 | $179,792 | $0 |
| 11 | $169,895 | $0 |
| 12 | $160,468 | $0 |
| 13 | $151,465 | $0 |
| 14 | $134,550 | $0 |
| 15 | $64,350 | $0 |
| 16 | $0 | $0 |
| 17 | $0 | $0 |
| 18 | $0 | $0 |
| 19 | $0 | $0 |
| 20 | $0 | $0 |
| 21+ | $0 | $0 |

Exhibit 2

Page 23

U001ZZS2

## SECTION 1: SCHEDULE PAGES (continued)

POLICY NUMBER:    97519088

### Rider Information

| | Rider Description | Rider Issue Date | Benefit Amount | Rider Expiry Date | Rider Charge |
|---|---|---|---|---|---|
| UR11 | Living Benefit Rider | 11/03/2006 | | | None |
| 05ITR | Individual Term Rider | 11/03/2006 | $0.00 | None | $0.00 First Policy Month* None |
| UR73 | Life Plan Option Rider | 11/03/2006 | | | |

*Rider Charges for subsequent Policy Months are in accordance with those guarantees specified in the rider.

Exhibit 2
Page 24

U001ZZS3

## SECTION 1: SCHEDULE PAGES (continued)

POLICY NUMBER:    97519088

### Table of Values

**Refer to your policy provisions for details on the terms and values shown in this table.**

| | |
|---|---|
| Minimum Total Face Amount | $100,000 |
| Minimum Basic Face Amount | $100,000 |
| Policy Loan Interest Rate | 6% |
| Minimum Loan Amount | $500 |
| Minimum Withdrawal Amount | $500 |
| Guaranteed Minimum Interest Rate | 4% |
| Policy Value Benchmark Percentage | 40% |
| Guideline Single Premium | $3,079,382.07 |
| Guideline Level Premium | $409,464.85 |
| Maximum Annual Premium | $1,000,000 |
| Minimum Total Face Amount Decrease | $10,000 |

## SECTION 2: TABLE OF RATES

POLICY NUMBER:   97519088

### MINIMUM DEATH BENEFIT PERCENTAGES & MAXIMUM MONTHLY COST OF INSURANCE RATE TABLE

| Attained Age | Minimum Death Benefit Percentage | Maximum Monthly Rates per 1,000 of Net Amount at Risk | Attained Age | Minimum Death Benefit Percentage | Maximum Monthly Rates per 1,000 of Net Amount at Risk |
|---|---|---|---|---|---|
| 75 | 105% | 3.1100 | 88 | 105% | 13.1342 |
| 76 | 105% | 3.5033 | 89 | 105% | 14.4592 |
| 77 | 105% | 3.9258 | 90 | 105% | 15.8658 |
| 78 | 105% | 4.3775 | 91 | 104% | 17.3817 |
| 79 | 105% | 4.8708 | 92 | 103% | 19.0500 |
| 80 | 105% | 5.4267 | 93 | 102% | 20.9500 |
| 81 | 105% | 6.0633 | 94 | 101% | 23.2758 |
| 82 | 105% | 6.7992 | 95 | 100% | 26.4433 |
| 83 | 105% | 7.6467 | 96 | 100% | 31.3117 |
| 84 | 105% | 8.5858 | 97 | 100% | 39.5808 |
| 85 | 105% | 9.6150 | 98 | 100% | 54.6542 |
| 86 | 105% | 10.7150 | 99 | 100% | 83.3333 |
| 87 | 105% | 11.8925 | 100+ | 100% | 0.0000 |

**Basis of Calculations:** 1980 Commissioner's Standard Ordinary Mortality Smoker/Nonsmoker Distinct Table (Age Nearest Birthday) for the Insured's sex and Risk Classification, Age, and 4% effective annual interest rate. The Monthly Factor used in determining Cost of Insurance is 1.0032737.

If this policy is issued on a unisex basis, we will use the 1980 Commissioners' Standard Ordinary Mortality Smoker/Nonsmoker Distinct 80% Male Table (Age Nearest Birthday) for the Insured's Risk Classification, Age, and 4% effective annual interest rate. The Monthly Factor used in determining the Cost of Insurance is 1.0032737.

7

Exhibit 2
Page 26

U001ZZS5

## SECTION 3: DEFINITIONS

The term **"Age"** means, on any given date, the age of the person in question at his or her birthday nearest that date.

The term **"Age 100 Anniversary"** means the Policy Anniversary nearest the Insured's 100th birthday.

The term **"Attained Age"** on any date means the Age plus the number of whole years that have elapsed since the Policy Date.

The term **"business day"** means any day that we are open for business.

The term **"due proof of death"** means, a certified death certificate, an order of a court of competent jurisdiction, or any other proof acceptable to us.

The term **"in force"** means the policy has not terminated or otherwise lapsed in accordance with the Grace Period provision.

The terms **"in writing," "written notice," and "written request"** mean a written form signed by you, satisfactory to us and received at our Home Office or Main Administrative Office or such other medium electronic or otherwise that we may from time to time make available.

The term **"Issue Date"** means the date from which the Suicide Exclusion and Incontestability provisions are applied.

The term **"Minimum Initial Premium"** means the minimum premium needed to put the policy in force and is shown in Section 1.

The terms **"Monthly Calculation Date"** or **"Monthly Calculation Day"** mean the date on which monthly deductions are assessed from the Policy Value. The first Monthly Calculation Date is the Policy Date. Subsequent Monthly Calculation Dates are the same days of each month thereafter or, if such day does not fall within a given month, the last day of that month will be used.

The term **"Net Policy Value"** equals the Policy Value less the Policy Debt.

The term **"Net Surrender Value"** equals the Surrender Value less the Policy Debt.

The term **"notice"** means that whenever we are required to give notice to you, it shall be deemed given if we mail it to you and, unless otherwise specified, to the assignee of record, if any, in a postage-paid envelope mailed by first class mail to the last known address of record from our Main Administrative Office. If we mutually agree notice may also be provided by an electronic medium.

The term **"Planned Premium"** means the premium that is selected in the application or as later changed by you for this policy that you intend to be pay on a regular modal basis

The term **"Policy Anniversary"** means the same day and month of each year as the Policy Date. If the day does not exist in a month, the last day of the month will be used.

The term **"Policy Date"** means the date shown in Section 1. Policy Charges are calculated from the Policy Date. Policy Years, Policy Months, and Policy Anniversaries are determined from the Policy Date.

The term **"Policy Debt"** means unpaid loans with accrued interest.

The term **"Policy Month"** means the period from one Monthly Calculation Date up to, but not including, the next Monthly Calculation Date.

The term **"Policy Value"** means the amount equal to the Net Premium credited less an amount not to exceed one month of Monthly Deductions from the Policy Value on the later of the Issue Date or the receipt of the first payment at our Main Administrative Office as shown in Section 1. Thereafter the Policy Value is determined by accumulating with interest the Policy Value for the prior day increased by Net Premiums credited and decreased by withdrawals and, on the Monthly Calculation Date, the Monthly Deductions from Policy Value shown in Section 1.

The term **"Policy Year"** means, with respect to the first Policy Year, the one-year period beginning on the Policy Date up to, but not including, the first Policy Anniversary. Each subsequent Policy Year is the one-year period beginning on a Policy Anniversary up to, but not including, the next Policy Anniversary.

The term **"Preferred Loan"** means any loan that is carried over as part of the initial premium paid for this policy from a previously issued policy plus any loan taken to pay loan interest on the Preferred Loan.

Exhibit 2

Page 27

U001ZZR1

The term **"Surrender Value"** means the Policy Value less any applicable Surrender Charges, and less any unpaid issue charges.

The terms **"we", "us", and "our"** refer only to the Company.

The terms **"you" and "your"** refer only to the owner of this policy as defined in Section 17.

---

## SECTION 4: Qualification as Life Insurance

The provisions of this policy are to be interpreted to ensure or maintain qualification as a life insurance contract for federal income tax purposes, notwithstanding any other provisions of the policy to the contrary. We reserve the right to make any reasonable adjustments to the terms or conditions of this policy, including distributions from the policy to the extent we deem it necessary, if it becomes necessary to maintain qualification as life insurance. This provision should not be construed to guarantee that this policy will receive tax treatment as life insurance or that the tax treatment of life insurance will never be changed by the future actions of any tax authority. To ensure that the policy qualifies as life insurance, one of the following tests will apply to the policy. The test you elected is shown in Section 1, Schedule Pages. Your election cannot be changed after issue. We reserve the right to refuse any premium payments that would cause the policy to fail the test you elected.

**Guideline Premium Limit**
Under the Guideline Premium Limit test, the sum of the premiums paid less a portion of any withdrawals, as defined in the Code, may not exceed the greater of:
- The Guideline Single Premium (as determined for your policy); or
- The sum of the annual Guideline Level Premium to the date of the payment.

If you elected this test, the Guideline Single Premium and the Guideline Level Premium are shown in Section 1. If at any time the premiums received under the policy exceed the amount allowable for such tax qualification, such excess amount shall be removed from the policy as of the date of its payment, together with interest thereon from such date, and any appropriate adjustment in the Death Benefit shall be made as of such date. This excess amount (plus or minus any interest) shall be refunded to you no later than 60 days after the end of the applicable Policy Year. If this excess amount (plus or minus any interest) is not refunded by then, the Total Face Amount under the policy shall be increased retroactively so that at no time is the Death Benefit ever less than the amount necessary to ensure or maintain such tax qualification. In no event, however, will we refuse to accept any premium necessary to prevent the policy from terminating.

**Cash Value Accumulation Test**
Under this test, the net single premium for the future benefits of the contract must always be greater than the Policy Value. The net single premium is that single amount that would provide for the cost of the Death Benefit and any applicable riders under this policy. We reserve the right to modify the Death Benefit Percentages shown in Section 2, retroactively if necessary, to ensure or maintain qualification of this policy as a life insurance contract for federal income tax purposes, notwithstanding any other provisions of this policy to the contrary.

---

## SECTION 5: Total Face Amount

The Total Face Amount is made up of two components: (i) the Basic Face Amount, and (ii) the Supplemental Face Amount, if any. The Total Face Amount remains equal to the Total Face Amount at Issue, shown in Section 1, or as modified according to the terms of this Policy.

**Reduction of Total Face Amount**
You may request a reduction in Total Face Amount at any time after the first Policy Year provided this policy is in force and subject to the Minimum Total Face Amount. Any reduction in the Total Face Amount will be implemented by first reducing any Supplemental Face Amount. Any reduction in the Total Face Amount will be effective on the next Monthly Calculation Date after our approval. Upon a reduction in Total Face Amount, a pro-rata Surrender Charge will be deducted from the Policy Value based on the Policy Year and amount of the reduction in accordance with the Table of Surrender Charges shown in Section 1.

## SECTION 6: Death Proceeds

If the Insured dies while the policy is in force, we will pay the Death Proceeds, as described below, upon receipt of due proof of death of the Insured, subject to any applicable provisions of the policy.

If the Insured dies on or after the date we receive a request from you to surrender the policy, no Death Proceeds will be paid. We will pay the amount payable under the Surrenders and Withdrawals provision instead. The Death Proceeds at the death of the Insured are equal to:

    (a) the Death Benefit, as described below, in effect on the Insured's date of death; plus

    (b) any insurance then in effect on the life of the Insured that is provided by any additional benefit riders; less

    (c) any Policy Debt then existing on this policy.

If the Insured dies during the Grace Period, the Death Proceeds payable described above will be modified as follows:

    (a) the Death Proceeds will be reduced by any outstanding Policy Charges due; and

    (b) the Policy Value used in the calculation of the Death Benefit will be the Policy Value as of the date of death of the Insured.

We will pay interest on any Death Proceeds paid in one sum in the event of the Insured's death from the date of death to the date of payment as required by applicable state law. If the state does not specify the interest rate, we will use the rate for Death Proceeds left on deposit with us.

**Death Benefit**

The Death Benefit under this policy will be determined under either Option A or Option B, whichever is then in effect.

Option A: The Total Face Amount on the date of death of the Insured or, if greater, the Minimum Death Benefit as described below.

Option B: The Total Face Amount plus the Policy Value on the date of death of the Insured or, if greater, the Minimum Death Benefit as described below.

If withdrawals are made, the Death Benefit will be reduced by reducing the Total Face Amount if Option A is in effect, or the Policy Value if Option B is in effect.

**Minimum Death Benefit**

The Minimum Death Benefit is equal to the Policy Value on the date of death multiplied by the applicable Minimum Death Benefit Percentage for the Attained Age of the Insured. The Minimum Death Benefit Percentages are shown in Section 2. To the extent that the Net Amount at Risk associated with the Minimum Death Benefit that results from this calculation exceeds our guidelines and limitations that may be in effect, we reserve the right to:

    (a) distribute to you a portion of the Policy Value such that the Net Amount at Risk associated with the resulting Minimum Death Benefit does not exceed our guidelines and limitations in effect; or

    (b) if we should decide to accept the additional death benefit, require evidence of insurability satisfactory to us.

**Change in Death Benefit Option**

While this policy is in force and prior to the Age 100 Anniversary, you may request in writing to change the Death Benefit Option, subject to the Minimum Basic Face Amount shown in Section 1. If, however, you have exercised the Overloan Protection feature as described in Section 14, the death benefit will be changed to Death Benefit Option A if it is not already in effect. No further changes to death benefit options will be allowed. Any change in Death Benefit Options will be effective on the next Monthly Calculation Date. Any change will be subject to the following:

- Change from Option A to Option B:  the Total Face Amount will be reduced by the Policy Value.

- Change from Option B to Option A:  the Total Face Amount will be increased by the Policy Value.

Any reduction in the Total Face Amount will be implemented by first reducing any Supplemental Face Amount, with no change to the surrender charge schedule of the policy.

If the Supplemental Face Amount is greater than 0, any increase in the Total Face Amount will be implemented by increasing the Supplemental Face Amount. If the Supplemental Face Amount is equal to 0, any increase in Total Face Amount will be implemented by increasing the Basic Face Amount.

We will not require evidence of insurability for a change in Death Benefit Options. You are limited to one change in Death Benefit Option per Policy Year.

Any change in Total Face Amount as a result of a death benefit option change will not change the surrender charges for this policy.

## SECTION 7: Guaranteed Death Benefit

The Guaranteed Death Benefit feature provides a guarantee during the Guaranteed Death Benefit Period that the Basic Face Amount, any Supplemental Face Amount, and any rider benefits of your policy will not terminate, regardless of Policy Value, if the Total Cumulative Premium Test is met.

**Total Cumulative Premium Test** – In order to pass this test, the total premiums paid by you less partial withdrawals, since policy issue, less policy debt must be at least equal to the sum of all Monthly Guarantee Premiums applicable for each Policy Month since the Policy Date.

The Monthly Guarantee Premium applicable on the Policy Date is shown on the Schedule Page of the Policy, and shall be the same for each Policy Month thereafter. However, if there is a change in the (a) Total Face Amount, (b) the addition, change or termination of a rider, or (c) a change in risk classification, we will modify the Monthly Guarantee Premium. The revised Monthly Guarantee Premium shall then be applicable for the Policy Month in which the change occurs and for each Policy Month thereafter until another change, if any, shall occur.

While the Guaranteed Death Benefit feature is in effect, monthly deductions will continue to be deducted from the Policy Value as provided for under the terms of this Policy. If the Policy Value is insufficient to cover such monthly deduction, such insufficiency shall be carried over as a charge to be deducted from such future Policy Value(s) as may later exist. No interest will accrue on these charges.

## SECTION 8: Death Benefit On or After Age 100 Anniversary

Coverage under this policy on or after the Age 100 Anniversary is subject to the conditions specified below.

**Death Benefit**

The Death Benefit will be determined in the same respect as specified in Section 6, except as follows.

- If Death Benefit Option B is in effect, we will change to Death Benefit Option A effective on the Age 100 Anniversary, which means the Total Face Amount will not be increased by the Policy Value.
- The Death Benefit will be equal to the greater of (a) the Total Face Amount on the Date of the Insured's death, or (b) the Policy Value after the Age 100 Anniversary.

**Premiums and Monthly Deductions**

We will cease to take Monthly Deductions specified in Section 1, and we will not accept any further premium payments.

**Credited Interest**

We will continue to credit interest monthly to the Policy Value.

**Policy Debt and Default**

Loan interest will continue to be charged if there is an outstanding loan on the Age 100 Anniversary. The policy will go into default at any time the Policy Debt exceeds the Policy Value, and the Loans provision and the Surrenders and Withdrawals provision will still be in effect.

Exhibit 2
Page 30

U001ZZP4

---

**SECTION 9: Policy Value**

---

**Net Premiums Added**

When we receive your premium payments at our Main Administrative Office, we deduct a Sales Charge which will not exceed the amount shown in Section 1 and add the balance remaining (the Net Premium) to your Policy Value. We will do this before we take any other deductions due on that business day. However, we will add any Net Premiums received before the Policy Date to your Policy Value as of the Policy Date. While a loan exists, we will treat the amounts you pay as premiums unless you request in writing that they be treated as loan repayments. If you instruct us to do so, we will first deduct from such payments the amount of accrued interest on loans and then deduct the amount specified as a loan repayment before applying any balance remaining as a premium payment.

**Monthly Deductions**

A deduction is due and will be taken from the Policy Value as of the Policy Date and as of each applicable Monthly Calculation Date. Monthly Deductions are calculated from the Policy Date. If, at your request, we set the Policy Date to a date which precedes the date on which we receive the initial premium, Monthly Deductions due for the period prior to receipt of the initial premium will be taken on the later of the date we receive the initial premium and the date our underwriters approve issuance of this policy.

Monthly Deductions are due until the Age 100 Anniversary, at which time we will cease to take any further Monthly Deductions as described in Section 8.

The Monthly Deduction for any Policy Month that will be deducted from your Policy Value consists of charges (a) through (e) listed below, each of which will be deducted in the order as listed, where:

    (a)    is the Issue Charge;

    (b)    is the Service Charge;

    (c)    is the sum of the charges for riders which are part of the policy, if any,;

    (d)    is the sum of all charges for any applicable Additional Ratings shown in Section 1; and

    (e)    is the Cost of Insurance Charge, as described below.

**Cost of Insurance Charge**

The rates for the Cost of Insurance Charge as of the Policy Date are based on the sex, if applicable, Age, Risk Classification, Basic Face Amount, Supplemental Face Amount, Net Amount at Risk, and duration that the coverage has been in force for the Insured.

The Cost of Insurance Charge for a specific Policy Month is the charge for the Net Amount at Risk. The charge for the Net Amount at Risk is an amount equal to the per dollar cost of insurance rate for that month multiplied by the Net Amount at Risk, and such rates will be based on our expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions. The Maximum Monthly Rates at any Age are shown in Section 2 as a rate per $1,000 of Net Amount at Risk. To get the maximum rate per dollar, the rate shown must be divided by 1,000. Each Cost of Insurance Charge is deducted in advance of the applicable insurance coverage for which we are at risk.

The Cost of Insurance calculation will reflect any adjustment for the Minimum Death Benefit.

We review our Cost of Insurance rates periodically, and may re-determine Cost of Insurance rates at such time on a basis that does not discriminate unfairly within any class of insureds. Any change in rates will be determined prospectively. We will not distribute past gains or recoup prior losses, if any, by changing the rates.

**Net Amount at Risk**

The Net Amount at Risk is the amount determined by subtracting (a) from the greater of (b) or (c) where:

    (a)    is the Policy Value at the end of the immediately preceding business day less all charges due on the Monthly Calculation Date;

    (b)    (i) is the Total Face Amount divided by the applicable Monthly Factor shown in the footnote in Section 2 for Death Benefit Option A; or (ii) is the Total Face Amount divided by the applicable Monthly Factor shown in the footnote in Section 2 plus the Policy Value for Death Benefit Option B; and

    (c)    is the amount defined in (a) multiplied by the applicable Minimum Death Benefit Percentage shown in Section 2.

Exhibit 2

Page 31

U001ZZP5

**Interest Rate**

We will determine the credited interest rate(s) used in the calculation of the Policy Value, based on our anticipation of future investment earnings, mortality, persistency, expense and administrative costs, and taxes. We may, in our sole discretion, change the interest rate(s). Changes in the rate(s) will apply to all policies in the same Risk Classifications. The effective annual interest rate will never be less than the Guaranteed Minimum Interest Rate shown in Section 1. Any interest credited in excess of that computed based upon the Guaranteed Minimum Interest Rate is referred to as "excess interest."

We may credit different interest rates on loaned and unloaned portions of the Policy Value. The rate(s) in effect on a given date for unloaned amounts is referred to as the "current interest rate(s)." The rate in effect on a given date for loaned amounts will be no less than the Policy Loan Interest Rate less 2% nor greater than the Policy Loan Interest Rate. We may credit interest on loaned Policy Value for Preferred Loans at a different rate than the rate credited on loaned Policy Value for non-Preferred Loans. All interest rates are stated as effective annual rates. Interest will be compounded at least monthly to yield the effective annual rate.

**Interest Bonus**

On each Monthly Calculation Date beginning on the Interest Bonus Start Date, (shown in Section 1), in addition to interest being credited under the policy, we will also credit an Interest Bonus on amounts in excess of the Policy Value Benchmark Amount, defined as follows.

The Policy Value Benchmark Amount is equal to the Policy Value Benchmark Percentage (shown in Section 1) multiplied by the sum of the Total Face Amount at issue and the insurance amount then in effect on any applicable riders attached to this policy.

The bonus equals the monthly equivalent of the Bonus Interest Rate, as specified in the table below, multiplied by the amount that (a) exceeds (b), where:

(a) = the lesser of the unloaned portion of the Policy Value and the Total Face Amount, and

(b) = Policy Value Benchmark Amount.

| Effective Annual Rate on unloaned Policy Value | Bonus Interest Rate |
|---|---|
| At least 4.5% | 1.00% |
| At least 4.25% but less than 4.50% | .50% |
| Less than 4.25% | 0% |

---

### SECTION 10: Premiums

No insurance under this policy will take effect until our underwriters approve issuance of this policy and the conditions specified in the application form have been satisfied, including our receipt of at least the Minimum Initial Premium.

We will process any premium payment subject to the limitations of the life insurance qualification test elected by you, unless one of the following exceptions applies:

(i)    we will process a payment received prior to the Policy Date as if received on the Policy Date.

(ii)   we will process the portion of any premium payment for which we require evidence of the Insured's continued insurability on the first business day after we have received such evidence and found it satisfactory to us.

If however, our receipt of any premium payment (or portion thereof) would cause the policy to not qualify as a "life insurance contract" under the federal income tax laws, we will not process such payment (or portion thereof). In addition in the case of certain other situations that could have tax implications, we will process the payment (or portion thereof) on the first business day after we have received satisfactory written instructions from you.

Exhibit 2

Page 32

U001ZZP6

Subject to these limitations, you may pay additional premiums at any time prior to the Age 100 Anniversary and while this policy is in force. Unless we agree otherwise, maximum premium payments are subject to the Maximum Annual Premium shown in Section 1. If, however, you have exercised Overloan Protection, no further premiums may be paid once Overloan Protection goes into effect. All premiums are payable at our Main Administrative Office or to an authorized agent. You may request a receipt signed by one of our executive officers.

If any premium payment results in an increase in the Death Benefit by more than it would increase the Policy Value, then we will either refund the premium or require evidence of insurability satisfactory to us. To the extent of such evidence, the Incontestability and Suicide Exclusion provisions will apply. We may limit the number and amount of premium payments in any Policy Year. The minimum premium payment that we will accept is $25.

---

## SECTION 11: Grace Period

**During the first 5 Policy Years** - If the Total Cumulative Premium Test is satisfied, as described in Section 7, then the Basic Face Amount, any Supplemental Face Amount, and any rider benefits will remain in effect during the Guaranteed Death Benefit Period. If, however, the Total Cumulative Premium Test is not satisfied, then this policy and any riders will go into default if, on any Monthly Calculation Date, the required Monthly Deductions exceed the Net Policy Value. A grace period of 61 days from the date the policy goes into default will be allowed for the payment of additional premiums. Such additional premium payments must be sufficient to increase the Net Policy Value on that Monthly Calculation Date to cover three Monthly Deductions or, if less, the amount necessary to pass the Total Cumulative Premium Test for the next three Policy Months.

**During Policy Years 6 through 9** - This policy and any riders will go into default if, on any Monthly Calculation Date, the required Monthly Deductions exceed the Net Policy Value. A grace period of 61 days from the date the policy goes into default will be allowed for the payment of additional premiums. Such additional premium payments must be sufficient to increase the Net Policy Value on that Monthly Calculation Date to cover three Monthly Deductions.

**After the 9th Policy Year** - This policy and any riders will go into default if, on any Monthly Calculation Date, the required Monthly Deductions exceed the Net Surrender Value. A grace period of 61 days from the date the policy goes into default will be allowed for the payment of additional premiums. Such additional premium payments must be sufficient to increase the Net Surrender Value on that Monthly Calculation Date to cover three Monthly Deductions.

At least 30 days prior to termination of coverage, we will send notice to your last known address, specifying the amount you must pay to bring the policy out of default. If we have notice of a policy assignment on file at our Main Administrative Office, we will also mail a copy of the notice of the amount due to the assignee on record. When payment is received, any Policy Charges which are past due and unpaid will be immediately deducted from the Policy Value. If the necessary additional premium payments have not been received by the end of the grace period, the policy will terminate. Upon termination of the policy, the remaining Net Surrender Value, if any, will be paid to the Owner. If the Insured dies while the policy is in default, then we will deduct from the proceeds all Monthly Deductions due and unpaid as of the date of the Insured's death. Unless a rider provides otherwise, no riders will be in effect after the policy terminates.

---

## SECTION 12: Policy Termination

This policy will terminate automatically on the earliest of:

(1) the date the Insured dies;

(2) the date the grace period expires without the payment of sufficient premium as provided in Section 11; or

(3) the date the policy is surrendered for its Net Surrender Value.

Exhibit 2

Page 33

U001ZZP7

## SECTION 13: Reinstatement

If this policy terminates in accordance with the Grace Period provision, you may reinstate this policy while the Insured is alive within five years from the date the policy goes into default, as specified in Section 11. The policy cannot be reinstated if it has been surrendered for its Net Surrender Value. It also cannot be reinstated if the date of reinstatement is on or after the Age 100 Anniversary. We will not approve a request for reinstatement until we receive at our Main Administrative Office all of the following:

(1) a written request for reinstatement;

(2) evidence of insurability satisfactory to us;

(3) payment or reinstatement of any Policy Debt as of the date of termination, if applicable; and

(4) payment of the Reinstatement Premium. The Reinstatement Premium equals the amount that was required to bring the policy out of default immediately prior to termination, plus three Monthly Deductions.

Requirements (2) through (4) must be satisfied within 60 days after the date we receive a written request for reinstatement.

If we approve your request,

(1) the reinstatement date will be the date we receive the required payment at our Main Administrative Office;

(2) any Surrender Charge will be reinstated to the amount it was at the date of default;

(3) the remaining Surrender Charge Schedule, if any, will be the same as on the date of default;

(4) the Policy Value on the date of reinstatement, prior to the crediting of any Net Premium paid on the reinstatement, will be equal to the Policy Value on the date the policy terminated.

## SECTION 14: Loans and Overloan Protection

While this policy is in force, and sufficient loan value is available, a loan may be obtained by written request. Each loan must be for at least the Minimum Loan Amount shown in Section 1. A loan may not be taken after you have exercised Overloan Protection. To obtain a loan, we may require a loan agreement from you, since the policy is the only security for the loan. We may defer loans as provided by law or as provided in Section 25. Loans may not be made if the policy is in the grace period as described in Section 11.

**Maximum Loan Value**

The Maximum Loan Value on the Policy Date is equal to 75% of the premiums received. Thereafter, the Maximum Loan Value on any date is equal to the lesser of (a) or (b), where:

(a) = the Policy Value, projected (with interest and monthly charges) to the next Policy Anniversary, less any applicable Surrender Charge, discounted for interest at the policy loan interest rate; and

(b) = the current Surrender Value of this policy.

The Maximum Loan Value, however, will not be less than the Preferred Loan Amount plus accrued interest on such amount, but in no event greater than the current Policy Value.

**Available Loan Value**

The available loan value on any date is an amount equal to the Maximum Loan Value less Policy Debt.

Exhibit 2
Page 34

U001ZZP8

**Loan Interest Charged**

Loan interest will accrue on a daily basis from the date of the loan, and is payable in arrears.

Loans will bear interest at a rate not to exceed the Policy Loan Interest Rate shown in Section 1. Loan interest will be payable on each Policy Anniversary and on the date the loan is settled. In the event that you do not pay the loan interest charged in a Policy Year, such amount will be added to the Policy Debt on the Policy Anniversary. The portion of the loan interest attributable to the Preferred Loan Amount will be reflected as an increase to the Preferred Loan Amount on the Policy Anniversary.

**Loan Repayment**

You may repay the Policy Debt in whole or in part at any time prior to the death of the Insured and while the policy is in force. Subject to any rider, endorsement, or other provisions, while a loan exists, we will treat any amounts you pay as premiums, unless you request in writing that they be treated as loan repayments.

**Overloan Protection**

You have the option of exercising Overloan Protection, in writing, when the following conditions exist on the Monthly Calculation Date:

1. the Policy Debt exceeds the specified Total Face Amount;
2. the Policy Debt is equal to 96% of the Policy Value;
3. the Insured is at least 65 years of Age;
4. this policy has been in force for at least 15 Policy Years; and
5. the Guideline Premium Life Insurance Qualification Test is in effect.

If the loan balance is in excess of 96% of the Policy Value, the portion of the loan balance that exceeds 96% of the Policy Value must be repaid at the time that such Overloan Protection is exercised. Overloan Protection will be effective on the Monthly Calculation Date following your written request. Once in effect, Overloan Protection will keep your policy in force and the following changes will automatically take effect.

1. Any riders then in effect will terminate.
2. The Death Benefit Option will be permanently set to Death Benefit Option A.
3. The Total Face Amount then in effect will be reduced to 101% of the Policy Value.
4. The death benefit will equal the greater of (a) and (b), where:
   - (a) = the new Total Face Amount, and
   - (b) = the applicable Minimum Death Benefit Percentage shown in Section 2, multiplied by the greater of (i) and (ii), where:
     - (i) = the Policy Value, and
     - (ii) = the Policy Debt.
5. No further premium payments will be accepted.
6. No further withdrawals will be allowed.
7. No further monthly deductions will be assessed.
8. No additional loans or loan repayments will be allowed.

Any loan balance will reduce the death benefit payable. Loan interest will continue to accrue on this policy.

Once you have exercised Overloan Protection, a one-time Overloan Transaction Charge, as shown in Section 1, will be assessed. There is no additional charge for this benefit or for any of the automatic changes that occur pursuant to your election of this benefit.

Exhibit 2
Page 35

U001ZZP9

## SECTION 15: Surrenders and Withdrawals

**Surrender of the Policy**

You may surrender this policy upon written request for its Net Surrender Value at any time prior to the death of the Insured. We will determine the Net Surrender Value as of the end of the business day on which we have received at our Main Administrative Office your written request for surrender of the policy. After we receive your written request to surrender the policy, no insurance will be in force.

**Withdrawals**

Once per Policy Month while the Insured is living, you may request a withdrawal of part of the Net Surrender Value, if available. A withdrawal will not be permitted after you have exercised Overloan Protection. An amount equal to the withdrawal and its related pro-rata Surrender Charge, shown in Section 1, will be deducted from the Policy Value, if such withdrawal occurs during the Withdrawal Charge Period shown in Section 1. Withdrawals are subject to the following conditions:

(a) each withdrawal must be for at least the Minimum Withdrawal Amount shown in Section 1;

(b) after the withdrawal, the remaining Net Surrender Value must be greater than zero;

(c) a withdrawal will not be permitted which would reduce the Basic Face Amount below the Minimum Face Amount shown in Section 1.

We will process the withdrawal, thereby reducing the Policy Value, as of the end of the business day on which we receive your written request.

If Death Benefit Option A is in effect on the date of the withdrawal, such withdrawal will reduce, dollar for dollar, the Supplemental Face Amount first, and then the Basic Face Amount. If, however, the Death Benefit in effect on the date of the withdrawal is equal to the Minimum Death Benefit, withdrawals on such day will first reduce the Death Benefit by the amount withdrawn multiplied by the applicable Minimum Death Benefit Percentage until the Death Benefit is equal to the Total Face Amount. Such excess withdrawal amount will then reduce, dollar for dollar, the Supplemental Face Amount first, and then the Basic Face Amount. Your Death Benefit will continue to be determined in accordance with Sections 6 and 8 based upon the revised Total Face Amount of coverage.

If Death Benefit Option B is in effect at the time of the withdrawal, the amount of the withdrawal will be deducted from the Policy Value. The Total Face Amount does not change.

Any benefits provided are not less than that required by law of the state where this policy was delivered. We may defer payment of surrender values as provided by law or as provided in Section 25.

## SECTION 16: Basis of Computations

All of the values under this policy are equal to or more than the minimums required on the Policy Date by the state in which this policy was delivered or issued for delivery. The method of computation of the values under this policy has been filed as may be required with the Insurance Department of the state in which this policy was delivered or issued for delivery.

## SECTION 17: Owner(s) and Beneficiary(ies)

The Insured is the owner of this policy, unless otherwise provided in the application or if ownership is changed by later transfer of ownership. If, however, you are offered consideration by a third party to transfer ownership of your policy or any interest in your policy including a collateral or absolute assignment to such third party, no transfer of ownership shall take effect unless we or one of our affiliated companies first have the right to also offer consideration for your policy. We will require information satisfactory to us that is necessary for us to determine the amount of such consideration we will offer for your policy.

While the Insured is living, the owner may exercise all rights provided by this policy or allowed by us. Consent of any beneficiary not irrevocably named or any contingent owner is not required. If there is no surviving Beneficiary upon the death of the Insured, you will be the Beneficiary, but if you were the Insured, your estate will be the Beneficiary.

Any death proceeds that become payable will be paid in equal shares to such beneficiaries living at the death of the Insured as stated in the application or as later changed. Payments will be made successively in the following order:

     (a) Primary beneficiaries;
     (b) Contingent beneficiaries, if any, provided no primary beneficiary is living at the death of the Insured;
     (c) you or your executor or administrator, provided no primary or contingent beneficiary is living at the death of your insured, or in the absence of a beneficiary designation.

Unless otherwise stated, the relationship of a beneficiary is the relationship to the Insured. You may change the beneficiary by written notice filed with us at our Main Administrative Office. When we receive it, the change will take effect as of the date it was signed by you. However, the change will be subject to any payments made or actions taken by us before we received the notice at our Main Administrative Office.

## SECTION 18: Assignment

Except as otherwise provided in this policy, you may, by written notice, assign any interest in this policy without the consent of any person other than an irrevocable Beneficiary. The assignment or a certified copy of it must be filed with us at our Main Administrative Office. When filed, it will bind us as of the date of the assignment, subject to any action taken by us before such filing. We shall not be responsible for the validity or sufficiency of any assignment. The interest of the assignee shall be prior to the interest of any beneficiary not irrevocably named or any contingent owner. An assignee cannot change the beneficiary, owner, or contingent owner.

## SECTION 19: Misstatements

If the age or sex of the Insured has been misstated, we will adjust the Basic Face Amount, any Supplemental Face Amount, and every other benefit to that which would have been purchased at the correct age or sex by the most recent Cost of Insurance charge deducted under Section 9.

## SECTION 20: Suicide Exclusion

If the Insured, whether sane or insane, dies by suicide within two years from the Issue Date, (or within two years from any reinstatement of the policy) and while the policy is in force, our liability shall be limited to an amount equal to the premiums paid on this policy less any Policy Debt owed us and less any withdrawals.

## SECTION 21: Incontestability

This policy shall be incontestable after it has been in force during the Insured's lifetime for two years from the Issue Date, except for fraud, or any provision for reinstatement or policy change requiring evidence of insurability. In the case of reinstatement or any policy change requiring evidence of insurability, the incontestable period shall be two years from the effective date of such reinstatement or policy change. Any premium payment which we accept subject to insurability, and any increase in the Death Benefit resulting from such payment, shall be considered a policy change for purposes of this Section.

While insurance is contestable, we may either rescind the insurance or deny a claim on the basis of:

1. a misstatement in the application or supplemental application for this policy or any face amount increase; or
2. a misstatement in the reinstatement application if there has been a reinstatement of this policy.

18

Exhibit 2
Page 37

U001ZZPB

If we contest the validity of all or a portion of the face amount provided under this policy, the amount we pay with respect to the contested amount will be limited to the higher of a return of any paid premium required by us for the con tested face amount or the sum of any Monthly Deductions made under this policy for the contested face amount.

---

### SECTION 22: The Entire Contract

The written application for the policy is attached at issue. This policy, including the Schedule Pages (and any supplements or changes thereto), any riders, amendments, or endorsements to it, and the application for it (and any supplemental applications) constitute the entire contract between you and us. However, additional written requests or applications for policy changes or acceptance of excess payment may be submitted to us after issue and such additional requests may become part of the policy.

We rely on all statements made by or for the Insured in the written application. Each statement made in an application will, in the absence of fraud, be deemed a representation and not a warranty. No statement will be used to void this policy or in defense of a claim under this policy unless:
1. it is contained in the application or in a supplemental application; and
2. a copy of that application is attached to this policy when issued or made a part of this policy when changes become effective.

Any change in the provisions of the policy, including modifying the policy, waiving any of its conditions, or making an agreement for the Company, to be in effect, must be in writing and signed by one of our executive officers and countersigned by our registrar or one of our executive officers. We have the right to correct any clerical errors in this policy, or in our administration of the policy.

---

### SECTION 23: Annual Statement

Within 30 days after each Policy Anniversary, we will send you, without charge, a report for each Policy Year which includes:
1. the current Policy Value, Death Benefit, Total Face Amount and Surrender Value;
2. any withdrawals, premiums paid, interest credited and charges made during the year;
3. any outstanding loans and new loans and loan repayments made during the year; and
4. any other information required by the insurance supervisory official of the state in which this policy was delivered.

You have the right to request an illustrative report at any other time. We may charge a reasonable fee, not to exceed $50, for the report.

We will provide you, on written request, a projection of illustrative future benefits and values under your policy. We will provide one report annually without charge. For additional reports you request, we have the right to charge a reasonable service fee, not to exceed $50. We may limit the number of such projections in any Policy Year.

---

### SECTION 24: Claims of Creditors

The proceeds and any income payments under this policy shall not be subject to the claims of creditors and shall be exempt from legal process, levy or attachment to the extent allowed by law.  These proceeds and payments may not be assigned or withdrawn before becoming payable without our agreement.

---

### SECTION 25: Right to Defer Payment of Benefits

We reserve the right to defer payment of Net Surrender Values, withdrawals, and policy loans, for up to six months, except when used to make a premium payment.

Exhibit 2

Page 38

U001ZZPC

 **PHL VARIABLE INSURANCE COMPANY**
A Stock Company

## INDIVIDUAL TERM RIDER

This rider is a part of the policy to which it is attached in consideration of the application and the Monthly Charge for this rider as shown on the Schedule Pages of the policy. This rider provides an increasing term insurance benefit. Except as stated in this rider, it is subject to all of the provisions contained in the policy.

### RIDER SPECIFICATIONS

| | |
|---|---|
| **Policy Number:** | 97519088 |
| **Insured:** | ███████████ |
| **Initial Rider Insurance Amount:** | $0.00 |
| **Increase Factor:** | PREMIUMS PAID |
| **Maximum Increase Amount:** | $4,786,668.00 |
| **Insurance Increase Expiry Date:** | November 3, 2031 |
| **Rider Issue Date:** | November 3, 2006 |
| **Rider Expiry Date:** | None |

### DEFINITIONS

**Rider Anniversary**
The rider anniversary means the same day and month of each year as the Rider Issue Date.

**Rider Year**
Rider years shall be measured from the Rider Issue Date.

**Consumer Price Index**
The Consumer Price Index means the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics of the United States Department of Labor. If the publication of the Consumer Price Index for All Urban Consumers is transferred to some other agency of the United States Government, the definition of the Consumer Price Index shall be changed to refer to such new agency. If the Consumer Price Index for All Urban Consumers is altered but is still in our opinion appropriate for this rider, it shall be used. If it is no longer published or is altered so that in our opinion it is no longer appropriate for this rider, the Current Ratio will remain constant at the latest computable value for the remaining time this rider is in force. However, if it can be adjusted so that in our opinion it becomes appropriate for this rider, the adjusted index shall be used.

**Consumer Price Index Current Ratio**
The Consumer Price Index Current Ratio for any Rider Year is equal to:

a)  The Current Factor for that Rider Year less the Base Factor; divided by
b)  The Base Factor

However, the Current Ratio shall not exceed 200% for any Rider Year.

The Base Factor is the Consumer Price Index for the month 4 months before the month in which this rider is issued.

The Current Factor for any Rider Year is the smaller of:

a) The Consumer Price Index for the month 4 months before the month in which the Rider Year begins; or
b) 125% of the Current Factor for the prior Rider Year.

Furthermore, the Current Factor for a given Rider Year will not be less than the Current Factor for any prior Rider Year.

### Total Rider Insurance Amount
The Total Rider Insurance Amount is equal to the Initial Rider Insurance Amount plus any insurance increases.

## GENERAL

### Rider Death Benefit
Upon receipt of due proof at our Main Administrative Office that the Insured died while this rider is in effect, we will pay the Rider Death Benefit, as described below, to the beneficiary of the policy. In no event will the Rider Death Benefit be less than zero.

The Rider Death Benefit is equal to the Total Rider Insurance Amount minus the excess, if any, of the policy's Minimum Death Benefit, as described in the policy, over the policy's Total Face Amount.

After the Age 100 Anniversary, the Rider Death Benefit is equal to the Total Rider Insurance Amount minus the excess, if any, of the Policy Value over the policy's Total Face Amount.

### Suicide Exclusion
If the Insured, whether sane or insane, dies by suicide within two years from the Rider Issue Date, (or within two years from any reinstatement of this rider) and while the rider is in force, our liability shall be limited to the Monthly Charges made for this rider.

If the Insured, whether sane or insane, dies by suicide within two years from any increase in Total Rider Insurance Amount, applied for by application, the increase in Total Rider Insurance Amount of this rider will cease and become void. The amount we pay is limited to the Monthly Charges made under this rider for the increase amount of coverage.

### Incontestability
This rider shall be incontestable after it has been in force during the Insured's lifetime for two years from the Rider Issue Date except for fraud, or any provision for reinstatement or rider change requiring evidence of insurability. In the case of reinstatement or increases in Total Rider Insurance Amount, applied for by application and requiring evidence of insurability, the incontestable period shall be two years from the effective date of such reinstatement or increase. Any increase in the Total Rider Insurance Amount subject to evidence of insurability, shall be considered a change for purposes of this Section.

While insurance is contestable, we may either rescind the insurance or deny a claim on the basis of:

1. a misstatement in the application or supplemental application for the policy or any Total Rider Insurance Amount increase; or

2. a misstatement in the reinstatement application if there has been a reinstatement of this rider.

If we contest the validity of all or a portion of the Total Rider Insurance Amount provided under this rider, the amount we pay with respect to the contested amount will be limited to the sum of any Monthly Charges made under this rider for the contested portion of the Total Rider Insurance Amount. The portion of the Total Rider Insurance Amount that is contested will cease and then become void.

**Reinstatement of This Rider**

If the policy terminates in accordance with the Grace Period provision in the policy, and it is reinstated in accordance with the reinstatement provision of the policy, you may reinstate this rider at that same time. The Total Rider Insurance Amount of this rider once it is reinstated will be equal to the Total Rider Insurance Amount of this rider on the date of termination.  No further insurance increases will occur.

**Insurance Increases**

Subject to the limitations stated below, the Total Rider Insurance Amount will increase as follows:

**Premiums Paid Increases**

If the Increase Factor under this rider is "Premiums Paid", as shown in the rider specifications, then the Total Rider Insurance Amount will increase by the premiums paid during the most recent Policy Month, less any amounts refunded to comply with any premium limitation specified in the policy. Any insurance increases under this rider will occur on the first Monthly Calculation Date following premium receipt as long as this rider is in effect.

**Premiums Paid With Interest Increases**

If the Increase Factor under this rider is "Premiums Paid With Interest", as shown in the rider specifications, then the Total Rider Insurance Amount will increase by the premiums paid during the most recent Policy Month, less any amounts refunded to comply with any premium limitation specified in the policy , plus interest accrued during the most recent Policy Month on any prior insurance increases automatically provided under this option at the rider's annual accumulation rate shown in the rider specifications,  Any insurance increases under this rider will occur on each Monthly Calculation Date that this rider is in effect.

**Percentage Increases**

If the Increase Factor under this rider is a percent, as shown in the rider specifications, then the Total Rider Insurance Amount will increase by the Increase Factor, shown in the rider specifications, multiplied by the sum of the previous year's Total Rider Insurance Amount and the policy's Total Face Amount. Any insurance increases under this rider will occur on each Rider Anniversary that this rider is in effect.

**Dollar Increases**

If the Increase Factor under this rider is a dollar amount, as shown in the rider specifications, then the Total Rider Insurance Amount will increase by the applicable dollar amount. Any insurance increases under this rider will occur on each Rider Anniversary that this rider is in effect.

**Cost of Living Increases**

If the Increase Factor under this rider is "Cost of Living," as shown in the rider specifications, then the Total Rider Insurance Amount will increase by the Consumer Price Index Current Ratio for the Rider Year multiplied by the sum of the previous year's Total Rider Insurance Amount and the policy's Total Face Amount. Any insurance increases under this rider will occur on each Rider Anniversary that this rider is in effect.

**Varying Schedule Increases**

If the Increase Factor under this rider is expressed as "Scheduled", in the rider specifications, then the amount of the insurance increase will be as shown in the schedule attached to this rider.

## Insurance Increase Limitations
The insurance increases will be subject to the following limitations.

1. The total of all insurance increases cannot exceed the Maximum Increase Amount shown in the rider specifications;

2. You may, by written request, decrease, but not increase, the applicable Increase Factor on any Rider Anniversary;

3. If the Increase Factor is decreased for Percentage Increases or Dollar Increases, then the reduced percent or amount must be a whole percent or dollar amount and becomes a maximum cap for determining all future insurance increases;

4. You cannot change the type of Increase Factor;

5. For Cost of Living Increases, you may, by written request, elect that no further insurance increases will thereafter be provided.

6. Insurance increases will no longer be provided following the first of any of the following to occur:

    a. a withdrawal of Surrender Value;

    b. a requested policy face amount decrease;

    c. a requested decrease in the Total Rider Insurance Amount;

    d. the Insurance Increase Expiry Date

## Withdrawals of Surrender Value and Face Amount Decreases
While this rider is in effect, notwithstanding the "Surrenders and Withdrawals" and "Reduction of Total Face Amount" provisions of the policy, any withdrawal or face amount reduction under the policy will be implemented by first reducing the Total Rider Insurance Amount. The Total Rider Insurance Amount will be reduced dollar for dollar by the amount of the withdrawal.

To the extent such withdrawals or face amount reductions decrease the Total Rider Insurance Amount to zero, any additional withdrawal or face amount reduction will reduce the policy's Total Face Amount and Policy Value in accordance with the terms of the underlying policy. Any applicable Surrender Charge will be applied.

## Total Rider Insurance Amount Decreases
You may, by written request, decrease the Total Rider Insurance Amount. Any such decrease will be effective on the Monthly Calculation Date following our receipt of such request.

## Monthly Charge
The Monthly Charge for this rider is equal to the monthly cost of insurance rate per $1,000 of Rider Death Benefit, divided by 1000, for the Insured multiplied by the Rider Death Benefit. The Monthly Charge for the first month of the first year that this rider is in effect is shown on the policy's Schedule Pages. The Monthly Charge for the rider is deducted from the Policy Value as part of the monthly deduction for the policy.

The monthly cost of insurance rate is based on the Insured's age nearest birthday on the Rider Issue Date, Risk Classification, sex, and duration from such Rider Issue Date. The rate used in computing the cost of insurance is obtained from the Table of Guaranteed Maximum Monthly Cost of Insurance Rates attached to this rider, or such lower rate as we may declare.

We review our cost of insurance rates for this rider on the same basis and frequency as we do for the cost of insurance rates for the policy to which it is attached.  Such rates will never exceed the Table of Guaranteed Maximum Monthly Cost of Insurance Rates.

**Termination of this Rider**

This rider will terminate on the earliest of the following dates:

1. the date of surrender or termination of the policy;

2. the Rider Expiry Date;

3. the date of payment of the Rider Death Benefit;

4. the change from Death Benefit Option A to Death Benefit Option B;

5. the first Monthly Calculation Date following our receipt at our Main Administrative Office from you of a written request to cancel this rider.

PHL Variable Insurance Company

*Philip K Polk*

President

## TABLE OF GUARANTEED MAXIMUM MONTHLY COST OF INSURANCE RATES
## PER $1000 OF RIDER DEATH BENEFIT
## STANDARD RISK CLASSIFICATION *

| Attained Age | Male Non-Smoker Classes | Male Smoker Class | Female Non-Smoker Classes | Female Smoker Class | Unisex Non-Smoker Classes | Unisex Smoker Class |
|---|---|---|---|---|---|---|
| 0 | 0.45250 | 0.45250 | 0.31330 | 0.31330 | 0.42500 | 0.42500 |
| 1 | 0.15170 | 0.15170 | 0.13500 | 0.13500 | 0.14920 | 0.14920 |
| 2 | 0.14500 | 0.14500 | 0.13000 | 0.13000 | 0.14170 | 0.14170 |
| 3 | 0.14420 | 0.14420 | 0.12830 | 0.12830 | 0.14080 | 0.14080 |
| 4 | 0.14170 | 0.14170 | 0.12670 | 0.12670 | 0.13830 | 0.13830 |
| 5 | 0.13750 | 0.13750 | 0.12580 | 0.12580 | 0.13500 | 0.13500 |
| 6 | 0.13420 | 0.13420 | 0.12330 | 0.12330 | 0.13170 | 0.13170 |
| 7 | 0.12920 | 0.12920 | 0.12250 | 0.12250 | 0.12830 | 0.12830 |
| 8 | 0.12580 | 0.12580 | 0.12080 | 0.12080 | 0.12500 | 0.12500 |
| 9 | 0.12420 | 0.12420 | 0.12000 | 0.12000 | 0.12330 | 0.12330 |
| 10 | 0.12330 | 0.12330 | 0.11920 | 0.11920 | 0.12250 | 0.12250 |
| 11 | 0.12670 | 0.12670 | 0.12000 | 0.12000 | 0.12500 | 0.12500 |
| 12 | 0.13330 | 0.13330 | 0.12250 | 0.12250 | 0.13170 | 0.13170 |
| 13 | 0.14500 | 0.14500 | 0.12500 | 0.12500 | 0.14080 | 0.14080 |
| 14 | 0.15830 | 0.15830 | 0.12920 | 0.12920 | 0.15250 | 0.15250 |
| 15 | 0.17000 | 0.20000 | 0.13250 | 0.14080 | 0.16250 | 0.18830 |
| 16 | 0.18170 | 0.21830 | 0.13580 | 0.14500 | 0.17250 | 0.20420 |
| 17 | 0.19080 | 0.23330 | 0.13920 | 0.14920 | 0.18080 | 0.21670 |
| 18 | 0.19580 | 0.24250 | 0.14170 | 0.15330 | 0.18500 | 0.22500 |
| 19 | 0.20080 | 0.25080 | 0.14420 | 0.15670 | 0.18920 | 0.23250 |
| 20 | 0.20250 | 0.25500 | 0.14670 | 0.15920 | 0.19170 | 0.23670 |
| 21 | 0.20170 | 0.25670 | 0.14750 | 0.16080 | 0.19170 | 0.23750 |
| 22 | 0.19920 | 0.25420 | 0.14920 | 0.16330 | 0.18920 | 0.23670 |
| 23 | 0.19670 | 0.25080 | 0.15000 | 0.16500 | 0.18750 | 0.23420 |
| 24 | 0.19330 | 0.24670 | 0.15250 | 0.16830 | 0.18500 | 0.23170 |
| 25 | 0.18920 | 0.24080 | 0.15330 | 0.17000 | 0.18250 | 0.22670 |
| 26 | 0.18580 | 0.23580 | 0.15580 | 0.17420 | 0.18000 | 0.22330 |
| 27 | 0.18420 | 0.23420 | 0.15750 | 0.17750 | 0.17920 | 0.22250 |
| 28 | 0.18250 | 0.23250 | 0.16000 | 0.18080 | 0.17750 | 0.22250 |
| 29 | 0.18250 | 0.23420 | 0.16250 | 0.18580 | 0.17920 | 0.22420 |
| 30 | 0.18250 | 0.23750 | 0.16580 | 0.19170 | 0.17920 | 0.22830 |
| 31 | 0.18500 | 0.24330 | 0.16830 | 0.19670 | 0.18170 | 0.23420 |
| 32 | 0.18750 | 0.24920 | 0.17170 | 0.20250 | 0.18420 | 0.24000 |
| 33 | 0.19170 | 0.25830 | 0.17500 | 0.20830 | 0.18750 | 0.24830 |
| 34 | 0.19670 | 0.26920 | 0.18080 | 0.21750 | 0.19420 | 0.25830 |
| 35 | 0.20330 | 0.28500 | 0.18500 | 0.22420 | 0.19920 | 0.27080 |
| 36 | 0.21000 | 0.30420 | 0.19250 | 0.23670 | 0.20670 | 0.28920 |
| 37 | 0.21920 | 0.32920 | 0.20170 | 0.25250 | 0.21500 | 0.31330 |
| 38 | 0.22920 | 0.35750 | 0.21170 | 0.27000 | 0.22580 | 0.34000 |
| 39 | 0.24080 | 0.39000 | 0.22330 | 0.29580 | 0.23750 | 0.37170 |
| 40 | 0.25330 | 0.42670 | 0.23580 | 0.32500 | 0.25000 | 0.40670 |
| 41 | 0.26830 | 0.47000 | 0.25080 | 0.36080 | 0.26500 | 0.44830 |
| 42 | 0.28750 | 0.51500 | 0.26580 | 0.39420 | 0.28170 | 0.49080 |

* The cost of insurance rates shown above apply only to Standard Risks. Higher cost of insurance rates will apply to Insureds who are not classified as Standard.

**TABLE OF GUARANTEED MAXIMUM MONTHLY COST OF INSURANCE RATES
PER $1000 OF RIDER DEATH BENEFIT
STANDARD RISK CLASSIFICATION ***

| Attained Age | Male Non-Smoker Classes | Male Smoker Class | Female Non-Smoker Classes | Female Smoker Class | Unisex Non-Smoker Classes | Unisex Smoker Class |
|---|---|---|---|---|---|---|
| 43 | 0.31000 | 0.56580 | 0.28420 | 0.42920 | 0.30420 | 0.53830 |
| 44 | 0.33250 | 0.61830 | 0.30330 | 0.46330 | 0.32580 | 0.58750 |
| 45 | 0.36000 | 0.67920 | 0.32420 | 0.49920 | 0.35330 | 0.64330 |
| 46 | 0.38920 | 0.74000 | 0.34580 | 0.53670 | 0.38000 | 0.69920 |
| 47 | 0.42000 | 0.80580 | 0.36920 | 0.57500 | 0.40920 | 0.75920 |
| 48 | 0.45420 | 0.87500 | 0.39580 | 0.61500 | 0.44330 | 0.82330 |
| 49 | 0.49170 | 0.95330 | 0.42250 | 0.65830 | 0.47750 | 0.89420 |
| 50 | 0.53170 | 1.03580 | 0.45420 | 0.70830 | 0.51580 | 0.97000 |
| 51 | 0.58000 | 1.13080 | 0.48750 | 0.75830 | 0.56080 | 1.05500 |
| 52 | 0.63500 | 1.23750 | 0.52580 | 0.81500 | 0.61250 | 1.15170 |
| 53 | 0.69670 | 1.35830 | 0.57000 | 0.88080 | 0.67080 | 1.26080 |
| 54 | 0.76830 | 1.49500 | 0.61500 | 0.94830 | 0.73750 | 1.38330 |
| 55 | 0.84750 | 1.64000 | 0.66420 | 1.01830 | 0.81000 | 1.51250 |
| 56 | 0.93500 | 1.79750 | 0.71420 | 1.08920 | 0.88920 | 1.65080 |
| 57 | 1.02830 | 1.96000 | 0.76420 | 1.15580 | 0.97500 | 1.79330 |
| 58 | 1.12920 | 2.13330 | 0.81170 | 1.21920 | 1.06580 | 1.94250 |
| 59 | 1.24250 | 2.31330 | 0.86250 | 1.28420 | 1.16500 | 2.09750 |
| 60 | 1.36920 | 2.51250 | 0.92170 | 1.35500 | 1.27830 | 2.26750 |
| 61 | 1.51000 | 2.73670 | 0.99250 | 1.44750 | 1.40420 | 2.46170 |
| 62 | 1.67080 | 2.98920 | 1.08080 | 1.55920 | 1.54920 | 2.68170 |
| 63 | 1.85330 | 3.27500 | 1.19250 | 1.70920 | 1.71830 | 2.93500 |
| 64 | 2.06080 | 3.59000 | 1.32500 | 1.87750 | 1.90920 | 3.21330 |
| 65 | 2.28920 | 3.93170 | 1.46830 | 2.06580 | 2.11830 | 3.51580 |
| 66 | 2.53500 | 4.28670 | 1.62170 | 2.25250 | 2.34420 | 3.82750 |
| 67 | 2.80170 | 4.65920 | 1.77750 | 2.44580 | 2.58580 | 4.15250 |
| 68 | 3.08750 | 5.04330 | 1.93500 | 2.62170 | 2.84250 | 4.47830 |
| 69 | 3.39920 | 5.45170 | 2.10250 | 2.81920 | 3.12250 | 4.82750 |
| 70 | 3.75170 | 5.90170 | 2.29670 | 3.02830 | 3.43830 | 5.20670 |
| 71 | 4.21500 | 6.40170 | 2.52830 | 3.29920 | 3.84670 | 5.63580 |
| 72 | 4.61080 | 6.96920 | 2.81580 | 3.63500 | 4.21330 | 6.12750 |
| 73 | 5.13920 | 7.60830 | 3.16580 | 4.04420 | 4.69830 | 6.68670 |
| 74 | 5.73330 | 8.30500 | 3.57750 | 4.52170 | 5.24250 | 7.30080 |
| 75 | 6.37000 | 9.07500 | 4.04330 | 5.05250 | 5.83250 | 7.97750 |
| 76 | 7.04830 | 9.86920 | 4.55420 | 5.62500 | 6.46250 | 8.67830 |
| 77 | 7.76080 | 10.67330 | 5.10330 | 6.22500 | 7.12500 | 9.38580 |
| 78 | 8.50080 | 11.47330 | 5.69080 | 6.85000 | 7.81420 | 10.09330 |
| 79 | 9.28670 | 12.29500 | 6.33250 | 7.51920 | 8.55000 | 10.82330 |
| 80 | 10.14750 | 13.17250 | 7.05500 | 8.26170 | 9.36000 | 11.60670 |
| 81 | 11.10670 | 14.12750 | 7.88250 | 9.10000 | 10.26670 | 12.47000 |
| 82 | 12.19000 | 15.18830 | 8.83920 | 10.05750 | 11.29500 | 13.43670 |
| 83 | 13.41080 | 16.36170 | 9.94080 | 11.14420 | 12.46080 | 14.51750 |
| 84 | 14.74500 | 17.60330 | 11.16170 | 12.42080 | 13.73670 | 15.70500 |
| 85 | 16.16330 | 18.87170 | 12.49920 | 13.69580 | 15.10750 | 16.90830 |
| 86 | 17.63670 | 20.12580 | 13.92920 | 15.14420 | 16.53250 | 18.17330 |

* The cost of insurance rates shown above apply only to Standard Risks. Higher cost of insurance rates will apply to Insureds who are not classified as Standard.

## TABLE OF GUARANTEED MAXIMUM MONTHLY COST OF INSURANCE RATES
## PER $1000 OF RIDER DEATH BENEFIT
## STANDARD RISK CLASSIFICATION *

| Attained Age | Male Non-Smoker Classes | Male Smoker Class | Female Non-Smoker Classes | Female Smoker Class | Unisex Non-Smoker Classes | Unisex Smoker Class |
|---|---|---|---|---|---|---|
| 87 | 19.15250 | 21.34830 | 15.46000 | 16.53920 | 18.02420 | 19.39500 |
| 88 | 20.68000 | 22.68170 | 17.07420 | 18.11670 | 19.54920 | 20.77170 |
| 89 | 22.24000 | 23.99830 | 18.79670 | 19.61580 | 21.12830 | 22.10420 |
| 90 | 23.85420 | 25.31670 | 20.62580 | 21.34250 | 22.78170 | 23.55420 |
| 91 | 25.54920 | 26.66330 | 22.59580 | 23.18330 | 24.53830 | 25.08750 |
| 92 | 27.38170 | 28.09420 | 24.76500 | 25.19170 | 26.44750 | 26.74500 |
| 93 | 29.42670 | 29.93250 | 27.23500 | 27.46830 | 28.60420 | 28.75750 |
| 94 | 32.02920 | 32.30000 | 30.25830 | 30.25830 | 31.34750 | 31.34750 |
| 95 | 35.74580 | 35.74580 | 34.37670 | 34.37670 | 35.19670 | 35.19670 |
| 96 | 41.66000 | 41.66000 | 40.70500 | 40.70500 | 41.27170 | 41.27170 |
| 97 | 52.02170 | 52.02170 | 51.45500 | 51.45500 | 51.75000 | 51.75000 |
| 98 | 71.28080 | 71.28080 | 71.05080 | 71.05080 | 71.21580 | 71.21580 |
| 99 | 83.33330 | 83.33330 | 83.33330 | 83.33330 | 83.33330 | 83.33330 |

* The cost of insurance rates shown above apply only to Standard Risks. Higher cost of insurance rates will apply to Insureds who are not classified as Standard.

# ACCELERATED BENEFIT RIDER

This Rider is part of the Policy to which it is attached, effective as of the Rider Date, if it is listed on the Policy's Schedule Page or in an Endorsement after that page. You should therefore review the Policy's Schedule Page for applicability. Except as stated in this Rider, it is subject to all of the provisions contained in the Policy.

**THE BENEFIT PAID UNDER THIS RIDER MAY BE TAXABLE. YOU SHOULD CONSULT YOUR PERSONAL TAX ADVISOR REGARDING POSSIBLE TAX CONSEQUENCES.**

| | |
|---|---|
| **Rider Date** | SAME AS POLICY DATE |
| **Maximum Administrative Charge** | $300.00 |
| **Maximum Proportion Allowable** | 75% |
| **Maximum Accelerated Benefit** | $250,000 |
| **Minimum Remaining Face Amount** | $10,000 |

**Definitions**

**Insured** is the person covered under the basic Policy.

**You (Your)** is the owner of the Policy to which this Rider is attached.

**We (Our, Us)** refers to PHL Variable Insurance Company.

**Eligible Amount** is the amount of insurance under the Policy that is eligible for accelerated payment. It is equal to the death benefit of the basic Policy at the time of claim plus any term insurance amounts In Force provided by Rider on the life of the Insured, which provides coverage renewable to the Insured's attained age 95 or beyond, but exclusive of any other supplemental Rider death benefits.

**Proportion** is the percentage of the Eligible Amount that will be accelerated under this Rider. The Proportion is chosen by You at the time of election of an accelerated benefit, subject to the following limitations. The Proportion elected:

1. can be no more than the Maximum Proportion Allowable as specified in this Rider;

2. cannot result in a remaining death benefit below the minimum as specified in this Rider; and

3. cannot result in a Requested Benefit that exceeds the Maximum Accelerated Benefit as specified in this Rider.

This Rider terminates upon payment of the accelerated benefit.

**Maximum Accelerated Benefit** is the amount shown on the first page of this Rider. This Maximum Accelerated Benefit applies, in aggregate, to all policies issued on the Insured by Us.

**Requested Benefit** is the Proportion multiplied by the Eligible Amount.

**Terminal Illness** is an illness or condition that is expected to result in the Insured's death within six months based on evidence satisfactory to Us as defined under the Proof of Terminal Illness section below.

**Rider Description**

This Rider allows You to elect an accelerated benefit upon terminal illness of the Insured. The election must be made by a Written Request signed by You. We must also receive proof satisfactory to Us of the Insured's terminal illness as described in the Proof of Terminal Illness section below. The amount of the accelerated benefit will be adjusted as described under the Payment Made to You section below. The resulting payment will be made in a lump sum. Policy Values, cash Surrender Values, loan values and the death benefit as specified in the Policy to which this Rider is attached will be reduced if You receive an accelerated benefit. There is no premium charge for this Rider.

**Payment Made To You**

The amount of the payment made to You will be determined by discounting the Requested Benefit at Our then current discounting rate for a period of twelve (12) months, to reflect the early payment of insurance proceeds under the Policy.

Our discounting rate will be subject to the higher of:

1. 5%; or
2. the Published Monthly Average for the calendar month ending two months before the Policy Anniversary on or immediately preceding the date that We receive Your Written Request for payment under this Rider.

The Published Monthly Average will be:

a. The Corporate Bond Yield Average -- Monthly Average Corporates as published by Moody's Investors Service, Inc. or any successor to that Service; or
b. If that Monthly Average is no longer published, a substantially similar average, established by regulation for policy loan rates issued by the Insurance Department of the state where the Rider was delivered will be applicable.

If the discounting rate computed for a Policy Year is no more than 1/2% higher than the rate in effect for the previous Policy Year, then We will maintain such prior year's rate.

If the discounting rate computed for a Policy Year is no more than 1/2% lower than the rate in effect for the previous Policy Year, then We may, at Our discretion, maintain such prior year's rate.

If the cash Surrender Value multiplied by the Proportion exceeds the discounted value, then the discounted Requested Benefit will be increased to equal such greater amount.

UR11

2

Exhibit 2
Page 48

The discounted Requested Benefit is reduced by the Proportion of any Policy debt, including any unpaid loan interest, and the Proportion of any other amounts due Us from You. This result is then reduced by Our then current Administrative Charge for benefits under this type of Rider, not to exceed the maximum as specified in this Rider. The amount that remains is the payment that will be made to You.

In the event that the Insured dies after the Written Request but before We make the payment, and We receive Written Notice at Our Main Administrative Office during this period of this event, the request will be considered void, and no payment will be made under this Rider.

**Effect On Contract**

The following values will be reduced by the Proportion at the time the payment is made to You:

1. the future planned premium payable on the basic Policy;

2. the face amount of the Policy at the time of claim;

3. the cash value (Policy Value);

4. any remaining Surrender Charge;

5. the cash Surrender Value; and

6. any Policy debt including any unpaid loan interest.

If this Rider is attached to a variable life insurance policy that permits fund investment in various subaccounts of Our Variable Universal Life Separate Account, the reduction in Policy Value will be achieved through a proportionate reduction in this Policy's share in the value of each subaccount based on the allocation You request at the time of Your accelerated benefit request. If no allocation request is made, the assignment to each subaccount will be made in the same manner as provided for monthly deductions.

Future values under the Policy will be determined in a manner consistent with that under the original Policy, as adjusted to reflect the above reductions. We will mail to You a new policy Schedule Page reflecting any payment made under this Rider.

**Proof of Terminal Illness**

A licensed physician, who is not Yourself or a member of Your family, must provide Us with evidence satisfactory to Us of the Insured's terminal illness. We reserve the right to obtain a second medical opinion from a physician of Our choosing at Our expense.

**Conditions**

Payment under this Rider is subject to the following conditions:

1. The Policy must not have lapsed.

2. We will require the consent of any assignees and irrevocable beneficiaries to any request for payment under this Rider.

3. No payments will be made under this Rider to satisfy the claims, demands, or obligations of any creditor, trustee in bankruptcy or governmental agency, or arising under any court order directed against You, to the extent that We have written notice thereof.

**Rider Termination**

This Rider will terminate on the earliest of:

1. Lapse or surrender of this Policy to which it is attached.

2. Our receipt of Your written request to terminate this Rider; or

3. Payment of any benefit under this Rider.

PHL Variable Insurance Company

*John H. Beers*

Secretary

# Life Plan Options Rider

This rider is part of the policy to which it is attached.  Except as stated in this rider, it is subject to all of the provisions contained in the policy.

## DEFINITIONS

Option Review Period
The 90-day period immediately preceding the 5th, 10th and 15th Policy Anniversaries.

Individual Term Life Rider
As used in this rider form "Individual Term Life Rider" refers to any of the following riders: Individual Term Rider, Individual Term Insurance Rider, Policy Term Rider, Policy Term Insurance Rider, Phoenix Individual Edge Term Rider, or the Variable Policy Term Rider.

## OPTION BENEFITS

Increased Coverage Determination without Medical Exam
Policies that include both this rider and the Individual Term Life Rider are eligible during each Option Review Period, while both such riders are in effect, for an increase in their term insurance rider amount up to a maximum lifetime increase of $1,000,000, with underwriting and our agreement to such increase determined without the inconvenience of an additional medical exam.  Our other ordinary underwriting rules will continue to apply and thus the increase in coverage is still subject to our normal underwriting approval.

Other conditions that apply to this option are as follows:
- The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.
- The insured must be attained age 65 or younger on the last day of the Option Review Period.
- The risk classification of the insured must be standard through Table D (200%) at original issue of the basic policy.
- The insured must be alive and meet our underwriting requirements at the time of your request for the increase in term rider face amount.
- The Individual Term Life Rider must either already be attached to the policy or then currently approved and available for sale in the state of applicable jurisdiction.
- There is a maximum lifetime increase of $1,000,000 per insured life.

Reduced Coverage without Surrender Charge
During each Option Review Period you may request a decrease in the face amount of the policy without our assessment of the partial surrender charge that, under the terms of your basic policy, would otherwise apply.  In such case the surrender charge remaining under the policy will continue to be calculated as if such decrease in face amount had not been made.

Other conditions that apply to this option are as follows:
- The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.
- Total option reductions of the basic policy face amount may not exceed the lesser of 50% of the initial basic policy face amount or $5,000,000 in combined aggregate of all option reductions for all Our policies on the same insured.

UR73

1

Exhibit 2
Page 51

Exchange for Annuity without Surrender Charge

During each Option Review Period beginning with the 90-day period preceding the 10th policy anniversary, you may request that the policy be surrendered as part of an exchange request to an eligible annuity offered by us.  In such an exchange, we would not assess the surrender charge that would otherwise apply.  In such case, the new annuity will reflect the usual surrender charges that would ordinarily apply for new business.

Other conditions that apply to this option are as follows:

• The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.


**TERMINATION OF THIS RIDER**

This rider will terminate on the first of any of the following events to occur:

1.  exercise of the Exchange for Annuity without Surrender Charge Option;

2.  the 15th policy anniversary;

3.  termination of the basic policy.




PHL Variable Insurance Company

*Dona D. Young*

Chairman, President
and Chief Executive Officer




UR73

2

Exhibit 2
Page 52

 **PHOENIX**

P.O. Box 8027
Boston, MA 02266-8027
Underwriting Service Center

**Policy Acceptance Form**

Company is defined as indicated below:

☐ Phoenix Life and Annuity Company
☒ PHL Variable Insurance Company

| Agency: E4903 | Insured(s): ▇▇▇▇▇▇ |
| Policy Number: 97519088 | |

**DECLARATION:**

The insured(s) declares that the statements made in the application remain full, complete, and true as of this date; that since the date of the application, no insured has applied to any insurance company or society without receiving the exact policy applied for or had any symptoms, diseases or disorders for which advice has been sought.

All insured(s) must attest to the above declaration. If any insured cannot attest to the above statement, please so indicate by checking the box next to that insured's signature below and complete a Health Statement Form for that insured. **PLEASE NOTE: Home Office approval of the Health Statement Form is necessary before the policy is in effect.**

**AMENDMENTS:** The application for Policy No. 97519088   is amended as follows:

**The policy is issued with Living Benefit Rider.**

**ENDORSEMENTS:**

**Delivery expiry is 11/24/2006 on policy 97519088.**

It is agreed that the above declaration and amendments are part of the application and shall be part of the policy.

**DELIVERY RECEIPT:** To be completed when policy is delivered. If a Health Statement Form is required, please consult with your agent before completing this section.

This certifies that as the policy owner, (check ONE only):

☑ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information.

☐ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information, and authorize _____ to hold such policy on my behalf.

| Date | 11/28/06 | Insured(s) ▇▇▇▇▇▇▇ | ☐ |
| Signed at | MADISON, WI | | ☐ |
| Witness | _Nancy A. Mishler_ | | ☐ |
| Owner | DEWITT ROSS & STEVENS TRUSTEE BY: | | ☐ |
| Owner | (if other than Insured) | | ☐ |

If owner is a firm or corporation, please give the name of the firm or corporation and the title of the officer signing for the firm or corporation.

**AGENT:** ORIGINAL to Underwriting and Issue, YELLOW copy to Agent, PINK copy to remain with policy.

# ◈ PHOENIX°

PO Box 8027
Boston MA 02266-8027

For Overnight Delivery
PHL Variable Insurance Company
66 Brooks Drive Suite 8027
Braintree MA 02184

**Application for Life Insurance**
**Part I**

Company is defined as indicated below: (check one)
☐ Phoenix Life Insurance Company   ☑ PHL Variable Insurance Company

9 0042182

## Section I – Proposed Insured Information

| Name (First, Middle, Last) | | Sex | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|
| ███████████ | | ████ | ████████ |

| Birth State | Birth Country | U.S. Citizen | Earned Income | Net Worth | Other Income |
|---|---|---|---|---|---|
| ███████████████ | | ███ | $ | $ | $ |

| Social Security Number | Driver's License Number | State | Marital Status |
|---|---|---|---|
| ███████████ | ████████████ | ██ | |

| Residence Street Address (include Apt #) | City | State | ZIP Code | Home Telephone # |
|---|---|---|---|---|
| ██████████████████████ | | | | ███████ |

| Email Address |
|---|
| ██████████ |

| Current Employer | Years of Service | Current Occupation |
|---|---|---|
| █████████ | | |

| Employer Street Address | City | State | ZIP Code | Employer's Telephone # |
|---|---|---|---|---|
| | | | | ( ) |

Have you used tobacco or nicotine products in any form in the last 10 years? ████████
a. If "Yes", check the product(s) used: ☐ Cigarettes ☐ Cigars, Pipes, Snuff, Smokeless or Chewing Tobacco, ☐ Nicotine Patch or Gum
b. If "Yes", check where appropriate: ☐ Use Currently ☐ Date Quit (mm/yyyy) _____

## Section II – Ownership (Select one, if B or C is elected, complete appropriate sections)

☐ A. Insured   ☐ B. Partnership   ☑ C. Other (if Owner is a Trust, complete Certification of Trust Agreement

| Owner's Name (First, Middle, Last) | Social Security Number/Tax ID | Date of Birth (mm/dd/yyyy) | Relationship to Proposed Insured |
|---|---|---|---|
| █████████ 2006-1 Insurance Trust dated 9/13/06; DeWitt, Ross & Stevens, S.C., Trustee | Applied for | N/A | Trust |

| Owner's Street Address (Include Apt #) | City | State | ZIP Code | Home Telephone # |
|---|---|---|---|---|
| 2 East Mifflin St, Suite 600 | Madison | WI | 53703 | 608-252-9341 |

If Owner is a Partnership - list all partners. If there is a general partner, complete Partnership Authorization form.
Name(s) of All Partner(s) (First, Middle, Last)

| Employer's Street Address | City | State | ZIP Code |
|---|---|---|---|
| | | | |

Email Address

## Section III – Beneficiary Designation

Unless otherwise specified, payments will be shared equally by all primary beneficiaries who survive the Proposed Insured or if none, by all contingent beneficiaries who survive the Proposed Insured. Only the Owner has the right to change the beneficiary(ies) unless otherwise stated.

| Primary Beneficiary(ies) Name(s) (First, Middle, Last) | Date of Birth (mm/dd/yyyy) | Social Security # or Tax ID# (if available) | Relationship to Proposed Insured | % Share |
|---|---|---|---|---|
| ████████ 2006-1 Insurance Trust dated 9/13/06; DeWitt, Ross & Stevens, S.C., Trustee | N/A | Applied for | Trust | 100% |
| Contingent Beneficiary(ies) Name(s) (First, Middle, Last) | Date of Birth (mm/dd/yyyy) | Social Security # or Tax ID# (if available) | Relationship to Proposed Insured | % Share |
| | | | | |

Exhibit 2
Page 54

## Section IV - Coverage Applied For

Plan of Insurance

| | |
|---|---|
| Basic Face Amount | $ 5,000,000 |
| Supplemental Face Amount $ | — |
| Total Face Amount | $ 5,000,000 |

*Paul II*

## Section V - VARIABLE/UNIVERSAL PLANS of Insurance - Riders and Features

First Year Anticipated, BILLED Premium (Excluding 1035 Exchange, Lump Sum Funds, etc.)
166,668 (Annual)
41,667 (Quarterly)

Subsequent Planned Annual Premium
330,000

☐ Disability Waiver of a Specified Amount

   Amount $_____

☐ Accidental Death Benefit Rider

☐ Alternate Surrender Value Rider

☐ Life Plan Options Rider

☐ Child's Term Rider

☐ Family Term Rider

☐ Living Benefit Rider

☐ Guaranteed Death Benefit Rider

☐ Guaranteed Extension Rider

☐ Cash Value Accumulation Rider

☐ Age 100 + Rider

☐ Individual Term Rider $_____

☑ Increasing Term Rider $ *Premium*

☐ Other _____

☐ Other _____

**Death Benefit Option:** (check one) If none checked, Option 1 will apply.

☑ Option 1 Level Face Amount

☐ Option 2 Increasing Face Amount

**Face Amount Increase Options:**

☐ _____% percentage increase

☐ $_____ Fixed Dollar Increase

☑ Increase Equal to Premiums Paid

**Policy Option:** (check one) If none checked, Option A will apply.

☐ Policy Option A

☐ Policy Option B

☐ Policy Option C

☐ Guaranteed Minimum Withdrawal Benefit

**Life Insurance Qualification Test:** (Check One) If none checked, Guideline Premium will apply.

☑ Guideline Premium Test

☐ Cash Value Accumulation Test

**Temporary Money Market Allocation**          N/A

If the state of issue does not require refund of premium during the Right To Cancel Period, but you prefer to temporarily allocate your premiums to the Money Market subaccount until the end of the Right to Cancel Period, as stated in the policy, indicate: ☐ Yes  ☐ No

**Telephone/Electronic Authorization**          n/a

I will receive this privilege automatically. By checking "Yes", I am authorizing and directing the Company to act on telephone or electronic instructions from my licensed agent who can furnish proper identification. The Company will use reasonable procedures to confirm that these instructions are authorized and genuine. As long as these procedures are followed, the Company and its affiliates and their directors, trustees, officers, employees, representatives and/or agents, will be held harmless for any claim, liability, loss or cost. ☐ Yes  ☑ No

**Electronic Delivery Authorization**          N/A

By checking "Yes," I am authorizing the Company to provide my statements, prospectuses and other information electronically if available. I understand that I must have Internet access to use this service and there may be access fees charged by the Internet service provider.
☐ Yes  ☑ No

## Section VI - Suitability

Do you understand that if you have purchased a Variable Life Policy that the Death Benefit may be variable or fixed under certain conditions and that the Death Benefit and Cash Values under any Variable Policy may increase or decrease in amount or duration based on the investment experience of the underlying subaccounts? ☐ Yes  ☐ No

If you are purchasing a Variable Life Policy, do you believe it is suitable to meet your financial objectives? ☐ Yes  ☐ No

If I have purchased a Variable Life Policy, I confirm that I have received the prospectus for that policy and its underlying funds.

Illustrations of benefits including death benefits, policy values and cash surrender values are available on request.

Exhibit 2
Page 55

## Section VI - Mode of Premium Payment

☐ Annual              ☒ Quarterly                                    ☐ Semi-Annual
☐ Monthly (Variable Life Insurance only)   ☐ PCS (Phoenix Check-O-Matic Service)
                                        Minimum Monthly Check for Each Service - $25.00

Multiple Billing Option - Give # or Details _____
☐ List Bill   ☐ Employee Insurance Counseling Service (EICS)   ☐ Salary Allotment   ☐ Pension   ☐ Money Purchase Pension
☐ Other _____

If electing PCS, complete the following:
Existing Policy Number or PCS File Number _____
Authorization Agreement for Preauthorized Payments
I (we) hereby authorize the Company (Note: Company is defined as indicated on page 1 of application) to initiate debit entries to my (our) checking account and the depository named below.
Information for New Account
Attach a void check to furnish encoding details.
If the depositor's name is not imprinted on the check, fill it in here exactly as it appears in the bank records.

**Attach Void Check Here**

Signature of depositor (if different from owner) _____

Send premium notices to: (in addition to owner)
☐ Insured at:   ☐ Home Address   ☐ Business Address   ☐ Other
Name (First, Middle, Last) _____
Street Address _____
City _____ State _____ ZIP Code _____ Relationship to Owner _____

## Section VII — Existing Life Insurance

| Yes | No | | |
|---|---|---|---|
| ☒ | ☐ | 1. | Are there any life insurance policies or annuity contracts, owned by, or on the life of, the applicant(s) or the insured(s) or the owner(s) or the annuitant? |
| ☐ | ☒ | 2. | With this policy, do you plan to replace (in whole or in part) now or in the future any existing life insurance or annuity contract in force with this policy? |
| ☐ | ☒ | 3. | Do you plan to utilize values from any existing life insurance policy or annuity contract (through loans, surrenders or otherwise) to pay any initial or subsequent premium(s) for this policy? |

For all "Yes" answers above, please provide the following information. If no coverage inforce, check here ☐

| Company | Issue Date (mm/yyyy) | Plan | Amount | Pers/Bus | Replacing |
|---|---|---|---|---|---|
| Transamerica | 8/17/06 | Ultra SP | $ 9,000,000 | ☒ ☐ | Y☐ N☒ |
| | | | $ | ☐ ☐ | ☐ ☐ |
| | | | $ | ☐ ☐ | ☐ ☐ |
| | Total Life Insurance in Force | | $ 9,000,000 | | |

Exhibit 2
Page 56

## Section VIII – Additional Information

Give full details for all "Yes" answers below. If necessary, use an additional piece of paper and please sign it.

| | |
|---|---|
| 1. | Is non-recourse premium financing or any other method being utilized to pay premiums in order to facilitate a current or future transfer, assignment or other action with respect to the benefits provided under the policy being applied for?  Please see below. |
| 2. | Have you ever applied for life, accident, disability or health insurance and been declined, postponed, or been offered a policy differing in plan, amount or premium rate from that applied for? (If "Yes," give date, company and reason).  Date (mm/dd/yyyy):          Company:          Reason: |
| 3. | Are you negotiating for other insurance? (If "Yes," name companies and total amount to be placed in force.)  Company(ies)          Total Amount to be placed in force: |
| 4. | Do you intend to travel or reside outside of the United States or Canada?  (If "Yes," state where, how long and purpose).  Location City, Country:          Purpose:          How Long: (Specify weeks, months, years) |
| 5. | Have you flown during the past 3 years as a pilot, student pilot or crew member or do you plan to do so? (If "Yes," complete Aviation Questionnaire). |
| 6. | Have you participated in the past 3 years or plan to engage in any extreme sport activities such as motorized vehicle racing, parachute jumping, underwater diving, or any other extreme avocation? (If "Yes," complete Avocation Questionnaire). |
| 7. | Have you ever been convicted of a felony? (If "Yes," give details)  Details: |
| 8. | Have you ever been convicted of driving under the influence of alcohol or drugs, or had your driver's license been suspended or revoked, or had greater than 2 moving violations in the past 3 years? (If "Yes," give details)  Details: |
| 9. | Is there an intention that any party, other than the Owner, will obtain any right, title or interest in any policy issued on the life of the Proposed Life Insured(s) as a result of this application?    Please see below. |

## Section IX – Medical Transfer Statement *(Complete when submitting medical examinations of another insurance company.)*

I request that Phoenix review and consider the exam conducted by the Life Insurance Company listed below in evaluating my application. I authorize Phoenix to receive and review such application(s), and authorize my producer, broker or other life insurance company to provide such application to Phoenix.

1. Name of the insurance company for which examination(s) was made

2. Date of examination (mm/dd/yyyy)

3. To the best of your knowledge and belief, are the statements in the examination true, accurate and complete as of today? If "No", please explain.

4. Have you consulted a medical doctor or other practitioner since the above examination? *(If "Yes", complete Section X)*

VIII.1, 9. Fully collateralized premium finance loan is being used to pay premium. Collateral assignment to lender for amount of premium loan will be filed.

OL4250W1                                              4 of 6                                              1-05

Exhibit 2
Page 57

**Section X - Medical History (Not necessary to complete if medical or paramedical exam has been ordered)**

| Current Height | Current Weight | Has your weight changed by 10 pounds or more in the past 2 years? If "yes", how much _____ pounds ☐ Gain ☐ Loss |
|---|---|---|

| Family History: | Age if Alive | Age at Death | If alive, indicate health problems or if deceased, indicate cause of death: | Family History: | Age if Alive | Age at Death | If alive, indicate health problems or if deceased, indicate cause of death: |
|---|---|---|---|---|---|---|---|
| Father | | | | Mother | | | |

| Personal Physician: Please provide the name and address of your personal physician or health care provider, date of most recent visit, reason for visit, and | Has anyone in your immediate family developed any hereditary condition, cancer, or heart disease before age 60? ☐ Yes (please provide details below) ☐ No |
|---|---|

| Have you ever had, or been told by a physician or other health care provider that you have: | Please provide details of "Yes" answers (include question number, diagnosis, date of occurrence, current status, hospital or treating physician's name and address). Use Application Part II Addendum if additional space is necessary to record all details. |
|---|---|

1. High blood pressure or hypertension?
2. Pain, pressure, or discomfort in the chest, angina pectoris, palpitations, swelling of the ankles, or undue shortness of breath?
3. Heart disease, coronary artery disease, cardiomyopathy, heart failure, atrial fibrillation, heart rhythm abnormality, heart murmur, congenital heart disease or valvular heart disease?
4. Peripheral vascular disease, claudication, narrowing or blockage of arteries or veins?
5. Asthma, pulmonary fibrosis, chronic cough, emphysema, pneumonia, or any other lung disease?
6. Neurologic disease, seizures, fainting, falls, concussion, stroke, transient ischemic attack (TIA), tremor, neuropathy, weakness, paralysis, Parkinson's disease, memory loss, dementia, or any other disease of the brain or nervous system?
7. Depression, bipolar disorder, schizophrenia, anxiety, or other psychiatric illness?
8. Arthritis, lupus, or any musculoskeletal or skin disorder?
9. Ulcers, abdominal pain, colitis, Crohn's disease, gall bladder disease, liver disease, hepatitis, jaundice, pancreatitis, or any other disease of the gastrointestinal system?
10. Diabetes, kidney disease, kidney stones, bladder disorder, prostate disorder, protein or blood in the urine?
11. Endocrine disorder, including disorder of the thyroid, parathyroid, adrenal, or pituitary glands?
12. Anemia, bleeding or clotting disorder, or any other disorder of the blood (excluding Human Immunodeficiency Virus) or bone marrow?
13. Cancer of any type, tumor (benign or malignant), leukemia, lymphoma, or Hodgkin's disease?

14. Are you taking any kind of medicine, therapy, or treatment regularly or at frequent intervals?
15. Have you ever been treated for alcoholism or been advised to limit or stop your use of alcohol?
16. Have you ever used narcotics, barbiturates, amphetamines, hallucinogens, or any prescription drug except in accordance with a physician's instructions?
17. Have you ever been a patient in any hospital, treatment center, or similar facility within the last 10 years?
18. Have you had, or been advised to have, any surgery, X-rays, electrocardiograms, blood studies (excluding Human Immunodeficiency Virus or AIDS tests), or other tests within the last 5 years?
19. Other than above, have you had any other physical or psychological disorder or been treated by a physician or other health care provider for any reason within the past 5 years?

Phoenix reserves the right to require additional medical information, medical examination or testing to complete the underwriting process.

Exhibit 2

Page 58

## Section XI - Authorization To Obtain Information

I authorize any licensed physician, health care practitioner, hospital, medical laboratory, clinic or other medically-related facility, insurance company or the Medical Information Bureau (MIB), having any medical records of my health, to provide any such information to Phoenix Life Insurance Company (Phoenix), its affiliated insurers or its reinsurers. The information requested may include information regarding diagnosis and treatment of physical or mental condition, including consultations occurring after the date this authorization is signed. I authorize any of the above sources to release to Phoenix or its reinsurers any of my information relating to alcohol use, drug use and mental health care.

Medical information will be used only for the purpose of risk evaluation and determining eligibility for benefits under any policies issued. Phoenix may disclose information it has obtained to others as permitted or required by law, including the MIB, our reinsurers and other persons or entities performing business or legal services in connection with this application, any contract issued pursuant to it or in connection with the determination of eligibility for benefits under an existing policy. Information that is not personally identifiable may be used for insurance statistical studies.

To facilitate rapid submission of information, I authorize all of the above sources, except MIB, to give such records or knowledge to any agency employed by Phoenix to collect and transmit such information.

I authorize consumer reporting agencies, insurance companies, motor vehicle departments, my attorneys, accountants and business associates and the MIB to provide any information to Phoenix or its reinsurers that may affect my insurability. This may include information about my occupation, participation in hazardous activities, motor vehicle record, foreign travel, finances, and other insurance coverage in place.

I acknowledge that I have received a copy of the Notice of Information Practices, including information about Investigative Consumer Reports and the Medical Information Bureau. I authorize the preparation of an Investigative consumer report. I understand that upon written request, I am entitled to receive a copy of the investigative consumer report.

This authorization shall continue to be valid for 30 months from the date it is signed unless otherwise required by law. A photocopy of this signed authorization shall be as valid as the original. This authorization may be revoked by writing to Phoenix prior to the time the insurance coverage has been placed in force. I understand my authorized representative or I may receive a copy of this authorization on request.

☐ I do ☑ I do not (check one) require that I be interviewed in connection with any Investigative consumer report that may be prepared.

## Section XII – Signature

I have reviewed this application, and the statements made herein are those of the proposed insured and all such statements made by the proposed insured in Part I or and in Part II of this application are full, complete, and true to the best knowledge and belief of the undersigned and have been correctly recorded.

I understand that 1) no statement made to, or information acquired by any Licensed Producer who takes this application, shall bind the Company unless stated in Part I and/or Part II of this application, 2) the Licensed Producer has no authority to make, modify, alter or discharge any contract thereby applied for.

I understand and agree that the insurance applied for shall not take effect unless and until each of the following has occurred: 1) the policy has been issued by the Company; 2) the premium required for issuance of the policy has been paid in full during the lifetime of the insured; 3) all the representations made in the application remain true, complete and accurate as of the latest of such dates; 4) the insured is alive when the policy is issued, and 5) there has been no change in the health of any proposed insured that would change the answers to any of the questions in the application.

I understand that if there is any change in my health or physical condition, or if I visit a physician or am hospitalized, subsequent to the date I complete the application or provide any information to be contained in the application, I will inform the Company as soon as possible.

Under penalty of perjury, I confirm that 1) the Social Security or Tax Identification Number shown is correct, and 2) that I am not subject to back-up withholding. If I have applied for the Living Benefit Rider, I confirm that I have received a copy of the disclosure form, Summary of Coverage for Accelerated Benefit Rider.

| Proposed Insured's Signature | State Signed In | Witness Signature(Must be signed in presence of Proposed Insured) *James B. Teegarden* | Date (mm/dd/yyyy) 9/25/06 |
| Owner's Signature (if other than proposed insured) by: DeWith, Roger, Stepcus, Sub, Trustee by: Ⓧ _____ , Trea | State Signed In WI | Witness Signature (Must be signed in presence of Owner) *Nancy A. Misluku* | Date (mm/dd/yyyy) 9/25/06 |
| Parent's Signature (for minor insured) | State Signed In | Witness Signature (Must be signed in presence of Owner) | Date (mm/dd/yyyy) |

Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud as determined by a court of competent jurisdiction.

The Producer hereby confirms he/she has truly and accurately recorded on the application the information supplied by the Proposed Insured; and that he/she is qualified and authorized to discuss the contract herein applied for.

| Licensed Producer's Name (Print First, Middle, Last) *James B. Teegarden* | Licensed Producer's Email Address jteegarden@tfiacorp.com |
| Licensed Producer's Signature *James B. Teegarden* | Date (mm/dd/yyyy) 09b5/06 | Licensed Producer's I.D. # 312012 | Licensed Producer's Telephone # (303) 410-4242 |

Exhibit 2
Page 59



**Universal Life Insurance Policy**
**Flexible Premiums**
**Death Benefit payable at death of Insured**
**Nonparticipating – not eligible for dividends**
**Benefits, premiums, and the Risk Classification are shown in Section 1**

# Phoenix Wealth Management

PHOENIX WEALTH MANAGEMENT

# PHL Variable Insurance Company

**Insured**

**Age & Sex**

**Policy Number** 97514213

**Face Amount** $4,500,000.00

**Policy Date** AUGUST 23, 2005

Dear Policyowner:

We agree to pay the benefits of this policy in accordance with its provisions. For service or information on this policy, contract the agent who sold the policy, any of Our agency offices, Our Home Office or Our Customer Service Center.

YOU HAVE A RIGHT TO RETURN THIS POLICY. If for any reason You are not satisfied with this policy, You may return it at any time within 30 days after You receive it to either the agent through whom it was purchased or to Us at Our Main Administrative Office at the following address:

> PHL Variable Insurance Company
> Variable and Universal Life Administration
> P.O. Box 8027
> Boston, MA 02266-8027
> Telephone (800) 541-0171

If returned, the policy will be considered void from the beginning and any premium paid will be refunded to You less any partial withdrawals or any loans taken under the policy.

Signed for PHL Variable Insurance Company at its Home Office, One American Row, Hartford, Connecticut 06115.

Sincerely yours,

PHL Variable Insurance Company

*John M. Beers*

Secretary

*Dona D. Young*

Chairman, President
and Chief Executive Officer

### FLEXIBLE PREMIUM LIFE INSURANCE POLICY
**Death benefit payable if Insured dies while the Policy is In Force**
**Not Eligible for Annual Dividends**

U606 CA

Exhibit 3
Page 62

U606CAF1

# SCHEDULE PAGE

The specifications shown below are those in effect initially. They may later be changed for reasons as stated in this policy. Coverage may end if premiums paid are not enough to continue coverage.

## BASIC INFORMATION

**POLICY NUMBER:** 97514213

**POLICY DATE:** AUGUST 23, 2005

**FACE AMOUNT:** $4,500,000.00

**DEATH BENEFIT OPTION:** A

**OWNER:** OWNER AS STATED ON THE APPLICATION UNLESS LATER CHANGED.

**BENEFICIARY:** AS STATED ON THE APPLICATION UNLESS LATER CHANGED.

## INSURED

| INSURED | ISSUE AGE & SEX | RISK CLASSIFICATION |
|---|---|---|
|  |  |  |

## PREMIUMS

**ISSUE PREMIUM:** $72,132.00

**SUBSEQUENT PLANNED ANNUAL PREMIUM:** $125,000.00

**TOTAL PREMIUM LIMIT:** GREATER OF $2,543,428.17 AND RESULT OF $322,316.41 MULTIPLIED BY THE NUMBER OF ELAPSED POLICY YEARS (OR FRACTION THEREOF) AFTER AUGUST 23, 2005

The limit may decrease when monthly charges for any rider or any other monthly charges cease, and may be exceeded if additional premium is needed to prevent policy lapse.

**PREMIUM DUE DATES:** The amount and time of premium payments following the Policy Date are flexible. Subsequent planned premiums are payable on the TWENTY-THIRD day of each AUGUST thereafter until the Death of the Insured, but not beyond AUGUST 23, 2032

**POLICY VALUE BENCHMARK AMOUNT:** $3,870,000.00   (See Part 5)

U606

# SCHEDULE PAGE
### CONTINUED

POLICY NUMBER:                97514213

## POLICY CHARGES

SALES CHARGE:          10% of the first $202,500.00     of premium paid in the
                       first policy year. 5% of any premium paid in excess of
                       $202,500.00      in the first policy year.
                       5% of all premiums   paid in policy years 2+.


MONTHLY DEDUCTION:     See Part 5, "Monthly Deduction".  Includes cost of insurance, any
                       rider charges, any flat extra mortality charges, and monthly
                       service and expense charges.

MONTHLY SERVICE CHARGE:   $3.50      Guaranteed not to exceed $7.00.

MONTHLY EXPENSE CHARGE:   $50.00 deductible monthly during the first Policy Year.

PARTIAL WITHDRAWAL FEE FOR EACH WITHDRAWAL:   $25.00 (in addition to a partial
                                              Surrender Charge).

SURRENDER CHARGE:      See table on next page.

We will not charge any Policy charges after the Policy Anniversary which follows the Insured's 100th
Birthday.

## OTHER RATES

GUARANTEED MINIMUM INTEREST RATE:  4%.


## LIMITATIONS

MINIMUM LOAN AMOUNT:     $100

PARTIAL WITHDRAWALS:     A Partial Withdrawal will not be permitted in an amount:

- less than $500.00;

- which would reduce the Surrender Value to $0.00; or

- which would reduce the face amount below $250,000.

# SCHEDULE PAGE
## (CONTINUED)

POLICY NUMBER:     97514213

## TABLE OF SURRENDER CHARGES

For an explanation of this table, see section entitled "Surrender Value" in Part 5.  The charges shown in this table are stated as of the beginning of the Policy Year indicated. The charge will be level for the first 10 Policy Years and will be prorated on an annual basis beginning in Policy Year 11, unless limited by legal maximums.  In all Policy Years after the 20th policy year, the Surrender Charge is zero.

| POLICY YEAR | CHARGE PER $1,000 OF FACE AMOUNT |
|:---:|:---:|
| 1 | 57.6167 |
| 2 | 55.2209 |
| 3 | 52.8564 |
| 4 | 50.5321 |
| 5 | 48.2507 |
| 6 | 46.0095 |
| 7 | 43.8037 |
| 8 | 41.6326 |
| 9 | 39.5024 |
| 10 | 37.4239 |
| 11 | 35.4120 |
| 12 | 33.4824 |
| 13 | 31.6393 |
| 14 | 22.4250 |
| 15 | 10.7250 |
| 16 | 0.0000 |
| 17 | 0.0000 |
| 18 | 0.0000 |
| 19 | 0.0000 |
| 20 | 0.0000 |
| 20+ | 0.0000 |

## SCHEDULE PAGES (CONTINUED)

POLICY NUMBER:   97514213

### TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES
### PER $1000 OF NET AMOUNT AT RISK
### BASED ON 1980 CSO MORTALITY TABLE

| POLICY YEAR | MONTHLY RATE | POLICY YEAR | MONTHLY RATE | POLICY YEAR | MONTHLY RATE |
|---|---|---|---|---|---|
| 01 | 2.43500 | 11 | 7.64670 | 21 | 20.95000 |
| 02 | 2.75170 | 12 | 8.58580 | 22 | 23.27580 |
| 03 | 3.11000 | 13 | 9.61500 | 23 | 26.44330 |
| 04 | 3.50330 | 14 | 10.71500 | 24 | 31.31170 |
| 05 | 3.92580 | 15 | 11.89250 | 25 | 39.58080 |
| 06 | 4.37750 | 16 | 13.13420 | 26 | 54.65420 |
| 07 | 4.87080 | 17 | 14.45920 | 27 | 83.33330 |
| 08 | 5.42670 | 18 | 15.86580 | | |
| 09 | 6.06330 | 19 | 17.38170 | | |
| 10 | 6.79920 | 20 | 19.05000 | | |

Basis of Calculations:   1980 Commissioner's Standard Ordinary Mortality Smoker/Nonsmoker Distinct Table for each insured's sex and risk class, age nearest birthday, and 4% effective annual interest rate.

Monthly Factor used in determining Cost of Insurance:   1.0032737 (SEE PART 5)

U606

# SCHEDULE PAGE
## (CONTINUED)

POLICY NUMBER:      97514213

## TABLE OF FACE AMOUNTS OF INSURANCE

ISSUE DATE
AUGUST 23, 2005

FACE AMOUNT
$4,500,000.00

## RIDERS AND RIDER BENEFITS

| RIDER DESCRIPTION | RIDER DATE OF ISSUE | AMOUNT | RIDER TERMINATION DATE | MONTHLY CHARGE |
|---|---|---|---|---|
| UR69 - AGE 100+ | 08/23/2005 | NOT APPLICABLE | NONE | $0.00 |
| UR77 - EXCHANGE OF INSURED OPTION | 08/23/2005 - EXCHANGE OPTION RIDER | $0.00 | 08/23/2032 | $0 |
| UR73 - LIFEPLAN OPTIONS RIDER | 08/23/2005 | NOT APPLICABLE | NONE | $0.00 |

U606

Exhibit 3  PAGE 5 OF 5
Page 67  U606ZZS5

# BRIEF SUMMARY OF MAIN PROVISIONS

This is only a summary to help You understand the basics of Your policy. The policy provisions spell out the full details of the rights and obligations of the parties to this policy. The policy provisions and not this brief summary are binding on Us. We will pay the benefits of this policy as set forth on the policy Schedule Pages.

There are two Death Benefit Options to choose from, as described in Part 7. Option A is the Face Amount. Option B is the Face Amount plus Policy Value. Under either Option, the Death Benefit must be at least the Minimum Death Benefit as described in Part 7.

The premiums You pay are added to the Policy Value after We deduct any applicable premium expense charges. We make a monthly deduction from the Policy Value to pay the cost of insurance, the cost of any additional benefit riders and certain monthly charges. We determine cost of insurance rates from time to time, with the guarantee that they will never be higher than the maximum provided on the Schedule Pages. The Policy Value is credited with interest at a current rate which We set from time to time but which will not be less per year than the Guaranteed Minimum Interest Rate shown on the Schedule Pages.

The Subsequent Planned Premium shown on the Schedule Pages is the premium You selected in Your application and is the basis for the Policy Summary delivered with this policy. However, You may generally pay premiums when and in the amount You choose provided sufficient premium is paid to maintain the policy In Force. The amount and timing of premium payments will affect the accumulation of Policy Value.

This policy gives You a number of other options. Under stated conditions, You may change the Death Benefit Option, withdraw part of the Surrender Value or surrender the policy for its full Surrender Value. The Surrender Value is based on the Policy Value, minus any applicable Surrender Charges, unpaid issue charges, loans and loan interest.

We pay the insurance proceeds, as described in Part 3, to the beneficiary when We receive due proof that the Insured's death has occurred while this policy is In Force.

We pay the Surrender Value, as described in Part 5, to You if the Insured is living on the surrender date and this policy is then In Force.

You may change the premiums and Death Benefit Option, subject to Our approval. Certain changes may require evidence of insurability.

See the policy provisions for details.

**READ YOUR POLICY CAREFULLY. IT IS A CONTRACT BETWEEN YOU AND US.**

U606

Exhibit 3
Page 68

# TABLE OF CONTENTS

SCHEDULE PAGE

BRIEF SUMMARY OF MAIN PROVISIONS

PART1: DEFINITIONS ................................... 1

PART2: GENERAL PROVISIONS ................. 2
Effective Date of Insurance .......................... 2
The Policy and Application ........................... 2
Not Eligible for Annual Dividends ............. 2
Revised Schedule Pages ............................... 2
Age ...................................................................... 3
Misstatement of Age or Sex ....................... 3
Contestability ................................................... 3
Insurability Requirements After Issue .... 3
Suicide Exclusion ............................................ 4
Termination ....................................................... 4
Minimum Policy Values ................................. 4

PART 3: OWNER, COLLATERAL
ASSIGNMENT, BENEFICIARY ................. 4
Owner .................................................................. 4
Rights of Owner .............................................. 4
Collateral Assignment ................................... 5
Beneficiary ......................................................... 5
How to Change the Beneficiary .................. 6

PART 4: PREMIUMS ................................... 6
Payments ............................................................ 6
Total Premium Limit ....................................... 6
Grace Period and Lapse ................................ 7
Reinstatement ................................................... 7

PART 5: POLICY VALUES ......................... 8
Basics of Calculations ................................... 8
Policy Value ...................................................... 8
Interest Rate ..................................................... 9
Benchmark Interest Bonus ........................... 9
Monthly Deduction ......................................... 10
Cost of Insurance ........................................... 10
Cost of Insurance Rates ............................... 10
Surrender Value ............................................... 11
Partial Withdrawals ........................................ 11

PART 6: POLICY LOANS ............................ 12
WhenAvailable ................................................. 12
Amount Available ........................................... 12
Loan Interest .................................................... 12
Debt ..................................................................... 13
Repayment ........................................................ 13

PART 7: INSURANCE COVERAGE
PROVISIONS ................................................. 13
Death Proceeds ............................................... 13
Interest on Insurance Proceeds ................. 14
Death Benefit ................................................... 14
Minimum Death Benefit ................................ 14
Death Benefit Following Insured's
Age 100 ........................................................ 14
Change in Death Benefit Option ................ 15
Request for a Decrease in Face
Amount .......................................................... 15

PART 8: MISCELLANEOUS
PROVISIONS ................................................. 15
Annual Report .................................................. 16
Projection of Benefits and Values ............ 16
Notices by Us ................................................... 16
Deferment of Certain Payments ................ 16
Claims of Creditors ........................................ 16
Corrections ........................................................ 16

PART 9: PAYMENT OPTIONS ................... 16
Who May Elect Payments Options ............ 16
How to Elect a Payment Option ................ 17
What Payment Options Are Available 17
Other Payment Options ................................. 19
Additional Interest ......................................... 19

PART 10: TABLE OF PAYMENT OPTION
AMOUNTS ...................................................... 19
Adjusted Age .................................................... 19
Tables for Options 3, 4 and 5 .................... 21
Table for Option 7 .......................................... 22

U606

Exhibit 3
Page 69

# PART 1: DEFINITIONS

**Assigns**
Any persons to whom You assign an interest in this policy if We have notice of the assignment in accordance with the provisions stated in Part 3.

**Death Benefit Option**
The type of Death Benefit in effect as described in Part 7.

**Due Proof of Death**
A certified death certificate, an order of a court of competent jurisdiction, or any other proof acceptable to Us.

**In Force**
The policy has not terminated or otherwise lapsed in accordance with the Grace Period and Lapse Provision in Part 4.

**In Writing (Written Notice) (Written Request)**
Is a written form signed by You, satisfactory to Us and received at Our Home Office or Our Main Administrative Office.

**Monthly Calculation Day**
The first Monthly Calculation Day is the same day as the Policy Date. Subsequent Monthly Calculation Days are the same days of each month thereafter or, if such day does not fall within a given month, the last day of that month will be the Monthly Calculation Day.

**Subsequent Planned Premium**
The premium shown on the Schedule Page, which is the premium You selected in Your application and is the basis for the Policy Summary delivered with this policy.

**Policy Anniversary**
The anniversary of the Policy Date.

**Policy Date**
The Policy Date shown on the Schedule Pages from which Policy Years and Policy Anniversaries are measured.

**Policy Debt**
Unpaid policy loans with accrued interest.

**Policy Month**
The period from one Monthly Calculation Day up to but not including the next Monthly Calculation Day.

**Policy Value**
The Policy Value as defined in Part 5.

**Policy Year**
The first Policy Year is the one-year period from the Policy Date to, but not including, the first Policy Anniversary. Each succeeding Policy Year is the one-year period from the Policy Anniversary up to but not including the next Policy Anniversary.

**Surrender Value**
The Surrender Value as defined in Part 5. The Surrender Value is the Policy Value on the date of surrender less any applicable surrender charge, unpaid issue charge, and less any Policy Debt.

**We (Our, Us)**
PHL Variable Insurance Company.

**You (Your)**
The owner of this policy at the time an owner's right is exercised.

-1-

Exhibit 3
Page 70

U606ZZP1

# PART 2:  GENERAL PROVISIONS

**Effective Date of Insurance**

This policy will be In Force from the Policy Date until terminated in accordance with its terms, provided the first Issue Premium shown on the Schedule Pages is paid on or before delivery of this policy while the Insured is alive.

**The Policy and Application**

This policy, including the Schedule Pages (and any supplements or changes thereto), any riders or endorsements to it, and the application for it (and any supplemental applications) constitute the entire contract between You and Us.

This policy is made in consideration of the application and the payment of premiums as provided in this policy. We rely on all statements made by or for the Insured in the written application. Each statement made in an application will, in the absence of fraud, be deemed a representation and not a warranty. No statement will be used to void this policy or in defense of a claim under this policy unless:

1.  it is contained in the application or in a supplemental application; and

2.  a copy of that application is attached to this policy when issued or made a part of this policy when changes become effective.

Any change in the provisions of the policy, including modifying the policy, waiving any of its conditions, or making an agreement for the Company, to be in effect, must be In Writing and signed by one of Our executive officers and countersigned by Our registrar or one of Our executive officers. This policy is issued by Us at Our Main Administrative Office in Hartford, Connecticut. Any benefits payable under this policy are payable at Our Main Administrative Office.

**Not eligible for Annual Dividends**

This policy is non-participating and therefore is not eligible for annual dividends. This means that You are not entitled to participate in company profits.

**Revised Schedule Pages**

The  Schedule Pages issued with the policy show the initial policy data in effect for this policy on the Policy Date. Some of this policy data may change by an action You request or take or by a change You make. Any of these changes will be reflected in Revised Schedule Pages which supplement or restate the Schedule Pages and show the effective date of the change. We will send You such Revised Schedule Pages along with a copy of any supplemental application, and they will become part of this policy as of their effective date.

U606

Exhibit 3
Page 71

| | |
|---|---|
| **Age** | Issue Age means the Insured's age on the Policy Date as of the Insured's nearest birthday. The attained age of the Insured on any Policy Anniversary and for the entire Policy Year then starting is the Issue Age plus the number of Policy Years since the Policy Date. |
| **Misstatement of Age or Sex** | If the age or sex of the Insured is misstated, the Policy Value and any Death Benefits payable shall be adjusted on the basis of the difference between the monthly deductions made and the monthly deductions which should have been made, accumulated at the interest rates that were credited to the Policy Value. |
| | In the event of death, the recalculation, in and of itself, will not result in termination of the policy prior to the date of death. We will not pay less on the date of death on the policy after recalculation than the Surrender Value determined based upon the misstated age. |
| **Contestability** | We cannot contest the validity of the original face amount of this policy after it has been in effect during the Insured's lifetime for two years from the Policy Date (or two years from any reinstatement). |
| | While insurance is contestable, We may rescind the insurance or deny a claim on the basis of: |

1. a misstatement in the application or supplemental application for this policy or any face amount increase; or

2. a misstatement in the reinstatement application if there has been a reinstatement of this policy.

If We contest the validity of all or a portion of the face amount provided under this policy, the amount We pay with respect to the contested amount will be limited to the higher of a return of any paid premium required by Us for the contested face amount or the sum of any monthly deductions made under this policy for the contested face amount.

| | |
|---|---|
| **Insurability Requirements After Issue** | To make some changes or elections under this policy after it is issued, the Insured must meet Our insurability requirements (medical and/or financial) as follows: |

1. evidence of the Insured's insurability must be given that is satisfactory to Us; and

2. under Our underwriting standards, the Insured must be in a Risk Classification that is the same as, or better than, the Risk Classification for this policy at issue.

U606

–3–

Exhibit 3
Page 72

**Suicide Exclusion**

If the Insured, whether sane of insane, dies by suicide within two years from the Policy Date, (or within two years from any reinstatement of the policy) and while the policy is In Force, Our liability shall be limited to an amount equal to the premiums paid on this policy less any debt owed Us and less any partial withdrawals.

**Termination**

If not previously terminated, this policy will terminate automatically on the earliest of:

1. the date the Insured dies; or

2. the date the grace period expires without the payment of sufficient premium in accordance with the Grace Period and Lapse Provision in Part 4.

**Minimum Policy Value**

All of the values under this policy are equal to or more than the minimum required on the Policy Date by the state in which this policy was delivered. The method of computation of the values under this policy has been filed as may be required with the Insurance Department of the state in which this policy was delivered.

## PART 3: OWNER, COLLATERAL ASSIGNMENT, BENEFICIARY

**Owner**

The Insured is the owner of this policy, unless otherwise provided in the application or be later transfer of ownership.

**Rights of Owner**

While the Insured is living, You may, as the owner, exercise all rights provided by this policy or allowed by Us. Consent of any beneficiary not irrevocably named or any contingent owner is not required. By Written Notice You may:

1. Transfer ownership to a new owner.

2. Name or change a contingent owner to succeed to the rights of the owner at the owner's death. If there is no contingent owner at the owner's death, ownership will pass to the Insured, except as You may have otherwise directed In Writing.

3. Receive any amounts payable under this policy during the Insured's lifetime.

4. Change the beneficiary of the death benefit. See Part 3.

5. Change the Subsequent Planned Premium payment amount and frequency. See Part 4.

6. Obtain a partial withdrawal. See Part 5.

7. Surrender this policy for its cash Surrender Value. See Part 5.

8. Obtain policy loans. See part 6.

9.  Request changes in the insurance amount. See Part 7.

10. Change the Death Benefit Option. See Part 7.

11. Select a payment option for any cash Surrender Value that becomes payable. See Part 10.

12. Assign, release or surrender any of Your interest in the policy.

Exercise of any of these rights will, to the extent thereof, assign, release or surrender the interest of the Insured and all other beneficiaries and owners under this policy.

An ownership transfer designation or change of designation will be effective as of the date the notice was signed, subject to any action taken by Us before We record such notice. A transfer of ownership (or absolute assignment) is not the same as a "collateral assignment" as described in the next paragraph, and the new owner is not an "assignee" as these terms are used in this policy.

**Collateral Assignment**

By Written Notice You may assign an interest in this policy as collateral to a collateral assignee. The collateral assignment or a certified copy of it must be filed with Us at Our Main Administrative Office. When filed, it will bind Us as of the date of the assignment, subject to any action taken by Us before such filing. We shall not be responsible for the validity of any assignment. The interest of the assignee shall be prior to the interest of any beneficiary not irrevocably named or any contingent owner. A collateral assignee cannot change the beneficiary, owner or contingent owner.

**Beneficiary**

Unless another payment option is elected as described in Part 10, any death proceeds that become payable will be paid in equal shares to such beneficiaries living at the death of the Insured as stated in the application or as later changed. Payments will be made successively in the following order:

a)  Primary beneficiaries;

b)  Contingent beneficiaries, if any, provided no primary beneficiary is living at the death of the Insured;

c)  You or Your executor or administrator, provided no primary or contingent beneficiary is living at the death of the insured, or in the absence of a beneficiary designation.

Unless otherwise stated, the relationship of a beneficiary is the relationship to the insured.

U606

Exhibit 3
Page 74

**How to Change the Beneficiary**

You may change the beneficiary by Written Notice filed with Us at Our Main Administrative Office. When We receive it, the change will relate back and take effect as of the date it was signed by You. However, the change will be subject to any payments made or actions taken by Us before We received the notice at Our Main Administrative Office.

## PART 4: PREMIUMS

**Payments**

The Issue Premium as shown on the Schedule Pages is payable on or before delivery of this policy. The Insured must be alive when that premium is paid.

Subject to the limitations stated below, You may pay additional premiums at any time prior to age 100 while this policy is In Force. All premiums are payable at Our Main Administrative Office or to an authorized agent of ours. You may request a receipt signed by one of Our executive officers.

On Written Request We will send Subsequent Planned Premium notices to You. These notices can be sent annually, semi–annually or quarterly. Premiums may also be paid at other intervals, or under automatic collection methods, subject to Our consent. We may limit the number and amount of premium payments in any Policy Year.

The minimum premium payment amount that We will accept is $25. Any premium payment that would increase the Death Benefit by more than it would increase the Policy Value, shall be subject to evidence of insurability satisfactory to Us. To the extent of such evidence, the Contestability and Suicide Exclusion provisions will apply. The application for such evidence is attached to and will be made part of the policy.

**Total Premium Limit**

The total premium limit is shown on the Schedule Pages and is applied to the sum of all premiums received by Us to date, excluding premiums applied to debt repayment, reduced by the sum of all partial withdrawals paid by Us to date. If the total premium limit is exceeded, We will refund the excess with interest at an annual rate of not less than 4%, not later than 60 days after the end of the Policy Year in which the limit was exceeded. The Policy Value will be adjusted to reflect such refund.

The total premium limit may be exceeded if additional premium is needed to prevent lapse under the Grace Period And Lapse provision, and such additional premium is permitted by federal tax laws or regulations such that this policy continues to meet the Definition of Life Insurance.

The total premium limit may change due to:

a) change in Death Benefit Option;

U606

Exhibit 3
Page 75

b) a decrease of face amount;

c) a partial withdrawal;

d) addition, change or termination of a rider; or

e) a change in federal tax law or regulations.

If the total premium limit changes, We will send You Revised Schedule Pages reflecting the change. However, We reserve the right to require that the policy be returned to Us to endorse the change.

**Grace Period and Lapse**

During the first seven Policy Years, if on any Monthly Calculation Day the required monthly deduction exceeds the Policy Value less any Policy Debt, a grace period of 61 days will be allowed for the payment of an additional premium. Such additional premium must be sufficient to increase such value on that Monthly Calculation Day to cover three monthly deductions.

After the seventh Policy Year, if on any Monthly Calculation Day the required monthly deduction exceeds the Surrender Value, a grace period of 61 days will be allowed for the payment of an additional premium. Such additional premium must be sufficient to increase such value on that Monthly Calculation Day to cover three monthly deductions.

The policy will continue In Force during such grace period. We will mail to You and any Assigns at the post office addresses last known to Us a Written Notice as to the amount of premium required. If such premium amount is not postmarked as having been mailed to Us by the end of the grace period, the policy will lapse without value, but not before 30 days have elapsed since We mailed Our Written Notice to You and any Assigns. The date of lapse will be the Monthly Calculation Day on which the deduction was to be made, and any insurance and rider benefits provided under this policy will terminate as of that date.

**Reinstatement**

If this policy terminates, in accordance with the Grace Period and Lapse Provision, You may reinstate this policy back to an "In Force" status within five years after the expiration of the Grace Period. Reinstatement must become effective prior to age 100 and while the Insured is alive. We will not approve a request for a reinstatement until We receive at Our Main Administrative Office all of the following:

1. a Written Request for reinstatement;

2. evidence of insurability satisfactory to Us;

3. if applicable, payment or reinstatement of any Policy Debt as of the date of lapse; and

U606

Exhibit 3
Page 76

4.  the payment of a reinstatement premium while the Insured is alive which equals an amount needed to provide for a positive Surrender Value as of the date of lapse, plus three monthly deductions. However, during the first seven Policy Years, the reinstatement premium will equal an amount needed to provide for a positive Policy Value (less any Policy Debt) as of the date of lapse, plus three monthly deductions.

Subject to the foregoing conditions, the effective date of a reinstatement will be the Monthly Calculation Day following the date We approve the request for reinstatement. If We approve it on a Monthly Calculation Day, the effective date will be that Monthly Calculation Day.

The Policy Value as of the effective date of a reinstatement shall equal the reinstatement premium received, plus any Policy Debt in effect as of the date of lapse, minus the monthly deduction for the month then starting.

# PART 5: POLICY VALUES

The premiums You pay, minus the premium expense charges shown on the Schedule Pages, are added to the policy's Policy Value. We make monthly deductions from the Policy Value to cover the cost of insurance, the cost of any additional benefit riders and the monthly charges shown on the Schedule Pages. We also deduct any partial withdrawals You make and charges for them, as well as any charges for face amount decreases. The Policy Value earns interest. Details are provided below. We will keep You informed of the current Policy Value by sending You an Annual Report as described in Part 8 of this policy.

**Basis of Calculations**

Minimum Surrender Values are determined from the Basis of Calculations shown on the Schedule Pages. The Guaranteed Maximum Insurance Rates shown on the Schedule Pages are also based on this Table.

**Policy Value**

Policy Value is to be calculated as follows:

1.  In each Monthly Calculation Day following the Policy Date, the Policy Value will equal $(A + B + C - D - E)$;

2.  on a day of the month other than a Monthly Calculation Day, it will equal $(A + C)$;

3.  on the Policy Date, it will equal all premiums received, net of any premium expense charges, minus E; where:

$A=$   the Policy Value on the prior Monthly Calculation Day, after assessment of the monthly deduction on that day;

$B=$   one month's interest on A, including any Benchmark Interest Bonus;

C= all premiums received, net of any premium expense charges, since the prior Monthly Calculation Day, plus interest thereon to the end of the Policy Month, or any earlier date on which the Policy Value is being determined;

D= any partial withdrawal, and charge for it, being made as of that Monthly Calculation Day; and

E= the monthly deduction for the month then starting (no monthly deduction is made if the policy is surrendered for its full Surrender Value as of that Monthly Calculation Day).

**Interest Rate**

We will, from time to time, determine the interest rate used in the calculation of the Policy Value, based on Our anticipation of future investment earnings, mortality, persistency and expense/administrative costs. We will determine the interest rate at least once each year. We may, in Our sole discretion, change the interest rate. Changes made will be in accordance with procedures and standards on file with the Insurance Department of the state where this policy was delivered. Changes in the rate will apply to all policies in the same investment class. Any interest credited in excess of the Guaranteed Minimum Interest Rate is referred to as "excess interest." The effective annual interest rate will never be less than the Guaranteed Minimum Interest Rate shown on the Schedule Pages.

We may credit different interest rates on loaned and unloaned portions of the Policy Value. The rate in effect on a given date for unloaned amounts is referred to as the "current interest rate." The rate in effect on a given date for loaned amounts will be no less than the Loan Interest Rate in effect on that date less 2%. All interest rates are stated as effective annual rates. Interest will be compounded at least monthly to yield the effective annual rate.

**Benchmark Interest Bonus**

Beginning in the third Policy Year of this policy, in addition to interest being credited under the policy on each Monthly Calculation Day, We will also credit an interest bonus on each Monthly Calculation Day on amounts in excess of the Policy Value Benchmark Amount, shown on the Schedule Page. The Bonus Interest Rate will be equal to:

1. An annual effective rate of 1% if the Current Interest Rate is 5% or greater; or

2. An annual effective rate of .5% if the Current Interest Rate is at least 4.5% but less than 5%; or

3. An annual effective rate of 0% if the Current Interest Rate is less than 4.5%.

This bonus will be equal to (A x B), where:

A= the Bonus Interest Rate; and

B= the excess of the unloaned portion of the Policy Value over the Policy Value Benchmark Amount, shown on the Schedule Page.

**Monthly Deduction**

The monthly deduction is the amount deducted from the Policy Value on the Policy Date and on each Monthly Calculation Day to pay the cost of insurance, the cost for any additional benefit riders and monthly charges for the Policy Month starting on that day. The monthly deduction will be equal to:

$$(A + B + C); \text{ where:}$$

A= the cost of insurance (as defined in the Cost of Insurance provision below);

B= the monthly cost for any additional benefit riders as shown on the Schedule Pages;

C= the Monthly Service Charge shown on the Schedule Pages, and if applicable, one-twelfth of the Issue Charge.

**Cost of Insurance**

The cost of insurance is the amount We charge each month for providing the insurance coverage. The cost of insurance is equal to:

$$(A \times (B - C)) + D; \text{ where}$$

A= the applicable cost of insurance rate for the Insured's risk class, based upon the Net Amount at Risk and Insured's risk class, including any applicable substandard mortality percentage extra. The Net Amount at Risk is equal to (B–C) below;

B= the Death Benefit at the beginning of the Policy Month, divided by the Monthly Factor shown on the Schedule Pages;

C= the Policy Value at the beginning of the Policy Month, after the Monthly Service Charge and, when applicable, one-twelfth of the Issue Charge, and prior to subtracting the Cost of Insurance for that month;

D= the Substandard (Temporary or Permanent) Extra Charge, if any, shown on the Schedule Pages.

In item B "Death Benefit" means the Death Benefit as defined in Part 7 but prior to subtracting the cost of insurance for that month from any Policy Value element.

**Cost of Insurance Rates**

The cost of insurance rate for each Policy Month is based on the Insured's age at issue, risk class and sex, and on policy duration. The rate used in computing the cost of insurance is obtained from the Table of Guaranteed Maximum Cost of Insurance Rates shown on the Schedule Pages for the insured risk classification(s), or such lower rate as We may declare. At least 31 days before the start of the Policy Year, We will send You a notice of any change in rates.

U606

No more frequent than once per year and no less frequent than once every five years, We will review the monthly Cost of Insurance Rates to determine if these rates should be changed. However, the rates will never exceed the Guaranteed Maximum Cost of Insurance Rates shown on the Schedule Pages. Our right to change rates also is subject to the following terms:

1. Any change in rates will be made on a uniform basis for all insureds in the same class. No change in rates will occur due to any change in the Insured's health or occupation.

2. Any change in rates will be determined prospectively. We will not distribute past gains or recoup prior losses, if any, by changing the rates.

3. Any change in rates will be based on a change in Our expectations of future investment earnings, mortality, persistency and expense/administrative costs.

4. Any change in rates will comply with any procedures and standards that may be on file with the insurance official of the jurisdiction where this policy is delivered.

The Monthly Service Charge, shown on the Schedule Pages, is subject to change based on Our expectations of future investment earnings, mortality, persistency and expense/administrative costs, subject to the maximum Monthly Service Charge stated on the Schedule Pages.

**Surrender Value**

You may surrender this policy for its Surrender Value at any time, by sending Us a Written Request along with this policy on or before such Monthly Calculation Day.

The Surrender Value on any date is the Policy Value on that date minus any applicable surrender charge as shown in the Table of Surrender Charges on the Schedule Pages, minus any Policy Debt, minus any unpaid issue charge. If the surrender is requested within 30 days after a Policy Anniversary, the Surrender Value shall not be less than the Surrender Value on the Policy Anniversary less any debt, partial withdrawals and charges made or incurred since the Policy Anniversary. The Surrender Value is never less than zero.

If this policy is terminated, the remaining schedule of Surrender Charges will be suspended. When this policy is reinstated, the remaining schedule of Surrender Charges also will be reinstated. The Surrender Charges are based on the period of time the policy is in effect. When reinstated, the schedule of Surrender Charges will start from the point where the schedule was suspended.

**Partial Withdrawals**

You may withdraw part of the Surrender Value as of any Monthly Calculation Day while the Insured is living, subject to the charges and limitations shown on the Schedule Pages. We must receive your Written Request for partial withdrawal on or before the Monthly Calculation Day on which the partial withdrawal is to be effective. The Policy Value will be reduced by the amount withdrawn, a partial surrender charge and a partial withdrawal fee.

U606

−11−

Exhibit 3
Page 80

The partial surrender charge is equal to a pro-rata portion of the surrender charge that would apply to a full surrender. The partial surrender charge is determined by multiplying the full surrender charge by a fraction equal to the partial surrender amount payable divided by the result of subtracting the applicable surrender charge from the Policy Value.

The partial withdrawal fee is shown on the Schedule Pages.

Under Death Benefit Option A (the Face Amount), the Face Amount is decreased by the same amount of reduction as the Policy Value.

Under Death Benefit Option B (the Face Amount plus the Policy Value), the Face Amount does not change.

A partial withdrawal will not be permitted which would reduce the Face Amount below Our then current Minimum Face Amount, or the Surrender Value to zero.

## PART 6: POLICY LOANS

**When Available**

You may obtain a loan from Us at any time, on assignment of the policy to Us as security, if it has a Surrender Value greater than zero.

**Amount Available**

The amount of any loan may not exceed the lesser of:

- the Surrender Value of this policy projected from the date of the loan to the next Policy Anniversary based upon guaranteed assumptions, minus loan interest charges through the next Policy Anniversary; and

- the current Surrender Value of this policy.

If on any Monthly Calculation Day the Policy Debt exceeds the Policy Value minus any applicable surrender charge then in effect, this policy will lapse according to the terms of the Grace Period and Lapse provision.

A loan will not be permitted in an amount less than the Minimum Loan Amount shown on the Schedule Pages, except if the amount to be loaned equals the full loaned amount then remaining.

We reserve the right to defer the granting of a loan, other than for the payment of any premium to Us, for six months after submission of a loan application.

Loan interest will accrue on a daily basis from the date of the loan, and is payable in arrears.

**Loan Interest**

Loans will bear interest at such rate or rates as established by Us for any period during which loans are outstanding. Each year We will set the rate that will apply during the next Policy Year. Such rate will be effective at the beginning of that year and will apply to both new and any outstanding loans under this policy.

U606                              −12−

Exhibit 3
Page 81

We will notify You of the initial loan interest rate at the time a policy loan is made, or as soon as practical thereafter. If there are any outstanding loans, except for purposes of reinstatement, We will give You advance notice of any increase in the rate.

There is a maximum limit on the interest rate We can set. The maximum limit is the Published Monthly Average for the calendar month ending two months before the Policy Year begins or the Guaranteed Minimum Interest Rate used in computing the Policy Value plus 1%, whichever is higher.

The Published Monthly Average will be:

A. The Corporate Bond Yield Average – Monthly Average Corporates as published by Moody's Investors Service, Inc. or any successor to that Service; or

B. If that Monthly Average is no longer published, a substantially similar average, established by regulation issued by the insurance supervisory official of the state where this policy was delivered.

If the maximum limit for a Policy Year is at least 1/2% higher than the rate in effect for the previous year, We may increase the rate to not more than that limit.

If the maximum limit for a Policy Year is at least 1/2% lower than the rate in effect for the previous Policy Year, We must decrease the rate to not more than that limit.

**Debt**

As used in this policy, "debt" or "Policy Debt" means all loans existing on this policy plus accrued interest. When this policy terminates, We will add to any existing debt interest accrued from the prior Policy Anniversary to the termination date.

**Repayment**

The whole or any part of a loan may be repaid at any time while this policy is in effect. Any moneys received will be applied directly to reduce the debt unless specified as a premium payment. We will not accept partial payments in amounts less than $25.

## PART 7: INSURANCE COVERAGE PROVISIONS

**Death Proceeds**

Upon receipt by Us of Due Proof of Death that the Insured died while this policy is In Force, We will pay the death proceeds of this policy. The death proceeds at the death of the Insured are equal to:

a) the Death Benefit, as described below, in effect on the Insured's date of death; PLUS

b) any insurance then in effect on the life of the Insured that is provided by any additional benefit riders; PLUS

c) any premiums received by Us after the Monthly Calculation Day just prior to the Date of Death and on or before the Date of Death; MINUS

U606

U606ZZPD

Exhibit 3
Page 82

d) Any partial withdrawals made after the Date of Death and prior to receipt of Written Notice of the insured's death; MINUS

e) Any debt then existing on this policy; MINUS

f) Any monthly deductions not already made up to and including the Policy Month of death.

**Interest on Insurance Proceeds**

We will pay interest on any death proceeds from the date of death to the date of payment. The amount of interest will be the same as would be paid were the death proceeds left for that period of time to earn interest under Payment Option 2. However, in no case will the amount of interest be less than the minimum required in Your state.

**Death Benefit**

The Death Benefit under this policy will be determined under either Option A or Option B, whichever is chosen and is then in effect, but in no event while the policy is In Force will it be less than the Minimum Death Benefit described below.

Option A: The Face Amount on that date.

Option B: The Face Amount plus the Policy Value on that date.

**Minimum Death Benefit**

The Minimum Death Benefit will be equal to a percentage of the Policy Value as of the insured's attained age at the beginning of the Policy Year in which the insureds death occurs, as follows:

| ATTAINED AGE | % OF POLICY VALUE | ATTAINED AGE | % OF POLICY VALUE | ATTAINED AGE | % OF POLICY VALUE |
|---|---|---|---|---|---|
| 0–40 | 250% | 54 | 157% | 68 | 117% |
| 41 | 243% | 55 | 150% | 69 | 116% |
| 42 | 236% | 56 | 146% | 70 | 115% |
| 43 | 229% | 57 | 142% | 71 | 113% |
| 44 | 222% | 58 | 138% | 72 | 111% |
| 45 | 215% | 59 | 134% | 73 | 109% |
| 46 | 209% | 60 | 130% | 74 | 107% |
| 47 | 203% | 61 | 128% | 75 | 105% |
| 48 | 197% | 62 | 126% | 76–90 | 105% |
| 49 | 191% | 63 | 124% | 91 | 104% |
| 50 | 185% | 64 | 122% | 92 | 103% |
| 51 | 178% | 65 | 120% | 93 | 102% |
| 52 | 171% | 66 | 119% | 94 | 101% |
| 53 | 164% | 67 | 118% | 95 and over | 100% |

**Death Benefit Following Insured's Age 100**

After the Policy Anniversary which follows the Insured's birthday, the Death Benefit will equal the Policy Value. Monthly Service Charges and Cost of Insurance Charges will not be deducted after this anniversary, nor can any premiums be paid. Policy loans and partial withdrawals will continue to be made available after this anniversary.

**Change in Death Benefit Option**

The Face Amount and Death Benefit Option You have chosen initially are shown on the initial Schedule Pages. While this policy is In Force, You may request In Writing to change the Death Benefit Option. Any change will be subject to the following:

1. A change in Death Benefit Option will require that there be no immediate change in Our insurance risk. To assure this, when We approve a change from Option A to Option B, We will decrease the Face Amount by the Policy Value. Such a change from Option A to Option B may not be made if it would reduce the Face Amount below the Minimum Face Amount shown on the Schedule Pages. Similarly, when We approve a change from Option B to Option A, We will increase the Face Amount by the Policy Value. We will not require evidence of insurability for a change in Death Benefit Option. You are limited to one change in Death Benefit Option for each Policy Year.

2. The effective date of any change will be the Monthly Calculation Day next following Our approval of Your Written Request for change. This date will be shown on the Revised Schedule Pages that We will send You.

**Request for a Decrease in Face Amount**

You may request a decrease in face amount at any time after the first Policy Year. The decrease requested must at least equal $25,000 and the face amount remaining after the decrease must at least equal $250,000. All requests to decrease the face amount must be In Writing and will be effective on the first Monthly Calculation Day following the date We approve the request. We reserve the right to require that this policy first be returned to Us before the decrease is made. Upon a decrease in face amount, a partial surrender charge will be deducted from the Policy Value based on the amount of the decrease. The charge will equal the applicable surrender charge that would then apply to a full surrender multiplied by the result of dividing the decrease in face amount by the face amount of the policy before the decrease. We will send You a Revised Schedule Page reflecting the change.

## PART 8: MISCELLANEOUS PROVISIONS

**Annual Report**

We will send You, without charge, a report for each Policy Year which includes:

1. the current Policy Value, Death Benefit, Face Amount and Surrender Value;

2. any partial withdrawals, premiums paid, interest credited and charges made during the year;

3. any outstanding policy loans and new loans and loan repayments made during the year; and

U606

Exhibit 3

Page 84

4.  any other information required by the insurance supervisory official of the state in which this policy was delivered.

You have the right to request an illustrative report at any other time. We reserve the right to charge up to $25.00 for the report.

**Projection of Benefits and Values**

We will provide You, on Written Request and payment of Our service fee of up to $25.00, a projection of illustrative future benefits and values under Your policy. We may limit the number of such projections in any Policy Year.

**Notices By Us**

Whenever We are required to give notice to You, it shall be deemed given if We mail it to You and, unless otherwise specified, to the assignee of record, if any, in a postage–paid envelope mailed by first class mail to the last known address of record at Our Main Administrative Office.

**Deferment of Certain Payments**

We may defer, for not more than six months after We receive Written Request, the payment of the Surrender Value due to surrender or partial withdrawal or the making of any loan. If payment is deferred 31 days or more on any surrender, interest will be paid at an effective annual rate of 4.00% on the amount deferred, from the date the request is received to the date of payment.

**Claims of Creditors**

The proceeds and any income payments under this policy shall not be subject to the claims of creditors and shall be exempt from legal process, levy or attachment to the extent allowed by law.

**Corrections**

We reserve the right to correct any clerical errors in this policy, or in Our administration of the policy.

# PART 9: PAYMENT OPTIONS

**Who May Elect Payment Options**

The surrender or death proceeds of this policy will be paid in one sum unless otherwise provided. As an alternative to payment in one sum as provided under Option 1, the proceeds may be applied under one or more of the alternative income payment options described in this Part.

However, Our consent is required for the election of an income payment option by a fiduciary or any entity other than a natural person. Our consent is also required for elections by any Assigns or an owner other than the Insured if the owner has been changed.

Except for Option 7 which is not available for death proceeds, You may elect any payment option for payment of the death proceeds. You may also designate or change one or more beneficiaries who will be the payee or payees under that Option. You may only do this during the lifetime of the Insured. If no election is in effect when the death benefit becomes payable, the beneficiary may elect any payment option other than Option 7. The payment options are also available to the payee of any Surrender Value that becomes payable under this policy.

U606 CA

Exhibit 3
Page 85

Unless We agree otherwise, all payments under any Option chosen will be made to the designated payee or to his or her executor or administrator. We may require proof of age of any payee or payees on whose life payments depend as well as proof of the continued survival of any such payee(s).

**How To Elect a Payment Option**

The election of an income payment option must be In Writing. You can elect that the payments be made on an annual, semi-annual, quarterly, or monthly basis provided that each installment will at least equal $25. We also require that at least $1,000 be applied under any option chosen.

**What Payment Options Are Available**

This section provides a brief description of the various payment options that are available. In Part 10 You will find tables illustrating the guaranteed installment amount provided by several of the Options described in this section. The amounts shown for Option 4, Option 5 and Option 7 are the minimum monthly payments for each $1,000 applied. The actual payments will be based on the monthly payment rates We are using when the first payment is due. They will not be less than shown in the tables.

Option 1 – Payment in one sum

Option 2 – Left to earn interest

> We pay interest on the amount left with Us under this Option as a principal sum.

> We guarantee that at least one of the versions of this Option will provide interest at a rate of at least 3% per year.

Option 3 – Payments for a specified period

> Equal income installments are paid for a specified period of years whether the payee lives or dies. The first payment will be on the date of settlement.

> The Option 3 Table shows the guaranteed amount of each installment for monthly and annual payment frequencies. The table assumes an interest rate of 3% per year on the unpaid balance. The actual interest rate is guaranteed not to be less than this minimum rate.

Option 4 – Life annuity with specified period certain

> Equal installments are paid until the later of:

> a) the death of the payee;

> b) the end of the period certain.

U606

– 17 –

Exhibit 3
Page 86

U606ZZPH

The first payment will be on the date of settlement. The period certain must be chosen at the time this Option is elected. The periods certain that may be chosen are as follows:

a) ten years;

b) twenty years;

c)   until the installments paid refund the amount applied under this Option. If the payee is not living when the final payment falls due, that payment will be limited to the amount which needs to be added to the payments already made to equal the amount applied under this Option.

If, for the age of the payee, a period certain is chosen that is shorter than another period certain paying the same installment amount, We will deem the longer period certain as having been elected.

Any life annuity as may be provided under this Option is calculated using an interest assumption of 3 3/8%, except that any life annuity providing a period certain of twenty years or more is calculated using an interest rate of 3 1/4%.

Option 5– Life annuity

Equal installments are paid only during the lifetime of the payee. The first payment will be on the date of settlement.

Any life annuity as may be provided under this Option is calculated using an interest rate of 3 1/2%.

Option 6– Payments of a specified amount

Equal installments of a specified amount, out of the principal sum and interest on that sum, are paid until the principal sum remaining is less than the amount of the installment. When that happens, the principal sum remaining with accrued interest will be paid as a final payment. The first payment will be on the date of settlement. The payments will include interest on the principal sum remaining at a rate guaranteed to at least equal 3% per year. This interest will be credited at the end of each year. If the amount of interest credited at the end of a year exceeds the income payments made in the last 12 months, that excess will be paid in one sum on the date credited.

Option 7 – Joint survivorship annuity with a 10-year period certain

This payment option is not available for death proceeds. This Option is only available if the policy is surrendered within 6 months of the Policy Anniversary nearest the Insured's 55th, 60th, or 65th birthday. The first payment will be on the date of settlement. Equal income installments are paid until the latest of:

a) the end of the 10-year period certain;
b) the death of the Insured;

c) the death of the other named annuitant.

The other annuitant must be named at the time this Option is elected and cannot later be changed. That annuitant must have an adjusted age as defined in Part 10 of at least 40.

Any joint survivorship annuity as may be provided under this Option is calculated using an interest rate of 3 3/8%.

**Other Payment Options**   We may offer other payment options or alternative versions of the options listed in the above section.

**Additional Interest**   In addition to:

a) the interest of 3% per year guaranteed on the principal sum remaining with Us under Option 2 or 6; and

b) the interest of 3% per year included in the installments payable under Option 3;

We will pay or credit at the end of each year such additional interest as We may declare.

# PART 10: TABLES OF PAYMENT OPTION AMOUNTS

The installment amounts shown in the tables that follow are shown for each $1,000 applied. Amounts for payment frequencies, periods or ages not shown will be furnished upon request. Under Options 4 and 5, the installment amount for younger ages than shown will be the same as for the first age shown and for older ages than shown, it will be the same amount as for the last age shown.

**Adjusted Age**   The term "age" as used in the tables refers to the adjusted age. Under Options 4 and 5, the adjusted age is defined as follows:

a) for Surrender Values, the age of the payee on the payee's nearest birthday to the Policy Anniversary nearest the date of surrender;

Exhibit 3
Page 88

U606ZZPJ

a) for death benefits, the age of the payee on the payee's birthday nearest the effective date of the payment option elected.

Under Option 7, the adjusted age is the age on the nearest birthday to the Policy Anniversary nearest the date of surrender. The table for Option 7 only shows the amounts for annuitants of the opposite sex. Rates for annuitants of the same sex will be furnished upon request.

**Option 3 - Payments for a specified period**

| Number of Years | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|
| Annual Installment $ | 211.99 | 179.22 | 155.83 | 138.31 | 124.69 | 113.82 | 104.93 | 97.54 | 91.29 |
| Monthly Installment $ | 17.91 | 15.14 | 13.16 | 11.68 | 10.53 | 9.61 | 8.86 | 8.24 | 7.71 |

| Number of Years | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 25 | 30 |
|---|---|---|---|---|---|---|---|---|---|
| Annual Installment $ | 85.95 | 81.33 | 77.29 | 73.74 | 70.59 | 67.78 | 65.26 | 55.76 | 49.53 |
| Monthly Installment $ | 7.26 | 6.87 | 6.53 | 6.23 | 5.96 | 5.73 | 5.51 | 4.71 | 4.18 |

**\*Option 4 - Life annuity with specified period certain**

| Age of Payee | Installment Refund | | 10 Years Certain | | 20 Years Certain | | Age of Payee | Installment Refund | | 10 Years Certain | | 20 Years Certain | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Male | Fe-Male | Male | Fe-Male | Male | Fe-Male | | Male | Fe-Male | Male | Fe-Male | Male | Fe-Male |
| 10 | $3.08 | $3.03 | $3.08 | $2.99 | $3.00 | $2.94 | 50 | $4.36 | $4.12 | $4.50 | $4.10 | $4.28 | $3.99 |
| 15 | 3.14 | 3.09 | 3.15 | 3.04 | 3.07 | 3.00 | 55 | 4.76 | 4.47 | 4.95 | 4.47 | 4.61 | 4.31 |
| 20 | 3.22 | 3.16 | 3.24 | 3.11 | 3.15 | 3.07 | 60 | 5.28 | 4.93 | 5.54 | 4.96 | 4.97 | 4.67 |
| 25 | 3.33 | 3.24 | 3.34 | 3.20 | 3.25 | 3.15 | 65 | 5.97 | 5.54 | 6.30 | 5.63 | 5.29 | 5.06 |
| 30 | 3.45 | 3.35 | 3.47 | 3.30 | 3.38 | 3.25 | 70 | 6.91 | 6.39 | 7.24 | 6.50 | 5.43 | 5.31 |
| 35 | 3.61 | 3.48 | 3.64 | 3.43 | 3.55 | 3.38 | 75 | 8.21 | 7.57 | 8.26 | 7.56 | 5.44 | 5.40 |
| 40 | 3.80 | 3.64 | 3.86 | 3.60 | 3.74 | 3.54 | 80 | 10.04 | 9.26 | 9.12 | 8.60 | 5.46 | 5.46 |
| 45 | 4.05 | 3.85 | 4.14 | 3.82 | 3.99 | 3.74 | 85 | 12.61 | 11.68 | 9.60 | 9.31 | 5.46 | 5.46 |

**\*Option 5 - Life annuity**

| Age of Payee | Male | Female | Age of Payee | Male | Female |
|---|---|---|---|---|---|
| 10 | $3.17 | $3.12 | 50 | $4.62 | $4.28 |
| 15 | 3.24 | 3.18 | 55 | 5.12 | 4.68 |
| 20 | 3.32 | 3.25 | 60 | 5.79 | 5.24 |
| 25 | 3.42 | 3.34 | 65 | 6.75 | 6.04 |
| 30 | 3.56 | 3.44 | 70 | 8.15 | 7.22 |
| 35 | 3.73 | 3.58 | 75 | 10.26 | 9.03 |
| 40 | 3.95 | 3.75 | 80 | 13.54 | 11.88 |
| 45 | 4.24 | 3.98 | 85 | 18.72 | 16.54 |

\* Option 7 - Joint survivorship annuity with 10-year period certain

| Age of Other Annuit-ant F | Age of Insured Male | | Age of Other Annuit-ant F | Age of Insured Male | | Age of Other Annuit-ant M | Age of Insured Female | | Age of Other Annuit-ant M | Age of Insured Female | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 55 | 60 | | 55 | 60 | | 55 | 60 | | 55 | 60 |
| 40 | $3.62 | $3.64 | 60 | $4.43 | $4.64 | 40 | $3.72 | $3.77 | 60 | $4.34 | $4.64 |
| 45 | 3.80 | 3.83 | 65 | 4.61 | 4.93 | 45 | 3.89 | 3.97 | 65 | 4.44 | 4.82 |
| 50 | 4.00 | 4.07 | 70 | 4.75 | 5.18 | 50 | 4.06 | 4.19 | 70 | 4.50 | 4.95 |
| 55 | 4.22 | 4.34 | 75 | 4.86 | 5.36 | 55 | 4.22 | 4.43 | 75 | 4.54 | 5.03 |

\* Minimum monthly income for each $1,000 applied

# AGE 100+ RIDER

This rider is part of the policy to which it is attached. Except as stated in this rider, it is subject to all of the provisions contained in the policy.

**Rider Date:**                    AUGUST 23, 2005

**Rider Charge Date:**         N/A

## DEFINITIONS

**Age 100 Anniversary**
The Policy Anniversary nearest the Insured's 100th birthday.

## GENERAL

**Death Proceeds**
While this rider is in effect, the "Death Proceeds" provision of the basic policy is amended by adding the following to the end of that provision:

On and after the Age 100 Anniversary, the death proceeds at the death of the Insured are equal to:

a)    the Death Benefit, as described below;  MINUS

b)    any partial withdrawals made after the Date of Death and prior to receipt of Written Notice of the insured's death; MINUS

c)    any debt then existing on this policy

**Death Benefit Following Insured's Age 100**
While this rider is in effect, the "Death Benefit Following Insured's Age 100" provision of the basic policy is replaced with the following:

On and after the Age 100 Anniversary, the death benefit will equal 1 or 2, whichever is greater:

1.  the face amount of the basic policy on the date of the insured's death, plus the Total Rider Insurance Amount under the Individual Term Rider as of the day before the Age 100 Anniversary provided the Individual Term Rider was in effect on that date; or

2.  the Policy Value on the date of the insured's death.

Monthly Service Charges and Cost of Insurance Charges will not be deducted after this anniversary, nor can any premiums be paid.  Policy loans and partial withdrawals will continue to be made available after this anniversary.

**Under federal tax law, this policy may not qualify as life insurance after the Age 100 Anniversary. It may be subject to adverse tax consequences and a tax advisor should be consulted before You choose to continue the policy after the Age 100 Anniversary.**

UR69 CA

Exhibit 3
Page 92

**Monthly Rider Charges**
There is no charge for this rider.

**Termination of This Rider**
This rider will terminate on the first of any of the following events to occur:

1. the date of full surrender or lapse of the basic policy;

2. Our receipt of Your Written Request to cancel this rider, which shall be effective as of the next Monthly Calculation Day; or

3. the date of the insured's death.

Upon termination of this rider the "Death Benefit Following Insured's Age 100" provision in the policy will become operative including any consequent reduction in death benefit to equal the Policy Value. No retroactive assessment will be made for monthly deductions waived under this rider.

PHL Variable Insurance Company

*Dona D. Young*

Chairman, President
and Chief Executive Officer

UR69 CA

# Life Plan Options Rider

This rider is part of the policy to which it is attached.  Except as stated in this rider, it is subject to all of the provisions contained in the policy.

## DEFINITIONS

Option Review Period
The 90-day period immediately preceding the 5th, 10th and 15th Policy Anniversaries.

Individual Term Life Rider
As used in this rider form "Individual Term Life Rider" refers to any of the following riders: Individual Term Rider, Individual Term Insurance Rider, Policy Term Rider, Policy Term Insurance Rider, Phoenix Individual Edge Term Rider, or the Variable Policy Term Rider.

## OPTION BENEFITS

Increased Coverage Determination without Medical Exam
Policies that include both this rider and the Individual Term Life Rider are eligible during each Option Review Period, while both such riders are in effect, for an increase in their term insurance rider amount up to a maximum lifetime increase of $1,000,000, with underwriting and our agreement to such increase determined without the inconvenience of an additional medical exam.  Our other ordinary underwriting rules will continue to apply and thus the increase in coverage is still subject to our normal underwriting approval.

Other conditions that apply to this option are as follows:
- The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.
- The insured must be attained age 65 or younger on the last day of the Option Review Period.
- The risk classification of the insured must be standard through Table D (200%) at original issue of the basic policy.
- The insured must be alive and meet our underwriting requirements at the time of your request for the increase in term rider face amount.
- The Individual Term Life Rider must either already be attached to the policy or then currently approved and available for sale in the state of applicable jurisdiction.
- There is a maximum lifetime increase of $1,000,000 per insured life.

Reduced Coverage without Surrender Charge
During each Option Review Period you may request a decrease in the face amount of the policy without our assessment of the partial surrender charge that, under the terms of your basic policy, would otherwise apply.  In such case the surrender charge remaining under the policy will continue to be calculated as if such decrease in face amount had not been made.

Other conditions that apply to this option are as follows:
- The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.
- Total option reductions of the basic policy face amount may not exceed the lesser of 50% of the initial basic policy face amount or $5,000,000 in combined aggregate of all option reductions for all Our policies on the same insured.

UR73

Exchange for Annuity without Surrender Charge

During each Option Review Period beginning with the 90-day period preceding the 10th policy anniversary, you may request that the policy be surrendered as part of an exchange request to an eligible annuity offered by us. In such an exchange, we would not assess the surrender charge that would otherwise apply. In such case, the new annuity will reflect the usual surrender charges that would ordinarily apply for new business.

Other conditions that apply to this option are as follows:

- The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.

## TERMINATION OF THIS RIDER

This rider will terminate on the first of any of the following events to occur:

1. exercise of the Exchange for Annuity without Surrender Charge Option;

2. the 15th policy anniversary;

3. termination of the basic policy.

PHL Variable Insurance Company

*Dona D. Young*

Chairman, President
and Chief Executive Officer

UR73

2

Exhibit 3
Page 95

# EXCHANGE OF INSURED OPTION RIDER

This rider is part of the policy to which it is attached. Except as stated in this rider, it is subject to all of the provisions contained in the policy.

**The Exchange Option**
While this rider is in effect and subject to its terms, you have the option to exchange your policy ("the exchange policy") for a new policy on the life of a substitute insured.

**How to Exercise This Option**
To exercise this option, You must file an application with Us at Our Main Administrative Office.  It must be signed by You. We must also receive:

1.  Evidence that You have a satisfactory insurable interest in the life of the substitute insured.

2.  Evidence that the substitute insured is insurable under our established practice in the selection of risks for the amount and plan applied for.  Selection of risks includes health and non-health factors.

3.  The release of any lien against or assignment of your policy.  You may instead submit written approval by the lienholder or assigns of the exchange policy in a form satisfactory to Us with such other documents as We may reasonably require.

4.  The surrender and release of the exchange policy.

5.  Payment of any amounts due to Us for the exchange as described in the Exchange Adjustments.

Unless otherwise provided in the application, the owner and the beneficiary of the new policy will be the same as under the exchange policy.  Any subsequent changes will be governed by provisions of the new policy.

The Date of Exchange will be the policy anniversary following the later of:

1.  Our receipt of the application;

2.  Payment of the Exchange Adjustments, if any; and

3.  Our approval of the insurable interest.

The new policy will take effect on the Date of Exchange. When the new policy takes effect, the exchange policy will terminate.

**The New Policy**
The Policy Date of the new policy will be the Date of Exchange.

The issue age of the Insured under the new policy will be determined based upon the substitute insured's age on his or her birthday nearest the date of issue of the new policy.

The new policy on the life of the substitute insured will be written on any plan of universal life insurance issued with a level face amount issued by Us at the time of the exchange. The new policy will be subject to Our published issue rules (e.g., age and amount limits) for the plan chosen which are in effect at that time. The risk classification and any exclusions applicable to the new policy will be determined in accordance with Our rules and practices in effect on the date of exchange. The rates for the new policy will be based on Our published rates in effect on the Date of Exchange.

Exhibit 3    RUR77ZZ1

Page 96

The face amount of the new policy will equal the basic face amount of the exchange policy without regard to any riders under the exchange policy, except as provided below.  The Policy Value of the exchange policy on the Date of Exchange will be applied as premium to the new policy, but without any issue or sales charge applied under the new policy.

**Exchange Adjustments**
The owner must pay an amount equal to the excess, if any, of the surrender charge in effect on the exchange policy over the surrender charge for the new policy.  All such surrender charges will be determined as of the Date of Exchange.

In some cases, the amount of Policy Value that may be applied to the new policy may exceed the premium limit for the new policy. In that event, We will return such excess Policy Value to You in cash.

**Monthly Rider Charges**
There are no Monthly Charges for coverage under this rider.


**Termination of This Rider**
This rider will terminate on the first of any of the following events to occur:

1.   Termination of the exchange policy;

2.   Lapse or Exchange of the exchange policy;

3.   Our receipt at Our Home Office of a Written Request to cancel this rider; and

4.   Death of the insured.


PHL Variable Insurance Company

*Dona D. Young*

Chairman, President
and Chief Executive Officer

# PHOENIX

P.O. Box 8027
Boston, MA 02269-8027
Underwriting Service Center

**Policy Acceptance Form**

Company is defined as indicated below:

☐ Phoenix Life and Annuity Company
☒ PHL Variable Insurance Company

| Agency: | E3234 | Insured(s): |
|---|---|---|
| Policy Number: | 97514213 | |

**DECLARATION:**
The insured(s) declares that the statements made in the application remain full, complete, and true as of this date; that since the date of the application, no insured has applied to any insurance company or society without receiving the exact policy applied for or had any symptoms, diseases or disorders for which advice has been sought.

All insured(s) must attest to the above declaration. If any insured cannot attest to the above statement, please so indicate by checking the box next to that insured's signature below and complete a Health Statement Form for that insured. **PLEASE NOTE: Home Office approval of the Health Statement Form is necessary before the policy is in effect.**

**AMENDMENTS:**   The application for Policy No. 97514213 is amended as follows:

   **None.**

It is agreed that the above declaration and amendments are part of the application and shall be part of the policy.

**DELIVERY RECEIPT:** To be completed when policy is delivered. If a Health Statement Form is required, please consult with your agent before completing this section.

This certifies that as the policy owner, (check ONE only):

☑ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information.

☐ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information, and authorize_____ to hold such policy on my behalf.

| Date | 9/15/05 | | Insured(s) | |
|---|---|---|---|---|
| Signed at | IRVING, CA | | | |
| Witness | | | | |
| Owner | | | | |
| Owner | | (if other than Insured) | | |

If owner is a firm or corporation, please give the name of the firm or corporation and the title of the officer signing for the firm or corporation.

**AGENT:** ORIGINAL to Underwriting and Issue, YELLOW copy to Agent, PINK copy to remain with policy.

HR11

Exhibit 3
Page 98

HHR11ZZ1   10-99

CERTIFIED   9062106z

# ◆PHOENIX®
PO Box 8027
Boston MA 02266-8027

**Application for Life Insurance**
**Part I**

Company is defined as indicated below: (check one)
☐ Phoenix Life Insurance Company   ☒ PHL Variable Insurance Company   ☐ Phoenix Life and Annuity Company

## Section I - Proposed Insured

| Print Name as it is to appear on policy (First, Middle, Last) | Sex | Birthdate (Month, Day, Year) |
|---|---|---|
| | | |

| Birthplace | United States Citizen | Social Security Number |
|---|---|---|
| | | |

| Driver's License Number (State & SID) | Marital Status | |
|---|---|---|

| Home Address (Include Street, Apt. Number, City, State, and ZIP Code) | Home Telephone Number ( ) |
|---|---|

Give Prior Address if at address less than 2 years (Include Street, Apt. Number, City, State, and ZIP Code)

| Current Occupation and Duties | Employer | Length of Employment |
|---|---|---|

| Business Address (Include Street, Apt. Number, City, State, and ZIP Code) | Bus. Phone No. (Include Ext.) ( ) |
|---|---|

Email Address

## Section II - Ownership

☐ A. Insured
☐ B. Successive Owners
☐ B1. Owners Jointly
☐ C. Corporation, its successors or assigns (include state of incorporation)

☐ D. Partnership (Include Name of all Partners - if partnership is limited, indicate which partners are general partners)
☐ E. Sole Proprietorship (Include Name of Sole Proprietor)
☒ F. Trust (Include Name and Date of Trust, Name of Trustee(s) and Grantor)

(Complete section below if B, C, D, E or F are checked)

If Owner is other than Proposed Insured, Premium Notice will be sent to:

Owner's Name _____ Irrevocable Insurance Trust; Harvey Schultzer, Trustee   Trustdate: 8-11-05; Grantor: Ruth Gottlieb

Mailing Address _32393 Windemere Road, Lake Elsinore, CA 92523_

Owner's Email Address _N/A_

Social Security or Tax I.D. Number _applied for_   Relationship _Family Trust_ Date of Birth _8-11-05_

**Contingent Owner**

Name _N/A_   Date of Birth _____

Relationship _____

**Ultimate Owner:** Check one. If none checked, insured will be ultimate owner.
☐ Insured   ☐ Executor or administrator of the survivor of the primary and contingent owners

## Section III - Beneficiary Designation

| Primary Beneficiary | Relationship to Proposed Insured | Date of Birth (if Available) | Social Security No. (if known) |
|---|---|---|---|
| Irrevocable Insurance Trust Harvey Schultzer, trustee dated 8/11/05 | Family Trust | 8-11-05 | applied for |

☐ If this box is checked, each of the Contingent Beneficiaries listed shall receive an equal interest.

| First Contingent Beneficiary | Relationship to Proposed Insured | Date of Birth (if Available) | Social Security No. (if known) |
|---|---|---|---|
| | | | |

| Second Contingent Beneficiary | Relationship to Proposed Insured | Date of Birth (if Available) | Social Security No. (if known) |
|---|---|---|---|
| | | | |

If Trust is primary beneficiary: (check one)
☐ Trust under Insured's will
☒ Inter vivos - Name of Trustee _Harvey Schultzer_
Date of Trust _8/11/05_

To qualify for payment, beneficiary must be living: (Check A or B, otherwise A will apply)
☐ A. at the Proposed Insured's death.   ☐ B. on the 30th day after the date of the Proposed Insured's death.

OL2773   1 of 6   v04191712334826   4-02

Exhibit 3
Page 99

## Section IV - Coverage Applied For

| Plan of Insurance | Basic Policy Amount |
|---|---|
| Phoenix Accumulator UL II | $ 4,500,000 |

## Section V - VARIABLE/UNIVERSAL PLANS of Insurance - Riders and Features

| First Year Anticipated, BILLED Premium (Excluding 1035 Exchange, Lump Sum Funds, etc.) 202,500 | Subsequent Planned Annual Premium 125,000 |
|---|---|

☐ Disability Waiver of a Specified Amount

   Amount $_____

☐ Accidental Death Benefit Rider

☐ Death Benefit Protection Rider

   ☐ Age 70  ☐ Age 80  ☐ Age 100

☐ Purchase Protector _____ units

☐ Child's Term Rider

☐ Family Term Rider

☐ Living Benefit Rider

☐ Guaranteed Death Benefit Rider

☐ Guaranteed Extension Rider

☐ Cash Value Accumulation Rider

☒ Age 100 + Rider

☐ Individual Term Rider $ _____

**Death Benefit Option:** (check one) If none checked, Option 1 will apply.

   ☒ Option 1 - Level Face Amount

   ☐ Option 2 - Increasing Face Amount

**Face Amount Increase Options:**

   ☐ _____% percentage increase

   ☐ $ _____ Fixed Dollar Increase

   ☐ Increase Equal to Premiums Paid

**Policy Option:** (check one) If none checked, Option A will apply.

   ☐ Policy Option A

   ☐ Policy Option B

   ☐ Policy Option C

☐ Other _____

☐ Other _____

☐ Other _____

☐ Other _____

## Temporary Money Market Allocation

If the state of issue does not require refund of premium during the Right To Cancel Period, but you prefer to temporarily allocate your premiums to the Money Market subaccount until the end of the Right to Cancel Period, as stated in the policy, indicate: ☐ Yes ☐ No

## Telephone/Electronic Authorization

I will receive this privilege automatically. By checking "Yes", I am authorizing and directing the Company to act on telephone or electronic instructions from my licensed agent who can furnish proper identification. The Company will use reasonable procedures to confirm that these instructions are authorized and genuine. As long as these procedures are followed, the Company and its affiliates and their directors, trustees, officers, employees, representatives and/or agents, will be held harmless for any claim, liability, loss or cost. ☒ Yes ☐ No

## Electronic Delivery Authorization

By checking "Yes," I am authorizing the Company to provide my statements, prospectuses and other information electronically if available. I understand that I must have Internet access to use this service and there may be access fees charged by the Internet service provider. ☒ Yes ☐ No

## Section VI - Suitability

Do you understand that if you have purchased a Variable Life Policy and the Death Benefit may be variable or fixed under certain conditions and that the Death Benefit and Cash Values under any Variable Policy may increase or decrease in amount or duration based on the investment experience of the underlying subaccounts? ☐ Yes ☐ No

If you are purchasing a Variable Life Policy, do you believe it is suitable to meet your financial objectives? ☐ Yes ☐ No

If I have purchased a Variable Life Policy, I confirm that I have received the prospectus for that policy and its underlying funds.

Illustrations of benefits including death benefits, policy values and cash surrender values are available on request.

## Section VII - Complete if Temporary Insurance is Requested

If either of the following questions are answered "Yes" or left blank, no agent or broker is authorized to accept money and a Temporary Insurance Agreement may not be issued, and no coverage will take effect.

| Yes | No | |
|---|---|---|
| ☐ | ☒ | 1. Within the past two years have you been treated for heart disease, stroke, or cancer or had such treatment recommended? |
| ☐ | ☒ | 2. Within the past 60 days have you been scheduled or advised to have any diagnostic test (excluding HIV) tests or surgery not yet performed? |

$_____ has been paid by _____ to the Licensed Agent/Registered Representative indicated in this application, for proposed insurance applied for in this application. This sum is to be applied in accordance with and subject to the terms of the **Temporary Insurance Receipt** bearing the same number as this application.

Exhibit 3
Page 100

**Section VIII - TERM/WHOLE LIFE PLANS of Insurance - Riders and Features**

☐ Accidental Death Benefit
☐ Disability Waiver of Premium on Insured
☐ Purchase Protector _____ units
☐ Family Protection
☐ Children's Protection _____ units
☐ Living Benefit Rider
☐ Other _____

Cost of Living is automatic (No COL for Term products) unless this box is checked ☐ I do not desire Cost of Living

Additional Death Benefit Riders:
Primary Insurance Term Rider (PITR) $ _____
Other Rider Name _____ Amount $ _____

☐ Paid-Up Additions Purchase Options Rider (PAPOR) (check one)
   ☐ PAPOR A-Flexible   ☐ PAPOR B-Flexible with Optionterm
   Number of years payable _____
Intended premium payments for the first 7 years:
Year 1 _____         Year 5 _____
Year 2 _____         Year 6 _____
Year 3 _____         Year 7 _____
Year 4 _____         Maximum Amount $ _____

**Dividend Option:**

☐ Optionterm
   Optionterm Death Benefit $ _____
   Premium Paying Coverage ☐ Yes ☐ No or
   % of Increase _____
☐ Accumulate at Interest (ACCUM)
☐ Paid-up Additional Insurance (PUA)
☐ One Year Term with Balance to:
   ☐ Cash   ☐ PUA   ☐ ACCUM   ☐ RP
☐ Reduce Premium (RP)
☐ Cash
☐ Other _____
☐ Other _____

Automatic Premium Loan, if applicable
☐ Yes ☐ No

Policy Loan Interest Rate, if applicable (If none checked, "Variable" will apply.)
☐ Variable ☐ Fixed

**Section IX - Mode of Premium Payment -** (Please note, there is a higher cost associated with the purchase of a Whole Life or Term policy, if the mode of payment is other than on an annual pay basis. Please consult with your Licensed Agent/Registered Representative.)

☑ Annual                        ☐ Quarterly                  ☐ Semi-Annual
☐ Monthly (Variable Life Insurance only)   ☐ PCS (Phoenix Check-O-Matic Service)
                                Minimum Monthly Check for Each Service - $25.00

Multiple Billing Option - Give # or Details _____
☐ List Bill ☐ Employee Insurance Counseling Service (EICS) ☐ Salary Allotment ☐ Pension ☐ Money Purchase Pension
☐ Other _____

If electing PCS, complete the following:
Existing Policy Number or PCS File Number _____

**Authorization Agreement for Preauthorized Payments**
I (we) hereby authorize the Company (Note: Company is defined as indicated on page 1 of application) to initiate debit entries to my (our) checking account and the depository named below.

**Information for New Account**
Attach a void check to furnish encoding details.
If the depositor's name is not imprinted on the check, fill it in here exactly as it appears in the bank records.

Attach Void Check Here

Signature of depositor (if different from owner) _____

Send premium notices to: (in addition to owner)
☐ Insured at: ☐ Home Address ☐ Business Address
☑ Other (Name, Relationship to Owner and Address) _Owner; premiums will be wired annually._ _____

OL2773          3 of 6          v04191712334826          4-02

Exhibit 3
Page 101

## Section X - Existing Life Insurance

Describe all additional coverage in force. Include individual and group. If no coverage inforce, check here ☐.

| Company | Issue Date | Plan | Amount | Personal / Business | |
|---------|-----------|------|--------|---------|---------|
| Mass Mutual | 1991 | UL | $1,500,000 | ☑ | ☐ |
| | | | $ | ☐ | ☐ |
| | | | $ | ☐ | ☐ |

Total Life Insurance in force (if none, indicate) $ 1.5mm _____  Total Accidental Death Benefit in force (if none, indicate) $ _____

| Yes | No | | |
|-----|----|----|----|
| ☑ | ☐ | 1. | Are there any life insurance policies or annuity contracts, owned by, or on the life of, the applicants or the insureds or the owner(s) or the annuitant? |
| ☐ | ☑ | 2. | With this policy, do you plan to replace (in whole or in part) now or in the future any existing life insurance or annuity contract in force with this policy? |
| ☐ | ☑ | 3. | Do you plan to utilize values from any existing life insurance policy or annuity contract (through loans, surrenders or otherwise) to pay any initial or subsequent premium(s) for this policy? |

For all "Yes" answers above, please provide the following information

| Company | Issue Date | Plan | Amount | Personal / Business | |
|---------|-----------|------|--------|---------|---------|
| Mass Mutual | 1991 | UL | $1,500,000 | ☑ | ☐ |
| | | | $ | ☐ | ☐ |
| | | | $ | ☐ | ☐ |

## Section XI - Income

| a. Earned Income Uncarned | b. Independent Income | c. Net Worth |
|---------------------------|----------------------|--------------|
| $174,000 | | $5.7mm |

## Section XII - Additional Information

| Yes | No | | |
|-----|----|----|----|
| | | 1. | Have you used tobacco or nicotine products in any form in the last 10 years? If "Yes," please circle the product(s) used: cigarettes, cigars, pipes, snuff, smokeless or chewing tobacco, nicotine patch or gum. If "Yes," check one: ☐ Use currently ☐ Date quit_____ |
| | | 2. | Have you ever applied for life, accident, or health insurance and been declined, postponed, or been offered a policy differing in plan, amount or premium rate from that applied for? (If "Yes," give date, company and reason). |
| | | 3. | Are you negotiating for other insurance? (If "Yes," name companies and total amount to be placed in force.) |
| | | 4. | Do you intend to live or travel outside the United States or Canada? (If "Yes," state where and for how long). |
| | | 5. | Have you flown during the past three years as a pilot, student pilot or crew member? (If "Yes," complete Aviation Questionnaire). |
| | | 6. | Have you participated in the past 3 years or plan to engage in any extreme sport activities such as motorized vehicle, or parachute jumping, or underwater diving, or any other extreme avocation? (If "Yes," complete Avocation Questionnaire). |
| | | 7. | Have you in the past three years been the driver of a motor vehicle involved in an accident, or charged with a moving violation of any motor vehicle law, or had your driver's license suspended or revoked? |
| | | 8. | Have you ever been convicted of a felony or do you have charges pending? |

Give full details for all "Yes" answers above. If necessary, use an additional piece of paper and please sign it.

| Question # | Details |
|-----------|---------|
| | |
| | |
| | |
| | |
| | |
| | |

OL2773          4 of 6          v04191712334826          4-02

Exhibit 3
Page 102

## Section XIII - Medical History (Not necessary to complete if medical or paramedical exam has been ordered)

| Height | Weight | | | | Has your weight changed by 10 pounds or more in the past 2 years? If "yes", how much _____ pounds  ☐ Gain  ☐ Loss | | | |
|--------|--------|--|--|--|---|--|--|--|

| Family History: | Age if Alive | Age at Death | If alive, indicate health problems or if deceased, indicate cause of death: | Family History: | Age if Alive | Age at Death | If alive, indicate health problems or if deceased, indicate cause of death: |
|---|---|---|---|---|---|---|---|
| Father ☐ Alive ☐ Deceased | | | | Mother ☐ Alive ☐ Deceased | | | |

| Personal Physician: Please provide the name and address of your personal physician or health care provider, date of most recent visit, reason for visit, and results of treatment (if any): | Has anyone in your immediate family developed any hereditary condition, cancer, or heart disease before age 60? ☐ Yes (please provide details below)  ☐ No |
|---|---|

**Have you ever had, or been told by a physician or other health care provider that you have:**

Please provide details of "YES" answers (include question number, diagnosis, date of occurrence, hospital or treating physician's name and address, and current status). Use OL1590 if additional space is necessary to record all details.

1. High blood pressure or hypertension? ☐ Yes ☐ No
2. Pain, pressure, or discomfort in the chest, angina pectoris, palpitations, swelling of the ankles, or undue shortness of breath? ☐ Yes ☐ No
3. Heart disease, coronary artery disease, cardiomyopathy, heart failure, atrial fibrillation, heart rhythm abnormality, heart murmur, congenital heart disease or valvular heart disease? ☐ Yes ☐ No
4. Peripheral vascular disease, claudication, narrowing or blockage of arteries or veins? ☐ Yes ☐ No
5. Asthma, pulmonary fibrosis, chronic cough, emphysema, pneumonia, or any other lung disease? ☐ Yes ☐ No
6. Neurologic disease, seizures, fainting, falls, concussion, stroke, transient ischemic attack (TIA), tremor, neuropathy, weakness, paralysis, Parkinson's disease, memory loss, dementia, or any other disease of the brain or nervous system? ☐ Yes ☐ No
7. Depression, bipolar disorder, schizophrenia, anxiety, or other psychiatric illness? ☐ Yes ☐ No
8. Arthritis, lupus, or any musculoskeletal or skin disorder? ☐ Yes ☐ No
9. Ulcers, abdominal pain, colitis, Crohn's disease, gall bladder disease, liver disease, hepatitis, jaundice, pancreatitis, or any other disease of the gastrointestinal system? ☐ Yes ☐ No
10. Diabetes, kidney disease, kidney stones, bladder disorder, prostate disorder, protein or blood in the urine? ☐ Yes ☐ No
11. Endocrine disorder, including disorder of the thyroid, parathyroid, adrenal, or pituitary glands? ☐ Yes ☐ No
12. Acquired Immune Deficiency Syndrome (AIDS) or any other immunologic disorder? ☐ Yes ☐ No
13. Anemia, bleeding or clotting disorder, or any other disorder of the blood or bone marrow? ☐ Yes ☐ No
14. Cancer of any type, tumor (benign or malignant), leukemia, lymphoma, or Hodgkin's disease? ☐ Yes ☐ No

15. Are you taking any kind of medicine, therapy, or treatment regularly or at frequent intervals? ☐ Yes ☐ No
16. Have you ever been treated for alcoholism or been advised to limit or stop your use of alcohol? ☐ Yes ☐ No
17. Have you ever used narcotics, barbiturates, amphetamines, hallucinogens, or any prescription drug except in accordance with a physician's instructions? ☐ Yes ☐ No
18. Have you ever been a patient in any hospital, treatment center, or similar facility within the last 10 years? ☐ Yes ☐ No
19. Have you had, or been advised to have, any surgery, X-rays, electrocardiograms, blood studies (excluding HIV or AIDS tests), or other tests within the last 5 years? ☐ Yes ☐ No
20. Other than above, have you had any other physical or psychological disorder or been treated by a physician or other health care provider for any reason within the past 5 years? ☐ Yes ☐ No

Phoenix reserves the right to require additional medical information, medical examination or testing to complete the underwriting process.

OL2773                              5 of 6              v04191712334826                    4-02

Exhibit 3
Page 103

## Authorization To Obtain Information

I authorize any physician, health care provider, hospital, clinic or other medically-related facility, insurance company or the Medical Information Bureau (MIB), having any records or knowledge of me or my health, to provide any such information to Phoenix Life Insurance Company and its affiliated insurers (Phoenix) or its reinsurers. I authorize any of the above sources to release to Phoenix or its reinsurers any of my information relating to alcohol use, drug use and mental health care.

Medical information will be used only for the purpose of risk evaluation and determining eligibility for benefits under any policies issued. Phoenix may disclose information it has obtained to others as permitted or required by law, including the MIB, our reinsurers and other persons or entities performing business or legal services in connection with this application, any contract issued pursuant to it or in connection with the determination of eligibility for benefits under an existing policy. Information that is not personally identifiable may be used for insurance statistical studies.

If insurance on any minor child is applied for, this authorization extends to records and knowledge of that child and that child's health. To facilitate rapid submission of information, I authorize all of the above sources, except MIB, to give such records or knowledge to any agency employed by Phoenix to collect and transmit such information.

I authorize consumer reporting agencies, insurance companies, motor vehicle departments, my attorneys, accountants and business associates and the MIB to provide any information to Phoenix or its reinsurers that may affect my insurability. This may include information about my occupation, participation in hazardous activities, motor vehicle record, foreign travel, finances, and other insurance coverage in place.

I acknowledge that I have received a copy of the Notice of Information Practices, including information about Investigative Consumer Reports and the Medical Information Bureau. I authorize the preparation of an investigative consumer report.

This authorization shall continue to be valid for thirty months from the date it is signed unless otherwise required by law. A photocopy of this signed authorization shall be as valid as the original. This authorization may be revoked by writing to Phoenix prior to the time the insurance coverage has been placed in force. I understand my authorized representative or I may receive a copy of this authorization on request.

☐ I do  ☐ I do not (check one) require that I be interviewed in connection with any investigative consumer report that may be prepared.

I have reviewed this application, and the statements made herein are those of the proposed insured and all such statements made by the proposed insured in Part I or and in Part II of this application are full, complete, and true to the best knowledge and belief of the undersigned and have been correctly recorded.

I understand that i) no statement made to, or information acquired by any Licensed Agent/Registered Representative who takes this application, shall bind the Company unless stated in Part I and/or Part II of this application, and ii) the Licensed Agent/Registered Representative has no authority to make, modify, alter or discharge any contract thereby applied for.

I understand and agree that the insurance applied for shall not take effect unless and until each of the following has occurred: the policy has been issued by the Company; the premium required for issuance of the policy has been paid in full during the lifetime of the insured; all the representations made in the application remain true, complete and accurate as of the latest of such dates, and there has been no change in the health of any proposed insured that would change the answers to any of the questions in the application

I understand that if there is any change in my health or physical condition, or if I visit a physician or am hospitalized, subsequent to the date I complete the application or provide any information to be contained in the application, I will inform the Company as soon as possible.

Under penalty of perjury, I confirm that (a) the Social Security or Tax Identification Number shown above is correct, and (b) that I am not subject to back-up withholding. (Strike this out and initial if not true).

Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud as determined by a court of competent jurisdiction.

If I have applied for the Living Benefit Rider, I confirm that I have received a copy of the disclosure form, Summary of Coverage for Accelerated Benefit Rider

| Proposed | | State Signed in | Witness (Must be signed in presence of Proposed Insured) | | Date 8-15-05 |
| --- | --- | --- | --- | --- | --- |
| Owner's | | State Signed in | Witness (Must be signed in presence of Owner) | | Date 8-16-05 |
| Parent's Signature (for minor insured) | | State Signed in | Witness (Must be signed in presence of Parent) | | Date |

The Producer hereby confirms he/she has truly and accurately recorded on the application the information supplied by the Proposed Insured; and that he/she is qualified and authorized to discuss the contract herein applied for.

Will the proposed insured replace (in whole or in part) any existing life insurance or annuity contract in force with the policy applied for? ☐ Yes ☑ No

Will the proposed insured utilize values from another insurance policy (through loans, surrenders or otherwise) or annuity to pay for the initial or subsequent premium(s) for the policy applied for? ☐ Yes ☑ No

Are there any life insurance policies or annuity contracts owned by or on the life of the applicants or the insureds or the owner(s) or the annuitant? ☑ Yes ☐ No

| Lic.Agt./Reg. Rep's Name (Print) Lindsay Spalding-Vagolinzer | Lic. Agt./Reg. Rep's Email Address lspalding@sfanet.com |
| --- | --- |
| Lic.Agt./Reg. Rep's Signature X  Date 8-15-05 | Lic. Agt./Reg. Rep's ID No. | Lic Agt./Reg. Rep's Telephone No. 805-377-4228 |
| Broker / Dealer Name and Address | Broker/Dealer Number |

| OL2773 | 6 of 6 | v04191712334826 | 4-02 |
| --- | --- | --- | --- |

Exhibit 3
Page 104

# ◆ PHOENIX

Phoenix Life Insurance Company and its subsidiaries
100 Bright Meadow Boulevard
PO Box 1900
Enfield CT 06083-1900
Underwriting and Issue

**Application Part II**

Examination to be made in private. Please read all questions to applicant. Answers to be recorded in the examiner's own handwriting.

NAME OF PROPOSED INSURED                          SEX          DATE OF BIRTH                    OCCUPATION

| 1. Family Record | Age | Health | Age at Death | Cause of Death |
|---|---|---|---|---|
| Father | | | | |
| Mother | | | | |
| Brothers&Sisters No. Living | | | | |
| No. Dead | | | | |

6. NAME OF PERSONAL PHYSICIAN

ADDRESS

DATE LAST SEEN, REASON AND OUTCOME

Please Check (✓) Appropriate        Yes   No

2. To your knowledge, have any of your parents, brothers or sisters had diabetes?

3. A. Have you ever been treated for alcoholism or any drug habit?
   B. Have you ever used narcotics, barbiturates, amphetamines, hallucinogens or any prescription drug except in accordance with a physician's instructions?

4. Have you sought treatment or consulted a physician for any reason in the last 5 years, including routine examinations or check-ups? (Give full details.)

5. To the best of your knowledge have you ever had, or been treated by any physician or other practitioner that you had:
   A. High blood pressure?
   B. Pain, pressure, or discomfort in the chest, palpitation, swelling of the ankles, or undue shortness of breath?
   C. Heart disease, heart murmur, angina pectoris, or coronary disease?
   D. Rheumatic fever, chorea, rheumatism, or arthritis?
   E. Pneumonia, pleurisy, asthma, tuberculosis, chronic cough, or any other disease of the lungs?
   F. Epilepsy, fainting spells, concussion, skull fracture, severe headaches, dizziness, mental disorder or nervous breakdown?
   G. Indigestion, stomach or duodenal ulcer, colitis, or other disease of the intestines or rectum, gall bladder disorder, jaundice, hepatitis, or liver disorder?
   H. Kidney disease, nephritis, kidney stone, bladder trouble, or albumin, sugar, pus, or blood in the urine?
   I. Disease of the reproductive organs, prostate trouble, abnormal menstruation, complicated pregnancies or disease of the breasts?
   J. Diabetes, venereal disease, gout, thyroid disease, enlarged glands, tumor, polyp, cancer or skin disease?
   K. Disease or disorder of blood or blood formation?
   L. Been tested positive for exposure to the HIV infection or diagnosed as having ARC or AIDS caused by the HIV infection, or other sickness or condition derived from such infection?
   M. Paralysis, deformity, or any injury or disorder of the muscles, bones, joints, spine or back?
   N. Other than above , any physical or mental disorder, operation, or injury within the past 5 years?

7. A. Have you ever had a surgical operation or been a patient   YES   NO
      in any hospital, sanatorium, or similar institution?
   B. Have you had, or been advised to have, any surgical operations, X-rays, electrocardiograms, blood studies, or other tests within the last 5 years?
   C. Has a physician ever advised you to diet?
   D. Is there any kind of medicine which you take regularly or at frequent intervals?

8. Have you ever applied for or received sickness or accident benefits or a disability pension from any source?

9. A. Have you ever been declined, postponed, rated, or ridered for insurance?
   B. Are you negotiating for other insurance? (if 'yes' name companies and amounts.)

10. DETAILS of all questions answered 'yes.' Include Dates, Names, and Addresses of all doctors consulted, Duration, Treatment, and Results. Please indicate question # you are responding to:

    Question #

Any person who knowingly and with intent to injure, defraud, or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

The foregoing statements are full, complete, and true to the best of my knowledge and belief.

DATED AT (City and State)                    DATE   8/01/05

WITNESS (Examiner)  Michael Haims, M.D.    PROPOSED INSURED (SIGN FULL NAME)

OL1212FL.1



**FLEXIBLE PREMIUM LIFE INSURANCE POLICY**
Death Benefit payable if Insured dies While the Policy is In Force
Not eligible for annual dividends

U606 CA

Exhibit 3
Page 106

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION

### POLICY NO.   97514213

ANY CORRESPONDENCE REGARDING THIS POLICY SUMMARY MAY BE FORWARDED EITHER TO OUR MAIN ADMINISTRATIVE OFFICE OR THE AGENT LISTED BELOW.

PHL Variable Insurance Company
Main Administrative Office
P.O. Box 8027
Boston, MA 02266-8027

AGENT -   LINDSAY C. SPALDING-JAGOL

This policy summary was prepared on        AUGUST 23, 2005   for the life of: █████████

Issue Age and Sex: █████████

Initial Face Amount    $4,500,000.00

The coverage consists of a flexible premium life insurance policy. The death benefit is based on the death benefit option then in effect but will never be less than the minimum death benefit described in the Minimum Death Benefit provision in Part 7 of the Policy. The death benefit option currently in effect for this policy is Option A – Face Amount.

You may change the death benefit option anytime. The premium is adjustable and may be paid at any time and in any amount not less than the minimum allowed by our rules.

THIS POLICY IS NON-PARTICIPATING.

Please refer to this policy's Schedule Pages for details on any riders.

---

THE PROJECTIONS ILLUSTRATED BELOW ARE PROVIDED INSTEAD OF A TABLE OF VALUES IN THE POLICY. THEY ASSUME THAT YOU PAY, AS SCHEDULED, THE PLANNED ANNUAL PREMIUM SHOWN ON PAGE 1 OF THE POLICY SCHEDULE PAGES AND THAT YOU MAKE NO PARTIAL WITHDRAWAL, POLICY LOAN, OR POLICY CHANGE. THE VALUES AND DEATH BENEFITS MAY VARY DEPENDING ON WHEN YOU PAY PREMIUMS AND HOW MUCH YOU PAY. THEY MAY NOT BE AS FAVORABLE IF YOU HAVE AN OUTSTANDING POLICY LOAN.

THE VALUES IN THE "BASED ON GUARANTEED RATES" COLUMNS ARE CALCULATED USING THE GUARANTEED MAXIMUM INSURANCE RATES FROM YOUR POLICY AND AN EFFECTIVE ANNUAL INTEREST RATE OF 4%.

THE VALUES IN THE "BASED ON CURRENT RATES" COLUMNS ARE CALCULATED USING THE CURRENT COST OF INSURANCE RATES AND THE CURRENT EFFECTIVE ANNUAL INTEREST RATE OF 5.25%. THE CURRENT RATES MAY BE CHANGED AT OUR SOLE DISCRETION BUT WILL NOT BE LESS FAVORABLE THAN THOSE GUARANTEED IN THE POLICY.

U606ZZI1

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION

### POLICY NO.  97514213

### PROJECTED POLICY VALUES BASED ON GUARANTEED RATES

| AGE OF INSURED | YEAR | PLANNED ANNUAL PREMIUM | END OF YEAR POLICY VALUES | END OF YEAR SURRENDER VALUES | BEGINNING OF YEAR TOTAL DEATH BENEFIT* |
|---|---|---|---|---|---|
| 73 | 01 | 202,500.00 | 58,417.19 | 0.00 | 4,500,000.00 |
| 74 | 02 | 125,000.00 | 36,306.44 | 0.00 | 4,500,000.00 |
| 75 | 03 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 76 | 04 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 77 | 05 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 78 | 06 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 79 | 07 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 80 | 08 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 81 | 09 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 82 | 10 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 83 | 11 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 84 | 12 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 85 | 13 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 86 | 14 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 87 | 15 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 88 | 16 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 89 | 17 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 90 | 18 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 91 | 19 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 92 | 20 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 93 | 21 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 94 | 22 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 95 | 23 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 96 | 24 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 97 | 25 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 98 | 26 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 99 | 27 | 125,000.00 | 0.00 | 0.00 | 0.00 |

DURING THE   3RD   YEAR USING GUARANTEED RATES YOUR POLICY WILL TERMINATE UNLESS THE PREMIUM IS INCREASED.

* Includes Death Benefit for the Individual Term Rider, if this rider is included in the contract.

This illustration does not reflect any premium limitations imposed by the Total Premium Limit of the policy.

Exhibit 3
Page 108

U606ZZI3

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION

### POLICY NO.  97514213

### PROJECTED POLICY VALUES BASED ON CURRENT RATES

| AGE OF INSURED | YEAR | PLANNED ANNUAL PREMIUM | END OF YEAR POLICY VALUES | END OF YEAR SURRENDER VALUES | BEGINNING OF YEAR TOTAL DEATH BENEFIT* |
|---|---|---|---|---|---|
| 73 | 01 | 202,500.00 | 135,210.12 | 0.00 | 4,500,000.00 |
| 74 | 02 | 125,000.00 | 202,974.45 | 0.00 | 4,500,000.00 |
| 75 | 03 | 125,000.00 | 268,054.80 | 30,200.92 | 4,500,000.00 |
| 76 | 04 | 125,000.00 | 333,092.29 | 105,697.90 | 4,500,000.00 |
| 77 | 05 | 125,000.00 | 400,926.76 | 183,798.80 | 4,500,000.00 |
| 78 | 06 | 125,000.00 | 474,445.50 | 267,402.94 | 4,500,000.00 |
| 79 | 07 | 125,000.00 | 548,717.46 | 351,600.69 | 4,500,000.00 |
| 80 | 08 | 125,000.00 | 624,930.42 | 437,583.61 | 4,500,000.00 |
| 81 | 09 | 125,000.00 | 704,612.66 | 526,851.79 | 4,500,000.00 |
| 82 | 10 | 125,000.00 | 789,870.78 | 621,463.01 | 4,500,000.00 |
| 83 | 11 | 125,000.00 | 882,683.95 | 723,329.79 | 4,500,000.00 |
| 84 | 12 | 125,000.00 | 975,548.33 | 824,877.64 | 4,500,000.00 |
| 85 | 13 | 125,000.00 | 1,068,528.71 | 963,228.71 | 4,500,000.00 |
| 86 | 14 | 125,000.00 | 1,158,825.89 | 1,106,175.89 | 4,500,000.00 |
| 87 | 15 | 125,000.00 | 1,249,133.25 | 1,249,133.25 | 4,500,000.00 |
| 88 | 16 | 125,000.00 | 1,291,538.97 | 1,291,538.97 | 4,500,000.00 |
| 89 | 17 | 125,000.00 | 1,324,421.27 | 1,324,421.27 | 4,500,000.00 |
| 90 | 18 | 125,000.00 | 1,346,326.30 | 1,346,326.30 | 4,500,000.00 |
| 91 | 19 | 125,000.00 | 1,355,502.13 | 1,355,502.13 | 4,500,000.00 |
| 92 | 20 | 125,000.00 | 1,349,834.38 | 1,349,834.38 | 4,500,000.00 |
| 93 | 21 | 125,000.00 | 1,326,709.71 | 1,326,709.71 | 4,500,000.00 |
| 94 | 22 | 125,000.00 | 1,282,895.63 | 1,282,895.63 | 4,500,000.00 |
| 95 | 23 | 125,000.00 | 1,214,365.69 | 1,214,365.69 | 4,500,000.00 |
| 96 | 24 | 125,000.00 | 1,116,049.75 | 1,116,049.75 | 4,500,000.00 |
| 97 | 25 | 125,000.00 | 981,536.48 | 981,536.48 | 4,500,000.00 |
| 98 | 26 | 125,000.00 | 802,651.30 | 802,651.30 | 4,500,000.00 |
| 99 | 27 | 125,000.00 | 568,926.48 | 568,926.48 | 4,500,000.00 |

* Includes Death Benefit for the Individual Term Rider, if this rider is included in the contract.

This illustration does not reflect any premium limitations imposed by the Total Premium Limit of the policy.

Exhibit 3
Page 109

U606ZZIA

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION

### POLICY NO.  97514213

| | GUARANTEED VALUES | | CURRENT VALUES | |
|---|---|---|---|---|
| | 10 YEAR | 20 YEAR | 10 YEAR | 20 YEAR |
| SURRENDER COST INDEX | 29.90 | 29.09 | 19.44 | 20.45 |
| NET PAYMENT COST INDEX | 29.90 | 29.09 | 29.90 | 29.09 |

An explanation of the intended use of these indices is provided in the Life Insurance Buyer's Guide. These indices are useful only for the comparison of relative cost of two or more similar policies. The planned annual premium less the annual cost of insurance for additional benefit riders is used for the basic policy premium in calculating the indices above.

NOTES:

1.  This policy has a variable policy loan rate. The policy loan rate for the first policy year is 5.54%. This rate is reviewed annually for adjustment based on the then current Moody's Average Corporate Bond Index.

2.  Lower current interest rates may be credited to any portion of the Policy Value you borrow against.

3.  Charges may be deducted, as described on Page 2 of the policy Schedule Pages, in the event of a partial withdrawal, face amount decrease or surrender of the policy.

4.  Surrender Value is calculated as of any date shown above: (1) by deducting, from the Policy Value on that date, the sum of any charges that would apply if the policy were surrendered as of that date; and (2) assuming there are no policy loans.

5.  The values and benefits illustrated in this statement reflect the Monthly Service Charge, Monthly Expense Charge, and Sales Charges as provided on Page 2 of the Schedule Pages.

Exhibit 3
Page 110

U606ZZIH

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION

### POLICY NO.   97514213

ANY CORRESPONDENCE REGARDING THIS POLICY SUMMARY MAY BE FORWARDED EITHER TO OUR MAIN ADMINISTRATIVE OFFICE OR THE AGENT LISTED BELOW.

PHL Variable Insurance Company
Main Administrative Office
P.O. Box 8027
Boston, MA 02266~8027

AGENT –   LINDSAY C. SPALDING~JAGOL

This policy summary was prepared on   AUGUST 23, 2005   for the life of:

███████████████

Issue Age and Sex: ██████████████

Initial Face Amount:   $4,500,000.00

The coverage consists of a flexible premium life insurance policy. The death benefit is based on the death benefit option then in effect but will never be less than the minimum death benefit described in the Minimum Death Benefit provision in Part 7 of the Policy. The death benefit option currently in effect for this policy is Option A – Face Amount.

You may change the death benefit option anytime. The premium is adjustable and may be paid at any time and in any amount not less than the minimum allowed by our rules.

THIS POLICY IS NON~PARTICIPATING.

Please refer to this policy's Schedule Pages for details on any riders.

THE PROJECTIONS ILLUSTRATED BELOW ARE PROVIDED INSTEAD OF A TABLE OF VALUES IN THE POLICY. THEY ASSUME THAT YOU PAY, AS SCHEDULED, THE PLANNED ANNUAL PREMIUM SHOWN ON PAGE 1 OF THE POLICY SCHEDULE PAGES AND THAT YOU MAKE NO PARTIAL WITHDRAWAL, POLICY LOAN, OR POLICY CHANGE. THE VALUES AND DEATH BENEFITS MAY VARY DEPENDING ON WHEN YOU PAY PREMIUMS AND HOW MUCH YOU PAY. THEY MAY NOT BE AS FAVORABLE IF YOU HAVE AN OUTSTANDING POLICY LOAN.

THE VALUES IN THE "BASED ON GUARANTEED RATES" COLUMNS ARE CALCULATED USING THE GUARANTEED MAXIMUM INSURANCE RATES FROM YOUR POLICY AND AN EFFECTIVE ANNUAL INTEREST RATE OF 4%.

THE VALUES IN THE "BASED ON CURRENT RATES" COLUMNS ARE CALCULATED USING THE CURRENT COST OF INSURANCE RATES AND THE CURRENT EFFECTIVE ANNUAL INTEREST RATE OF 5.25%. THE CURRENT RATES MAY BE CHANGED AT OUR SOLE DISCRETION BUT WILL NOT BE LESS FAVORABLE THAN THOSE GUARANTEED IN THE POLICY.

U606ZZI1

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION

### POLICY NO.  97514213

### PROJECTED POLICY VALUES BASED ON GUARANTEED RATES

| AGE OF INSURED | YEAR | PLANNED ANNUAL PREMIUM | END OF YEAR POLICY VALUES | END OF YEAR SURRENDER VALUES | BEGINNING OF YEAR TOTAL DEATH BENEFIT* |
|---|---|---|---|---|---|
| 73 | 01 | 202,500.00 | 58,417.19 | | 4,500,000.00 |
| 74 | 02 | 125,000.00 | 36,306.44 | 0.00 | 4,500,000.00 |
| 75 | 03 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 76 | 04 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 77 | 05 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| | | | | 0.00 | |
| 78 | 06 | 125,000.00 | 0.00 | | 0.00 |
| 79 | 07 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 80 | 08 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 81 | 09 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 82 | 10 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| | | | | 0.00 | |
| 83 | 11 | 125,000.00 | 0.00 | | 0.00 |
| 84 | 12 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 85 | 13 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 86 | 14 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 87 | 15 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| | | | | 0.00 | |
| 88 | 16 | 125,000.00 | 0.00 | | 0.00 |
| 89 | 17 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 90 | 18 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 91 | 19 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 92 | 20 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| | | | | 0.00 | |
| 93 | 21 | 125,000.00 | 0.00 | | 0.00 |
| 94 | 22 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 95 | 23 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 96 | 24 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 97 | 25 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| | | | | 0.00 | |
| 98 | 26 | 125,000.00 | 0.00 | | 0.00 |
| 99 | 27 | 125,000.00 | 0.00 | 0.00 | 0.00 |

DURING THE   3RD  YEAR USING GUARANTEED RATES YOUR POLICY WILL TERMINATE UNLESS THE PREMIUM IS INCREASED.

* Includes Death Benefit for the Individual Term Rider, if this rider is included in the contract.

This illustration does not reflect any premium limitations imposed by the Total Premium Limit of the policy.

U606ZZI9

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION

### POLICY NO. 97514213

### PROJECTED POLICY VALUES BASED ON CURRENT RATES

| AGE OF INSURED | YEAR | PLANNED ANNUAL PREMIUM | END OF YEAR POLICY VALUES | END OF YEAR SURRENDER VALUES | BEGINNING OF YEAR TOTAL DEATH BENEFIT* |
|---|---|---|---|---|---|
| 73 | 01 | 202,500.00 | 135,210.12 | 0.00 | 4,500,000.00 |
| 74 | 02 | 125,000.00 | 202,974.45 | 0.00 | 4,500,000.00 |
| 75 | 03 | 125,000.00 | 268,054.80 | 30,200.92 | 4,500,000.00 |
| 76 | 04 | 125,000.00 | 333,092.29 | 105,697.90 | 4,500,000.00 |
| 77 | 05 | 125,000.00 | 400,926.76 | 183,798.80 | 4,500,000.00 |
| 78 | 06 | 125,000.00 | 474,445.50 | 267,402.94 | 4,500,000.00 |
| 79 | 07 | 125,000.00 | 548,717.46 | 351,600.69 | 4,500,000.00 |
| 80 | 08 | 125,000.00 | 624,930.42 | 437,583.61 | 4,500,000.00 |
| 81 | 09 | 125,000.00 | 704,612.66 | 526,851.79 | 4,500,000.00 |
| 82 | 10 | 125,000.00 | 789,870.78 | 621,463.01 | 4,500,000.00 |
| 83 | 11 | 125,000.00 | 882,683.95 | 723,329.79 | 4,500,000.00 |
| 84 | 12 | 125,000.00 | 975,548.33 | 824,877.64 | 4,500,000.00 |
| 85 | 13 | 125,000.00 | 1,068,528.71 | 963,228.71 | 4,500,000.00 |
| 86 | 14 | 125,000.00 | 1,158,825.89 | 1,106,175.89 | 4,500,000.00 |
| 87 | 15 | 125,000.00 | 1,249,133.25 | 1,249,133.25 | 4,500,000.00 |
| 88 | 16 | 125,000.00 | 1,291,538.97 | 1,291,538.97 | 4,500,000.00 |
| 89 | 17 | 125,000.00 | 1,324,421.27 | 1,324,421.27 | 4,500,000.00 |
| 90 | 18 | 125,000.00 | 1,346,326.30 | 1,346,326.30 | 4,500,000.00 |
| 91 | 19 | 125,000.00 | 1,355,502.13 | 1,355,502.13 | 4,500,000.00 |
| 92 | 20 | 125,000.00 | 1,349,834.38 | 1,349,834.38 | 4,500,000.00 |
| 93 | 21 | 125,000.00 | 1,326,709.71 | 1,326,709.71 | 4,500,000.00 |
| 94 | 22 | 125,000.00 | 1,282,895.63 | 1,282,895.63 | 4,500,000.00 |
| 95 | 23 | 125,000.00 | 1,214,365.69 | 1,214,365.69 | 4,500,000.00 |
| 96 | 24 | 125,000.00 | 1,116,049.75 | 1,116,049.75 | 4,500,000.00 |
| 97 | 25 | 125,000.00 | 981,536.48 | 981,536.48 | 4,500,000.00 |
| 98 | 26 | 125,000.00 | 802,651.30 | 802,651.30 | 4,500,000.00 |
| 99 | 27 | 125,000.00 | 568,926.48 | 568,926.48 | 4,500,000.00 |

\* Includes Death Benefit for the Individual Term Rider, if this rider is included in the contract.

This illustration does not reflect any premium limitations imposed by the Total Premium Limit of the policy.

Exhibit 3

Page 113

U606ZZIA

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION

### POLICY NO.   97514213

|  | GUARANTEED VALUES | | CURRENT VALUES | |
|---|---|---|---|---|
|  | 10 YEAR | 20 YEAR | 10 YEAR | 20 YEAR |
| SURRENDER COST INDEX | 29.90 | 29.09 | 19.44 | 20.45 |
| NET PAYMENT COST INDEX | 29.90 | 29.09 | 29.90 | 29.09 |

An explanation of the intended use of these indices is provided in the Life Insurance Buyer's Guide. These indices are useful only for the comparison of relative cost of two or more similar policies. The planned annual premium less the annual cost of insurance for additional benefit riders is used for the basic policy premium in calculating the indices above.

NOTES:

1.  This policy has a variable policy loan rate. The policy loan rate for the first policy year is 5.54%. This rate is reviewed annually for adjustment based on the then current Moody's Average Corporate Bond Index.

2.  Lower current interest rates may be credited to any portion of the Policy Value you borrow against.

3.  Charges may be deducted, as described on Page 2 of the policy Schedule Pages, in the event of a partial withdrawal, face amount decrease or surrender of the policy.

4.  Surrender Value is calculated as of any date shown above: (1) by deducting, from the Policy Value on that date, the sum of any charges that would apply if the policy were surrendered as of that date; and (2) assuming there are no policy loans.

5.  The values and benefits illustrated in this statement reflect the Monthly Service Charge, Monthly Expense Charge, and Sales Charges as provided on Page 2 of the Schedule Pages.

U606ZZIH

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION

### POLICY NO.   97514213

ANY CORRESPONDENCE REGARDING THIS POLICY SUMMARY MAY BE FORWARDED EITHER TO OUR MAIN ADMINISTRATIVE OFFICE OR THE AGENT LISTED BELOW.

PHL Variable Insurance Company
Main Administrative Office
P.O. Box 8027
Boston, MA 02266-8027

AGENT −   LINDSAY C. SPALDING−JAGOL

This policy summary was prepared on   AUGUST 23, 2005   for the life of:

▉▉▉▉▉▉

Issue Age and Sex:   ▉▉▉▉▉▉

Initial Face Amount   $4,500,000.00

The coverage consists of a flexible premium life insurance policy. The death benefit is based on the death benefit option then in effect but will never be less than the minimum death benefit described in the Minimum Death Benefit provision in Part 7 of the Policy. The death benefit option currently in effect for this policy is Option A − Face Amount.

You may change the death benefit option anytime. The premium is adjustable and may be paid at any time and in any amount not less than the minimum allowed by our rules.

THIS POLICY IS NON−PARTICIPATING.

Please refer to this policy's Schedule Pages for details on any riders.

THE PROJECTIONS ILLUSTRATED BELOW ARE PROVIDED INSTEAD OF A TABLE OF VALUES IN THE POLICY. THEY ASSUME THAT YOU PAY, AS SCHEDULED, THE PLANNED ANNUAL PREMIUM SHOWN ON PAGE 1 OF THE POLICY SCHEDULE PAGES AND THAT YOU MAKE NO PARTIAL WITHDRAWAL, POLICY LOAN, OR POLICY CHANGE. THE VALUES AND DEATH BENEFITS MAY VARY DEPENDING ON WHEN YOU PAY PREMIUMS AND HOW MUCH YOU PAY. THEY MAY NOT BE AS FAVORABLE IF YOU HAVE AN OUTSTANDING POLICY LOAN.

THE VALUES IN THE "BASED ON GUARANTEED RATES" COLUMNS ARE CALCULATED USING THE GUARANTEED MAXIMUM INSURANCE RATES FROM YOUR POLICY AND AN EFFECTIVE ANNUAL INTEREST RATE OF 4%.

THE VALUES IN THE "BASED ON CURRENT RATES" COLUMNS ARE CALCULATED USING THE CURRENT COST OF INSURANCE RATES AND THE CURRENT EFFECTIVE ANNUAL INTEREST RATE OF 5.25%. THE CURRENT RATES MAY BE CHANGED AT OUR SOLE DISCRETION BUT WILL NOT BE LESS FAVORABLE THAN THOSE GUARANTEED IN THE POLICY.

Exhibit 3
Page 115

U606ZZI1

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION

### POLICY NO. 97514213

### PROJECTED POLICY VALUES BASED ON GUARANTEED RATES

| AGE OF INSURED | YEAR | PLANNED ANNUAL PREMIUM | END OF YEAR POLICY VALUES | END OF YEAR SURRENDER VALUES | BEGINNING OF YEAR TOTAL DEATH BENEFIT* |
|---|---|---|---|---|---|
| 73 | 01 | 202,500.00 | 58,417.19 | 0.00 | 4,500,000.00 |
| 74 | 02 | 125,000.00 | 36,306.44 | 0.00 | 4,500,000.00 |
| 75 | 03 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 76 | 04 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 77 | 05 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 78 | 06 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 79 | 07 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 80 | 08 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 81 | 09 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 82 | 10 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 83 | 11 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 84 | 12 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 85 | 13 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 86 | 14 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 87 | 15 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 88 | 16 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 89 | 17 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 90 | 18 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 91 | 19 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 92 | 20 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 93 | 21 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 94 | 22 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 95 | 23 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 96 | 24 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 97 | 25 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 98 | 26 | 125,000.00 | 0.00 | 0.00 | 0.00 |
| 99 | 27 | 125,000.00 | 0.00 | 0.00 | 0.00 |

DURING THE   3RD  YEAR USING GUARANTEED RATES YOUR POLICY WILL TERMINATE UNLESS THE PREMIUM IS INCREASED.

* Includes Death Benefit for the Individual Term Rider, if this rider is included in the contract.

This illustration does not reflect any premium limitations imposed by the Total Premium Limit of the policy.

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION

### POLICY NO. 97514213

### PROJECTED POLICY VALUES BASED ON CURRENT RATES

| AGE OF INSURED | YEAR | PLANNED ANNUAL PREMIUM | END OF YEAR POLICY VALUES | END OF YEAR SURRENDER VALUES | BEGINNING OF YEAR TOTAL DEATH BENEFIT* |
|---|---|---|---|---|---|
| 73 | 01 | 202,500.00 | 135,210.12 | 0.00 | 4,500,000.00 |
| 74 | 02 | 125,000.00 | 202,974.45 | 0.00 | 4,500,000.00 |
| 75 | 03 | 125,000.00 | 268,054.80 | 30,200.92 | 4,500,000.00 |
| 76 | 04 | 125,000.00 | 333,092.29 | 105,697.90 | 4,500,000.00 |
| 77 | 05 | 125,000.00 | 400,926.76 | 183,798.80 | 4,500,000.00 |
| 78 | 06 | 125,000.00 | 474,445.50 | 267,402.94 | 4,500,000.00 |
| 79 | 07 | 125,000.00 | 548,717.46 | 351,600.69 | 4,500,000.00 |
| 80 | 08 | 125,000.00 | 624,930.42 | 437,583.61 | 4,500,000.00 |
| 81 | 09 | 125,000.00 | 704,612.66 | 526,851.79 | 4,500,000.00 |
| 82 | 10 | 125,000.00 | 789,870.78 | 621,463.01 | 4,500,000.00 |
| 83 | 11 | 125,000.00 | 882,683.95 | 723,329.79 | 4,500,000.00 |
| 84 | 12 | 125,000.00 | 975,548.33 | 824,877.64 | 4,500,000.00 |
| 85 | 13 | 125,000.00 | 1,068,528.71 | 963,228.71 | 4,500,000.00 |
| 86 | 14 | 125,000.00 | 1,158,825.89 | 1,106,175.89 | 4,500,000.00 |
| 87 | 15 | 125,000.00 | 1,249,133.25 | 1,249,133.25 | 4,500,000.00 |
| 88 | 16 | 125,000.00 | 1,291,538.97 | 1,291,538.97 | 4,500,000.00 |
| 89 | 17 | 125,000.00 | 1,324,421.27 | 1,324,421.27 | 4,500,000.00 |
| 90 | 18 | 125,000.00 | 1,346,326.30 | 1,346,326.30 | 4,500,000.00 |
| 91 | 19 | 125,000.00 | 1,355,502.13 | 1,355,502.13 | 4,500,000.00 |
| 92 | 20 | 125,000.00 | 1,349,834.38 | 1,349,834.38 | 4,500,000.00 |
| 93 | 21 | 125,000.00 | 1,326,709.71 | 1,326,709.71 | 4,500,000.00 |
| 94 | 22 | 125,000.00 | 1,282,895.63 | 1,282,895.63 | 4,500,000.00 |
| 95 | 23 | 125,000.00 | 1,214,365.69 | 1,214,365.69 | 4,500,000.00 |
| 96 | 24 | 125,000.00 | 1,116,049.75 | 1,116,049.75 | 4,500,000.00 |
| 97 | 25 | 125,000.00 | 981,536.48 | 981,536.48 | 4,500,000.00 |
| 98 | 26 | 125,000.00 | 802,651.30 | 802,651.30 | 4,500,000.00 |
| 99 | 27 | 125,000.00 | 568,926.48 | 568,926.48 | 4,500,000.00 |

\* Includes Death Benefit for the Individual Term Rider, if this rider is included in the contract.

This illustration does not reflect any premium limitations imposed by the Total Premium Limit of the policy.

Exhibit 3
Page 117

U606ZZIA

## STATEMENT OF POLICY COST AND BENEFIT INFORMATION

### POLICY NO.  97514213

|  | GUARANTEED VALUES | | CURRENT VALUES | |
|---|---|---|---|---|
|  | 10 YEAR | 20 YEAR | 10 YEAR | 20 YEAR |
| SURRENDER COST INDEX | 29.90 | 29.09 | 19.44 | 20.45 |
| NET PAYMENT COST INDEX | 29.90 | 29.09 | 29.90 | 29.09 |

An explanation of the intended use of these indices is provided in the Life Insurance Buyer's Guide. These indices are useful only for the comparison of relative cost of two or more similar policies. The planned annual premium less the annual cost of insurance for additional benefit riders is used for the basic policy premium in calculating the indices above.

NOTES:

1. This policy has a variable policy loan rate. The policy loan rate for the first policy year is 5.54%. This rate is reviewed annually for adjustment based on the then current Moody's Average Corporate Bond Index.

2. Lower current interest rates may be credited to any portion of the Policy Value you borrow against.

3. Charges may be deducted, as described on Page 2 of the policy Schedule Pages, in the event of a partial withdrawal, face amount decrease or surrender of the policy.

4. Surrender Value is calculated as of any date shown above: (1) by deducting, from the Policy Value on that date, the sum of any charges that would apply if the policy were surrendered as of that date; and (2) assuming there are no policy loans.

5. The values and benefits illustrated in this statement reflect the Monthly Service Charge, Monthly Expense Charge, and Sales Charges as provided on Page 2 of the Schedule Pages.

U608ZZIH

# CALIFORNIA LIFE AND HEALTH INSURANCE
# GUARANTY ASSOCIATION ACT
# SUMMARY DOCUMENT AND DISCLAIMER

Residents of California who purchase life and health insurance and annuities should know that the insurance companies licensed in this state to write these types of insurance are members of the California Life and Health Insurance Guaranty Association ("CLHIGA"). The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided through the Association is not unlimited, as noted in the box below, and is not a substitute for consumers' care in selecting insurers.

---

The California Life Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in California. You should not rely on coverage by the Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. **However, insurance companies and their agents are prohibited by law from using the existence of the Guaranty Association to induce you to purchase any kind of insurance policy.**

Policyholders with additional questions should first contact their insurer or agent or may then contact:

The California Life and Health Insurance          or          Consumer Service Division
Guaranty Association                                                  California Department of Insurance
P.O. Box 17319                                                          300 South Spring Street
Beverly Hills, CA 90209-3319                                    Los Angeles, CA 90013

---

Below is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Association.

## COVERAGE

Generally, individuals will be protected by the California Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by a member insurer. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Guaranty Association if:

- Their insurer was not authorized to do business in this state when it issued the policy or contract.

OL 2065                                          1                    Exhibit 3          (4-96)
                                                                        Page 119

- Their policy was issued by a health care service plan (HMO), Blue Cross, Blue Shield, a charitable organization, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company, an insurance exchange, or a grants and annuities society.

- They are eligible for protection under the laws of another state. This may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state.

The Guaranty Association also does not provide coverage for:

- Unallocated annuity contracts; that is, contracts which are not issued to and owned by an individual and which guarantee rights to group contract holders, not individuals;

- Employer and association plans, to the extent they are self-funded or uninsured;

- Synthetic guaranteed interest contracts;

- Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

- Any policy of reinsurance unless an assumption certificate was issued;

- Interest rate yields that exceed an average rate;

- Any portion of a contract that provides dividends or experience rating credits.

## LIMITS ON AMOUNT OF COVERAGE

The Act limits the Association to pay benefits as follows:

### LIFE AND ANNUITIES BENEFITS

- 80% of what the life insurance company would owe under a life policy or annuity contract up to $100,000 in cash surrencer values;

- $100,000 in present value of annuities; or

- $250,000 in life insurance death benefits;

- A maximum of $250,000 for any one insured life no matter how may policies and contracts there were with the same company, even if the policies provided different types of coverages.

### HEALTH BENEFITS

- A maximum of $200,000 of the contractual obligations that the health insurance company would owe were it not insolvent. The maximum may increase or decrease annually based upon changes in the health care cost component of the consumer price index.

### PREMIUM SURCHARGE

Member insurers are required to recoup assessments paid to the Association by way of a surcharge on premiums charged for health insurance policies to which the Act applies.



**◈PHOENIX**

WEALTH MANAGEMENT®

# Life Insurance Buyer's Guide

This guide can help you when you shop for life insurance. It discusses how to:
- Find a Policy That Meets Your Needs and Fits Your Budget
- Decide How Much Insurance You Need
- Make Informed Decisions When You Buy a Policy

## Prepared by the National Association of Insurance Commissioners

The National Association of Insurance Commissioners is an association of state insurance regulatory officials. This association helps the various Insurance Departments to coordinate insurance laws for the benefit of all consumers.

### This Guide Does Not Endorse Any Company or Policy.

### Important Things to Consider

1. Review your own insurance needs and circumstances. Choose the kind of policy that has benefits that most closely fit your needs. Ask an agent or company to help you.
2. Be sure that you can handle premium payments. Can you afford the initial premium? If the premium increases later and you still need insurance, can you still afford it?
3. Don't sign an insurance application until you review it carefully to be sure all the answers are complete and accurate.
4. Don't buy life insurance unless you intend to stick with your plan. It may be very costly if you quit during the early years of the policy.
5. Don't drop one policy and buy another without a thorough study of the new policy and the one you have now. Replacing you insurance **may be costly.**
6. Read your policy carefully. Ask your agent or company about anything that is not clear to you.
7. Review your life insurance program with your agent or company every few years to keep up with changes in your income and your needs.

### Buying Life Insurance

When you buy life insurance, you want coverage that fits your needs.

**First,** decide how much you need - and for how long - and what you can afford to pay. Keep in mind the major reason you buy life insurance is to cover the financial effects of unexpected or untimely death. Life insurance can also be one of many ways you plan for the future.

**Next,** learn what kinds of policies will meet your needs and pick the one that best suits you.

**Then,** choose the combination of policy premium and benefits that emphasizes protection in case of early death, or benefits in case of long life, or a combination of both.

It makes good sense to ask a life insurance agent or company to help you. An agent can help you review your insurance needs and give you information about the available policies. If one kind of policy doesn't seem to fit your needs, ask about others.

This guide provides only basic information. You can get more facts from a life insurance agent or company or from your public library.

### What about the Policy You Have Now?

If you are thinking about dropping a life insurance policy, here are some things you should consider:

- If you decide to replace your policy, don't cancel your old policy until you have received the new one. You then have a minimum period to review your new policy and decide if it is what you wanted.
- It may be costly to replace a policy. Much of what you paid in the early years of the policy you have now, paid for the company's cost of selling and issuing the policy. You may pay this type of cost again if you buy a new policy.
- Ask your tax advisor if dropping your policy could affect your income taxes.
- If you are older or your health has changed, premiums for the new policy will often be higher. You will not be able to buy a new policy if you are not insurable.
- You may have valuable rights and benefits in the policy you now have that are not in the new one.
- If the policy you have now no longer meets your needs, you may not have to replace it. You might be able to change your policy or add to it to get the coverage or benefits you now want.
- At least in the beginning, a policy may pay no benefits for some causes of death covered in the policy you have now.

In all cases, if you are thinking of buying a new policy, check with the agent or company that issued you the one you have now. When you bought your old policy,

you may have seen an illustration of the benefits of your policy. Before replacing your policy, ask your agent or company for an updated illustration. Check to see how the policy has performed and what you might expect in the future, based on the amounts the company is paying now.

## How Much Do You Need?

Here are some questions to ask yourself:

- How much of the family income do I provide? If I were to die early, how would my survivors, especially my children, get by? Does anyone else depend on me financially, such as a parent, grandparent, brother or sister?
- Do I have children for whom I'd like to set aside money to finish their education in the event of my death?
- How will my family pay final expenses and repay debts after my death?
- Do I have family members or organizations to whom I would like to leave money?
- Will there be estate taxes to pay after my death?
- How will inflation affect future needs?

As you figure out what you have to meet these needs, count the life insurance you have now, including any group insurance where you work or veteran's insurance. Don't forget Social Security and pension plan survivor's benefits. Add other assets you have: savings, investments, real estate and personal property. Which assets would your family sell or cash in to pay expenses after your death?

## What is the Right Kind of Life Insurance?

All policies are not the same. Some give coverage for your life time and others cover you for a specific number of years. Some build up cash values and others do not. Some policies combine different kinds of insurance, and others let you change from one kind of insurance to another. Some policies may offer other benefits while you are still living. Your choice should be based on your needs and what you can afford.

There are two basic types of life insurance: **term insurance** and **cash value insurance**. Term insurance generally has lower premiums in the early years, but does not build up cash values that you can use in the future. You may combine cash value life insurance with term insurance for the period of your greatest need for life insurance to replace income.

**Term Insurance** covers you for a term of one or more years. It pays a death benefit only if you die in that term. Term insurance generally offers the largest insurance protection for your premium dollar. It generally does not build up cash value.

You can renew most term insurance policies for one or more terms even if your health has changed. Each time

you renew the policy for a new term, premiums may be higher. Ask what the premiums will be if you continue to renew the policy. Also ask if you will lose the right to renew the policy at some age. For a higher premium, some companies will give you the right to keep the policy in force for a guaranteed period at the same price each year. At the end of that time you may need to pass a physical examination to continue coverage, and premiums may increase.

You may be able to trade many term insurance policies for a cash value policy during a conversion period – even if you are not in good health. Premiums for the new policy will be higher than you have been paying for the term insurance.

**Cash Value Life Insurance** is a type of insurance where the premiums charged are higher at the beginning than they would be for the same amount of term insurance. The part of the premium that is not used for the cost of insurance is invested by the company and builds up a cash value that may be used in a variety of ways. You may borrow against a policy's cash value by taking a policy loan. If you don't pay back the loan and the interest on it, the amount you owe will be subtracted from the benefits when you die, or from the cash value if you stop paying premiums and take out the remaining cash value. You can also use your cash value to keep insurance protection for a limited time or to buy a reduced amount without having to pay more premiums. You also can use the cash value to increase your income in retirement or to help pay for needs such as a child's tuition without canceling the policy. However, to build up this cash value, you must pay higher premiums in the earlier years of the policy. Cash value life insurance may be one of several types; whole life, universal life and variable life are all types of cash value insurance.

**Whole Life Insurance** covers you for as long as you live if your premiums are paid. You generally pay the same amount in premiums for as long as you live. When you first take out the policy, premiums can be several times higher than you would pay initially for the same amount of term insurance. But they are smaller than the premiums you would eventually pay if you were to keep renewing a term policy until your later years.

Some whole life policies let you pay premiums for a shorter period such as 20 years, or until age 65. Premiums for these policies are higher since the premium payments are made during a shorter period.

**Universal Life Insurance** is a kind of flexible policy that lets you vary your premium payments. You can also adjust the face amount of your coverage. Increases may require proof that you qualify for the new death benefit. The premiums you pay (less expense charges) go into a policy account that earns interest. Charges are deducted from the account. If your yearly premium payment plus the interest your account earns is less than the charges, your account value will become lower.

OL4108

If it keeps dropping, eventually your coverage will end. To prevent that, you may need to start making premium payments, or increase your premium payments, or lower your death benefits. Even if there is enough in your account to pay the premiums, continuing to pay premiums yourself means that you build up more cash value.

**Variable Life Insurance** is a kind of insurance where the death benefits and cash values depend on the investment performance of one or more separate accounts, which may be invested in mutual funds or other investments allowed under the policy. Be sure to get the prospectus from the company when buying this kind of policy and STUDY IT CAREFULLY. You will have higher death benefits and cash value if the underlying investments do well. Your benefits and cash value will be lower or may disappear if the investments you chose didn't do as well as you expected. You may pay an extra premium for a guaranteed death benefit.

### Life Insurance Illustrations

You may be thinking of buying a policy where cash values, death benefits, dividends or premiums may vary based on events or situations the company does not guarantee (such as interest rates). If so, you may get an illustration from the agent or company that helps explain how the policy works. The illustration will show how the benefits that are not guaranteed will change as interest rates and other factors change. The illustration will show you what the company guarantees. It will also show you what *could* happen in the future. Remember that nobody knows what will happen in the future. You should be ready to adjust your financial plans if the cash value doesn't increase as quickly as shown in the illustration. You will be asked to sign a statement that says you understand that some of the numbers in the illustration are not guaranteed.

### Finding a Good Value in Life Insurance

After you have decided which kind of life insurance is best for you, compare similar policies from different companies to find which one is likely to give you the best value for your money. A simple comparison of the premiums is not enough. There are other things to consider. For example:

- Do premiums or benefits vary from year to year?
- How much do the benefits build up in the policy?
- What part of the premiums or benefits is not guaranteed?
- What is the effect of interest on money paid and received at different times on the policy?

Remember that no one company offers the lowest cost at **all** ages for **all** kinds and amounts of insurance. You should also consider other factors:

- How quickly does the cash value grow? Some polices have low cash values in the early years that build quickly later on. Other policies have a more level cash value build-up. A year-by-year display of values and benefits can be very helpful. (The agent or company will give you a policy summary or an illustration that will show benefits and premiums for selected years.)
- Are there special policy features that particularly suit your needs?
- How are non-guaranteed values calculated? For example, interest rates are important in determining policy returns. In some companies, increases reflect the average interest earnings on all of that company's policies regardless of when issued. In others, the return for policies issued in a recent year, or a group of years, reflects the interest earnings on that group of policies; in this case, amounts paid are likely to change more rapidly when interest rates change.

© 1996/2001 NAIC Model

Reprinted by Phoenix Life Insurance Company and its subsidiaries

OL4108

Exhibit 3

Page 123

9-03
H4108ZZ3

## IMPORTANT

YOU HAVE PURCHASED A VARIABLE ANNUITY CONTRACT (VARIABLE LIFE INSURANCE CONTRACT, OR MODIFIED GUARANTEED CONTRACT). CAREFULLY REVIEW IT FOR LIMITATIONS.

THIS POLICY MAY BE RETURNED WITHIN 30 DAYS FROM THE DATE YOU RECEIVED IT. DURING THAT 30-DAY PERIOD, YOUR MONEY WILL BE PLACED IN A FIXED ACCOUNT OR MONEY-MARKET FUND, UNLESS YOU DIRECT THAT THE PREMIUM BE INVESTED IN A STOCK OR BOND PORTFOLIO UNDERLYING THE CONTRACT DURING THE 30-DAY PERIOD. IF YOU DO NOT DIRECT THAT THE PREMIUM BE INVESTED IN A STOCK OR BOND PORTFOLIO, AND IF YOU RETURN THE POLICY WITHIN THE 30-DAY PERIOD, YOU WILL BE ENTITLED TO A REFUND OF THE PREMIUM AND POLICY FEES. IF YOU DIRECT THAT THE PREMIUM BE INVESTED IN A STOCK OR BOND PORTFOLIO DURING THE 30-DAY PERIOD, AND IF YOU RETURN THE POLICY DURING THAT PERIOD, YOU WILL BE ENTITLED TO A REFUND OF THE POLICY'S ACCOUNT VALUE ON THE DAY THE POLICY IS RECEIVED BY THE INSURANCE COMPANY OR AGENT WHO SOLD YOU THIS POLICY, WHICH COULD BE LESS THAN THE PREMIUM YOU PAID FOR THE POLICY. A RETURN OF THE POLICY AFTER 30 DAYS MAY RESULT IN A SUBSTANTIAL PENALTY, KNOWN AS A SURRENDER CHARGE.

HO5104

Exhibit 3   H5104CA1
Page 124

ORIGINAL

KHAI LEQUANG (SBN 202922)
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017

Attorneys for Plaintiff U.S. Bank Nat'l Association

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| U.S. BANK NATIONAL ASSOCIATION, a national association, as securities intermediary for LIMA ACQUISITION LP, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV11-09517 ODW (PZx) |
| v. PHL VARIABLE INSURANCE COMPANY, a Connecticut corporation, | **SUMMONS** |
| DEFENDANT(S). | |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Khai LeQuang_____, whose address is _Orrick, Herrington & Sutcliffe, 777 S. Figueroa, Ste. 3200, Los Angeles, CA 90017___. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Dated: _____        NOV 16 2011

Clerk, U.S. District Court

By: _____
          Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

COPY

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as securities intermediary for LIMA ACQUISITION LP | PHL VARIABLE INSURANCE COMPANY |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) See Attachment A | Attorneys (If Known) |
|---|---|

FAXED

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☑ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No   ☑ MONEY DEMANDED IN COMPLAINT: $ Amt. T.B.D.; Decl. relief

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
1) Breach of contract - Express; 2) Breach of contract - Implied; 3) Cal. Bus. & Prof. Code § 17200; 4) Cal. Bus. & Prof. Code § 17500; 5) Declaratory relief

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☑ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV11- 09517

FOR OFFICE USE ONLY:    Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)     CIVIL COVER SHEET     Page 1 of 2

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

***** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date November 16, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

Attachment A

Attorneys


KHAI LEQUANG (STATE BAR NO. 202922)
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017
Telephone:   (213) 629-2020
Facsimile:   (213) 612-2399

STEPHEN G. FORESTA (*pro hac vice motion to be filed*)
PHILIPP SMAYLOVSKY (*pro hac vice motion to be filed*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd St
New York, NY 10019
Telephone:   (212) 506-5000
Facsimile:   (212) 506-5151