Daniel L. Rasmussen (SBN 120276)
dlr@paynefears.com
Scott O. Luskin (SBN 238082)
sol@paynefears.com
PAYNE & FEARS LLP
801 S. Figueroa Street
Los Angeles, California 90017
Telephone: (213) 439-9911
Facsimile: (213) 439-9922

*and*

Waldemar J. Pflepsen, Jr. (*pro hac vice*)
wjp@jordenusa.com
Stephen J. Jorden (*pro hac vice*)
sj@jordenusa.com
Jason H. Gould (*pro hac vice*)
jhg@jordenusa.com
Brian P. Perryman (*pro hac vice*)
bpp@jordenusa.com
JORDEN BURT LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007
Telephone: (202) 965-8100
Facsimile: (202) 965-8104

*Attorneys for Defendant*
*PHL Variable Insurance Company*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, a national association, as securities intermediary for LIMA ACQUISITION LP,<br><br>    Plaintiff,<br><br>v.<br><br>PHL VARIABLE INSURANCE COMPANY, a Connecticut corporation,<br><br>    Defendant. | Case No. CV 11-09517 (ODW) (RZx)<br><br>**DEFENDANT PHL VARIABLE INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL**<br><br>Hearing Date: March 12, 2012<br>Time: 1:30 p.m.<br>Location: Courtroom 11<br>Judge: Hon. Otis D. Wright II |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................... 1

THE COMPLAINT'S ALLEGATIONS ................................... 3

APPLICABLE LEGAL STANDARDS .................................... 5

ARGUMENT ............................................................................ 6

I.  The Bank Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing ........................... 6

    A.  If Pled In Tort, The Bad Faith Claim Fails Because No Unpaid Policy Benefits Are Alleged To Be Due ................ 6

    B.  If Pled In Contract, The Bad Faith Claim Improperly Duplicates The Breach Of Contract Claim ............................... 8

II.  The Bank Fails To State Claims For Violations Of The FAL And UCL ..................................................................... 9

    A.  The FAL And UCL Cannot Be Applied Extraterritorially ........................................................... 9

    B.  The Bank Improperly Relabels Conduct Specifically Governed By California's Unfair Insurance Practices Act As False Advertising And Unfair Competition ................ 10

    C.  The FAL Claim Fails On Its Merits ......................................... 13

        1.  The "representations" in Phoenix's "advertising" are true, do not relate to cost of insurance, or are nonactionable opinion ........................ 13

        2.  The Bank cannot seek civil money penalties ................ 15

    D.  The UCL Claim Fails On Its Merits ......................................... 15

        1.  No "unlawful" prong claim is stated – the Complaint fails to specify the violation of any underlying law ................................................. 16

        2.  No "unfair" prong claim is stated – the claim is not tethered to a legislative policy, nor is a breach of contract "unfair" ........................... 17

        3.  No "fraud" prong claim is stated – Phoenix's "representations" are not actionable as UCL "fraud" .................................................. 18

i

E.   Because The Bank Has A Perfectly Adequate Legal Remedy, Equitable Relief Cannot Be Granted Under The FAL Or UCL ................................................................. 19

F.   The Bank Fails To Satisfy Federal Rule of Civil Procedure 9(b)'s Heightened Pleading Standard ...................... 20

III.   The Declaratory Relief Sought Needlessly Duplicates The Breach Of Contract Claim And Must Be Dismissed .......................... 22

CONCLUSION ................................................................................ 24

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                        **Page(s)**

*AHO Enterprises v. State Farm Mutual Automobile Insurance Co.*,
No. CV 08-4133, 2008 WL 4830708 (N.D. Cal. Nov. 6, 2008) .................. 12

*Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011) .......................... 8

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................... 5

*Asia Economic Institute v. Xcentric Ventures, LLC*,
No. CV 10-1360, 2010 WL 4977054 (C.D. Cal. July 19, 2010) ................. 22

*Avery Dennison Corp. v. Allendale Mutual Insurance Co.*,
310 F.3d 1114 (9th Cir. 2002) ....................................................................... 7

*Bates v. Hartford Life & Accident Insurance Co.*,
765 F. Supp. 2d 1218 (C.D. Cal. 2011) ....................................................... 11

*Baymiller v. Guarantee Mutual Life Co.*,
No. CV 99-1566, 2000 WL 1026565 (C.D. Cal. May 3, 2000) .................... 4

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959) .................................. 23

*Bova v. City of Medford*, 564 F.3d 1093 (9th Cir. 2009) ........................... 24

*Chavers v. GMAC Mortgage, LLC*,
No. CV 11-1097, 2012 WL 10344 (C.D. Cal. Jan. 3, 2012) ........................ 22

*Clark v. Martinez*,
543 U.S. 371, 125 S. Ct. 716, 160 L. Ed. 2d 734 (2005) ............................ 17

*Coffman v. Pruco Life Insurance Co.*,
No. CV 10-3663, 2011 WL 4550152 (D.N.J. Sept. 29, 2011) ...................... 4

*Farmer v. Countrywide Financial Corp.*,
No. CV 08-1075, 2009 WL 1530973 (C.D. Cal. May 18, 2009) ................. 15

*Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997) ......................... 14

*Guerard v. CNA Financial Corp.*,
No. CV 09-1801, 2009 WL 3152055 (N.D. Cal. Sept. 23, 2009) ................ 12

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ................. 20, 21

*Los Angeles Memorial Coliseum Commission v. NFL*,
634 F.2d 1197 (9th Cir. 1980) ..................................................................... 20

*Martinez v. Wells Fargo Home Mortgage, Inc.*,
598 F.3d 549 (9th Cir. 2010) ....................................................................... 16

*National Rural Telecommunications Co-operative v. DIRECTV, Inc.*,
   319 F. Supp. 2d 1059 (C.D. Cal. 2003) ..........................................................18

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ..........................................5

*Newcal Industries v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ................................................................13, 14

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ...............................................13, 15 18

*Paulsen v. CNF, Inc.*, 559 F.3d 1061 (9th Cir. 2009) ...............................5

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ............................9

*Priyanto v. M/S Amsterdam*,
   No. CV 07-3811, 2009 WL 175739 (C.D. Cal. Jan. 23, 2009) ....................22

*Sanders v. Choice Manufacturing Co.*,
   No. CV 11-3725, 2011 WL 6002639 (N.D. Cal. Nov. 30, 2011) .................12

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*,
   634 F. Supp. 2d 1009 (N.D. Cal. 2007) .....................................................16

*Shroyer v. New Cingular Wireless Services, Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ...................................................................16

*Stewart v. Life Insurance Co. of North America*,
   388 F. Supp. 2d 1138 (E.D. Cal. 2005) .................................................19, 20

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .................................20, 23, 24

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ...................................................................18

*Tidenberg v. Bidz.com, Inc.*,
   No. CV 08-5553, 2009 WL 605249 (C.D. Cal. Mar. 4, 2009) .............10, 20

*Tietsworth v. Sears*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..................14

*Tourgeman v. Collins Financial Services, Inc.*,
   No. CV 08-1392, 2009 WL 6527757 (S.D. Cal. Aug. 6, 2009) .............17, 18

*In re Toyota Motor Corp.*, 785 F. Supp. 2d 883 (C.D. Cal. 2011) ...............9, 10

*United States v. Washington*, 759 F.2d 1353 (9th Cir. 1985) ..................22

*Van Slyke v. Capital One Bank*,
   No. CV 07-671, 2007 WL 3343943 (N.D. Cal. Nov. 7, 2007) ...................18

*Vess v. Ceiba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) .............20, 22

*Vinci Investment Co. v. Mid-Century Insurance Co.*,
  No. CV 08-152, 2008 WL 4447102 (C.D. Cal. Sept. 30, 2008).............11, 12

*Wayne Merritt Motor Co. v. New Hampshire Insurance Co.*,
  No. CV 11-1762, 2011 WL 5025142 (N.D. Cal. Oct. 21, 2011) .................12

*Willbanks v. Progressive Choice Insurance Co.*,
  No. CV 10-1299, 2010 WL 4861349 (E.D. Cal. Nov. 17, 2010) ................12

*Williams v. Oberon Media, Inc.*,
  No. CV 09-8764, 2010 WL 1644888 (C.D. Cal. Mar. 4, 2010) ..................16

*World Health & Education Foundation v. Carolina Casualty
  Insurance Co.*, 612 F. Supp. 2d 1089 (N.D. Cal. 2009)...............................22

*Yumul v. Smart Balance, Inc.*,
  No. CV 10-927, 2011 WL 1045555 (C.D. Cal. Mar. 14, 2011) .................16

**State Cases**

*Archdale v. American International Specialty Lines Insurance Co.*,
  154 Cal. App. 4th 449 (2007)..............................................................6, 8

*Belton v. Comcast Cable Holdings*, 151 Cal. App. 4th 1224 (2007) .....................17

*Benavides v. State Farm General Insurance Co.*,
  136 Cal. App. 4th 1241 (2006).................................................................7

*Bionghi v. Metropolitan Water District of Southern California*,
  70 Cal. App. 4th 1358 (1999).....................................................................7

*Buller v. Sutter Health*, 160 Cal. App. 4th 981 (2008)............................................17

*Byars v. SCME Mortgage Bankers, Inc.*,
  109 Cal. App. 4th 1134 (2003)...............................................................17

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
  20 Cal. 4th 163 (1999)..............................................................................17

*Chern v. Bank of America*, 15 Cal. 3d 866 (1976) ...............................................15

*Consumer Advocates v. Echostar Satellite Corp.*,
  113 Cal. App. 4th 1351 (2003)..........................................................13, 18

*Cortez v. Purolator Air Filtration Products*, 23 Cal. 4th 163 (2000) ....................19

*Dean Witter Reynolds, Inc. v. Superior Court*,
  211 Cal. App. 3d 758 (1989)....................................................................19

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010) ................................17

*Foley v. Interactive Data Corp.*, 47 Cal. 3d 654 (1988) .........................................6

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL

*Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845 (2002) ...................................17

*Jonathan Neil & Associates, Inc. v. Jones*, 33 Cal. 4th 917 (2004) ..........................7

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)............18, 19

*Levine v. Blue Shield of California*, 189 Cal. App. 4th 1117 (2010) .....................17

*Moradi-Shalal v. Fireman's Fund Insurance Cos.*,
    46 Cal. 3d 287 (1988) ........................................................................10, 13

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (1999) ..........9, 10

*Progressive West Insurance Co. v. Superior Court*,
    135 Cal. App. 4th 263 (2005)....................................................................7

*Prudential Home Mortgage Co. v. Superior Court*,
    66 Cal. App. 4th 1236 (1998)..................................................................19

*Safeco Insurance Co. v. Superior Court*,
    216 Cal. App. 3d 1491 (1990) .................................................................11

*Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917 (2003) ...........................17

*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011)..........................................9, 10

*Textron Financial Corp. v. National Union Fire Insurance Co.*
    *of Pittsburgh*, 118 Cal. App. 4th 1061 (2004)........................................10, 11

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ...............................................21

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) .....................................19

**Federal Statutes and Rules**

28 U.S.C. § 1332....................................................................................5

28 U.S.C. § 2201...................................................................................22

Fed. R. Civ. P. 9........................................................................20, 21, 22

Fed. R. Civ. P. 12.................................................................................5

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................13, 15

Cal. Bus. & Prof. Code § 17500 ..............................................................13

Cal. Bus. & Prof. Code § 17536 ..............................................................15

Cal. Ins. Code § 790............................................................................2, 11

Cal. Ins. Code § 790.01........................................................................11

Cal. Ins. Code § 790.03....................................................................11, 12

**INTRODUCTION**

This is a dispute over the correct interpretation of eleven universal life insurance policies.  Plaintiff U.S. Bank National Association ("the Bank") contends that defendant PHL Variable Insurance Company ("Phoenix") breached the policies' express terms when, in 2010, Phoenix announced an increase to the rates applicable to the "cost of insurance" charge, a monthly deduction for providing the insurance coverage.  Not content with a breach of contract claim, the Bank repackages the same allegations as counts for breach of the implied covenant of good faith and fair dealing, alleged violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, and requests for declaratory relief under 28 U.S.C. § 2201.  The Court should streamline the lawsuit by dismissing with prejudice the facially deficient counts, the Complaint's Second through Fifth Causes of Action.

Dismissal is appropriate for a host of reasons.  <u>First</u>, whether the claim is pled in tort or in contract, the Bank fails to state a claim for breach of the implied covenant of good faith and fair dealing.  This lawsuit concerns a monthly charge for insurance, not whether Phoenix will pay the death benefits promised by the life insurance.  California does not recognize a bad faith tort claim against an insurer where, as here, no unpaid policy benefits are alleged to be due or owing.  Nor does California recognize a bad faith claim sounding in contract that merely restates a claim for breach of contract, as does the Bank's implied covenant claim.

<u>Second</u>, the UCL and FAL have no extraterritorial application here.  Neither the UCL nor the FAL can be conscripted to redress injuries allegedly suffered in Ohio by the Ohio-based Bank, which was supposedly affected by misrepresentations and corporate decisions made in Connecticut by Phoenix, a Connecticut-based life insurer.  The Complaint makes no effort to tie its allegations to California.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL

Third, the Bank's assertion of UCL and FAL claims is an impermissible attempt at circumventing the California Supreme Court's holding in *Moradi-Shalal v. Fireman's Fund Insurance Cos.*, 46 Cal. 3d 287 (1988), that there is no private right of action to enforce conduct governed by the Unfair Insurance Practices Act ("UIPA"), Cal. Ins. Code § 790 *et seq.* The UIPA specifically governs the acts alleged in the Bank's UCL and FAL claims:  misrepresentations about policy terms and benefits; misrepresentations made to induce a policyholder to lapse or surrender the insurance; and unfair discrimination between policyholders in the same class.

Fourth, even if the FAL applied, the Bank's assertion of "false advertising" relies on nonactionable statements of opinion concerning the policies' general characteristics, not on any definitive representations about cost of insurance charges specifically.  This sort of sales "puffery" cannot support an FAL claim.

Fifth, the (inapplicable) UCL claim likewise fails on the merits.  The Bank invokes the UCL's "unlawful," "unfair," and "fraudulent" prongs, each of which is separately actionable.  But no "unlawful" prong claim is stated insofar as the Complaint does not specify, as it must, a predicate legal violation on which the claim can be based.  Nor is an "unfair" prong claim stated since the Bank does not purport to "tether" its claim to any legislatively declared policy, instead pinning the UCL claim to the alleged contract breaches.  A UCL "fraud" prong claim also is not stated since, as with the FAL claim, the Complaint alleges only nonactionable sales characterizations or "puffery."

Sixth, the UCL and FAL offer limited remedies which, to be granted, first must be found equitable.  The Bank, however, has not alleged – and cannot allege – that it lacks an adequate remedy at law, or that it will suffer an irreparable harm.

Seventh, although the UCL and FAL claims assert a course of fraudulent conduct, the Bank makes little effort in its Complaint to meet the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b).  Among other

things, the Complaint fails to identify *what* each of the alleged misrepresentations was; *who* at the Bank received, read, and relied on the representations; *when* and *where* that reliance occurred; and *how* the representations are materially misleading.

<u>Eighth</u>, the declaratory relief sought is redundant in light of the breach of contract claim.  The parties' respective rights and obligations under the policies necessarily will be declared and adjudicated by the contract claim's resolution.

Accordingly, the Court should enter an order dismissing, with prejudice, the Second through Fifth Causes of Action from the Complaint.

## THE COMPLAINT'S ALLEGATIONS

The Bank, an Ohio-based national association, Compl. ¶ 9, alleges that it is the owner and beneficiary of eleven universal life policies issued between 2005 and 2006 by Phoenix, *id.* ¶ 13, a Connecticut-based life insurance company.  *Id.* ¶ 10. The Bank avers that it acquired these policies in its capacity as "the securities intermediary for Lima Acquisitions LP," an entity about which the Complaint says nothing further.  *Id.* ¶ 9.[1]

Each policy provides it will remain in force as long as there are sufficient funds in the policy account each month to cover certain monthly deductions described in the policy.  *Id.* ¶ 14.  The monthly deductions consist of various charges – *e.g.*, a sales charge, issue charge, and service charge – including a cost of insurance charge.  *Id.*  Any balance in the policy account remaining after the deductions reflects the policy's accumulated "cash value."  *Id.*

The cost of insurance charge, and any increases to the charge's applicable rate, are governed by each policy's express terms.  Phoenix periodically resets its cost of

---

[1] Phoenix makes its arguments based on the allegations of the Complaint, and the documents incorporated and referenced therein.  Phoenix reserves the right to assert additional arguments and defenses that may be developed through discovery and further investigation including, but not limited to, the Bank's standing and capacity as a real party in interest to sue.

insurance rates, the determination of which is subject to the guarantee that they will never be higher than the maximum provided in the policy's schedule pages.  *See* Compl. Ex. 2 at 31 (Section 9: Policy Value); Compl. Ex. 3 at 68 (Brief Summary of Main Provisions) & 80 (Part 5: Policy Values).[2]

The Complaint alleges that Phoenix marketed and sold the policies by representing in press releases, trademark filings, and unspecified "other" marketing materials that the policies:  (a) give policyholders the "opportunity to lower premiums, as well as adjust the amount and timing of premium payments"; (b) are "designed to balance protection and cash accumulation with features suited to meet policyholders' evolving personal or business planning needs"; (c) "offer increased choice and policy design flexibility to meet the needs of the high net worth"; (d) are "appropriate for those looking to minimize long term insurance costs while seeking competitive returns"; and (e) "featur[e] flexible premiums and adjustable-death benefits."  Compl. ¶¶ 19 & 20.

Without identifying who (which employee) at the Bank actually read or relied on these representations, the Bank alleges it "purchased" the policies "[b]ased on the language of the policies, Phoenix's rates, and representations like those above."  *Id.* ¶ 21.  The Bank, however, did not purchase the policies from Phoenix directly.  Rather, the Bank indirectly acquired the policies from the owners to whom the

---

[2] Phoenix disputes the Bank's characterization of the policies' language.  The Bank does *not* allege that Phoenix imposed charges in excess of the guaranteed maximum rates stated in the policies.  Accordingly, although Phoenix does not now move on the First Cause of Action, Phoenix intends to file a dispositive motion at an appropriate time addressing the Bank's flawed reading of the policy language, and the breach of contract claim's legal insufficiency.  *See Coffman v. Pruco Life Ins. Co.*, No. CV 10-3663, 2011 WL 4550152, at *3-4 (D.N.J. Sept. 29, 2011) (similarly-worded life insurance policy held to confer discretion on life insurer in setting cost of insurance rates); *Baymiller v. Guarantee Mut. Life Co.*, No. CV 99-1566, 2000 WL 1026565, at *2 (C.D. Cal. May 3, 2000) (same, including "discretion to consider more than Plaintiffs' sex, age and rating class").

1   policies were originally issued, or otherwise through another channel.  *See, e.g.*,

2   Compl. Ex. 2 at 54 & Ex. 3 at 99 (identifying the policies' original owners and

3   beneficiaries).  Hence, no representations were specifically directed to the Bank.

4       In early 2010, Phoenix announced that the policies' cost of insurance rates

5   would increase.  Compl. ¶ 21.  The Complaint contends this increase breaches the

6   policies' "express terms" in several ways.  *Id.* ¶ 22.  The policies supposedly

7   "provide that the cost of insurance rates will be based only on certain enumerated

8   factors that include Phoenix's expectations of future mortality and persistency,"

9   which is not Phoenix's basis for the increase.  *Id.*  Next, the increase supposedly

10  "does not apply to an entire class of insureds, but only to those who maintain lower

11  accumulated policy values."  *Id.* ¶ 23.  Finally, Phoenix supposedly increased cost of

12  insurance rates even though "life expectancy is now longer," whereas the rates

13  "should be driven primarily by Phoenix's expectations of future mortality."  *Id.* ¶ 24.

14      This lawsuit was commenced on November 16, 2011.  The Court has

15  jurisdiction under 28 U.S.C. § 1332(a).  *Id.* ¶ 11.

16                      **APPLICABLE LEGAL STANDARDS**

17      "A Rule 12(b)(6) motion tests the legal sufficiency of a claim."  *Navarro v.*

18  *Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Only a complaint stating a facially

19  "plausible" claim should survive the motion.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.

20  Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).  "A claim has facial plausibility when the

21  plaintiff pleads factual content that allows the court to draw the reasonable inference

22  that the defendant is liable for the misconduct alleged."  *Id.* at 1949.  A complaint

23  that offers "labels and conclusions" or a "formulaic recitation" of a claim's elements

24  will not suffice.  *Id.*  The tenet that a court must accept as true all of the complaint's

25  allegations is thus inapplicable to legal conclusions, and to any allegations

26  contradicted by documents attached to or referenced in the complaint.  *Paulsen v.*

27  *CNF, Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

28

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL

# ARGUMENT[3]

## I.   The Bank Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.

In California, "the breach of an insurance contract (by the insurer) of the implied covenant of good faith and fair dealing will give rise to an action in tort by the insured, as well as one in contract, at the election of the insured (or assignee). An action for recovery on either theory is what is commonly referred to as one for 'bad faith.'" *Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 467 n.19 (2007).  The Complaint does not specify which bad faith variant the Bank asserts, tort or contract.[4]  Both variants fail under the facts alleged.

### A.   If Pled In Tort, The Bad Faith Claim Fails Because No Unpaid Policy Benefits Are Alleged To Be Due.

Bad faith claims sounding in tort have been carefully restricted to instances where benefits are alleged to be actually due and owing under the insurance policy. This is not such an instance.

Because the implied covenant is a contract term, "compensation for its breach has almost always been limited to contract rather than tort remedies." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 684 (1988).  A *limited* exception nonetheless has been made for the insurer-insured relationship.  *See id.*  "An insured does not enter an insurance contract seeking profit, but instead seeks security and peace of mind through protection against calamity.  The bargained-for peace of mind comes from the assurance that the insured will receive prompt payment of money in times

---

[3] For purposes of this motion Phoenix assumes, but does not concede, that California law supplies the substantive rules of decision.

[4] "There is a significant difference, however, in the available remedies.  If the insured elects to proceed in tort, recovery is possible for not only all unpaid policy benefits and other contract damages, but also extracontractual damages such as those for emotional distress, punitive damages and attorney fees."  *Archdale*, 154 Cal. App. 4th at 467 n.19.  The Complaint seeks punitive damages in connection with the bad faith claim, *see* Compl. ¶ 43, suggesting that the Bank is proceeding in tort.

of need.  Because peace of mind and security are the principal benefits for the insured, the courts have imposed special obligations, consonant with these special purposes, *seeking to encourage insurers promptly to process and pay claims*." *Progressive West Ins. Co. v. Superior Court*, 135 Cal. App. 4th 263, 277 (2005) (emphasis in original; internal quotation marks omitted).

"Because the essence of the tort of the implied covenant of good faith and fair dealing is focused on the prompt payment of benefits due under the insurance policy, there is no cause of action for breach of the covenant of good faith and fair dealing when no benefits are due."  *Id.* at 279.  "It follows an insured cannot maintain a claim for tortious breach of the implied covenant of good faith and fair dealing absent a covered loss."  *Benavides v. State Farm Gen. Ins. Co.*, 136 Cal. App. 4th 1241, 1250 (2006); *see also Avery Dennison Corp. v. Allendale Mut. Ins. Co.*, 310 F.3d 1114, 1117 (9th Cir. 2002) ("Except perhaps in highly extraordinary circumstances, California does not permit recovery on a bad faith claim unless insurance benefits are due under the policy."); *Jonathan Neil & Assocs., Inc. v. Jones*, 33 Cal. 4th 917, 941-42 (2004) (implied covenant does not protect insured from being charged excessive premiums).

This case is a textbook example of when a tortious bad faith claim may *not* lie against an insurer.  The Bank owns the life insurance policies purely for reasons of commercial profit – no threat to an insured's "security and peace of mind through protection against calamity" is implicated here.  Nor is this a case concerning the "prompt payment of benefits due" – this lawsuit is about a rate increase imposed in connection with the cost of carrying the life insurance, not Phoenix's refusal to pay any covered loss or death benefits.  Neither a coverage dispute nor a dilatory or otherwise improper claim settlement is involved.  The Bank thus pleads insufficient facts to justify a recovery in tort for breach of the implied covenant of good faith and fair dealing, the Complaint's Second Cause of Action.

**B.   If Pled In Contract, The Bad Faith Claim Improperly Duplicates The Breach Of Contract Claim.**

The Complaint also fails to state a claim for breach of the implied covenant that sounds in contract.  Where, as here, "the plaintiff's allegations of breach of the covenant of good faith do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."  *Bionghi v. Metro. Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358, 1370 (1999) (internal quotation marks omitted); *see also Alvarez v. Chevron Corp.*, 656 F.3d 925, 931 n.6 (9th Cir. 2011) (implied covenant claim fails because it was "duplicative" of breach of contract claim).

An implied covenant claim is "superfluous" here.  The Complaint alleges that Phoenix breached the implied covenant "by undermining Plaintiff's right to pay premiums as needed to cover their monthly deductions," and "by using the cost of insurance rates to make the Policies prohibitively expensive and trying to cause Plaintiff and other policyholders to lapse or surrender their policies."  Compl. ¶¶ 40 & 41.  In so alleging, the Bank points to the very same conduct forming the basis for the Bank's breach of contract claim.

The implied covenant "breaches" describe only the *consequence* of "breached" contract terms.  The purported "undermining" would not exist except for Phoenix's increase in the cost of insurance, the subject of express contractual provisions, nor would the policies be "prohibitively expensive" except for the increase.  *See id.* ¶¶ 30-34.  Both claims rely on the same alleged acts, and the same contract terms.  And while the bad faith claim seeks extracontractual relief in the form of punitive damages, such damages may only be sought through an (unavailable) bad faith *tort* claim.  *Archdale*, 154 Cal. App. 4th at 467 n.19.

## II.   The Bank Fails To State Claims For Violations Of The FAL And UCL.

### A.   The FAL And UCL Cannot Be Applied Extraterritorially.

The Bank's UCL and FAL claims – the Third and Fourth Causes of Action – implicate California's judicial presumption against extraterritorial application. "However far the Legislature's power may theoretically extend, [California courts] presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (internal quotation marks omitted).   "Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially.   Accordingly, the presumption against extraterritoriality applies to the UCL in full force." *Id.*   The same is equally true of the FAL claim.   *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 918 (C.D. Cal. 2011).

The UCL and FAL thus do not redress "injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California." *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 225 (1999).   As the courts have noted, "the existence of personal jurisdiction over the defendant does not alone permit application of the forum law to the claims of nonresident plaintiffs." *Id.* at 226 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985)).

*None* of the misconduct alleged in the Complaint occurred in California. Neither of the parties are California corporations, nor has the Bank been affected in California by Phoenix's conduct.   The decision to increase cost of insurance rates was a corporate decision by Phoenix, a Connecticut insurer with a Connecticut "nerve center."   Compl. ¶ 10.   That *some* of the policies may have been issued in

1  California, *see* Compl. Ex. 1 – one policy was issued in Wisconsin, *see id.* – is

2  irrelevant.  As is evident from their face, the policies were not issued to the Bank, but

3  to other original owners and beneficiaries.  *See, e.g.*, Compl. Ex. 2 at 54 & Ex. 3 at

4  99.  The Bank only later acquired the policies, as investments, to profit from the

5  insureds' death.

6        While the Bank, a national association headquartered in Ohio, Compl. ¶ 9,

7  avers that it relied on "the language of the policies, Phoenix's rates, and

8  representations" in certain Phoenix press releases and trademark filings, *id.* ¶¶ 19-21,

9  there is no suggestion that these alleged misrepresentations originated in California,

10  or that the representations even reached the Bank or the policies' original purchasers

11  in California.  The Bank has "not alleged with sufficient detail that the point of

12  dissemination from which advertising and promotional literature that [the Bank] saw

13  or could have seen is California."  *Toyota Motor*, 785 F. Supp. 2d at 917 (emphasis

14  omitted).  Whatever conduct related to the issuance of some policies that may have

15  occurred in California did not give rise to *the Bank's* claims.

16        Because no factually-supported basis for applying the UCL or FAL appears in

17  the Complaint, the claims invoking those California statutes should be dismissed.

18  *See id.* at 917-18; *Tidenberg v. Bidz.com, Inc.*, No. CV 08-5553, 2009 WL 605249,

19  at *4-5 (C.D. Cal. Mar. 4, 2009); *see also Sullivan*, 51 Cal. 4th at 1207-08; *Norwest*

20  *Mortg.*, 72 Cal. App. 4th at 225-26.

21      **B.**    **The Bank Improperly Relabels Conduct Specifically Governed By**

22                    **California's Unfair Insurance Practices Act As False Advertising**
                  **And Unfair Competition.**

23        Even if the statutes did apply the Bank's UCL and FAL claims also run afoul

24  of the holding in *Moradi-Shalal v. Fireman's Fund Insurance Cos.*, 46 Cal. 3d 287

25  (1988).  There, the California Supreme Court held that the UIPA does not permit a

26  private right of action against insurers who violate its provisions.  46 Cal. 3d at 304-

27  05.  This rule has been held to apply to both first- and third-party insurance.  *Textron*

28

*Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1070 (2004).  By its terms, California's UIPA regulates "trade practices in the business of insurance" by defining, or providing for the determination of, "all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined."  Cal. Ins. Code § 790.  The UIPA applies to all persons "engaged in the business of insurance." § 790.01.

"While insurance companies are subject to California laws generally applicable to other businesses, including laws governing unfair business practices, parties cannot plead around *Moradi-Shalal*'s holding by merely relabeling their cause of action as one for unfair competition."  *Textron Fin.*, 118 Cal. App. 4th at 1070 (rejecting UCL claim alleging the insurer was "using misleading documents and misrepresenting both the terms of the insurance policies and its obligations under them for its own benefit, [which] are the type of activities covered by the UIPA," citing Cal. Ins. Code § 790.03(a) and (h)).  In short, "the Business and Professions Code provides no toehold for scaling the barrier of *Moradi-Shalal*."  *Safeco Ins. Co. v. Superior Court*, 216 Cal. App. 3d 1491, 1494 (1990); *see also Bates v. Hartford Life & Accident Ins. Co.*, 765 F. Supp. 2d 1218, 1221 (C.D. Cal. 2011) (dismissing UCL claim as barred by *Moradi-Shalal*); *Vinci Inv. Co. v. Mid-Century Ins. Co.*, No. CV 08-152, 2008 WL 4447102, at *5 (C.D. Cal. Sept. 30, 2008) (same).

To permit the Bank to assert its UCL and FAL claims here would render *Moradi-Shalal* meaningless.  The Complaint alleges Phoenix misrepresented the policies' terms, as well as the benefits or advantages promised, *see* Compl. ¶¶ 5 (Phoenix "lured policyholders into purchasing such policies"), 6, 19-21; that Phoenix made misrepresentations for the specific purpose of inducing the Bank to lapse, forfeit, or surrender the insurance, *see id.* ¶¶ 7 (Phoenix "raised its cost of insurance rates to make some policies so expensive that policyholders, like Plaintiff, would

have no economically rational choice but to lapse or surrender their policies") & 25; and that Phoenix unfairly discriminated between individuals of the same class, *see id.* ¶¶ 23 ("the increase in the cost of insurance rates clearly does not apply to an entire class of insureds") & 26 (Phoenix "singled out" certain policyholders).  These allegations fall squarely within the ambit of the UIPA, which prohibits, *inter alia*:

- "Making, issuing, circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby," Cal. Ins. Code § 790.03(a);

- "[M]aking any misrepresentation to any policyholder insured in any company for the purpose of inducing or tending to induce the policyholder to lapse, forfeit, or surrender his or her insurance," *id.*; and

- "Making or permitting any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance or of life annuity or in the dividends or other benefits payable thereon, or in any other of the terms and conditions," § 790.03(f).

"The California courts have not created any distinction between the three prongs of section 17200 and its interplay with the UIPA.  Rather, the courts created a general rule that bar private causes of action for violation of section 17200 against insurers that violate the provisions of the UIPA."  *Vinci Inv.*, 2008 WL 4447102, at *5.  Accordingly, the Court should dismiss the Bank's UCL and FAL claims, which center on activities specifically regulated by the nonactionable UIPA.[5]

---

[5] In addition to the decisions cited in the text, numerous decisions reject UCL and FAL claims where the UIPA specifically regulates the conduct at issue.  *See, e.g.*, *Sanders v. Choice Mfg. Co.*, No. CV 11-3725, 2011 WL 6002639, at *8-9 (N.D. Cal. Nov. 30, 2011); *Wayne Merritt Motor Co. v. N.H. Ins. Co.*, No. CV 11-1762, 2011 WL 5025142, at *7-8 (N.D. Cal. Oct. 21, 2011); *Willbanks v. Progressive Choice Ins. Co.*, No. CV 10-1299, 2010 WL 4861349, at *4-5 (E.D. Cal. Nov. 17, 2010); *Guerard v. CNA Fin. Corp.*, No. CV 09-1801, 2009 WL 3152055, at *6 (N.D. Cal. Sept. 23, 2009); *AHO Enters. v. State Farm Mut. Auto. Ins. Co.*, No. CV 08-4133, 2008 WL 4830708, at *5 (N.D. Cal. Nov. 6, 2008).

In a pending appeal, *Zhang v. Superior Court*, No. S178542 (Cal. review granted Feb. 10, 2010), the California Supreme Court may answer the following

(*footnote continued on next page*)

12

C.   **The FAL Claim Fails On Its Merits.**

1.   **The "representations" in Phoenix's "advertising" are true, do not relate to cost of insurance, or are nonactionable opinion.**

In any event, the Bank does not allege any "false advertising" upon which the claim may rest.  The FAL requires "disseminat[ion] before the public" of "untrue and misleading" advertising made "to induce the public to enter into any obligation relating thereto."  Cal. Bus. & Prof. Code § 17500.  The Complaint, however, points to statements in two press releases and a trademark filing that neither (a) address cost of insurance nor (b) describe any quantifiable or specific characteristic of the policies.  FAL claims cannot be based on the sort of sales "puffery" relied on by the Bank.  *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), *aff'd* 322 F. App'x 489 (9th Cir. 2009); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003).

"[T]he determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion."  *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008).  "Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim.  The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions.  Thus, a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact while a general, subjective claim about a product is nonactionable puffery."  *Id.* (internal quotation marks omitted).

---

questions:  "(1) Can an insured bring a cause of action against its insurer under the unfair competition law (Bus. & Prof. Code, § 17200) based on allegations that the insurer misrepresents and falsely advertises that it will promptly and properly pay covered claims when it has no intention of doing so?  (2) Does *Moradi-Shalal v. Fireman's Fund Ins. Cos.* (1988) 46 Cal. 3d 287 bar such an action?"

1   A "general assertion" that the defendant "provides its customers with low

2   costs and with flexibility" is "classic puffery."  *Id.*  Yet that is precisely what the

3   Bank advances as "false advertising."  Phoenix allegedly stated that the policies:  (a)

4   give policyholders the "opportunity to lower premiums, as well as adjust the amount

5   and timing of premium payments"; (b) are "designed to balance protection and cash

6   accumulation with features suited to meet policyholders' evolving personal or

7   business planning needs"; (c) "offer increased choice and policy design flexibility to

8   meet the needs of the high net worth"; (d) are "appropriate for those looking to

9   minimize long term insurance costs while seeking competitive returns"; and (e)

10  "featur[e] flexible premiums and adjustable-death benefits."  Compl. ¶¶ 19 & 20.

11  None of these statements are quantifiable assertions or describe the policies'

12  specific or absolute characteristics, much less those concerning cost of insurance

13  rates.  They are instead subjective or entirely truthful statements.  Statement (a)

14  concerns the "opportunity" to pay "lower" or adjustable premiums.  The Complaint

15  not only alleges that policyholders enjoyed this "opportunity" for the years preceding

16  the rate increase, the use of the subjective term "lower" premiums constitutes

17  "classic" puffery.  *See Newcal Indus.*, 513 F.3d at 1053; *Forsyth v. Humana, Inc.*,

18  114 F.3d 1467, 1481 (9th Cir. 1997) (advertising stating that because defendant

19  insurer can "control costs" employers and employees can save money constitutes

20  puffery; such statements are "too general to be interpreted as defining any

21  calculation of insurance premiums").

22  The claims of statements (b), (c) and (e) that the Phoenix policies can

23  "balance" policyholders' "evolving personal or business planning needs" and offer

24  "flexibility" similarly do not describe any definitive or quantifiable characteristics.

25  *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1136 (N.D. Cal. 2010) (retailer's

26  claims that washing machines are "designed and manufactured for years of

27  dependable operation" and "save you time by allowing you to do fewer, larger loads"

28

are nonactionable puffery); *Oestreicher*, 544 F. Supp. 2d at 973-74 (computer manufacturer's claims of "higher performance," "longer battery life," "richer multimedia experience," and "faster access to data" are nonactionable puffery). These statements also are *true* – as the Complaint itself avers, cost of insurance rate increase or not, policyholders can pay premiums in any amount they choose provided that amount is sufficient to keep the policy from lapsing. *See* Compl. ¶ 2.

Statement (d) subjectively claims that the policies are "appropriate" for policyholders hoping to "minimize … insurance costs" and to obtain "competitive" returns. The statement does not claim that "insurance costs" will never increase, particularize which costs are "minimize[d]," or quantify what is "minim[al]" or "competitive" in the first place. *See Farmer v. Countrywide Fin. Corp.*, No. CV 08-1075, 2009 WL 1530973, at *6 (C.D. Cal. May 18, 2009) (mortgage banker's claim to get "the best mortgage rate possible" for plaintiffs is nonactionable puffery).

In short, in the absence of a definite statement making factual assertions about the policies' cost of insurance rates, the Bank cannot state a cognizable FAL claim.

### 2.    The Bank cannot seek civil money penalties.

In connection with the FAL claim, the Complaint's Prayer for Relief demands "an assessment of the maximum statutory penalties provided under Cal. Bus. & Prof. Code § 17536." This demand is frivolous. The civil money penalties provided for in that statute cannot be recovered by a private litigant like the Bank. *Chern v. Bank of America*, 15 Cal. 3d 866, 875 (1976). Rather, as the statute makes clear, penalties only may be "recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction." § 17536(a).

### D.    The UCL Claim Fails On Its Merits.

The UCL prohibits any "unlawful," "unfair" or "fraudulent" business act or practice. Cal. Bus. & Prof. Code § 17200. "Each of these three prongs constitutes a

separate and independent cause of action."  *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 554 (9th Cir. 2010).  For the UCL claim, the Bank's Complaint merely alleges:  "Defendant has engaged in unlawful, unfair, and fraudulent business acts and practices, as described in detail herein."  Compl. ¶ 46.

### 1.   No "unlawful" prong claim is stated – the Complaint fails to specify the violation of any underlying law.

An underlying legal violation is a UCL "unlawful" prong claim's *entire* basis.  The UCL "borrows" violations of other laws and makes them independently actionable as unlawful business practices.  *Martinez*, 598 F.3d at 557.  "The UCL's 'unlawful' prong is essentially an incorporate-by-reference provision."  *Id.* Consequently, a complaint's failure to "reference" the "incorporated" violation deprives the defendant of fair notice of the true nature of the claim against which it must defend.  For this reason, federal courts hold that, in the complaint, "the plaintiff bringing a claim based on the unlawful prong must identify the particular section of the statute that was allegedly violated, and must describe with reasonable particularity the facts supporting the violation."  *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1022 (N.D. Cal. 2007); *see also Yumul v. Smart Balance, Inc.*, No. CV 10-927, 2011 WL 1045555, at *12 (C.D. Cal. Mar. 14, 2011); *Williams v. Oberon Media, Inc.*, No. CV 09-8764, 2010 WL 1644888, at *5 (C.D. Cal. Mar. 4, 2010).

The Bank's Complaint falls woefully short of this pleading standard.  Not only does the Complaint fail to allege facts supporting the violation of an underlying statutory or regulatory scheme, the Complaint fails even to identify the specific statute or rule purportedly giving rise to the "unlawful" claim.  Phoenix cannot fairly be expected to prepare a defense on allegations as thin as these.  *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1043-44 (9th Cir. 2010) (plaintiff's allegation that defendant "violated the common law of unfair competition and

breached his contract" did not "amount to a violation of the 'unlawful' prong of §
17200" since plaintiff failed to allege "a business practice 'forbidden by law'").

### 2. No "unfair" prong claim is stated – the claim is not tethered to a legislative policy, nor is a contract breach "unfair."

The California courts have not settled on what constitutes an "unfair" act or
practice in a non-competitor UCL lawsuit. *See Tourgeman v. Collins Fin. Servs.,
Inc.*, No. CV 08-1392, 2009 WL 6527757, at *6 (S.D. Cal. Aug. 6, 2009).  Most
California courts, however, hold that a UCL "unfair" prong claim must be "tethered"
to a specific constitutional, statutory or regulatory provision.  *See, e.g.*, *Levine v.
Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1137 (2010); *Durell v. Sharp
Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010); *Buller v. Sutter Health*, 160 Cal.
App. 4th 981, 991 (2008); *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App.
4th 1224, 1239 (2007); *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940
(2003); *Byars v. SCME Mortg. Bankers, Inc.*, 109 Cal. App. 4th 1134, 1147 (2003);
*Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002).[6]  Otherwise "the
courts will roam across the landscape of consumer transactions picking and choosing

---

[6] In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, the
California Supreme Court rejected the so-called "balancing test" for determining
whether a practice was unfair under the UCL.  20 Cal. 4th 163 (1999).  This arose in
the context of a suit between business competitors.  *Id.* at 185.  The "balancing test"
involved weighing the harms to the plaintiff against the utility of the defendant's
practice to determine whether the practice was unfair.  *Cel-Tech* required that an
unfair practice be tethered to a legislatively declared policy or a showing of an
impact on competition.  *Id.* at 186.  The court reserved the question of whether its
new definition would apply in non-competitor cases.  *Id.* at 187 n.12.

As noted above, most courts hold that *Cel-Tech*'s rationale compels the
conclusion that the "unfair" prong must be tethered to a legislative policy.  This view
also makes sense as a matter of statutory construction.  There is only one word,
"unfair," used in the statute; the legislature did not set forth one definition for
competitor cases and another for non-competitor cases.  The word "unfair" must
mean the same thing in each category.  "To give the same word[] a different meaning
for each category would be to invent a statute rather than interpret one."  *Clark v.
Martinez*, 543 U.S. 371, 378, 125 S. Ct. 716, 160 L. Ed. 2d 734 (2005).

1  which they like and which they dislike." *Van Slyke v. Capital One Bank*, No. CV

2  07-671, 2007 WL 3343943, at *11 (N.D. Cal. Nov. 7, 2007); *see also Tourgeman*,

3  2009 WL 6527757, at *7 (finding "that the reasoning of the California Supreme

4  Court in *Cel-Tech* leads logically to an application of the 'tether' test to consumer

5  UCL suits" because "the scope of unfairness under the UCL" should not be extended

6  "beyond what can be justified by the expressed will of the legislature").

7      The Complaint does not identify *any* legislatively declared policy that was

8  violated.  The Bank's "unfair" prong claim thus fails because it is not tied to the

9  violation of any specific legislative policy.

10     Dismissal of the "unfair" prong claim is warranted for another, independent

11  reason.  The claim merely restates the Bank's breach of contract and implied

12  covenant claims.  But "an action under the UCL is not an all-purpose substitute for a

13  tort or contract action."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

14  1134, 1150 (2003) (internal quotation marks omitted).  "'A breach of contract may

15  form the predicate for a section 17200 claim, provided it also constitutes conduct that

16  is unlawful, or unfair, or fraudulent.'"  *Sybersound Records, Inc. v. UAV Corp.*, 517

17  F.3d 1137, 1152 (9th Cir. 2008) (quoting *Nat'l Rural Telecommc'ns Co-op. v.*

18  *DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003)).  The Bank does not

19  contend, however, that the cost of insurance rate increase is independently unfair,

20  unlawful, or fraudulent, only that Phoenix's conduct is inconsistent with the policies'

21  express and implied terms.  This fails to state a UCL "unfair" prong claim.  *See* 517

22  F.3d at 1152 (UCL claim failed where plaintiff did not allege that "breaches of

23  contract are independently unlawful, unfair, or fraudulent," only that defendants did

24  not pay royalties or acquire licenses in breach of their contracts).

25         **3.    No "fraud" prong claim is stated – Phoenix's**
26            **"representations" are not actionable as UCL "fraud."**

27     Like FAL claims, UCL "fraud" prong claims cannot rest on mere sales

28  puffery.  *See Oestreicher*, 544 F. Supp. 2d at 973; *Consumer Advocates*, 113 Cal.

App. 4th at 1361. The conclusorily-pled basis for the Bank's "fraud" prong claim appears to be identical to the purported basis for the Bank's FAL claim. Thus, for the same reasons stated in Part II.C.1, *supra*, the UCL "fraud" prong claim also fails.

### E.   Because The Bank Has A Perfectly Adequate Legal Remedy, Equitable Relief Cannot Be Granted Under The FAL Or UCL.

Relief under the UCL and FAL is available only where a plaintiff lacks an adequate legal remedy. The Bank is not entitled to such relief because it has an adequate legal remedy for damages under the breach of contract claim.

The UCL's remedies are "limited." *Korea Supply*, 29 Cal. 4th at 1144. The only remedies available under the UCL are injunctive and restitutionary relief, both equitable remedies. *Id.* The same is true of the FAL, *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009), the remedial scheme for which is "construed in the same manner" as the UCL's remedial scheme. *Cortez v. Purolator Air Filtration Prods.*, 23 Cal. 4th 163, 177 n.10 (2000).

A UCL/FAL action is an equitable action. *Id.* at 173. Relief granted under these statutes necessarily implicates the Court's equitable powers and discretion. *See id.* at 180 ("A court cannot properly exercise an equitable power without consideration of the equities on both sides of a dispute."); *Prudential Home Mortg. Co. v. Superior Court*, 66 Cal. App. 4th 1236, 1249-50 (1998); *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 774 (1989). To seek equitable relief, a plaintiff therefore must lack an adequate remedy at law. *Stewart v. Life Ins. Co. of N. Am.*, 388 F. Supp. 2d 1138, 1144 (E.D. Cal. 2005). Equitable relief is never mandated, even if an unfair business practice has been shown. *Cortez*, 23 Cal. 4th at 180. Nor do the UCL and FAL "provide courts with *unlimited* equitable powers." *Korea Supply*, 29 Cal. 4th at 1147.

Restitution would not be equitable here. The Bank nowhere avers that it lacks an adequate remedy at law, or that any injury it will suffer is irreparable. The Bank instead pursues a claim for a breach of contract, seeks compensatory damages and, if

19

1  it prevails, can recover through that avenue all the money Phoenix supposedly owes.

2  *See Stewart*, 388 F. Supp. 2d at 1144 (rejecting UCL claim because plaintiff failed to

3  allege inadequate legal remedy, and her breach of contract claim would provide

4  benefits owed under insurance policy).

5  An injunction also would be inequitable.  Any injury the Bank purportedly has

6  or will suffer is purely monetary in nature.  "The basis of injunctive relief in the

7  federal courts is irreparable harm and inadequacy of legal remedies."  *Los Angeles*

8  *Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980).  As courts

9  have emphasized, "monetary injury is not normally considered irreparable."  *Id.*  If

10  the Bank prevails, an award of damages can adequately compensate its alleged loss.

11  **F.   The Bank Fails To Satisfy Federal Rule Of Civil Procedure 9(b)'s**
12  **Heightened Pleading Standard.**

13  The UCL and FAL claims also fail because they are not pled with the

14  particularity required by Rule 9(b), which provides that a plaintiff "must state with

15  particularity the circumstances constituting fraud."  For its UCL claim, the Bank

16  alleges that Phoenix engaged in a course of "fraudulent business acts and practices."

17  Compl. ¶¶ 46 & 47.  Similarly, for its FAL claim, the Bank alleges that Phoenix's

18  "statements in connection with the marketing and sales of Defendant's policies were

19  untrue," "misleading," and "false."  *Id.* ¶¶ 51 & 52.  These claims are "grounded in

20  fraud" and, thus, Rule 9(b)'s "particularity" pleading standard applies.  *See Kearns v.*

21  *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to UCL

22  claim); *Vess v. Ceiba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)

23  (same; UCL and FAL claims); *Tidenberg*, 2009 WL 605249, at *5-6 (same).

24  "Federal Rule of Civil Procedure 9(b) requires more specificity including an

25  account of the time, place, and specific content of the false representations as well as

26  the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476

27  F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted).  A complaint must

28  therefore aver the "who, what, when, where, and how" of the misconduct charged.

20

*Kearns*, 567 F.3d at 1124.   The Rule serves three purposes:   "(1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."   *Id.* at 1125 (internal quotation marks omitted).

The Bank fails to meet the Rule 9(b) standard.   Although the Bank identifies several statements in Phoenix press releases and trademark filings, *see* Compl. ¶¶ 19 & 20, the Complaint also cryptically refers to "other" representations, *id.* ¶ 19, including unspecified representations "on [Phoenix's] website, and in marketing materials."   *Id.* ¶ 50.   If the Bank intends to press its case based on "other" statements about the policies, it must identify precisely *what* those statements are.

The Bank also does not state with particularity *who* the parties to the various representations are.   The Complaint does not allege that any of the original policy owners saw or relied on the purported misrepresentations.   Moreover, the Bank's allegations that it received, read, and relied on the representations are meaningless. *See id.* ¶¶ 21, 47 & 52.[7]   A corporate entity is not a natural person and can act only through its employees and agents.   The Complaint does not reveal "the identities of the parties to the misrepresentations" because it does not state which Bank employees saw and consequently acted on the alleged misrepresentations.   The identities of the persons to whom the alleged misrepresentations were directed is

---

[7] Recognizing that "reliance is the causal mechanism of fraud," *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009), the California Supreme Court has held that a plaintiff "proceeding on a claim of  misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions."   *Id.* at 306.

1  material information within the Bank's exclusive knowledge, and must be pled. *See,*

2  *e.g.*, *Asia Economic Inst. v. Xcentric Ventures, LLC*, No. CV 10-1360, 2010 WL

3  4977054, at *25 (C.D. Cal. July 19, 2010) (Rule 9(b) not met where complaint did

4  not identify, *inter alia*, "to whom" at plaintiff institute alleged misrepresentations

5  were directed); *World Health & Educ. Found. v. Carolina Cas. Ins. Co.*, 612 F.

6  Supp. 2d 1089, 1097 (N.D. Cal. 2009) (Rule 9(b) not met where complaint did not

7  identify "to whom" at plaintiff foundation misrepresentations were made).

8      Nor does the Complaint reveal *when* and *where* the Bank's receipt of the

9  alleged misrepresentations, and reliance thereon, occurred.  These are not idle

10  questions – the extraterritorial application of the UCL and FAL, if any, depends on

11  these averments.  There is no present factual basis for believing that the Bank's

12  employees read or relied on the representations in California, or that the

13  representations originated in California.  *See* Part II.A, *supra*.

14      The Complaint further fails to explain exactly *how* the five alleged

15  misrepresentations actually pled are false or misleading.  A plaintiff must set forth

16  not only "what is false or misleading" about a statement, but also "why it is false."

17  *Vess*, 317 F.3d at 1106.  All the Bank has done is describe vague, nonactionable sales

18  puffery unrelated to the cost of insurance issue without saying more, *see* Part II.C.1,

19  *supra*, leaving to Phoenix and the Court the task of connecting the dots.

20
21  **III.   The Declaratory Relief Sought Needlessly Duplicates The Breach Of Contract Claim And Must Be Dismissed.**

22      By statute, the Court "may," but is not required to, "declare the rights and

23  other legal relations of any interested party seeking such declaration, whether or not

24  further relief is or could be sought."  28 U.S.C. § 2201(a).  "Declaratory relief should

25  be denied when it will neither serve a useful purpose in clarifying and settling the

26  legal relations in issue nor terminate the proceedings and afford relief from the

27  uncertainty and controversy faced by the parties."  *United States v. Washington*, 759

28  F.2d 1353, 1357 (9th Cir. 1985) (en banc).  Declaratory relief is therefore

1  "unnecessary where an adequate remedy exists under some other cause of action."

2  *Chavers v. GMAC Mortg., LLC*, No. CV 11-1097, 2012 WL 10344, at *7 (C.D. Cal.

3  Jan. 3, 2012) (Wright, J.) (internal quotation marks omitted).

4      For its Fifth Cause of Action, the Bank "seeks a declaration (a) that Defendant

5  cannot raise the cost of insurance rates unless it changes the rates on a uniform basis

6  for an entire class of insureds; (b) that Defendant's cost of insurance rate increases

7  are improper and invalid; and (c) setting forth the specific guidelines that govern the

8  factual circumstances under which Defendant can increase the cost of insurance

9  rates."  Compl. ¶ 55.  The Bank's claims for declaratory relief and for breach of

10 contract are duplicative, so a declaratory judgment would not "serve a useful purpose

11 in clarifying and settling the legal relations in issue."  The requests for declarations

12 raise factual and legal issues that will be subsumed in, and necessarily resolved by,

13 the Court's resolution of the existing contract claim.  *See* Compl. ¶¶ 30-34.  There is

14 nothing to suggest a declaratory judgment would entitle the Bank to any relief

15 beyond the damages requested in the breach of contract claim.  *See Chavers*, 2012

16 WL 10344, at *7 (declaratory relief dismissed with prejudice as unnecessarily

17 duplicating other claims for relief).

18     Nor is a declaration needed because the policies are ongoing.  A declaration

19 would not better, or more forcefully, or more clearly resolve the issues than would a

20 judgment on a jury verdict.  *See Swartz*, 476 F.3d at 766 (request for declaratory

21 relief properly rejected as duplicating breach of contract claim); *Priyanto v. M/S*

22 *Amsterdam*, No. CV 07-3811, 2009 WL 175739, at *9 (C.D. Cal. Jan. 23, 2009)

23 (same).  This result is virtually dictated by Phoenix's constitutional right under the

24 Seventh Amendment to a jury trial in this action for damages.  *See Beacon Theatres,*

25 *Inc. v. Westover*, 359 U.S. 500, 507-11, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959).

26     To the extent the Bank may be seeking a declaration regarding possible *future*

27 cost of insurance increases, *see* Compl. ¶ 55(c), that request also is subject to

28

dismissal.   A declaratory judgment is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or may not occur at all. *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009).   Any additional increase in cost of insurance rates may not occur as anticipated, if it occurs at all. *See Swartz*, 476 F.3d at 766.

**CONCLUSION**

For all of the foregoing reasons, the Court should enter an order dismissing, with prejudice, the Second through Fifth Causes of Action from the Complaint.

Dated:  January 25, 2012          By:     /s/ Daniel L. Rasmussen
                                          Daniel L. Rasmussen (SBN 120276)
                                          dlr@paynefears.com
                                          Scott O. Luskin (SBN 238082)
                                          sol@paynefears.com
                                          PAYNE & FEARS LLP
                                          801 S. Figueroa Street
                                          Los Angeles, California  90017
                                          Telephone:  (213) 439-9911
                                          Facsimile:   (213) 439-9922

                                                *and*

                                          Waldemar J. Pflepsen, Jr. (*pro hac vice*)
                                          wjp@jordenusa.com
                                          Stephen J. Jorden (*pro hac vice*)
                                          sj@jordenusa.com
                                          Jason H. Gould (*pro hac vice*)
                                          jhg@jordenusa.com
                                          Brian P. Perryman (*pro hac vice*)
                                          bpp@jordenusa.com
                                          JORDEN BURT LLP
                                          1025 Thomas Jefferson Street, NW
                                          Suite 400 East
                                          Washington, DC 20007
                                          Telephone:  (202) 965-8100
                                          Facsimile:   (202) 965-8104

                                          *Attorneys for Defendant*
                                          *PHL Variable Insurance Company*

245185v6DC

4829-3574-8110.1

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL