KHAI LEQUANG (SBN 202922)
klequang@orrick.com
MELANIE D. PHILLIPS (SBN 245584)
mphillips@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street
Suite 3200
Los Angeles, California 90017
Telephone: 213-629-2020
Facsimile: 213-612-2499

STEPHEN G. FORESTA (admitted *pro hac vice*)
sforesta@orrick.com
PHILIPP SMAYLOVSKY(admitted *pro hac vice*)
psmaylovsky@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 WEST 52ND ST
NEW YORK, NY 10019
Telephone: 212-506-5000
Facsimile: 212-506-5151

Attorneys for Plaintiff
U.S. Bank National Association, as Securities
Intermediary for Lima Acquisition LP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, a national association, as securities intermediary for LIMA ACQUISITION LP,<br><br>        Plaintiff,<br><br>    v.<br><br>PHL VARIABLE INSURANCE COMPANY, a Connecticut corporation,<br><br>        Defendant. | Case No. CV11-09517 ODW(RZx)<br><br>**PLAINTIFF U.S. BANK NATIONAL ASSOCIATION'S, AS SECURITIES INTERMEDIARY FOR LIMA ACQUISITION LP, OPPOSITION TO DEFENDANT PHL VARIABLE INSURANCE COMPANY'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................. 1

II.  STATEMENT OF FACTS ..................................................... 4

III.  THE COURT SHOULD DENY PHL'S MOTION TO DISMISS ............... 6

    A.  Plaintiff Has Properly Pled a Claim for the Breach of the Implied Covenant of Good Faith and Fair Dealing ........................... 7

        1.  Plaintiff Has Properly Pled a Claim in Tort ............... 7

            a.  PHL is frustrating Plaintiff's right to the benefits of the policies ................................... 9

            b.  PHL has repudiated the policies ................... 12

            c.  PHL is depriving Plaintiff of an essential benefit ........ 13

        2.  Plaintiff Has Properly Pled a Claim in Contract ..................... 13

    B.  Plaintiff Has Stated a Claim Under the UCL and FAL ..................... 14

        1.  California Law Applies to PHL's Unlawful Conduct ............. 14

        2.  The UIPA Does Not Bar Plaintiff's Claims ........................ 16

        3.  PHL's False Statements Are Not Opinions or Puffery ........... 17

        4.  Plaintiff Has Alleged Unlawful, Unfair, and Fraudulent Conduct by PHL ........................................ 19

            a.  The complaint alleges unlawful conduct ...................... 20

            b.  The complaint alleges unfair conduct .......................... 20

            c.  The complaint alleges fraudulent conduct ................... 21

        5.  Plaintiff Is Entitled to Restitution Under the UCL and FAL ........................................................ 21

        6.  Plaintiff Has Alleged Its Claims With Particularity ................. 23

    C.  The Declaratory Relief Claim Is Not Duplicative .............................. 23

IV.  CONCLUSION ................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

Ackerman v. Coca-Cola Co.,
    2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. July 21, 2010) ................................. 23

Annunziato v. eMachines, Inc.,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............................................................. 18

Asad v. Hartford Life Ins. Co.,
    116 F. Supp. 2d 960 (N.D. Ill. 2000) ................................................................. 13

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) ........................................................................................ 6

Atchison, T. & S. F. Ry. Co. v. Lennen,
    640 F.2d 255 (10th Cir. 1981) ........................................................................... 22

Avery Dennison Corp. v. Allendale Mut. Ins. Co.,
    310 F.3d 1114 (9th Cir. 2002) ............................................................................. 8

Celador Int'l Ltd. v. Walt Disney Co.,
    347 F. Supp. 2d 846 (C.D. Cal. 2004) ............................................................... 14

Chavers v. GMAC Mortg., LLC,
    CV 11-01097 ODW, 2012 WL 10344 (C.D. Cal. Jan. 3, 2012) ....................... 25

Diaz v. Allstate Ins. Group,
    185 F.R.D. 581 (C.D. Cal. 1998) ....................................................................... 17

Gates v. Gen. Cas. Co. of Am.,
    120 F.2d 925 (9th Cir. 1941) ............................................................................. 15

Heighley v. J.C. Penney Life Ins. Co.,
    257 F. Supp. 2d 1241 (C.D. Cal. 2003) ............................................................. 22

Hood v. Hartford Life and Acc. Ins. Co.,
    567 F. Supp. 2d 1221 (E.D. Cal. 2008) .............................................................. 17

In re Facebook PPC Advert. Lit.,
    709 F. Supp. 2d 762 (N.D. Cal. 2010) ............................................................... 25

In re Toyota Motor Corp.,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) .............................................. 18

Lando v. Equitable Life Assur. Soc. of U.S.,
    11 F. Supp. 729 (N.D. Cal. 1935) ...................................................... 15

Lozano v. AT&T Wireless Servs, Inc.,
    504 F.3d 718 (9th Cir. 2007) ............................................................ 20

Masco Contractors Servs. West v. N.H. Ins. Co.,
    C 04-4183 MJJ, 2005 WL 405361 (N.D. Cal. Feb. 17, 2005)............................ 9

Mohamed v. Jeppesen Dataplan, Inc.,
    579 F.3d 943 (9th Cir. 2009) .............................................................. 6

Monarch Plumbing Co. v. Ranger Ins. Co.,
    2006 U.S. Dist. LEXIS 68850 (E.D. Cal. Sept. 25, 2006)........................... 22

Natural Res. Def. Council, Inc. v. U.S. E.P.A.,
    966 F.2d 1292 (9th Cir. 1992) ........................................................... 24

Neitzke v. Williams,
    490 U.S. 319 (1989).......................................................................... 6

Priyanto v. M/S Amsterdam,
    No. CV 07-3811 AHM, 2009 WL 175739 (C.D. Cal. Jan. 23, 2009) .............. 25

Rand v. Am. Nat'l Ins. Co.,
    2009 U.S. Dist. LEXIS 64781 (N.D. Cal. July 27, 2009)............................ 16, 17

Shadid v. Fleming,
    160 F.2d 752 (10th Cir. 1947) ........................................................... 22

Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins. Co.,
    CVF05736RECLJO, 2005 WL 2089832 (E.D. Cal. Aug. 29, 2005) ................ 24

Soualian v. Int'l Coffee & Tea LLC,
    2007 U.S. Dist. LEXIS 96339 (C.D. Cal. May 22, 2007) ............................ 6

Stewart v. Life Ins. Co. of N. Am.,
    388 F. Supp. 2d 1138 (E.D. Cal. 2005).............................................. 22

Streamcast Networks, Inc. v. IBIS LLC,
    CV 05-04239, 2006 WL 5720345 (C.D. Cal. May 2, 2006) ......................... 24

Summit Tech., Inc. v. High-Line Medical Instruments, Co.,
    933 F. Supp. (C.D. Cal. 1996) .......................................................................... 18

Swartz v. KPMG LLP,
    476 F.3d 756 (9th Cir. 2007) ........................................................................... 25

Vissuet v. Indymac Mortg. Servs.,
    09-CV-2321-IEG(CAB), 2010 WL 1031013 (S.D. Cal. Mar. 19, 2010) .......... 24

Williams v. Gerber Prod. Co.,
    552 F.3d 924, 938 (9th Cir. 2009) .............................................................. 20, 21

**STATE CASES**

Albillo v. Intermodal Container Servs., Inc.,
    114 Cal. App. 4th 190 (2003) .......................................................................... 19

Allied Grape Growers v. Bronco Wine Co.,
    203 Cal. App. 3d 432 (1988) ........................................................................... 22

Benavides v. State Farm Gen. Ins. Co.,
    136 Cal. App. 4th 1241 (2006) .......................................................................... 8

Berryman v. Merit Prop. Mgmt.,
    152 Cal. App. 4th 1544 (2007) ........................................................................ 20

Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,
    2 Cal. 4th 342 (1992) ........................................................................................ 7

Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,
    20 Cal. 4th 163 (1999) .................................................................................... 20

Diamond Multimedia Sys., Inc. v. Superior Court,
    19 Cal. 4th 1036 (1999) .................................................................................. 15

Durell v. Sharp Healthcare,
    183 Cal. App. 4th 1350 (2010) ........................................................................ 20

Egan v. Mut. of Omaha Ins. Co.,
    24 Cal. 3d 809 (1979) ........................................................................................ 7

Gold Mining & Water Co. v. Swinerton,
    23 Cal. 2d 19 (1943) ........................................................................................ 12

_Helfand v. Nat'l Union Fire Ins. Co.,_
  10 Cal. App. 4th 869 (1992) ................................................................ 8, 13

_In re Marriage of Van Hook,_
  147 Cal. App. 3d 970 (1983) ...................................................................... 22

_Jonathan Neil & Assoc., Inc. v. Jones,_
  33 Cal. 4th 917 (2004) ....................................................................... 11, 12

_Mfrs. Life Ins. Co. v. Superior Court,_
  10 Cal. 4th 257 (1995) ................................................................................ 16

_Moradi-Shalal v. Fireman's Fund Ins. Co.,_
  46 Cal. 3d 287 (1995) ................................................................................ 16

_Nat'l Life Co. v. Wolverton,_
  163 S.W.2d 654 (Tex. Civ. App. 1942) ...................................................... 13

_Norwest Mortg. Inc. v. Superior Court,_
  72 Cal. App. 4th 214 (1999) ....................................................................... 15

_Pastoria v. Nationwide Ins.,_
  112 Cal. App. 4th 1490 (2003) ................................................................... 21

_People v. Fremont Life Ins. Co.,_
  104 Cal. App. 4th 508 (2002) ..................................................................... 19

_People v. Superior Court (Jayhill Corp.),_
  9 Cal. 3d 283 (1974) .................................................................................. 23

_Progressive West Ins. Co. v. Superior Court,_
  135 Cal. App. 4th 263 (2005) ....................................................................... 7

_Schwartz v. State Farm Fire & Cas. Co.,_
  88 Cal. App. 4th 1329 (2001) ......................................................... 7, 8, 9, 13

_Security Officers Serv., Inc. v. State Compensation Ins. Fund,_
  17 Cal. App. 4th 887 (1993) ........................................................ 7, 8, 10, 14

_Smith v. State Farm Mut. Auto. Ins. Co.,_
  93 Cal. App. 4th 700 (2001) ....................................................................... 20

_S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,_
  72 Cal. App. 4th 861 (1999) ....................................................................... 20

Spindle v. Travelers Ins. Co.,
    66 Cal. App. 3d 951 (1977) ................................................. 8, 12, 14

State Farm Fire & Cas. Co. v. Superior Court,
    45 Cal. App. 4th 1093 (1996) .................................................. 20

Waller v. Truck Ins. Exch., Inc.,
    11 Cal. 4th 1 (1995) .................................................................. 7

Zhang v. Superior Court,
    178 Cal. App. 4th 1081 (2009), *rev. granted*,
    105 Cal. Rptr. 3d 886 (Cal. 2010).......................................... 17

**STATUTES**

Cal. Bus. & Prof. Code § 17200 .................................................. 14

Cal. Bus. & Prof. Code § 17205 .................................................. 22

Cal. Bus. & Prof. Code § 17500 ........................................... 14, 23

Cal. Bus. & Prof. Code § 17536 .................................................. 19

Cal. Ins. Code § 790.03 ............................................................... 16

Uniform Commercial Code § 2-610 ........................................... 13

**RULES**

Fed. R. Civ. P. 8(a)(2) ................................................................. 6

Fed. R. Civ. P. 9(b) ................................................................. 3, 23

Fed. R. Civ. P. 12(b)(6) ............................................................... 6

**CONSTITUTIONAL PROVISIONS**

Seventh Amendment ................................................................... 25

**OTHER AUTHORITIES**

Remedies and Measure of Damages for Wrongful Cancellation of Life,
    Health, and Accident Insurance, 34 A.L.R. 3d 245, § 2a, n.8 (2008)............... 12

Restatement (Second) of Contracts § 250 cmt. b. (1981) ....................... 12

1

## I.   **INTRODUCTION**

Defendant PHL Variable Insurance Company ("PHL") is a life insurance company that designed, marketed, and sold billions of dollars in universal life insurance policies.  Over the last several years, PHL has received millions of dollars in premiums on Plaintiff's[1] policies alone.  Now, after collecting its profits, PHL is unilaterally altering the terms of its policies and improperly jacking up its cost of insurance rates to try to force its policyholders to lapse their policies so that it will never have to pay millions of dollars in death benefits that would come due when those policies matured.

The policies at issue are universal life insurance policies that expressly provide policyholders with the choice to (a) pay only enough in premiums to cover their monthly charges (the largest of which is the "cost of insurance" charge) or (b) pay additional amounts as an investment option that will earn tax-deferred interest.  This "flexible premium" feature distinguishes these policies from other insurance products, like whole life insurance, which requires fixed premium payments.  And Plaintiff, like many other policyholders, took advantage of this feature.

In 2010, however, PHL advised Plaintiff that if Plaintiff continued to take advantage of the flexible premium feature by paying only enough in premiums to cover its monthly charges, PHL would raise Plaintiff's cost of insurance rates, thus forcing Plaintiff to pay more each month than Plaintiff's policies actually required.

The "cost of insurance," however, is not a mechanism for PHL to penalize policyholders who exercise their contractual right to pay lower premiums.  Nor is  it a tool for PHL to use at its discretion to try to increase its profits or reduce its future liabilities at the expense of its policyholders.  Nor is it a device for PHL to keep its policyholders guessing about how much they will have to pay to keep their policies

---

[1] This action is brought by U.S. Bank National Association, which holds the policies at issue in this case as the securities intermediary for Lima Acquisition LP ("Plaintiff").

in force, thus placing them in the precarious position of having to decide whether to throw good money after bad to preserve whatever value remains in their policies.

At its core, the cost of insurance is supposed to be the insurance company's cost to bear the mortality risk under a policy–*i.e.*, the cost for it to bear the risk of paying the death benefit.  While universal life insurance policies allow an insurer to adjust cost of insurance rates (by an increase or decrease), the primary factor in cost of insurance rates is *mortality*.  It is well known, however, that since Plaintiff's policies were issued, mortality has actually improved, and because of this, the insurance industry has issued new mortality tables that would, if anything, support a *decrease* in the cost of insurance rates on Plaintiff's policies.  By trying to *increase* rates now, and by singling out policyholders like Plaintiff who exercised their right to pay lower premiums, PHL is using the cost of insurance for all the wrong reasons and in clear violation of the policies.

PHL therefore does not seek to dismiss Plaintiff's claim for breach of the express terms of the policies.  Instead, PHL moves to dismiss Plaintiff's other claims—for bad faith, unfair competition, false advertising, and declaratory relief.  That is because if policyholders like Plaintiff are left with only a contract remedy for PHL's misconduct, PHL will be able to continue to frustrate the rights of its policyholders with impunity:  a finding that PHL breached its policies will only require it to return to its policyholders what is rightfully theirs.  But when an insurance company tries to deceive the public and frustrate the rights of its policyholders, as PHL has done here, the law affords greater remedies.

First, PHL's conduct constitutes tortious bad faith under California law.  By improperly raising its cost of insurance rates, PHL (a) has denied Plaintiff the right to the full value of its policies and (b) is frustrating Plaintiff's right to the death benefits by trying to force Plaintiff to lapse the policies.  PHL has also repudiated the policies by telling Plaintiff that it will lapse or cancel Plaintiff's policies unless Plaintiff accedes to paying PHL more than the minimum monthly charges.  In

1  addition, by fundamentally altering the terms of the policies to base Plaintiff's cost

2  of insurance rates on a policy's "accumulated value," PHL is depriving Plaintiff of

3  an essential benefit of the policies—the benefit of being able to use the policy as an

4  investment option or paying just enough to cover the monthly insurance charges.

5      <u>Second</u>, Plaintiff has stated valid claims for violations of California's unfair

6  competition law ("UCL") and false advertising law ("FAL"). PHL moves to

7  dismiss these claims on several grounds, but all of them are baseless. For example,

8  PHL argues that the UCL and FAL do not apply to PHL because California law

9  does not apply to conduct outside of California. But Plaintiff is not asking the

10  Court to apply the UCL and FAL to conduct outside of California. PHL made false

11  and misleading statements in connection with the marketing and sales of its

12  policies, including statements *in the policies themselves*. Ten of the eleven policies

13  in this action were issued and delivered *in California* and are governed by

14  California law. The relevant conduct, therefore, occurred *in California*.

15      PHL also argues that California's Unfair Insurance Practices Act ("UIPA")

16  precludes Plaintiff's claims under the UCL and FAL. (PHL apparently has no

17  objection to the purportedly extraterritorial application of the UIPA to its unlawful

18  conduct.) While the UIPA does not create a private right of action for violations of

19  the UIPA itself, nothing in the UIPA bars claims for violations of the UCL and

20  FAL simply because PHL's conduct may also violate the UIPA. Nor can PHL

21  escape liability for false advertising by claiming that its false and misleading

22  statements about its policies were mere "puffery" or "opinions." PHL

23  misrepresented the material terms of its policies; these were false statements of

24  fact—not opinions or exaggerations.

25      PHL's other challenges to the UCL and FAL claims are equally without

26  merit. An inadequate remedy at law is not, as PHL argues, an element of a UCL or

27  FAL claim. And whether or not Rule 9(b) applies to claims under the FAL (which

28  is unclear), Plaintiff has identified the specific false and misleading statements that

1   are at issue, including statements from an April 3, 2006 press release and in the

2   policies themselves.  This is sufficient to state a claim under the UCL and FAL.

3       Third, PHL's request to dismiss Plaintiff's claim for declaratory relief on the

4   ground it is duplicative of Plaintiff's breach of contract claim is meritless.  The

5   claims are not duplicative.  The breach of contract claim seeks damages for PHL's

6   past breaches.  The declaratory relief claim seeks a forward-looking declaration of

7   the parties' rights and obligations to guide their future conduct and avoid

8   uncertainty about future cost of insurance rates, which would have a direct and

9   immediate impact on Plaintiff's policies.  Numerous courts have upheld declaratory

10  relief claims in breach of contract actions for this very purpose.

## II.   STATEMENT OF FACTS

12      As alleged in the complaint, PHL's universal life insurance policies were

13  sold to people based on assurances that they would have flexibility with respect to

14  the amount of premiums they paid and when they could pay them.  Complaint ¶ 3.

15  Policyholders were told they could pay just enough to cover their monthly charges,

16  or if they wished to invest in the policies by accumulating a cash value that earned

17  tax-deferred interest, they could pay additional amounts as premiums.  Id. ¶¶ 3, 14,

18  15.  There was no obligation, however, to pay more than the monthly charges.  Id.

19      The largest of the monthly charges was the cost of insurance, which was the

20  price that PHL charged to bear the mortality risk on the policies (i.e., the risk of

21  paying the "death benefits").  Id. ¶¶ 3, 15.  Although the policies state that PHL

22  may change the cost of insurance rates, PHL can only do so under limited

23  circumstances.  Id. ¶ 17.  In addition, any change in the cost of insurance rates must

24  be made on a uniform basis for all insureds in the same class, and PHL cannot

25  change cost of insurance rates to recoup prior losses.  Id. ¶ 18.

26      PHL marketed and sold the policies as "flexible premium" policies that

27  would appeal to people who sought flexibility to adjust their policies to their

28  changing needs and wished to minimize their long-term life insurance expenses.  Id.

¶¶ 19, 50.  As part of its marketing strategy, PHL issued press releases in which it made numerous representations about its universal life insurance policies to the public, including that they give policyholders the "opportunity to lower premiums, as well as adjust the amount and timing of premium payments" and are "designed to balance protection and cash accumulation with features suited to meet policyholders' evolving personal or business planning needs."  Id. ¶ 19.

Based on the language of the policies, PHL's rates, and representations like those above, Plaintiff purchased several PHL policies.  Id. ¶ 21.  Plaintiff then took advantage of the "opportunity to lower premiums, as well as adjust the amount and timing of premium payments" by generally paying only the minimum charges each month and not accumulating any cash value.  Id.  As it turns out, PHL's statements about being able to "lower premiums" and "adjust the amount and timing of premium payments" were false and misleading.  Id. ¶ 51.  After inducing Plaintiff to purchase the policies, PHL told Plaintiff that if Plaintiff continued to take advantage of its right to "lower premiums" by merely paying the monthly charges and not accumulating a cash value, PHL would raise Plaintiff's cost of insurance rates, thus *forcing* Plaintiff to pay more than the policy's minimum monthly charges and thereby accumulate a cash value.  Id. ¶¶ 6, 21.

To make matters worse, in PHL's letters notifying Plaintiff of this attempt to unilaterally alter the terms of Plaintiff's policies, PHL *did not tell Plaintiff how much PHL's cost of insurance increase would be or what accumulated value would trigger an increase.*  PHL simply threatened, "Should your accumulated policy value fall below a certain level, the amount of the increase will vary based on the accumulated amount of your policy value.  In general, maintaining higher levels of policy value in relation to the face amount will reduce or even eliminate any increase."  Id. ¶¶ 6, 21.  PHL also did not identify any factors that supported an increase in the cost of insurance rates or explain how it determined that an increase in the rates could be justified.  Id.  Nor could PHL justify raising cost of insurance

rates when recent increases in life expectancy have resulted in new mortality tables that would, if anything, require a *decrease* in the cost of insurance rates.  Id. ¶ 3.

By raising cost of insurance rates now, PHL is clearly trying to make its policies so expensive—or create enough uncertainty about the future costs to maintain them—that Plaintiff and other policyholders will not want to keep their policies and will let them lapse.  Id. ¶¶ 7, 25, 41.  If PHL's scheme succeeds, PHL will never have to pay hundreds of millions, if not billions, of dollars in death benefits on lapsed policies, even after having already collected millions of dollars in premiums on them.  Id. at ¶ 7, 25.  And no matter what, the scheme will garner PHL an enormous financial windfall, either from higher premium payments or by eliminating PHL's future liabilities under a large group of policies.  Id. ¶ 25.

## III.   THE COURT SHOULD DENY PHL'S MOTION TO DISMISS

In evaluating the sufficiency of a complaint under Rule 12(b)(6), the sole issue "is whether the facts pleaded would, if established, support a valid claim for relief.  Thus, the facts alleged, no matter how improbable, must be accepted as true for purposes of the motion."  Soualian v. Int'l Coffee & Tea LLC, 2007 U.S. Dist. LEXIS 96339, at *2 (C.D. Cal. May 22, 2007) (citing Neitzke v. Williams, 490 U.S. 319, 328-29 (1989)).  To decide this issue, the Court must engage in a two-step analysis.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-51 (2009).  First, the Court must accept as true all non-conclusory, factual allegations made in the complaint, and based on those allegations draw all reasonable inferences in favor of the plaintiff.  Id. at 1949-50; Mohamed v. Jeppesen Dataplan, Inc., 579 F.3d 943, 94 (9th Cir. 2009).  Second, after accepting all true and non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must determine whether the complaint alleges a plausible claim for relief.  See Iqbal, 129 S. Ct. at 1950-51.

A.   **Plaintiff Has Properly Pled a Claim for the Breach of the Implied Covenant of Good Faith and Fair Dealing**

The implied duty of good faith and fair dealing "exists in every insurance contract." See, e.g., Schwartz v. State Farm Fire & Cas. Co., 88 Cal. App. 4th 1329, 1336 (2001).  The precise nature and extent of that duty depends on the contract's purposes.  Id.  The covenant is intended "to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement."  Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 36 (1995).  It "finds particular application in situations where one party is invested with a discretionary power affecting the rights of another.'"  Security Officers Serv., Inc. v. State Comp. Ins. Fund, 17 Cal. App. 4th 887, 894 (1993) (quoting Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 372 (1992)).  "[T]o fulfill its obligation *not to impair the insured's right to receive the benefits of the agreement*, the insurer '*must give at least as much consideration to the [insured's] interests as it does to its own*.'"  Schwartz, 88 Cal. App. 4th at 1336 (emphasis added) (quoting Egan v. Mut. of Omaha Ins. Co., 24 Cal. 3d 809, 818 (1979)).

Here, Plaintiff has pled facts that establish both types of bad faith—a tort claim and a breach of contract claim.

### 1.   **Plaintiff Has Properly Pled a Claim in Tort**

PHL asserts that Plaintiff cannot assert a tortious bad faith claim where "no benefits are due" under the policy or "absent a covered loss."  Motion at 7.  That is not the law.  The language PHL cites on this point is taken out of context.

When an insurer denies or delays processing a claim, the insured can only maintain a claim for bad faith if the claim under the policy was potentially covered.  Thus, not surprisingly, the cases PHL cites all involve situations where the court found there was no potential for coverage under the policies at issue.  See Progressive West Ins. Co. v. Superior Court, 135 Cal. App. 4th 263, 279 (2005) (no potential for coverage where insurer sought reimbursement for benefits already paid

to insured); <u>Benavides v. State Farm Gen. Ins. Co.</u>, 136 Cal. App. 4th 1241, 1251 (2006) (insurer not liable for negligently investigating claim where there was no coverage under the policy); <u>Avery Dennison Corp. v. Allendale Mut. Ins. Co.</u>, 310 F.3d 1114, 1117 (9th Cir. 2002) (affirming dismissal of bad faith claim because the policy did not cover loss alleged by insured).

But California courts have also imposed bad faith tort liability in several situations where a policy's benefits were not yet due.  <u>See, e.g.</u>, <u>Schwartz</u>, 88 Cal. App. 4th at 1336 (excess insurer's duty of good faith applies even before coverage attaches because "an excess insurer's duty not to impair its insured's right to benefits under the contract exists throughout the contractual relationship"); <u>Security Officers</u>, 17 Cal. App. 4th at 897-99 (insurer acted in bad faith in setting reserves in a way that adversely affected plaintiff's premiums and policy dividends); <u>Helfand v. Nat'l Union Fire Ins. Co.</u>, 10 Cal. App. 4th 869, 903-904 (1992) (insurer acted in bad faith by entering into agreement with insured to cancel policy before any claims had been made); <u>Spindle v. Travelers Ins. Co.</u>, 66 Cal. App. 3d 951, 958 (1977) (insurer exercised contractual right to cancel malpractice policy in bad faith).

<u>Spindle</u> provides an explicit example of tortious bad faith where no claim had been made, no claim was pending, and no benefits were due.  The plaintiff in <u>Spindle</u> was a doctor who was insured under a group malpractice policy.  <u>See</u> 66 Cal. App. 3d at 953-54.  In the middle of the second year of the policy, the insurer (Phoenix) threatened to cancel his policy, and eventually did so, even though there had been no malpractice claims made against him.  <u>Id.</u> at 954.  The plaintiff sued the insurer alleging that the "cancellation was intended to coerce and intimidate" other insureds under the group policy into agreeing to a 141% increase in their premiums.  <u>Id.</u> at 955.  In holding that the plaintiff had stated a valid claim for bad faith "sounding in tort," the court observed:

> We are unable to discern any logical basis for distinguishing between an insurer's conduct in settling a claim made pursuant to the policy and that involved in an insurer's cancelling a

> policy if bad faith conduct is the basis for the cancellation. The situations are similar in that the ultimate result of the conduct of the insurer effectively deprives the insured of the benefit of his bargain. . . .

Id. at 958.

In short, an insurer's implied covenant not to frustrate the rights of the insured is not, as PHL suggests, triggered only when benefits become due. The insurer's "implied covenant not to frustrate its insured's right to receive the benefits of the insurance contract exists *from the inception of the agreement*." Schwartz, 88 Cal. App. 4th at 1336 (emphasis added). Thus, "an insurer can be sued for bad faith even if coverage has not yet attached *as long as its actions negatively affected the insured's benefits*." Masco Contractors Servs. West v. N.H. Ins. Co., C 04-4183 MJJ, 2005 WL 405361, at *6 (N.D. Cal. Feb. 17, 2005) (emphasis added). That is precisely what Plaintiff alleges here.

### a.    PHL is frustrating Plaintiff's right to the benefits of the policies

By improperly raising its cost of insurance rates, PHL is clearly trying to frustrate Plaintiff's right to the benefits of its policies. Because the value of the death benefit under a life insurance policy is tied directly to the cost of insurance, raising the cost of insurance diminishes, if not destroys, this benefit. PHL also is making it more onerous for Plaintiff to keep the policies and is trying to force Plaintiff to lapse some of its policies so that PHL will never have to pay the death benefits, even after pocketing millions of dollars in premiums. And because PHL has not told Plaintiff why it has raised the cost of insurance rates, especially when mortality has improved, there is no telling whether PHL will keep trying to raise the rates in the future until it is able to remove all of its outstanding universal life insurance policies from its books. At the very least, PHL's actions have created enough uncertainty about future cost of insurance rates that policyholders now face an insidious dilemma: Should they cut their losses now and let their policies lapse,

1   or keep paying premiums to retain whatever marginal value remains in their

2   policies at the risk of throwing good money after bad if they are ultimately forced

3   to give up their policies in the future as a result of additional rate increases?  By

4   putting its policyholders in this position, PHL is frustrating their rights to the

5   benefits of their policies and depriving them of the benefits of their bargains.

6   PHL's actions therefore amount to tortious bad faith.

7        Security Officers Serv., Inc. v. State Comp. Ins. Fund, 17 Cal. App. 4th 887,

8   illustrates this point.  There, the plaintiff alleged that the insurance company under

9   a workers' compensation policy breached the duty of good faith and fair dealing by

10  letting claims linger and overestimating the reserves on those claims.  Id. at 889-90.

11  This conduct resulted in the plaintiff having to pay higher premiums and receiving

12  lower dividends for the policy year—because the premiums and dividends were

13  based on the number of claims outstanding and the amount of reserves the insurer

14  had established for those claims.  Id. at 891.  In reversing the trial court's dismissal

15  of the plaintiff's bad faith claims on a demurrer, the California Court of Appeal

16  held, "Because the powers so confided in [the insurer's] discretion will impact *the*

17  *degree of plaintiff's primary burden under the policy*, it appears logical that the

18  covenant of good faith and fair dealing indeed requires [the insurer] to conduct its

19  claims resolution and reserve allocation processes with good faith regard for

20  plaintiff's interests."  Id. at 896 (emphasis added).  The Court further held:

21              [W]here the insurer's unilateral action can *automatically*
22              *influence the premium rates the insured faces*, the insured may
              rightly be said to have bargained for good faith claims handling
23              not only to avert liability but also *restrain other financial*
              *burdens the insurer may cause it by gratuitous or intentional*
24              *discretionary conduct*.

25  Id. at 897-98 (emphasis added).  This is precisely the problem here.  Because PHL's

26  unilateral action can directly impact cost of insurance rates, PHL must act in good

27  faith and deal fairly with Plaintiff and other policyholders.

28        Although the California Supreme Court in Jonathan Neil & Assoc., Inc. v.

PLAINTIFF'S OPP. TO MTN. TO DISMISS
CV11-09517 ODW(RZX)

1   <u>Jones</u>, 33 Cal. 4th 917, 938 (2004), distinguished <u>Security Officers</u> on the ground

2   that it involved the "mishandling of claims," this distinction was only relevant to

3   the narrow issue of "whether tort remedies should be extended to the breach of the

4   [implied] covenant of good faith and fair dealing when the insurer has in bad faith

5   *retroactively* billed an insured for an excessive premium." (emphasis added).  In

6   declining to extend tort liability for *retroactive* overcharges, the Court made three

7   observations that counseled against assessing tort liability.  All of those

8   observations support the imposition of tort liability here, where the insurer seeks to

9   overcharge a policyholder for *continued* coverage.

10         First, the Court in <u>Jonathan Neil</u> found that the billing dispute in that case did

11   not deny the insured the benefits of the insurance policy because the retroactive

12   overcharges applied to a policy period when the insurer had already provided

13   coverage.  <u>Id.</u> at 939.  Here, however, PHL's attempt to assess excessive premiums

14   to keep the policies in force threatens to deprive Plaintiff of the benefits of its

15   policies because if Plaintiff does not pay the excessive premiums, PHL will cancel

16   (or lapse) the policies.  This is especially critical for life insurance because *a*

17   *policyholder derives no economic benefit from the insurance if the policy is*

18   *cancelled before maturity*.  Second, the Court noted that when there is a billing

19   dispute about retroactive overcharges, the insurer must sue the insured to collect the

20   amount allegedly due.  The dispute therefore "does not require the insured to

21   prosecute the insurer in order to enforce its rights . . . ."  <u>Id.</u>  But when an insurer

22   tries to charge excessive premiums *going forward*, the policyholder has *no choice*

23   but to sue the insurer and spend money and resources to protect its rights.  That is

24   exactly what Plaintiff was forced to do here.  Third, the Court commented that

25   "traditional tort remedies may be available to the insured who is wrongfully billed a

26   retroactive premium.  If the premium charge is wholly unjustified, the insured may,

27   after successfully defending the action, sue for malicious prosecution."  <u>Id.</u>

28   However, where the insurer is not trying to recover past premiums due from the

PLAINTIFF'S OPP. TO MTN. TO DISMISS
CV11-09517 ODW(RZX)

1  policyholder, but is charging excessive premiums for keeping the policy in force,

2  the policyholder cannot sue for malicious prosecution.  She or he has no choice but

3  to sue the insurer immediately for breach of contract, and bad faith is often the only

4  tort remedy available.

5       The California Supreme Court's reasoning in <u>Jonathan Neil</u> makes it clear

6  that its holding is limited to *retroactive* overcharges.  But when an insurer tries to

7  deprive a policyholder of *continuing* coverage by charging excessive premiums, the

8  situation is fundamentally different.  Indeed, when the <u>Spindle</u> court held that an

9  insurer may be liable in tort for exercising its contractual right to cancel an

10  insurance policy in bad faith, the court also held that the tort of bad faith should

11  apply to *any* situation where the insurer's conduct would have the effect of denying

12  the insured the benefit of his or her bargain.  <u>See</u> <u>Spindle v. Travelers Ins. Co.</u>, 66

13  Cal. App. 3d at 958.  As in <u>Spindle</u>, there is no logical basis for distinguishing

14  between an insurer that denies a claim and one that tries to force its policyholders to

15  relinquish their policies so that they will *never* realize the benefits of their policies.

16       **b.**    **PHL has repudiated the policies**

17       Not only is PHL trying to force Plaintiff to give up its policies, but PHL also

18  has anticipatorily repudiated the policies.  An anticipatory breach occurs when a

19  party unequivocally repudiates its obligations under the contract.  <u>See</u> <u>Gold Mining</u>

20  <u>& Water Co. v. Swinerton</u>, 23 Cal. 2d 19, 29 (1943).  Here, PHL is telling Plaintiff

21  that PHL will not perform its obligations and will cancel (or lapse) Plaintiff's

22  policies unless Plaintiff pays the improper and excessive cost of insurance rates.

23  This is an unequivocal repudiation because an insurer repudiates a policy when it

24  tries to "change the terms unilaterally to the insured's prejudice," including by

25  "unilaterally increas[ing] the amount of premiums or assessments due."  <u>See</u>

26  Remedies and Measure of Damages for Wrongful Cancellation of Life, Health, and

27  Accident Insurance, 34 A.L.R. 3d 245, § 2a, n.8 (2008); <u>see also</u> Restatement

28  (Second) of Contracts § 250 cmt. b (1981) ("'[A] statement of intention not to

1   perform except on conditions which go beyond the contract' constitutes a

2   repudiation.") (quoting Uniform Commercial Code § 2-610).

3     Indeed, courts have held that an insurer's demand for excessive premiums

4   that are contrary to the terms of a policy constitute an anticipatory repudiation of

5   the policy.  <u>See e.g.</u>, <u>Asad v. Hartford Life Ins. Co.</u>, 116 F. Supp. 2d 960, 963 (N.D.

6   Ill. 2000); <u>Nat'l Life Co. v. Wolverton</u>, 163 S.W.2d 654, 657 (Tex. Civ. App.

7   1942).  Under <u>Spindle</u>, PHL's improper (and anticipatory) cancellation of the

8   policies is actionable in tort.  <u>See also</u> <u>Helfand</u>, 10 Cal. App. 4th at 906 ("An

9   arbitrary cancellation is a breach of the covenant of good faith and fair dealing.").

10     **c.**  **PHL is depriving Plaintiff of an essential benefit**

11    As Plaintiff also has alleged, PHL has frustrated Plaintiff's enjoyment of a

12  key benefit under the policies—the contractual right to pay only enough premiums

13  to cover the policy's monthly charges.  This is not a trivial benefit:  it is one of the

14  distinguishing and defining features of universal life insurance, and the deprivation

15  of this right renders the concept of "flexible premiums" totally illusory.

16    PHL should not be allowed to falsely advertise its products, misrepresent the

17  terms of its policies, unilaterally subvert the rights of its policyholders, and

18  diminish or even destroy all value in their policies with impunity.   Under

19  California law, PHL's bad faith conduct gives rise to tort liability.

20     **2.**  **Plaintiff Has Properly Pled a Claim in Contract**

21    Plaintiff also has asserted a valid claim for breach of the implied covenant of

22  good faith and fair dealing as a matter of contract.  This claim is not, as PHL

23  asserts, duplicative of Plaintiff's claims for express breach of contract.  The duty to

24  act in good faith "is implied as a *supplement* to [] express contractual covenants, to

25  prevent a contracting party from engaging in conduct that frustrates the other

26  party's rights to the benefits of the agreement." <u>Schwartz</u>, 88 Cal. App. 4th at 1336

27  (emphasis added).  The covenant "finds particular application in situations where

28  one party is invested with a discretionary power affecting the rights of another."

1   <u>Security Officers</u>, 17 Cal. App. 4th at 894.  In such cases, "a duty is imposed to

2   exercise that discretion in good faith and in accordance with fair dealing."  <u>Spindle</u>,

3   66 Cal. App. 3d at 958.

4     Plaintiff has alleged that, to the extent the policies can be read to provide

5   PHL with discretion over setting cost of insurance rates, PHL breached the implied

6   duty of good faith and fair dealing by exceeding the legitimate bounds of such

7   discretion, particularly when PHL has deliberately used the cost of insurance rates

8   to penalize and deter policyholders, like Plaintiff, from exercising their right to

9   maintain a minimal policy value.  Complaint ¶¶ 5-8, 24, 40-41.  *PHL did not even*

10  *tell Plaintiff how much the rate increase would be or what "accumulated value"*

11  *would trigger an increase.*  <u>Id.</u> ¶ 21.  These allegations are sufficient to state a claim

12  for breach of the implied covenant of good faith and fair dealing independent of

13  Plaintiff's claim for breach of the policies' express terms.  <u>See, e.g.</u>, <u>Celador Int'l</u>

14  <u>Ltd. v. Walt Disney Co.</u>, 347 F. Supp. 2d 846, 853 (C.D. Cal. 2004) (plaintiff stated

15  valid claim for breach of implied covenant even though claim was "based on the

16  same facts as the breach of contract claim and [sought] the same remedy").  A fact-

17  finder may thus conclude that the defendant did not breach the policies' express

18  provisions, but nevertheless breached the implied covenant of good faith and fair

19  dealing.  <u>Id.</u> at 853.  Plaintiff therefore has stated a valid claim for breach of the

20  implied covenant of good faith and fair dealing.

21    **B.**  **<u>Plaintiff Has Stated a Claim Under the UCL and FAL</u>**

22     **1.**  **<u>California Law Applies to PHL's Unlawful Conduct</u>**

23    PHL moves to dismiss Plaintiff's UCL and FAL claims[2] on the ground that

24  the UCL and FAL do not apply extraterritorially.  Plaintiff, however, is not asking

25  the Court to apply these statutes to conduct occurring out of state.  Plaintiff alleges

26  that PHL misrepresented the terms of its policies, including in the policies

27  

28  [2] The UCL refers to California Business & Professions Code section 17200.  The FAL refers to California Business & Professions Code section 17500.

themselves.  Complaint ¶ 21.  Ten of the policies were issued *in California*.  See
Exhibit 1 to Complaint.  Thus, PHL made false statements *in California*.[3]

The parties' residence does not, as PHL suggests, have anything to do with
whether PHL's conduct occurred in California.  See, e.g., Norwest Mortg. Inc. v.
Superior Court, 72 Cal. App. 4th 214, 224-25 (1999) (affirming class certification
of non-California residents for conduct that occurred inside California); Diamond
Multimedia Sys., Inc. v. Superior Court, 19 Cal. 4th 1036, 1058-59 (1999)
(applying California antifraud scheme to conduct occurring in California that
induced non-Californians to make out-of-state purchases).  In fact, the decision on
which PHL primarily relies specifically holds that an out-of-state plaintiff can
invoke the UCL if the defendant's conduct occurred in California.  See Norwest
Mortgage, 72 Cal. App. 4th at 224-25 (holding that "state statutory remedies may
be invoked by out-of-state parties when they are harmed by wrongful conduct
occurring in California").  Norwest Mortgage involved a class action on behalf of
borrowers who were required to pay for mortgage insurance purchased by Norwest.
Not only did the court allow the UCL claims by California plaintiffs, it also allowed
the claims of non-California plaintiffs for whom Norwest purchased insurance in
California.  The court only barred the claims by non-California plaintiffs for whom
Norwest purchased insurance *outside* California because in that case, the plaintiff,
defendant, and the conduct at issue were all outside California.  Id. at 225.

Because PHL falsely advertised and misrepresented the terms of policies that
were issued in California and are governed by California law, the UCL and FAL
apply to PHL's unlawful conduct.

## 2.   The UIPA Does Not Bar Plaintiff's Claims

PHL also moves to dismiss Plaintiff's UCL and FAL claims on the ground

---

[3] Because the policies were issued in California, they are governed by California
law.  See, e.g., Gates v. Gen. Cas. Co. of Am., 120 F.2d 925, 926-27 (9th Cir.
1941); Lando v. Equitable Life Assur. Soc. of U.S., 11 F. Supp. 729, 731 (N.D. Cal.
1935) ("Plaintiff rightfully contends that contracts of insurance are to be construed
in accordance with the law of the state where delivery is made.").

1   that these claims are barred by the UIPA[4] under Moradi-Shalal v. Fireman's Fund

2   Ins. Co., 46 Cal. 3d 287 (1995), and the line of decisions that follows it.  Moradi-

3   Shalal, however, does not bar these claims.  It merely holds that the UIPA does not

4   create a private right of action for a violation of the UIPA.

5        Moradi-Shalal involved a third-party action against an insurer by a woman

6   injured in a car accident who had previously settled her case against the insured

7   driver.  Id. at 293.  Because she did not have a first-party claim for bad faith against

8   the insurer, she tried to assert a claim under the UIPA, and the court held that the

9   UIPA did not give her a private right of action for bad faith.  Id. at 304-305.

10       Seeking to expand this narrow holding, PHL argues that the UIPA preempts

11  any and all private claims under other statutes whenever they relate to the "trade

12  practices in the business of insurance" governed by the UIPA.  Motion at 11.  The

13  California Supreme Court, however, has expressly rejected this reading of Moradi-

14  Shalal, stating:  "[W]e have never held that the insurance industry is exempt from . .

15  . unfair competition laws or that it enjoys immunity from civil liability for such

16  conduct."  Mfrs. Life Ins. Co. v. Superior Court, 10 Cal. 4th 257, 280 (1995).

17  Courts have also held there is "no categorical ban against FAL claims against an

18  insurance company [] under Moradi-Shalal or its progeny."  Rand v. Am. Nat'l Ins.

19  Co., 2009 U.S. Dist. LEXIS 64781, at *12-13 (N.D. Cal. July 27, 2009).

20       Indeed, the court in Moradi-Shalal made clear that "courts retain jurisdiction

21  to impose civil damages or other remedies against insurers in appropriate common

22  law actions, based on such traditional theories as fraud, infliction of emotional

23  distress, and (as to the insured) either breach of contract or breach of the implied

24  covenant of good faith and fair dealing."  46 Cal. 3d at 304-305.  And courts after

25  Moradi-Shalal have consistently followed this important principle.  See, e.g., Mfrs.

26  Life Ins. Co., 10 Cal. 4th at 279 ("Moradi-Shalal marks a return to the fundamental

27  principle that the UIPA, like all statutes, is to be applied according to its terms.  Its

28  _____
[4] The UIPA refers to California Insurance Code section 790.03.

1   language neither creates new private rights *nor destroys old ones*.") (emphasis in

2   original); Hood v. Hartford Life and Acc. Ins. Co., 567 F. Supp. 2d 1221, 1231

3   (E.D. Cal. 2008) ("Moradi-Shalal does not prohibit plaintiff from pleading *existing*

4   and/or *additional* causes of action that arise from the same facts as a UIPA

5   violation.") (emphasis in original).

6       The line drawn by the subsequent case law is to permit statutory and

7   common law claims that exist independent of the UIPA.  Thus, where the

8   defendant's conduct violates the UIPA and also violates other statutory or common

9   law duties, a cause of action exists.  Zhang v. Superior Court, 178 Cal. App. 4th

10  1081, 1088 (2009), *rev. granted*, 105 Cal. Rptr. 3d 886 (Cal. 2010) (permitting

11  UCL claim based on fraudulent misrepresentations and false advertising); Rand,

12  2009 U.S. Dist. LEXIS 64781, at *9 (denying motion to dismiss UCL claim where

13  allegations centered on unfair and deceptive marketing techniques); see also Diaz v.

14  Allstate Ins. Group, 185 F.R.D. 581, 595 (C.D. Cal. 1998) (upholding claim against

15  the defendant-insurer for conspiracy to commit unfair business practices).

16      Plaintiff's claims for breach of the implied covenant of good faith and fair

17  dealing and false advertising are based on legal duties that exist independent of the

18  UIPA.  Moradi-Shalal does not strip Plaintiff of these claims, nor does it strip

19  Plaintiff of its claims under the UCL that are predicated on these violations.  To

20  hold that Moradi-Shalal barred or destroyed these claims would be to hold

21  insurance companies "immune from civil liability despite engaging in unfair

22  practices."  Hood, 567 F. Supp. 2d at 1230.  That would be a gross misapplication

23  of Moradi-Shalal.

24      **3.**   **PHL's False Statements Are Not Opinions or Puffery**

25      PHL also moves to dismiss Plaintiff's FAL claim on the ground that the false

26  and misleading statements it made were merely opinions or puffery.  "Puffery"

27  involves "outrageous generalized statements . . . that are so exaggerated as to

28  preclude reliance by consumers."  Annunziato v. eMachines, Inc., 402 F. Supp. 2d

1133, 1139 (C.D. Cal. 2005) (quoting Summit Tech., Inc. v. High-Line Medical Instruments, Co., 933 F. Supp. 918, 931 (C.D. Cal. 1996)).  The complaint identifies numerous false and misleading statements, Complaint ¶¶ 19, 21, and none of these statements are "opinions" or "puffery."

In particular, statements about the specific characteristics of a service or product are generally held not to constitute "puffery."  See, e.g., In re Toyota Motor Corp., 754 F. Supp. 2d 1145, 1177 (C.D. Cal. 2010) (denying motion to dismiss FAL claim where Toyota claimed that its throttle system would achieve "shorter activation times").  Here, PHL made specific statements about the purported characteristics of its universal life insurance policies—that policyholders could choose to lower their premium payments, and they could adjust the amount and timing of their premium payments.  Complaint ¶ 19.  These are statements of fact about how the policies operate.[5]  Whether a person can lower premium payments or adjust the amount and timing of premium payments is not a matter of opinion or exaggeration.  Moreover, these statements of fact were false or misleading because, despite PHL's representations, when policyholders like Plaintiff chose to lower their premium payments by paying just enough to cover their monthly charges and not accumulate a cash value under their policies, as the policies specifically permitted, PHL penalized them by raising their cost of insurance, thereby in fact denying policyholders of this supposed option under the policies.

PHL also said that its universal life insurance policies "are designed to balance protection and cash accumulation with features suited to meet policyholders' evolving personal or business planning needs."  Complaint ¶ 19(b).  But when policyholders like Plaintiff chose to balance protection and cash accumulation the way they wanted to, and as they were expressly permitted to

---

[5] PHL, in fact, said in the policies themselves that policyholders only needed to pay enough premiums to cover their monthly charges.  Complaint ¶ 14; see also, e.g., Complaint, Exhibit 2, § 10.  These statements in the policies are not opinions or outrageous exaggerations.  They now appear, however, to have been false and misleading.

1  under the policies (*i.e.*, by choosing not to accumulate a cash value), PHL penalized

2  them for doing so and raised their cost of insurance rates.

3      Furthermore, PHL never disclosed to policyholders, including Plaintiff, that

4  it would charge higher cost of insurance rates on policies that had lower

5  accumulated values.  That is because PHL decided to add this term into the policies

6  years after people like Plaintiff purchased their policies, and *nowhere* do *any* of

7  Plaintiff's policies say that cost of insurance rates will be based on a policy's

8  accumulated value.  Thus, not only are PHL's affirmatively false and misleading

9  statements actionable under the UCL and FAL, but PHL's failure to describe the

10  full economic consequences of a policyholder's choice to pay the minimum

11  monthly charges is also actionable.  See People v. Fremont Life Ins. Co., 104 Cal.

12  App. 4th 508, 513 (2002).  In Fremont Life, the court upheld the trial court's

13  findings that the defendant insurance company violated the FAL by marketing an

14  annuity policy without clearly describing the full economic consequences of

15  withdrawing funds, including the applicable premium charge.  Id.  As in Fremont

16  Life, PHL's failure to describe the economic consequences of maintaining a low

17  accumulated value is actionable under the UCL and FAL.[6]

18          **4.      Plaintiff Has Alleged Unlawful, Unfair, and Fraudulent**
                       **Conduct by PHL**
19

20      A claim under the UCL can be pled under one of three prongs:  "the practice

21  is [1] unlawful (i.e., is forbidden by law), [2] unfair (i.e., harm to victim outweighs

22  any benefit), or [3] fraudulent (i.e. is likely to deceive members of the public)."

23  Albillo v. Intermodal Container Servs., Inc., 114 Cal. App. 4th 190, 208 (2003).

24  Here, the complaint supports a claim under all three of these prongs.

25              **a.      The complaint alleges unlawful conduct**

26      To plead a claim under the unlawful prong of the UCL, a plaintiff need only

27  _____

28  [6] Plaintiff has agreed to withdraw its request for statutory penalties under Business
    & Professions Code section 17536.

1    identify a violation of another law.  Berryman v. Merit Prop. Mgmt., 152 Cal. App.

2    4th 1544, 1554 (2007).  "Virtually any law—federal, state or local—can serve as a

3    predicate for an action under [the UCL]."  Durell v. Sharp Healthcare, 183 Cal.

4    App. 4th 1350, 1361 (2010).  The unlawful prong forbids "anything that can

5    properly be called a business practice and that at the same time is forbidden by

6    law."  Smith v. State Farm Mut. Auto. Ins. Co., 93 Cal. App. 4th 700, 717-18

7    (2001).  As explained in sections III.A and III.B.3 above, the complaint alleges

8    valid claims for bad faith and false advertising, and these allegations are sufficient

9    to state a claim for "unlawful" conduct.  See Williams v. Gerber Prod. Co., 552

10   F.3d 924, 938 (9th Cir. 2009) ("Any violation of the false advertising law . . .

11   necessarily violates the UCL.") (internal quotation and citation omitted).

12                    **b.     The complaint alleges unfair conduct**

13        PHL also misstates the standard for pleading a claim for unfair conduct under

14   the UCL.  Citing Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20

15   Cal. 4th 163 (1999), PHL suggests that a claim for unfair conduct must be

16   "tethered" to a constitutional, statutory, or regulatory provision.  Cel-Tech,

17   however, specifically limited its application to unfair conduct cases *involving*

18   *competitors*.  As a result, the Ninth Circuit has instructed district courts within its

19   purview to apply the standard set forth in *either* Cel-Tech or South Bay Chevrolet

20   v. General Motors Acceptance Corp., 72 Cal. App. 4th 861, 886 (1999).  See

21   Lozano v. AT&T Wireless Servs, Inc., 504 F.3d 718, 736 (9th Cir. 2007).  Under

22   South Bay, the Court should weigh the unfair practice's "'impact on its alleged

23   victim . . . against the reasons, justifications, and motives of the alleged

24   wrongdoer.'"  72 Cal. App. 4th at 886 (quoting State Farm Fire & Cas. Co. v.

25   Superior Court, 45 Cal. App. 4th 1093, 1103 (1996)).

26        PHL's conduct fails under either test.  First, as explained in section III.B.3

27   above, PHL's conduct constitutes false advertising under the FAL and is therefore

28   "unfair" under Cel-Tech.  Second, the conduct is unfair under South Bay because

1   the harms to Plaintiff far outweigh PHL's reasons, justifications, and motives.  For

2   example, PHL's unlawful rate increases have made some of Plaintiff's policies

3   economically unviable and will cause Plaintiff to lapse them.  And even if Plaintiff

4   keeps some policies, the unlawful rate increases will have diminished the value of

5   the policies substantially.  Although PHL has provided no justification for its

6   conduct, it is clearly trying to force its policyholders to lapse their policies so it will

7   never have to pay the death benefits to them.  That improper and self-serving

8   motive does not outweigh the harms to Plaintiff.

9               **c.      The complaint alleges fraudulent conduct**

10          To state a violation of the UCL for false advertising, a complaint merely

11  needs to state that "members of the public are likely to be deceived" by the conduct

12  at issue.  <u>Williams</u>, 552 F.2d at 938.  As explained in section III.B.3 above, PHL

13  materially misrepresented the terms of its universal life insurance policies, and this

14  conduct is actionable under the "fraudulent" prong of the UCL.  <u>Id.</u> ("Any violation

15  of the false advertising law . . . necessarily violates the UCL."); <u>see also</u> <u>Pastoria v.</u>

16  <u>Nationwide Ins.</u>, 112 Cal. App. 4th 1490, 1496-97 (2003) (upholding claim for

17  fraudulent conduct under the UCL where plaintiff alleged that insurer knew it was

18  going to change its policies, but did not inform policyholders until after they

19  purchased their policies).

20          **5.      Plaintiff Is Entitled to Restitution Under the UCL and FAL**

21          PHL also moves to dismiss Plaintiff's UCL and FAL claims on the ground

22  that Plaintiff has not pled that it has no adequate remedy at law.  First, neither the

23  UCL nor FAL states that a plaintiff must plead or prove it has no adequate remedy

24  at law.  Nor has any California court held that a plaintiff must plead an inadequate

25  remedy at law to state a claim under the UCL, even though equitable relief is the

26  *only* relief available under the statute.  The decision on which PHL bases this

27  contention, <u>Stewart v. Life Ins. Co. of N. Am.</u>, 388 F. Supp. 2d 1138, 1144 (E.D.

28  Cal. 2005), was rendered at the summary judgment stage, and the decision on

- 21 -

1   which it relies for the alleged "adequate remedy at law" requirement, <u>Heighley v.</u>

2   <u>J.C. Penney Life Ins. Co.</u>, 257 F. Supp. 2d 1241, 1259 (C.D. Cal. 2003), has been

3   questioned.  <u>See</u> <u>Monarch Plumbing Co. v. Ranger Ins. Co.</u>, 2006 U.S. Dist. LEXIS

4   68850, at*21, n.10 (E.D. Cal. Sept. 25, 2006).  <u>Heighley</u> indeed is questionable in

5   describing both no adequate remedy at law and a request for attorney's fees as

6   essential elements of a UCL claim, when neither of these requirements appears

7   anywhere in the statute.

8       In fact, where an equitable remedy is authorized by statute, as with the UCL

9   and FAL, "it is unnecessary for plaintiff to plead and prove the existence of the

10  usual equitable grounds, irreparable injury and absence of an adequate remedy at

11  law.  It is enough if the requirements of the statute are satisfied." <u>Atchison, T. & S.</u>

12  <u>F. Ry. Co. v. Lennen</u>, 640 F.2d 255, 260 (10th Cir. 1981) (quoting <u>Shadid v.</u>

13  <u>Fleming</u>, 160 F.2d 752, 753 (10th Cir. 1947), <u>aff'd in part</u>, <u>rev'd in part</u> on

14  unrelated grounds, 732 F.2d 1495 (10th Cir. 1984).  California law holds the same.

15  <u>See, e.g.</u>, <u>In re Marriage of Van Hook</u>, 147 Cal. App. 3d 970, 984-985 (1983)

16  ("Here we borrow the remainder of the federal rule and hold that inadequacy of a

17  remedy at law need not be shown to obtain [equitable relief] authorized by statute

18  where the statutory conditions for issuance are satisfied.").

19      Furthermore, the UCL expressly provides that it is an independent cause of

20  action that *is cumulative* to remedies available under other state laws.  Cal. Bus. &

21  Prof. Code § 17205.  Thus, even the actual recovery of damages under another

22  statute does not prevent application of the UCL.  <u>See, e.g.</u>, <u>Allied Grape Growers v.</u>

23  <u>Bronco Wine Co.</u>, 203 Cal. App. 3d 432, 452-53 (1988) (granting injunction under

24  UCL in addition to damages).

25      PHL's argument is even more specious under the FAL because there is no

26  state or federal decision that holds that a plaintiff pleading a FAL claim must plead

27  an inadequate remedy at law.  Nor would such a requirement make sense when the

28  statute itself contains no such requirement.  Cal. Bus. & Prof. Code § 17500.

### 6. Plaintiff Has Alleged Its Claims With Particularity

PHL also asserts that Plaintiff must plead its UCL and FAL claims with particularity because the claims are "grounded in fraud." It is unclear whether Rule 9(b)'s pleading requirements apply to UCL and FAL claims, even if they are grounded in fraud. The California Supreme Court has held that false advertising claims need not be pled with particularity, as long as the complaint provides sufficient detail to apprise the defendant of the basis of the cause of action. See People v. Superior Court (Jayhill Corp.), 9 Cal. 3d 283, 288 (1974); see also Ackerman v. Coca-Cola Co., 2010 U.S. Dist. LEXIS 73156, at *81-*84 (E.D.N.Y. July 21, 2010) (denying motion to dismiss FAL claims where the complaint identified the misleading statements and explained why plaintiff believed they were misleading). In any event, as PHL's motion acknowledges, the complaint "identifies several statements in PHL press releases and trademark filings," Motion at 21, and the complaint refers to statements made in the policies themselves, including provisions relating to the cost of insurance rates and the payment of premiums. Complaint ¶¶ 14, 19, 21. Plaintiff has put PHL on notice of the statements at issue. Further specifics "may be the subject of discovery proceedings." Jayhill Corp., 9 Cal. 3d at 288.

### C. The Declaratory Relief Claim Is Not Duplicative

PHL moves to dismiss Plaintiff's declaratory relief claim on the ground that it is duplicative of the breach of contract claims. The complaint, however, does not seek a duplicative declaration that PHL breached the policies or that PHL is liable to Plaintiff. The complaint seeks a declaration that clarifies the parties' rights and obligations under the policies, including, for example, a declaration "setting forth the *specific guidelines* that govern the *factual circumstances* under which PHL can increase the cost of insurance rates." Complaint ¶ 55 (emphasis added). The need for such a declaration is highlighted by the fact that PHL has provided Plaintiff no explanation or justification for raising its cost of insurance rates. Id. at ¶ 21.

The requested relief is different from any damages that Plaintiff seeks as compensation for PHL's past breaches. For example, even if the Court finds that PHL breached certain terms of the policies, including the implied covenant of good faith and fair dealing, the Court's judgment, without declaratory relief, will not necessarily set forth the specific guidelines that govern the factual circumstances under which PHL may increase cost of insurance rates in the future. Indeed, the complaint specifically alleges that Plaintiff seeks declaratory relief to "help prevent or limit any future controversies under the Policies by providing guidance as to when and how [PHL] can change the cost of insurance rates." Complaint ¶ 56. Courts have consistently upheld the use of declaratory relief claims in conjunction with breach of contract claims for this very reason. See, e.g., Streamcast Networks, Inc. v. IBIS LLC, CV 05-04239, 2006 WL 5720345, at *4-5 (C.D. Cal. May 2, 2006) (denying motion to dismiss where plaintiff sought damages for "past" breaches and a declaration of prospective rights); Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins. Co., CVF05736RECLJO, 2005 WL 2089832, at *6-7 (E.D. Cal. Aug. 29, 2005) (same); Vissuet v. Indymac Mortg. Servs., 09-CV-2321-IEG(CAB), 2010 WL 1031013, at *7 (S.D. Cal. Mar. 19, 2010) (same).

Because the parties' contractual relationship will continue after the litigation, Plaintiff is entitled to a judicial declaration placing clear limits on whether, when, and how PHL can change cost of insurance rates in the future to avoid uncertainty and future litigation. See Natural Res. Def. Council, Inc. v. U.S. E.P.A., 966 F.2d 1292, 1299 (9th Cir. 1992) ("The guiding principles are whether a judgment will clarify and settle the legal relations at issue and whether it will afford relief from the uncertainty and controversy giving rise to the proceedings.").

All of the decisions cited in PHL's motion are inapposite because they involve claims for declaratory relief that were clearly duplicative of the plaintiff's legal claims. See Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007) (plaintiff sought "a declaration of defendants' liability for damages sought for his

other causes of action."); <u>Priyanto v. M/S Amsterdam</u>, No. CV 07-3811 AHM (JTLx), 2009 WL 175739, at *9 (C.D. Cal. Jan. 23, 2009) (plaintiff sought a declaration that plaintiffs and the class "be paid in a timely manner as required by federal law."); <u>Chavers v. GMAC Mortg., LLC</u>, CV 11-01097 ODW (SSx), 2012 WL 10344, at *7 (C.D. Cal. Jan 3. 2012) (dismissal where plaintiff used declaratory relief claim as a "roadmap of all claims later addressed in the [complaint].").[7]  Here, however, the declaratory relief Plaintiff seeks is not duplicative of the legal issues to be decided by the breach of contract claim.

Furthermore, in asserting that Plaintiff is "seeking a declaration regarding possible *future* cost of insurance increases" that is not "ripe for adjudication," PHL misconstrues Plaintiff's claim.  Motion at 23-24.  There exists right now an actual controversy concerning the extent of PHL's contractual discretion to change the cost of insurance rates under the policies.  This question is "ripe" for adjudication. <u>See</u>, <u>e.g.</u>, <u>In re Facebook PPC Advert. Lit.</u>, 709 F. Supp. 2d 762, 772 (N.D. Cal. 2010) (upholding claim for declaratory relief where there was an "an actual controversy" regarding the parties' contract rights).  This is especially true because the policies say that PHL may review its cost of insurance rates periodically, and declaratory relief will reduce the risk of future disputes that would otherwise bring the parties back to court again and again.

## IV.   **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny PHL's motion to dismiss in its entirety.  Should the Court grant PHL's motion, in whole or in part, Plaintiff respectfully requests leave to amend.

---

[7] There is no merit to PHL's assertion that the Seventh Amendment right to a jury trial requires dismissal of the declaratory relief claim.  Motion at 23.  To the extent the claim overlaps with any breach of contract claim, a jury can decide the issues for which there is a right to a jury trial.  But there is nothing improper or unusual about the existence of equitable and legal claims that have some overlap.

1    Dated:     February 17, 2012       Orrick, Herrington & Sutcliffe LLP

2

3                                      By     */s/ Khai LeQuang*

4                                         KHAI LEQUANG
                                        Attorneys for Plaintiff

5                                       U.S. BANK NATIONAL
                                     ASSOCIATION, AS SECURITIES

6                                      INTERMEDIARY FOR LIMA
                                     ACQUISITION LP

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28