1  KHAI LEQUANG (SBN 202922)
   klequang@orrick.com
2  MELANIE D. PHILLIPS (SBN 245584)
   mphillips@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   777 South Figueroa Street
4  Suite 3200
   Los Angeles, California  90017
5  Telephone:  213-629-2020
   Facsimile:   213-612-2499
6
   STEPHEN G. FORESTA (*pro hac vice*)
7  sforesta@orrick.com
   PHILIPP SMAYLOVSKY (*pro hac vice*)
8  psmaylovsky@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
9  51 West 52nd Street

10 New York, New York 10019
   Telephone:  212-506-5000
11 Facsimile:   212-506-5151

12 Attorneys for Plaintiff
   U.S. BANK NATIONAL ASSOCIATION, AS
   SECURITIES INTERMEDIARY FOR LIMA
13 ACQUISITION LP

14
                 UNITED STATES DISTRICT COURT
15
                CENTRAL DISTRICT OF CALIFORNIA
16
                      WESTERN DIVISION
17

18
   U.S. BANK NATIONAL                    Case No. CV11-09517 ODW (RZx)
19 ASSOCIATION, a national association,
   as securities intermediary for LIMA   **PLAINTIFF U.S. BANK
20 ACQUISITIONS LP,                      NATIONAL ASSOCIATION'S, AS
                                         SECURITIES INTERMEDIARY
21              Plaintiff,               FOR LIMA ACQUISITIONS LP,
                                         OPPOSITION TO DEFENDANT
22        v.                             PHL VARIABLE INSURANCE
                                         COMPANY'S MOTION FOR
23                                       PARTIAL DISMISSAL OF
   PHL VARIABLE INSURANCE                PLAINTIFF'S FIRST AMENDED
24 COMPANY, a Connecticut corporation,   COMPLAINT**

25              Defendant.               Date:      July 23, 2012
                                         Time:      1:30 P.M.
26                                       Dept:      Courtroom 11

27

28
                                         PLAINTIFF'S OPP. TO MTN. TO DISMISS
                                         CV11-09517 ODW (RZx)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................1

II.   STATEMENT OF FACTS ............................................................2

III.  THE COURT SHOULD DENY PHL'S MOTION TO DISMISS................6

      A.    CUIPA and CUTPA............................................................6

      B.    Plaintiff's Claims Under CUIPA and CUTPA Are Timely .................7

            1.    PHL Violated CUIPA Within the Limitations Period...............8

            2.    PHL's Continuing Conduct Tolled the Statute of
                  Limitations.............................................................11

                  a.    The Doctrine Applies to CUTPA Claims .....................11

                  b.    The Doctrine Tolled the Limitations Period Here .........12

      C.    Plaintiff Has Stated a Claim Under CUIPA and CUTPA .................16

            1.    Plaintiff Is Not Required To Plead and Prove Negligent
                  Misrepresentation To State a CUIPA or CUTPA Claim..........16

            2.    Plaintiff Has Pled Misrepresentations of Fact .........................19

            3.    PHL's Misrepresentation That Its Cost of Insurance
                  Increases Were "in Accordance with the Terms" of the
                  Policies Is an Actionable Misrepresentation............................21

            4.    CUIPA Proscribes PHL's Post-Purchase
                  Misrepresentations ................................................22

      D.    Plaintiff Has Adequately Pled Claims Under CUIPA/CUTPA..........23

IV.   CONCLUSION .........................................................................24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

<u>Active Ventilation Prods., Inc. v. Property & Cas. Ins. Co. of Hartford</u>,
   2009 WL2506360 (Conn. Super. July 15, 2009) ...................................................... 22

<u>Ashcroft v. Iqbal</u>,
   556 U.S. 662 (2009) ............................................................................................ 6

<u>Assoc. for Los Angeles Deputy Sheriffs v. City of Los Angeles</u>,
   648 F.3d 986 (9th Cir. 2011) ............................................................................. 6

<u>Astoria Fed. Sav. & Loan Ass'n v. Solimino</u>,
   501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) ........................................5

<u>Aurigemma v. Arco Petroleum Products Co.</u>,
   734 F. Supp. 1025 (D. Conn. 1990)................................................................... 18

<u>Bruno v. Eckhart Corp.</u>,
   2012 WL 752090 (C.D. Cal. March 6, 2012) .............................................. 12

<u>Crowther v. Guidone</u>,
   183 Conn. 464 (Conn. 1981)............................................................................. 19

<u>DeChant v. Monarch Life Ins. Co.</u>,
   200 Wis. 2d 559 (Wis. 1995) ........................................................................... 13

<u>Eastham v. Garden State Life Ins. Co.</u>,
   2007 WL 1893359 (Conn. Super. Ct. June 7, 2007) ................................. 11

<u>Engelman v. Connecticut Gen. Life Ins. Co.</u>,
   1997 WL 524173 (Conn. Super. Ct. Dec. 8, 1997) .................................... 17

<u>Fichera v. Mine Hill Corp.</u>,
   207 Conn. 204 (Conn. 1988)................................................... 10, 12, 13, 14

<u>Flannery v. Singer Asset Fin. Co.</u>,
   128 Conn. App. 507 (Conn. App. Ct. 2011)................................................. 12

<u>Flannery v. Singer Asset Fin. Co.</u>,
   302 Conn. 902 (Conn. 2011) ............................................................................ 12

## TABLE OF AUTHORITIES
### (CONTINUED)

**Page(s)**

Freeman & Mills, Inc.v. Belcher Oil Co.,
  11 Cal. 4th 85 (Cal. 1995) ........................................................................ 13

Fusaro v. Malik,
  2012 WL 898794 (Conn. Super. Ct. Feb. 27, 2012) ................................. 12

Giglio v. Connecticut Light & Power Co.,
  180 Conn. 230(Conn. 1980) ..................................................................... 12

Goodrich Pump & Engine Controls, Inc.,
  2008 WL 2552994 (Conn. Super. Ct. June 6, 2008) .................................. 3

Guillory v. Allstate Ins. Co.,
  476 F. Supp. 2d 171 (D. Conn. 2007) ...................................................... 11

H & L Chevrolet v. Berkeley Ins. Co.,
  110 Conn. App. 428 (Conn. App. Ct. 2008) .............................................. 7

Hall v. Gilbert and Bennett Mfg. Co., Inc.,
  241 Conn. 282 (Conn. 1997) .................................................................... 21

Hinchliffe v. American Motors Corp.,
  184 Conn. 607 (Conn. 1981) .................................................................... 18

In Lawns Etc., LLC v. Family Farm Casualty Ins. Co.,
  2010 WL 4516085 (Conn. Super. Ct. Oct. 14, 2010) ............................... 18

In re DDI Corp. Sec. Lit.,
  2005 WL 3090882 (C.D. Cal. July 21, 2005) ........................................... 11

Izzarelli v. R.J. Reynolds Tobacco Co.,
  117 F.Supp.2d 167 (D. Conn. 2000) ........................................................ 14

Katz v. Hartford Financial Services Group, Inc.,
  2012 WL 2149405 (Conn. Super. Ct. May 11, 2012) ............................... 18

Kingman Reef Atoll Invs. v. United States,
  541 F.3d 1189 (9th Cir. 2008) ................................................................... 6

Krassner v. CPM Ins. Svcs., Inc.,
  2002 WL 31045965 (Ct. Super. Ct. Aug. 9, 2002) .................................. 21

**TABLE OF AUTHORITIES**
**(CONTINUED)**

Page(s)

L.A. Limousine, Inc. v. Liberty Mutual Ins. Co.,
 509 F. Supp. 2d 176 (D. Conn. 2007) ........................................................... 7

Lee v. BSB Greenwich Mortg. Ltd. Partnership,
 2007 WL 2743435 (Conn. Super. Ct. Aug. 31, 2007) ............................. 13

Lee v. City of Los Angeles,
 250 F.3d 668 (9th Cir. 2001) ........................................................................ 5

Lees v. Middlesex Ins. Co.,
 219 Conn. 644 (Conn. 1991) ........................................................................ 7

Lentini v Fidelity Nat Title Ins Co of New York,
 479 F. Supp. 2d 292 (D. Conn. 2007) ........................................................ 17

Loubier v. Allstate Ins. Co.,
 No. 3:09cv261 (JBA), 2010 WL 1279082 (D. Conn. Mar. 30, 2010) ........... 21, 22

Mack v. S. Bay Beer Distribs., Inc.,
 798 F.2d 1279 (9th Cir. 1986) ..................................................................... 5

Macomber v. Travelers Property and Cas. Corp.,
 261 Conn. 620 (Conn. 2003) ........................................................................ 7

Meyers v. Cornwell Quality Tools, Inc.,
 41 Conn. App. 19 (Conn. App. Ct. 1996) ................................................. 19

Meyers v. Cornwell Quality Tools, Inc.
 674 A.2d 444 (Conn. App. Ct. 1996) ......................................................... 18

Nation v. Allstate Ins. Co.,
 2005 WL 2365932 (Conn. Super. Ct. Sept 7, 2005) ................................. 18

Nazami v. Patrons Mut. Ins. Co.,
 280 Conn. 619 (Conn. 2006) ........................................................ 16, 17, 18

Novak v. Kasaks,
 216 F.3d 300 (2d Cir 2000) ........................................................................ 21

Odom v. Microsoft Corp.,
 486 F.3d 541 (9th. Cir. 2007) .................................................................... 24

- iii -

**TABLE OF AUTHORITIES**
**(CONTINUED)**

Page(s)

Omega Engineering, Inc. v. Eastman Kodak Co.,
    908 F. Supp. 1084 (D. Conn. 1995)..........................................................................23, 24

Phelan ex rel. Phelan v. Daimler Chrysler Corp.,
    323 F. Supp. 2d 335 (D. Conn. 2004) ....................................................................... 15

Scalise v. Stephens,
    2003 WL 22481480 (Super. Ct. Conn. Oct. 21, 2003) ............................................ 17

Schutz v. Northeast Mortgage Corp.,
    No. 3:05CV423 (MRK), 2005 WL 1844409 (D. Conn. Aug. 1, 2005)................ 21

Sherwood v. Danbury Hosp.,
    252 Conn. 193 (2000) .............................................................................................. 14

Shiffrin v. Bergman,
    No. CV990431111S, 2000 WL 1918050 (Conn. Super. Ct. Dec. 18, 2000) ...... 12

Thornhill Pub. Co. Inc. v. General Tel. & Electronics Corp.,
    594 F.2d 730 (9th Cir. 1979).................................................................................... 6

United States v. Polied Environmental Services, Inc.,
    238 F. Supp. 2d 456 (D. Conn. 2002) ..................................................................... 23

Veniza v. Nautilus Pools, Inc.,
    27 Conn. App. 810 (Conn. App. Ct. 1992)............................................................. 19

Web Press Services Corp. v. New London Motors, Inc.,
    203 Conn. 342 (Conn. 1987).................................................................................... 20

Willow Springs Condominium Ass'n, Inc. v. Seventh BRT Dev. Corp.,
    245 Conn. 1 (1998) .................................................................................................. 16

**STATUTES**

Conn. Gen. Stat. §§ 38a-816(1)-(2) ............................................................................. 7

Conn. Gen. Stat. §38a-816(1)(f)........................................................................1, 8, 19, 23

Conn. Gen. Stat. § 38a-816(9) ................................................................................. 7, 16

Conn. Gen. Stat. §38a-816 *et seq.*............................................................................ 1

- iv -

**TABLE OF AUTHORITIES**
**(CONTINUED)**

Page(s)

Conn. Gen. Stat. §42-110a *et seq.* ....................................................................... 1

Conn. Gen. Stat. § 42-110b(a) ............................................................................. 7

Conn. Gen. Stat. § 42-110g .................................................................................. 7

Federal Rule of Civil Procedure 8(a)(2) ............................................................. 6

Federal Rule of Civil Procedure Rule 9(b) ................................................... passim

Federal Rule of Civil Procedure Rule 12(b)(1) .................................................. 6

Federal Rule of Civil Procedure Rule 12(b)(6) .................................................. 6

Federal Rule of Evidence 201 ..............................................................................5

General Statutes section 38a-446 .................................................................... 7, 16

General Statutes section 38a-816(1)(a) ..................................................... 1, 8, 17, 21

General Statutes sections 38a-816(9) and 38a-446 ........................................... 8

General Statutes section 816(1)(a) ................................................................ 10, 22

General Statutes section 816(1)(e) ...................................................................... 9

General Statutes section 816(1)(f) ................................................................... 9, 22

## I.     **INTRODUCTION**

Contrary to what PHL suggests, this case is not just about the "interpretation of twelve universal life insurance policies."  After years of collecting premiums from Plaintiff[1], PHL is now jacking up the cost of insurance rates on Plaintiff's policies and hundreds (if not thousands) of other policies to try to force policyholders to lapse or surrender their policies so that PHL can pocket millions of dollars in premiums while never having to pay hundreds of millions of dollars in death benefits that would come due when the policies matured.

PHL's cost of insurance increases contradict the representations PHL made to policyholders and the public, including Plaintiff, and PHL's cost of insurance increases unlawfully discriminate against Plaintiff and other policyholders.  PHL did not just breach the terms of its own policies, PHL violated the law. Specifically, PHL violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110a *et seq.,* and the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. §38a-816 *et seq*., in at least the following ways:

- PHL misrepresented the "benefits, advantages, conditions or terms" of its universal life insurance policies in violation of section 38a-816(1)(a).
- PHL misrepresented "the true nature" of its universal life insurance policies in violation of section 38a-816(1)(e).
- PHL made misrepresentations "for the purpose of inducing or tending to induce the "purchase, lapse, forfeiture, exchange, conversion or surrender" of its universal life insurance policies in violation of section 38a-816(1)(f).
- PHL made false and misleading statements about "the business of insurance," including specifically the operation of "flexible premium adjustable life insurance" in violation of section 38a-816(2).

---

[1] This action is brought by U.S. Bank National Association, which holds the policies at issue in this case as the securities intermediary for Lima Acquisition LP.

1    • And PHL discriminated "between insurants of the same class and

2        expectation of life in the amount of premiums or rates charged for policies

3        of life or endowment insurance" in violation of sections 38a-816(9) and

4        §38a-446.

5    PHL has now moved for partial dismissal of Plaintiff's First Amended

6    Complaint and makes the following arguments:  (i) Plaintiff's CUTPA claim is

7    barred by the three-year statute of limitations; (ii) Plaintiff has failed to allege

8    reasonable reliance on a misstatement of fact necessary to prevail on a CUTPA

9    claim; and (iii) Plaintiff has failed to plead the CUTPA and CUIPA claims with the

10   particularly required under Rule 9(b).[2]  For the reasons summarized below and

11   detailed in the remainder of this memorandum, PHL's motion should be denied.

12   First, all of the violations alleged in the First Amended Complaint occurred

13   in 2009 and after and thus were within the three-year limitations period under

14   CUTPA and CUIPA.  In fact, PHL does not dispute that at least some of the

15   violations occurred within the three-year limitations period.  This alone is a

16   sufficient basis for rejecting PHL's statute of limitations argument.

17   Second, PHL's argument that Plaintiff failed to allege reasonable reliance on

18   PHL's misstatements (an element of a negligent misrepresentation claim) misses

19   the mark.   Plaintiff has not asserted a claim for negligent misrepresentation;

20   Plaintiff has alleged that PHL violated CUIPA by, among other things,

21   discriminating against policyholders "in the amount of premiums or rates charged."

22   To prove this violation, Plaintiff need not prove that PHL made any false or

23   misleading statements.  Nonetheless, Plaintiff does allege that PHL violated CUIPA

24   by also making false and misleading statements about the terms of its policies and

25   the benefits and advantages they would offer policyholders.  Those representations

26   _____

27   [2] PHL also moves to dismiss the CUIPA claim on the ground that CUIPA does not provide a
     direct right of action.  PHL admits, however, that the question of whether there is a direct right of

28   action under CUIPA has not been resolved, and this is reason enough not to dismiss the claim.

PLAINTIFF'S OPP. TO MTN. TO DISMISS
CV11-09517 ODW (RZx)

1   were false and misleading statements of fact – not opinions or puffery – that are
2   actionable under CUIPA without any further allegation of reliance.

3        <u>Third</u>, PHL's argument that Plaintiff did not adequately plead the
4   misrepresentations made by PHL is groundless.  Although it is debatable whether
5   Federal Rule 9(b) even applies to claims under CUIPA and CUTPA, Plaintiff has
6   identified the specific false and misleading statements at issue, including direct
7   quotes from PHL's own press releases, policy illustrations, and letters sent to
8   policyholders.  Plaintiff clearly has pled its claims with sufficient particularity.

9   **II.**    <u>**STATEMENT OF FACTS**</u>

10        PHL marketed and sold its universal life insurance policies to people based
11   on assurances that policyholders would have flexibility by being able to choose the
12   amount of premiums they paid and when they could pay them.  Am. Complaint ¶5.
13   Policyholders were told they could pay just enough to cover the monthly charges
14   needed to keep their policies in force, or they could choose to pay more and
15   accumulate a cash value that earned tax-deferred interest.  ¶¶5, 14, 15.  A
16   policyholder, however, was not obligated to pay more than the policy's minimum
17   monthly charges.  <u>Id.</u>

18        The largest of the monthly charges is the cost of insurance, which is the price
19   that PHL charges to bear the mortality risk on the policies (<i>i.e.</i>, the risk of paying
20   the "death benefits").  Am. Complaint ¶¶3, 15.  Although the policies state that
21   PHL may change the cost of insurance rates, PHL can only do so under limited
22   circumstances.  <u>Id.</u> ¶17.  In addition, any change in the cost of insurance rates must
23   be made by PHL on a uniform basis for all insureds in the same class, and PHL
24   cannot change cost of insurance rates to recoup prior losses.  <u>Id.</u> ¶18.

25        PHL marketed and sold the policies as "flexible premium" policies that
26   would appeal to people who sought flexibility to adjust premium payments
27   according to their changing needs and who wished to minimize their long-term life
28   insurance expenses.  Am. Complaint ¶19.  Among other marketing tactics, PHL

1   issued press releases in which it made numerous representations about its universal

2   life insurance policies to the public, including that the policies give policyholders

3   the "opportunity to lower premiums, as well as adjust the amount and timing of

4   premium payments." Id. PHL also stated that its policies "offer increased choice

5   and policy design flexibility" and are "appropriate for those looking to minimize

6   long term insurance costs while seeking competitive returns." Id.

7        Based on the language of the policies, PHL's rates (as reflected in policy

8   illustrations issued by PHL), and representations like those described above,

9   Plaintiff acquired the ownership interests in the Policies in December 2010. Am.

10  Complaint ¶21. Thereafter, PHL continued to issue policy illustrations to Plaintiff

11  describing the Policies as "flexible premium" policies, and Plaintiff continued to

12  take advantage of the "opportunity to lower premiums, as well as adjust the amount

13  and timing of premium payments" and to "minimize long term insurance costs" by

14  generally paying only the minimum charges each month and not accumulating any

15  cash value. Id. ¶21. As it turns out, however, PHL's representations about

16  "adjustable premium payments" were false, deceptive, and misleading. Id. ¶53.

17       Having induced its policyholders to purchase their policies, PHL told

18  policyholders in early 2010 that if they continued to take advantage of their right to

19  "lower premiums" by paying the monthly charges and not accumulating a cash

20  value, PHL would raise their cost of insurance rates, thus forcing them to pay more

21  than the policy's minimum monthly charges and accumulate a cash value. Am.

22  Complaint ¶¶6, 21. PHL also knowingly and intentionally issued false and

23  misleading policy illustrations that overstated a policyholder's future cost of

24  insurance charges. Id. ¶¶53, 62. PHL issued these false and misleading

25  illustrations to induce policyholders to lapse or surrender their policies. Id.

26       In addition, PHL's letters advising policyholders about the increases in their

27  cost of insurance rates contained false and misleading statements, including that

28  PHL was raising the  cost of insurance rates "in accordance with the terms" of their

PLAINTIFF'S OPP. TO MTN. TO DISMISS
CV11-09517 ODW (RZx)

1   policies.  Am. Complaint ¶¶53, 62.  Despite these representations, PHL failed to

2   identify any terms in the policies that supported PHL's increase in the cost of

3   insurance rates or explain how PHL determined that an increase in the rates could

4   be justified.  Id. ¶22.  Nor **could** PHL justify raising the cost of insurance rates

5   when recent increases in life expectancy have resulted in new mortality tables that

6   would, if anything, require a decrease – not increase – in the cost of insurance rates.

7   Id. ¶22.

8       To make matters worse, in PHL's letters notifying Plaintiff of this attempt to

9   unilaterally alter the terms of Plaintiff's policies, PHL did not tell Plaintiff how

10  much PHL's cost of insurance increase would be or what accumulated value would

11  trigger an increase.  Am. Complaint ¶22.  PHL simply threatened, "Should your

12  accumulated policy value fall below a certain level, the amount of the increase will

13  vary based on the accumulated amount of your policy value.  In general,

14  maintaining higher levels of policy value in relation to the face amount will reduce

15  or even eliminate any increase."  Id.

16      After numerous policyholders began disputing the propriety of PHL's cost of

17  insurance increase, including complaining that PHL was improperly basing their

18  cost of insurance rates on their policies' "accumulated values," PHL issued a new

19  round of letters in 2011 advising policyholders that it was raising the cost of

20  insurance rates on their policies as well, including policies owned by Plaintiff.  Id.

21  ¶29.  This time, PHL did not tell policyholders that the rate increase was based on

22  "accumulated policy values."  Id.  Again, however, PHL told Plaintiff that the

23  increases were "in accordance with the terms" of Plaintiff's policies, and again PHL

24  did not state the amount of the rate increases or provide any factual or contractual

25  basis for the increase, nor did it provide any documentary support for the increase.

26  Id. ¶¶29, 53, 62.

27      PHL's actions were contrary to the representations PHL continuously made

28  to policyholders and prospective policyholders on its website, in marketing

- 5 -

materials (including policy illustrations), and in press releases.  Am. Complaint ¶¶19, 53.  In particular, PHL represented that its universal life policies offered flexible premiums that would allow policyholders to fund only enough premiums to cover the monthly deductions, that PHL would not raise the cost of insurance rates other than based on certain factors in the Policies, and that PHL would not raise the cost of insurance rates unless it did so for all insureds in the same class.  Id.

In fact, the New York Department of Financial Services ("DFS") has said that PHL's universal life insurance policies violate New York law because they are "misleading to the policyholder."  The DFS also stated:

> With regard to the advertising materials that you submitted to the Department, given the way in which Phoenix implemented COI rates, **the materials are misleading and misrepresent the benefits and advantages of the Policies** in violation of [New York law].  The advertising materials make numerous statements emphasizing premium payment flexibility, but do not make any statements to the effect that a person's failure to fund the policy at a certain level may . . . result[] in a [cost of insurance] rate increase. (emphasis added).[3]

Moreover, by raising cost of insurance rates now, PHL is trying to make its policies so expensive – or to create enough uncertainty about the future costs to maintain them – that Plaintiff and other policyholders will not want to keep their policies and will let them lapse.  Am. Complaint ¶¶7, 25, 41.  If PHL's scheme succeeds, PHL will never have to pay hundreds of millions, if not billions, of dollars in death benefits on lapsed policies, even after having collected millions of dollars in premiums on them.  Id. ¶¶7, 25.  No matter what, PHL's scheme will garner PHL an enormous financial windfall, either from higher premium payments

---

[3] A copy of the letter dated September 6, 2011 stating the findings of the NY DFS is attached hereto as Exhibit 1.  Plaintiff respectfully requests that the Court take judicial notice of the letter. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) ("Under Federal Rule of Evidence 201, we may take judicial notice of the records of state agencies and other undisputed matters of public record."); Mack v. S. Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (court may take judicial notice of records and reports of state administrative bodies), overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

1    or by eliminating PHL's future liabilities under a large group of policies.  Id. ¶25.

2    ## III.   <u>THE COURT SHOULD DENY PHL'S MOTION TO DISMISS</u>

3        Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a

4    short and plain statement of the claim showing that the pleader is entitled to relief."

5    This does not require "detailed factual allegations."  A complaint need only allege

6    facts sufficient to "state a claim to relief that is plausible on its face."  <u>Ashcroft v.</u>

7    <u>Iqbal</u>, 556 U.S. 662, 678 (2009), citing <u>Twombly v. Bell Atlantic Corp.</u>, 550 U.S.

8    544, 555 (2007); <u>see also Assoc. for Los Angeles Deputy Sheriffs v. City of Los</u>

9    <u>Angeles</u>, 648 F.3d 986, 991 (9th Cir. 2011).  In evaluating a complaint's sufficiency

10   under Rule 12(b)(6), the Court must "accept all factual allegations in the complaint

11   as true and construe the pleadings in the light most favorable to the nonmoving

12   party."  <u>Deputy Sheriffs</u>, 648 F.3d at 991.  The court must also "draw all reasonable

13   inferences in favor of the plaintiff."  <u>Id.</u>, citing <u>Newcal Industries, Inc. v. Ikon</u>

14   <u>Office Solution</u>, 513 F.3d 1038, 1043 n. 2 (9th Cir. 2008).

15       The crucial inquiry in deciding a motion to dismiss under Rule 12(b)(1) is

16   whether the issues bearing upon the Court's jurisdiction are separable from the

17   substantive issues in the case.  <u>Kingman Reef Atoll Invs. v. United States</u>, 541 F.3d

18   1189, 1197 (9th Cir. 2008).  Where the jurisdictional issue and substantive issues

19   are "so intermeshed that the question of jurisdiction is dependent on decision of the

20   merits," a party is entitled to have the jurisdictional issue submitted to the jury

21   rather than resolved by the Court.  <u>Thornhill Pub. Co. Inc. v. General Tel. &</u>

22   <u>Electronics Corp.</u>, 594 F.2d 730, 735 (9th Cir. 1979).

23       ## A.   <u>CUIPA and CUTPA</u>

24       CUIPA prohibits insurers from engaging in a variety of unfair and deceptive

25   acts or practices, including misrepresenting "the benefits, advantages, or terms of

26   any insurance policy," misrepresenting the "true nature" of an insurance policy,

27   making misrepresentations "for the purpose of inducing or tending to induce the

28   purchase, lapse, forfeiture, exchange, conversion or surrender of any insurance

1   policy," and making misrepresentations "with respect to the business of insurance."

2   Conn. Gen. Stat. §§ 38a-816(1)-(2).

3        CUIPA further provides that any violation of General Statutes section 38a-

4   446 constitutes "an unfair and deceptive act[] or practice[] in the business of

5   insurance."  Conn. Gen. Stat. § 38a-816(9).  Section 38a-446 prohibits "any

6   distinction or discrimination . . . between insurants of the same class and

7   expectations of life in the amount or payment of premiums or rates charged for

8   policies of [life] insurance."

9        A plaintiff can assert a claim for violations of CUIPA directly under CUIPA[4]

10  or through the enforcement provisions of CUTPA, which proscribes "unfair

11  methods of competition and unfair or deceptive acts or practices in the conduct of

12  any trade or commerce."  Conn. Gen. Stat. § 42-110b(a); Conn. Gen. Stat. § 42-

13  110g (providing for private enforcement remedy); see also L.A. Limousine, Inc. v.

14  Liberty Mutual Ins. Co., 509 F. Supp. 2d 176, 181 (D. Conn. 2007) ("Connecticut

15  courts allow a plaintiff to assert a private cause of action based on a substantive

16  violation of CUIPA through CUTPA's enforcement provision.") (citing Mead v.

17  Burns, 199 Conn. 651, 662-63 (Conn. 1986)).

18       **B.    Plaintiff's Claims Under CUIPA and CUTPA Are Timely**

19       CUIPA claims are subject to CUTPA's statute of limitations and are

20  therefore timely if asserted within "three years after the occurrence of a violation"

21  of the statute.  See Lees v. Middlesex Ins. Co., 219 Conn. 644, 653-54 (Conn.

22  1991); Conn. Gen. Stat. § 42-110g(f).

23       Plaintiff filed this action on November 16, 2011, and all of the violations

24  upon which Plaintiff's claims are based occurred within three years of this date.

25
26
27
28

---

[4] PHL moves to dismiss the CUIPA claim on the ground that CUIPA does not provide a direct private right of action.  PHL admits, however, that the question of whether there is a direct right of action under CUIPA has not been resolved.  See, e.g., Macomber v. Travelers Property and Cas. Corp., 261 Conn. 620, 645 n.14 (Conn. 2003) (refusing to strike CUIPA claim); H & L Chevrolet v. Berkeley Ins. Co., 110 Conn. App. 428, 441 n.7 (Conn. App. Ct. 2008) ("Whether CUIPA allows a private cause of action independent of CUTPA remains an open question.")  The Court thus should not dismiss the claim.

1    And to the extent PHL's violations relate to "initial wrongs" that occurred outside

2    the limitations period, as PHL suggests, the statute of limitations was tolled by

3    PHL's continuing course of conduct.

4             **1.**    **<u>PHL Violated CUIPA Within the Limitations Period</u>**

5         The First Amended Complaint alleges several independent violations of

6    CUIPA.  Each one of these violations occurred within the three-year limitations

7    period, as described in detail below.

8         <u>First</u>, the First Amended Complaint alleges that PHL raised cost of insurance

9    rates only on policyholders who chose to maintain a low accumulated policy value.

10   PHL's rate increase thus violated General Statutes sections 38a-816(9) and 38a-

11   446, which prohibit an insurer from making or permitting "any distinction or

12   discrimination . . . between insurants of the same class and expectation of life in the

13   amount or payment of premiums or rates charged for policies of [life] insurance."

14   Am. Complaint ¶¶24, 52, 55, 61, 64.  PHL's rate increases were not based on

15   "expectation of life," but on accumulated policy value.  PHL's unlawful rate

16   increases began occurring in 2010 and were clearly within the limitations period.

17        <u>Second</u>, the First Amended Complaint alleges that when PHL raised cost of

18   insurance rates, PHL sent letters misrepresenting that the cost of insurance rate

19   increases were "in accordance with the terms" of Plaintiff's policies.  These false

20   and misleading statements violated General Statutes section 38a-816(1)(a) because

21   they misrepresented the "terms of any insurance policy."  These statements also

22   violated section 38a-816(1)(f) because they were made "for the purpose of inducing

23   or tending to induce the . . . lapse, forfeiture, . . . or surrender of any insurance

24   policy."  Further, they also constituted a misrepresentation "with respect to the

25   business of insurance" in violation of section 38a-816(2).  PHL made these false

26   and misleading statements in letters sent in 2010 and thereafter.  Am. Complaint

27   ¶¶7, 29, 53, 62.  Accordingly, these violations all occurred within the three-year

28   limitations period.

1    Third, the First Amended Complaint alleges that PHL knowingly and
2    intentionally disseminated false and misleading policy illustrations that overstated
3    cost of insurance rates to induce policyholders to lapse or surrender their policies.
4    Am. Complaint ¶¶53, 62.  These false and misleading illustrations violated General
5    Statutes section 816(1)(f) because they constituted a "misrepresentation, including,
6    but not limited to, an intentional misquote of a premium rate, for the purpose of
7    inducing or tending to induce . . . the lapse, forfeiture, . . . or surrender of any
8    insurance policy."  Because PHL issued these false and misleading illustrations in
9    2009 and 2010, these violations all occurred within the limitations period.

10    Fourth, the First Amended Complaint alleges that PHL mischaracterized its
11    universal life insurance policies as "flexible premium adjustable life" insurance on
12    its website, in its policies, and in marketing materials.  In so doing, PHL violated
13    General Statutes section 816(1)(e), which prohibits the use of "any name or title of
14    any insurance policy or class of insurance policies, misrepresenting the true nature
15    thereof."  PHL not only made these statements in marketing materials in 2010,
16    when Plaintiff acquired the ownership interest in the Policies, but PHL also
17    thereafter sent illustrations to Plaintiff misrepresenting the true nature of Plaintiff's
18    policies.  These violations all occurred within the limitations period.

19    Fifth, the First Amended Complaint alleges that PHL made false and
20    misleading statements in its own policies, which stated that policyholders only
21    needed to pay enough premiums to cover their monthly policy charges.  Am.
22    Complaint ¶14.  These statements were false and misleading because PHL is now
23    trying to charge more for policyholders who pay only their minimum monthly
24    charges.  Id. ¶21.  These statements in PHL's policies violated General Statutes
25    section 816(1)(f) because they constituted a "misrepresentation . . . for the purpose
26    of inducing or tending to induce [] the purchase . . . of any insurance policy."  They
27    were made to Plaintiff in 2010 when Plaintiff purchased the ownership interest in
28    the Policies, and Plaintiff relied on these statements when Plaintiff acquired the

1    ownership interest in the Policies.  Id. ¶21.  The statements were thus made to

2    Plaintiff within the limitations period.

3         Sixth, PHL made numerous false and misleading statements about the

4    flexible nature of its universal life insurance policies, including that:

5    • PHL's universal life products give policyholders the "opportunity to

6      lower premiums, as well as **adjust the amount and timing of premium**

7      **payments**."

8    • PHL's universal life products are "designed to **balance protection and**

9      **cash accumulation** with features suited to meet policyholders' evolving

10     personal or business planning needs."

11   • PHL's universal life products "offer increased **choice and policy design**

12     **flexibility** to meet the needs of the high net worth."

13   • PHL's universal life products are "appropriate for those looking to

14     **minimize long term insurance costs** while seeking competitive returns."

15   Am. Complaint ¶¶19, 53, 62 (emphasis added).  These statements violated General

16   Statutes section 816(1)(a) because they misrepresented the "benefits, advantages,

17   conditions or terms of any insurance policy."  The statements also violated sections

18   816(1)(e) and (f) because they misrepresented the "true nature" of PHL's universal

19   life insurance policies and constituted a "misrepresentation . . . for the purpose of

20   inducing or tending to induce [] the purchase . . . of any insurance policy."

21        PHL made these misrepresentations through the continuous dissemination of

22   its press releases to policyholders and prospective policyholders.  Am. Complaint

23   ¶¶19, 21, 53, 62.  Although PHL initially made these representations outside the

24   three-year limitations period, the statements were made to Plaintiff during the

25   period immediately before Plaintiff acquired an ownership interest in the Policies in

26   2010.  Id.  Moreover, PHL's statements became false and misleading when PHL

27   raised the cost of insurance rates in and after 2010, at which time the statute of

28   limitations on Plaintiff's claims began to run.  See Fichera v. Mine Hill Corp., 207

- 11 -

Conn. 204, 209 (Conn. 1988); see also Eastham v. Garden State Life Ins. Co., No. CV054011444, 2007 WL 1893359, *8 (Conn. Super. Ct. June 7, 2007).

In short, all of the violations of CUIPA/CUTPA alleged in the Complaint occurred within the limitations period, and Plaintiff's claims based on those violations are timely.  Moreover, PHL does not – and cannot – dispute that some of the violations alleged in the Complaint occurred within the limitations period.  See Defendant's Memorandum of Points and Authorities in Support of Motion for Partial Dismissal of First Amended Complaint ("Motion") at 7:12-15 [D.E. 52-1].  As long as at least some of the violations occurred within the limitations period, Plaintiff is entitled to proceed with its claims.  See In re DDI Corp. Sec. Lit., 2005 WL 3090882, at *13 (C.D. Cal. July 21, 2005)("[W]e need not parse through each and every alleged misstatement contained in the complaint to determine if it is actionable.  It is sufficient for pleading purposes that at least some of the [statutory] violations . . . alleged by plaintiffs are actionable."); see also Guillory v. Allstate Ins. Co., 476 F. Supp. 2d 171, 176 (D. Conn. 2007).

### 2.    PHL's Continuing Conduct Tolled the Statute of Limitations

PHL also argues that the limitations period has expired because the statute of limitations began to run when PHL first made statements to someone else.  Not only is this a misstatement of law, but even if the Court were to look back at when PHL made statements to others, as opposed to when PHL made statements to Plaintiff, the statute of limitations has not run on these violations because PHL did not consummate its wrongful conduct until it raised the cost of insurance rates in 2010 and 2011.  The limitations period thus was tolled until at least 2010.

### a.    The Doctrine Applies to CUTPA Claims

PHL first argues that the continuing course of conduct doctrine does not apply to CUTPA claims.  See Motion at 8:2-5.  The Connecticut Supreme Court disagrees.  It has, in fact, applied the doctrine to a CUTPA claim, but held that the doctrine did not toll the statute of limitations based on the specific facts of that case.

PLAINTIFF'S OPP. TO MTN. TO DISMISS
CV11-09517 ODW (RZx)

1   See Fichera v. Mine Hill Corp., 207 Conn. at 209-212; see also Shiffrin v.

2   Bergman, No. CV990431111S, 2000 WL 1918050, at *3 (Conn. Super. Ct. Dec.

3   18, 2000) ("The court in Fichera leaves open the possibility of a special relationship

4   between the parties giving rise to a continuing duty in the context of a CUTPA

5   claim.").  In any case, as PHL acknowledges, the case upon which PHL relies,

6   Flannery v. Singer Asset Fin. Co., 128 Conn. App. 507, 513 (Conn. App. Ct. 2011),

7   is on appeal to the Connecticut Supreme Court.  See Flannery v. Singer Asset Fin.

8   Co., 302 Conn. 902 (Conn. 2011) (certifying appeal).[5]  The Court, therefore, has no

9   basis for rejecting the doctrine.  See Bruno v. Eckhart Corp., 2012 WL 752090, at

10  *4 (C.D. Cal. March 6, 2012) ("[I]t is well-established that where, as here, a federal

11  court sits in diversity jurisdiction, the court must follow substantive state law as

12  announced by the highest court of the State") (internal quotations omitted); see also

13  Fusaro v. Malik, No. FSTCV085008479S, 2012 WL 898794, *5 (Conn. Super. Ct.

14  Feb. 27, 2012) (denying motion to strike CUTPA claim without prejudice to

15  renewal of motion upon resolution of Flannery).  Nevertheless, this Court need not

16  even decide this issue, because all (or virtually all) of PHL's violations occurred

17  within the limitations period regardless.

18            **b.      The Doctrine Tolled the Limitations Period Here**

19            Even if PHL made some of its statements outside the limitations period,

20  under the continuing course of conduct doctrine, the limitations period was tolled

21  until PHL raised the cost of insurance rates, thereby rendering those statements

22  false and misleading.  In Connecticut, "[w]hen the wrong sued upon consists of a

23  continuing course of conduct, the statute [of limitations] does not begin to run until

24  that course of conduct is completed."  Giglio v. Connecticut Light & Power Co.,

25  _____

26  [5] The other case cited by PHL, Goodrich Pump & Engine Controls, Inc., is clearly
    distinguishable.  In Goodrich, the acts giving rise to plaintiff's claims, a series of contractual

27  breaches, all occurred outside the limitations period.  See No. CV075008001, 2008 WL 2552994,
    at *4 (Conn. Super. Ct. June 6, 2008).  Here, Plaintiff has alleged a continuous course of

28  misrepresentations and omissions that include statements made within the limitations period.

PLAINTIFF'S OPP. TO MTN. TO DISMISS
                                       CV11-09517 ODW (RZx)

1  180 Conn. 230, 241(Conn. 1980).  The continuing course of conduct doctrine is

2  "conspicuously fact-bound" and "may include acts of omission as well as

3  affirmative acts of misconduct."  <u>Lee v. BSB Greenwich Mortg. Ltd. Partnership</u>,

4  No. X08CV040200344S, 2007 WL 2743435, at *7 (Conn. Super. Ct. Aug. 31,

5  2007).  The doctrine applies when there is a "breach of a duty that remained in

6  existence after commission of the original wrong related thereto."  <u>Fichera</u>, 207

7  Conn. at 209.  This duty exists when there is evidence of "**either** a special

8  relationship between the parties giving rise to such a continuing duty **or** some later

9  wrongful conduct of a defendant related to the prior act."  <u>Id</u>. at 210 (emphasis

10  added).  Although only one of these circumstances is necessary for the doctrine to

11  apply, both are present here.

12       With respect to the first circumstance, PHL owed a continuing duty to the

13  policyholder under the Policies by virtue of the special relationship that exists

14  between an insurer and a policyholder.  The Policies are California and Wisconsin

15  policies.  Under both California and Wisconsin law, courts recognize a "special

16  relationship" between insurer and policyholder characterized by "elements of public

17  interest, adhesion, and fiduciary responsibility."  <u>Freeman & Mills, Inc.v. Belcher

18  Oil Co.</u>, 11 Cal. 4th 85, 91 (Cal. 1995); <u>accord</u> <u>DeChant v. Monarch Life Ins. Co.</u>,

19  200 Wis. 2d 559, 570 (Wis. 1995).  This "special relationship" created continuing

20  obligations to correct prior misstatements and refrain from further dissemination of

21  misrepresentations about its policies.  <u>See</u> <u>Lee</u>, 2007 WL 2743435, at *7 (wrongful

22  conduct may include "acts of omission as well as affirmative acts of misconduct").

23       With respect to the second circumstance, PHL does not and cannot dispute

24  that it continued to disseminate the press releases and policies alleged to contain

25  false and misleading information.  PHL raised the cost of insurance rates based on

26  accumulated value beginning in 2010, which rendered PHL's statements in the

27  press releases and policies false and misleading.  PHL's later conduct in continuing

28  to disseminate false and misleading materials and raising cost of insurance rates

PLAINTIFF'S OPP. TO MTN. TO DISMISS
CV11-09517 ODW (RZx)

relates directly to its prior statements about the flexibility and adjustability of its universal life insurance policies, thus tolling the statute of limitations.  See Fichera, 207 Conn. at 209, citing Giglio, 180 Conn. at 242 (although installation of defective boiler occurred outside of the limitations period, defendants' later instructions and advice to plaintiff regarding same operated to toll the limitations period); Izzarelli v. R.J. Reynolds Tobacco Co., 117 F.Supp.2d 167, 176 (D. Conn. 2000) (denying motion to dismiss CUTPA claims where plaintiff's allegations of ongoing cigarette marketing strategy targeting minors included instances of "recent wrongful conduct" that was related to "prior wrongful conduct" stretching back 40 years).

Indeed, one of the very cases that PHL relies on refutes PHL's position.  In Sherwood v. Danbury Hosp., 252 Conn. 193 (2000), the plaintiff brought a medical malpractice claim alleging that she contracted HIV from a blood transfusion performed by the defendant.  Id. at 199-200.  The plaintiff argued that the continuing course of conduct doctrine tolled the statute of limitations on her claim. Id. at 201-202.  In arguing that the defendant owed a continuing duty to her, the plaintiff presented evidence "from which a reasonable jury could have found that the standard of care required the defendant to have taken steps to notify the plaintiff, after the transfusion, that the blood that she received during her transfusion was not tested for HIV antibodies."  Id. at 207.  The plaintiff also presented evidence that the defendant breached that duty by failing to advise her of certain facts that would have alerted her to the higher risk associated with the blood she received.  Id. at 208.  The Connecticut Supreme Court held that material issues of fact about whether the defendant owed a continuing duty to the plaintiff and whether it breached that duty precluded summary judgment.  Id. at 207-208.  Here, there are, at a minimum, questions of fact about (a) whether PHL owed a duty to take steps to correct its false and misleading statements about its universal life insurance policies and (b) whether PHL breached that duty by continuing to disseminate its press releases without changing or correcting its prior

1   representations.

2       PHL also argues that the continuing course of conduct doctrine does not

3   apply because Plaintiff has not alleged an "initial wrong" **against Plaintiff**.  <u>See</u>

4   Motion at 8:12.  This argument only underscores the fact that PHL did not commit

5   a violation of CUIPA or CUTPA with respect **to Plaintiff** until it made the false

6   and misleading statements **to Plaintiff** in 2010, and thus the limitations period did

7   not even begin to run until 2010.  <u>See</u> section III.B.1 above.  Otherwise, PHL is

8   arguing that the statute of limitations began to run when PHL made false and

9   misleading statements **to someone else**, and the limitations period is not tolled

10  because the "initial wrong" was against someone else – not Plaintiff.  That

11  argument makes no sense.  If the law were as PHL contends, every insurer could

12  simply lie to one person, wait three years, and then lie to Plaintiff (and the world),

13  and the statute of limitations will have expired because the "initial wrong" occurred

14  three years earlier, even though it occurred against someone else.  That is not, and

15  cannot be, the law.

16      Nor does <u>Phelan ex rel. Phelan v. Daimler Chrysler Corp.</u>, 323 F. Supp. 2d

17  335 (D. Conn. 2004), which PHL cites, support this position.  <u>Phelan</u> stands for the

18  inverse proposition, which is logical.  In <u>Phelan</u>, the court held that the limitations

19  period on CUTPA claims arising from the marketing of a defective automobile was

20  not tolled by the defendant's subsequent misconduct directed at other purchasers of

21  the same model.  <u>Id.</u> at 340.  In other words, when an initial wrong is committed

22  against Person A, the statute of limitations begins to run as to Person A, and the

23  defendant's later wrongful conduct committed against Person B does not toll the

24  limitations period for Person A.  That does not, however, mean that the limitations

25  period for the wrong committed against Person B began to run when the defendant

26  committed the wrong against Person A, which is what PHL is arguing here.

27      PHL also makes the nonsensical argument that the "initial wrong" it

28  committed had to occur within the limitations period or Plaintiff's claim would be

barred.  See Motion at 8:16-17.  The continuing course of conduct doctrine does not require that the "initial wrong" be committed within the limitations period, as this would defeat the very purpose of the doctrine.  For if the initial wrong occurred within the limitations period, there never would be a need to toll the limitations period.  CUTPA claims are timely as long as "some of the deceptive acts that formed the basis of [the] claims occurred within the three years prior to the date that [the] action was brought."  Willow Springs Condominium Ass'n, Inc. v. Seventh BRT Dev. Corp., 245 Conn. 1, 46 (1998).  That is clearly the case here.

### C.  Plaintiff Has Stated a Claim Under CUIPA and CUTPA

In addition to its statute of limitations arguments, PHL also moves to dismiss the CUIPA and CUTPA claims on the grounds that (i) Plaintiff has not pled the elements of a claim for negligent misrepresentation, including reasonable reliance; (ii) PHL's false and misleading statements are mere opinions or puffery; and (iii) Plaintiff has not pled its claims with sufficient particularity under Rule 9(b).  All of these assertions are wrong.

#### 1.  Plaintiff Is Not Required To Plead and Prove Negligent Misrepresentation To State a CUIPA or CUTPA Claim

To state a CUIPA claim under CUTPA, a plaintiff does not need to plead the elements of a claim for negligent misrepresentation, but rather must only allege "conduct that is proscribed by CUIPA."  Nazami v. Patrons Mut. Ins. Co., 280 Conn. 619, 625 (Conn. 2006).

Indeed, some of CUIPA's prohibitions do not require any misrepresentation at all.  For example, Connecticut General Statutes section 38a-816(9)  provides that any violation of section 38a-446 constitutes "an unfair and deceptive act[] or practice[] in the business of insurance."  Conn. Gen. Stat. § 38a-816(9).  Section 38a-446 prohibits "any distinction or discrimination . . . between insurants of the same class and expectations of life in the amount or payment of premiums or rates charged for policies of [life] insurance."  Thus, Plaintiff does not need to prove a

1    misrepresentation to prove a violation of section 816(9).

2         Moreover, CUIPA prohibits the making, issuing, or circulating of false and

3    misleading statements – nothing else.  See Scalise v. Stephens, 2003 WL 22481480,

4    at *4 (Super. Ct. Conn. Oct. 21, 2003) ("[M]aking, issuing, or circulating any

5    statement which misrepresents the benefits or advantages or conditions or terms of

6    an insurance policy is actionable under § 38a-816(1)(a).").  Thus, courts have

7    repeatedly held that CUIPA "does not require that the misrepresentations be

8    accompanied by an intent to deceive **or that the plaintiff relied on them**.  The

9    statute only requires that such misrepresentations were made." Engelman v.

10   Connecticut Gen. Life Ins. Co., 1997 WL 524173, at *8 (Conn. Super. Ct. Dec. 8,

11   1997) (emphasis added); see also Lentini v Fidelity Nat Title Ins Co of New York,

12   479 F. Supp. 2d 292, 299 (D. Conn. 2007) ("the statutory language authorizes relief

13   when an omission or statement '[m]isrepresents the benefits, advantages, conditions

14   or terms of any insurance policy.'") (internal citations omitted).

15        PHL contends that the Court in Nazami held that a plaintiff must plead the

16   elements of a claim for negligent misrepresentation to state a claim under CUIPA.

17   The Court in Nazami never said this.  Although the Court mentioned the traditional

18   elements of a negligent misrepresentation claim in the context of its discussion of

19   the plaintiff's CUIPA/CUTPA claim, the Court did so because the plaintiff also

20   pled a negligent misrepresentation claim in that case.  See Nazami, 280 Conn. at

21   623.  The Court cited the elements of a claim for negligent misrepresentation to

22   establish a common element that was lacking in that case – a misrepresentation.  Id.

23   at 626.  The Court then dismissed both the negligent misrepresentation claim and

24   the CUIPA/CUTPA claim on the same ground – namely, that the statements alleged

25   by the plaintiff "did not misrepresent any facts." Id. at 627.  Nazami did not apply

26   any of the other traditional elements of negligent misrepresentation to the plaintiff's

27

28

1    CUTPA/CUIPA claims.  Id.  Nor has any subsequent Connecticut appellate court.[6]

2         Requiring a plaintiff to plead and prove negligent misrepresentation not only

3    would be inconsistent with the express language of CUIPA, it would be

4    inconsistent with CUIPA's and CUTPA's remedial purpose.  CUTPA has been

5    interpreted as proscribing "a broader range of conduct than did the common-law

6    action for innocent misrepresentation," and because of its expansive nature,

7    "CUTPA provides an action more flexible and a remedy more complete than did

8    the common law."  Hinchliffe v. American Motors Corp., 184 Conn. 607, 617

9    (Conn. 1981).  Thus, courts have routinely held that reasonable reliance is not a

10   requirement for a CUTPA claim.  See Aurigemma v. Arco Petroleum Products Co.,

11   734 F. Supp. 1025, 1029 (D. Conn. 1990) ("[P]laintiffs need not prove reliance or

12   that the alleged unfair or deceptive representation became part of the basis of the

13   bargain . . .  [A] CUTPA violation can be established by showing either an actual

14   deceptive practice or one amounting to a violation of public policy."); Meyers v.

15   Cornwell Quality Tools, Inc. 674 A.2d 444, 453 (Conn. App. Ct. 1996) ("[I]t is

16   well established that the CUTPA plaintiff need not prove reliance or that the

17   representation became part of the basis of the bargain.").  The remedial purpose of

18   CUTPA applies to CUIPA as well.  See Nation v. Allstate Ins. Co., 2005 WL

19   2365932, at *2 (Conn. Super. Ct. Sept 7, 2005) (noting "the remedial nature of

20   CUIPA" and holding that the statute "is to be liberally construed to give effect to

21   the legislature's intent"); Katz v. Hartford Financial Services Group, Inc., 2012 WL

22   2149405, at *3 (Conn. Super. Ct. May 11, 2012) (same).[7]

23        In any event, even if Plaintiff is required to plead the traditional elements of

24   _____

25   [6] Some trial courts have adopted PHL's erroneous interpretation of Nazami.  See, e.g., In Lawns
     Etc., LLC v. Family Farm Casualty Ins. Co., 2010 WL 4516085, at *5 (Conn. Super. Ct. Oct. 14,
26   2010).  This Court, however, is not bound to follow their missteps.

27   [7] Furthermore, if a plaintiff were required to plead the elements of a negligent misrepresentation
     claim to state a CUIPA claim, CUIPA would do nothing more than create a meaningless statutory
28   variant of a negligent misrepresentation claim.

1   negligent misrepresentation to state a CUIPA claim, Plaintiff has done so.  PHL

2   concedes that the First Amended Complaint alleges reliance, but argues that

3   Plaintiff fails to allege the magic word "reasonable."  This is semantic quibbling.

4   Plaintiff alleges reliance on representations made by PHL, the insurance company

5   that issued the Policies, and that is sufficient to plead reasonable reliance.[8]

6               **2.    <u>Plaintiff Has Pled Misrepresentations of Fact</u>**

7         PHL also argues that the false and misleading statements described in the

8   First Amended Complaint are opinions or "puffery" and therefore are not

9   actionable.  The statements at issue are not opinions or puffery, as the NY DFS also

10  concluded.  *See* Statement of Facts above (page 6).

11        Whether a statement is mere puffery depends upon a variety of factors,

12  including the subject matter, form, and surrounding circumstances of the statement,

13  as well as the respective knowledge of the originating and receiving parties.  <u>See</u>

14  <u>Meyers v. Cornwell Quality Tools, Inc.</u>, 41 Conn. App. 19, 28-29 (Conn. App. Ct.

15  1996); <u>see also</u> <u>Crowther v. Guidone</u>, 183 Conn. 464, 468 (Conn. 1981) (relevant

16  inquiry "focuses on whether, under the circumstances surrounding the statement,

17  the representation was intended and understood as one of fact as distinguished from

18  one of opinion"); <u>Veniza v. Nautilus Pools, Inc.</u>, 27 Conn. App. 810, 816 (Conn.

19  App. Ct. 1992) (factors include "the specificity of the statement" and "whether it

20  was written or oral, the latter being more likely to be considered puffing").

21        Here, PHL made specific factual statements – all of them in writing – about

22  the purported characteristics of its universal life insurance policies.  These

---

[8] PHL also argues that Plaintiff cannot rely upon the terms of the Policies because the Policies cannot mischaracterize their own terms.  <u>See</u> Motion at 12:13-18.  This is a straw man argument. Plaintiff does not allege that "the Policy misrepresents the Policy." Plaintiff alleges that the misrepresentations in the Policies – including that Plaintiff would only have to pay enough to cover a policy's monthly charges – misrepresented PHL's intent to charge policyholders higher rates if they exercised their right to pay only the minimum monthly charges.  These misrepresentations in the Policies were "for the purpose of inducing or tending to induce [] the purchase . . . of any insurance policy" in violation of section 38a-816(1)(f) and were misrepresentations "with respect to the business of insurance" in violation of section 38a-816(2).

1   statements included, among other things, statements that the Policies allowed for

2   payment of "flexible premiums" and permitted policyholders to pay "lower

3   premiums, as well as adjust the amount and timing of premium payments."  Am.

4   Complaint ¶¶ 5, 6, 19, 22, 30, 53.  These are statements of fact about how the

5   Policies were designed to operate and, when read in context with the terms of the

6   Policies themselves, are deceptive and misleading.[9]  They communicate to Plaintiff

7   (and other policyholders or prospective policyholders) that Plaintiff could pay the

8   minimum charges necessary to keep the Policies in force.  However, when Plaintiff

9   chose not to overfund its Policies and lower its premium payments by paying just

10  enough to cover the monthly charges, PHL penalized Plaintiff by raising Plaintiff's

11  rates, effectively depriving Plaintiff of one of the essential benefits of the Policies.

12      PHL also said that its universal life insurance policies "are designed to

13  balance protection and cash accumulation with features suited to meet

14  policyholders' evolving personal or business planning needs."  Am. Complaint

15  ¶19(b).  In other words, PHL said that policyholders had the choice to pay only

16  enough to cover their monthly charges (*i.e.*, "protection") or pay more for

17  investment purposes (*i.e.*, "cash accumulation").  But when policyholders like

18  Plaintiff chose to balance protection and cash accumulation the way they wanted to,

19  and as they were expressly permitted to under their policies, PHL penalized them

20  for doing so and raised their cost of insurance rates.

21      Representations about the specific characteristics of a service or product, like

22  those described in the First Amended Complaint, are generally held not to

23  constitute "puffery."  See Web Press Services Corp. v. New London Motors, Inc.,

24  203 Conn. 342, 351-52 (Conn. 1987).  Misrepresentations about the terms of a

25

26  ─────────────────
    [9] PHL, in fact, said in the Policies themselves that policyholders only needed to pay enough
27  premiums to cover their monthly charges.  Am. Complaint ¶ 14; see also, e.g., Am. Complaint,
    Exhibit 2, §10.  These statements in the Policies are not opinions or outrageous exaggerations.
28  They now appear, however, to have been false and misleading.

1  policy are also specifically actionable.  See Loubier v. Allstate Ins. Co., No.

2  3:09cv261 (JBA), 2010 WL 1279082, at * 7 (D. Conn. Mar. 30, 2010) (insurer

3  misrepresented the terms of a policy by implying that policyholder was required to

4  sign a release to secure policy benefits where the policy did not contain such a

5  requirement ).  Furthermore, while PHL's statements in this case are very specific,

6  numerous courts have held that even general and qualitative statements may be

7  actionable if they are deceptive or misleading.  See, e.g., Schutz v. Northeast

8  Mortgage Corp., No. 3:05CV423 (MRK), 2005 WL 1844409, at *1 (D. Conn. Aug.

9  1, 2005) (statement that loan was a "good loan" for plaintiff constituted actionable

10  fraud); Krassner v. CPM Ins. Svcs., Inc., No. CV010456362S, 2002 WL 31045965,

11  at *1 (Ct. Super. Ct. Aug. 9, 2002) (representation that agents would ensure

12  "adequate and sufficient [insurance] coverage" was actionable); Novak v. Kasaks,

13  216 F.3d 300, 314 (2d Cir. 2000) (statements that company's inventory was in

14  "good shape" or "under control" were "false and misleading").

15      PHL's written representations about its universal life policies were false and

16  misleading, and they are actionable under CUIPA/CUTPA.

17      **3.  PHL's Misrepresentation That Its Cost of Insurance Increases Were "in Accordance with the Terms" of the Policies Is an Actionable Misrepresentation**

18

19      PHL specifically contends that the statement that PHL's cost of insurance

20  increases were "in accordance with the terms" of the Policies is not a statement of

21  fact, but an opinion about the Policies.  In fact, PHL contends that any statement

22  that describes the terms of a policy is not actionable because it is an opinion.  See

23  Motion at 15:11-22.  This contention flies in the face of CUIPA, which prohibits an

24  insurer from misrepresenting the "benefits, advantages, conditions, or terms of any

25  insurance policy."  Conn. Gen. Stat. §38a-816(1)(a).  If representations about the

26  terms of a policy were non-actionable, section 38a-816(a) would be meaningless.

27  The Court should avoid such an interpretation of CUIPA.  See Hall v. Gilbert and

28  Bennett Mfg. Co., Inc., 241 Conn. 282, 303 (Conn. 1997) ("We presume that the

1    legislature had a purpose for each sentence, clause or phrase in a legislative

2    enactment, and that it did not intend to enact meaningless provisions.") (internal

3    quotations and citations omitted).

4         Furthermore, the case upon which PHL relies, <u>Active Ventilation Prods., Inc.</u>

5    <u>v. Property & Cas. Ins. Co. of Hartford</u>, No. X09CV085023757, 2009 WL2506360,

6    at *2 (Conn. Super. July 15, 2009), is clearly distinguishable.  In <u>Active</u>

7    <u>Ventilation</u>, the insurer claimed that its policies contained "fair and reasonable

8    provisions" for an insured to prove a loss.  <u>Id.</u> at *2.  The court found that such

9    statements merely reflected the insurer's "opinions of the terms of its policies and

10   its claims handling processes."  <u>Id.</u>  Here, however, PHL did not just offer an

11   opinion about the fairness or reasonableness of its policies.  PHL said that its cost

12   of insurance rate increases were "in accordance with the terms" of Plaintiff's

13   policies.  In other words, PHL said that the contract contained certain language that

14   permitted it to raise cost of insurance rates under the circumstances, and Plaintiff

15   has alleged that this statement was false.  PHL also implied that PHL was aware of

16   certain facts that permitted it to raise cost of insurance rates, such as that its

17   expectations of future mortality and other factors had worsened, and Plaintiff has

18   alleged that these implied statements about the circumstances purportedly justifying

19   PHL's cost of insurance rate increases also were false.  Where, as here, an insurer

20   misrepresents the terms of its policies, the insurer is liable under CUIPA/CUTPA.

21   <u>See</u> <u>Loubier</u>, 2010 WL 1279082, at * 7.

22        PHL's statement that its rate increases were "in accordance with the terms"

23   of its policies presents a textbook case of an insurer misrepresenting the "conditions

24   or terms" of its policies in violation of section 816(1)(a).[10]

25        **4.    CUIPA Proscribes PHL's Post-Purchase Misrepresentations**

26        PHL also contends that PHL's "post-purchase" misrepresentations are not

27   _____

[10] The statement was also intended to induce policyholders to lapse, forfeit, or surrender their

28   policies in violation of section 816(1)(f).

PLAINTIFF'S OPP. TO MTN. TO DISMISS
CV11-09517 ODW (RZx)

1   actionable because CUIPA only prohibits conduct intended to induce the

2   "purchase" of a policy, and post-purchase misrepresentations did not cause any

3   loss.  <u>See</u> Motion at 15-17.  This is a flat misstatement of the statute and the law.

4        CUIPA expressly prohibits post-purchase misrepresentations when it

5   prohibits misrepresentations that are made "for the purpose of inducing or tending

6   to induce [] the purchase, **lapse, forfeiture, exchange, conversion or surrender** of

7   any insurance policy."  Conn. Gen. Stat. §38a-816(1)(f) (emphasis added).  An

8   insurer can only induce a person to lapse, forfeit, exchange, convert, or surrender a

9   policy that has already been purchased.  Furthermore, CUIPA prohibits the making

10  and disseminating of false and misleading statements.  It is the "making" of the

11  statements that is actionable.  Nowhere does the statute say that an insurer's

12  misrepresentations must be made before (or after) a certain time to be actionable.

13       Furthermore, contrary to PHL's contentions, Plaintiff has properly alleged

14  that it suffered damages from PHL's post-purchase misrepresentations.  For

15  example, the letters accompanying the 2010 and 2011 cost of insurance increases

16  stated that policyholders would be forced to pay higher premiums if they did not

17  maintain sufficient "accumulated policy values."  Am. Complaint ¶¶ 21, 56, 65.

18  Plaintiff thus has been paying higher cost of insurance rates than Plaintiff is

19  obligated to pay and has been damaged.

20       **D.    <u>Plaintiff Has Adequately Pled Claims Under CUIPA/CUTPA</u>**

21       PHL argues that Plaintiff has not pled the CUIPA/CUTPA claims with

22  sufficient particularity.  As PHL acknowledges, however, many federal district

23  courts have held that Rule 9(b)'s heightened pleading standards do not apply to

24  CUTPA claims.  <u>See, e.g., Omega Engineering, Inc. v. Eastman Kodak Co.</u>, 908 F.

25  Supp. 1084, 1099-1100 (D. Conn. 1995); <u>United States v. Polied Environmental</u>

26  <u>Services, Inc.</u>, 238 F. Supp. 2d 456, 463 (D. Conn. 2002).  The court in <u>Omega</u>

27  explained that Rule 9(b) does not apply because, "unlike fraud, CUTPA does not

28  require proof that the defendant knew of a representation's falsity, or intended to

- 24 -                          PLAINTIFF'S OPP. TO MTN. TO DISMISS
                                        CV11-09517 ODW (RZx)

deceive the plaintiff." <u>Omega</u>, 908 F. Supp. at 1099-1100.  Accordingly, "there is less need for a heightened pleading standard to protect against baseless allegations that might harm defendants' reputations."  <u>Id.</u>

But even if Rule 9(b)'s heightened pleading standard applies, Plaintiff has pled its CUIPA and CUTPA claims with sufficient particularity.  The key to meeting the heightened pleading standard is identifying "the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."  <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 555 (9th. Cir. 2007) (upholding a fraud claim where plaintiffs could not identify the employees who wrongfully transmitted their personal information, because there was "no reason to believe that defendants [would] be hampered in their defense by [plaintiffs'] inability to name the particular employees.").

Plaintiff has provided PHL with more than adequate notice of the circumstances of Plaintiff's claims.  Plaintiff has identified the specific statements PHL made.  Am. Complaint ¶¶5, 6, 19, 22, 30, 53.  Plaintiff has identified the specific documents in which the statements were made – namely, PHL's press releases, PHL's letters regarding its cost of insurance rate increases, and PHL's marketing materials (consisting of policy illustrations, website statements, the policies themselves, and PHL's U.S. Patent & Trademark Office filings).  <u>Id.</u> ¶¶19, 20-22, 29-30 53.  Plaintiff also has explained in detail how PHL's statements were false and misleading.  <u>Id.</u> ¶¶28-30, 53.

Whether Rule 9(b) applies or not, PHL knows exactly what statements Plaintiff alleges were false and misleading and are at issue in this case.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny PHL's motion to dismiss in its entirety.  Should the Court grant PHL's motion, in whole or in part, Plaintiff respectfully requests leave to amend.

1

2   Dated:        July 2, 2012                        Orrick, Herrington & Sutcliffe LLP

3

4                                          By:   _____/s/ Khai LeQuang_____
                                                        KHAI LEQUANG
5                                                    Attorneys for Plaintiff
                                                 U.S. BANK NATIONAL
6                                          ASSOCIATION, AS SECURITIES
                                              INTERMEDIARY FOR LIMA
7                                                ACQUISITIONS LP

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPP. TO MTN. TO DISMISS
                                                                    CV11-09517 ODW (RZx)