Daniel L. Rasmussen (SBN 120276)
dlr@paynefears.com
Scott O. Luskin (SBN 238082)
sol@paynefears.com
PAYNE & FEARS LLP
801 S. Figueroa Street, Suite 1150
Los Angeles, California 90017
Telephone:   (213) 439-9911
Facsimile:    (213) 439-9922

*and*

Waldemar J. Pflepsen, Jr. (*pro hac vice*)
wjp@jordenusa.com
Stephen J. Jorden (*pro hac vice*)
sj@jordenusa.com
Jason H. Gould (*pro hac vice*)
jhg@jordenusa.com
Brian P. Perryman (*pro hac vice*)
bpp@jordenusa.com
JORDEN BURT LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007
Telephone:   (202) 965-8100
Facsimile:    (202) 965-8104

*Attorneys for Defendant*
*PHL Variable Insurance Company*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, a national association, as securities intermediary for LIMA ACQUISITION LP,<br><br>Plaintiff,<br><br>v.<br><br>PHL VARIABLE INSURANCE COMPANY, a Connecticut corporation,<br><br>Defendant. | Case No. CV 11-09517 (ODW) (RZx)<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404**<br><br>Hearing Date:  August 27, 2012<br>Time:  1:30 p.m.<br>Location:  Courtroom 11<br>Judge:  Hon. Otis D. Wright II |

1

# TABLE OF CONTENTS

2                                                                                          **Page**

3  PRELIMINARY STATEMENT ...................................................................... 1

4  FACTUAL AN PROCEDURAL BACKGROUND ...................................... 2

5      I.      The Parties And Policies ................................................................ 2

6      II.     This Lawsuit .................................................................................... 4

7      III.    The Related New York Lawsuits ................................................... 5

8              A.    Fleisher ................................................................................ 5

               B.    Tiger Capital ....................................................................... 7

9  APPLICABLE LEGAL STANDARD ...................................................... 8

10 ARGUMENT ................................................................................................ 8

11     I.      The Case "Might Have Been Brought" In The Southern

12             District of New York ...................................................................... 8

13     II.     The Relevant Factors Heavily Favor Transfer Of This
               Action To The Southern District Of New York............................ 10

14             A.    New York Is A More Convenient Forum For The

15                   Parties And The Witnesses ............................................... 10

16                   1.    New York Is A More Convenient Forum For
                           The Parties And The Interests They Represent ............. 10

17                   2.    New York And Connecticut Are The Locus Of

18                         The Relevant Operative Facts And Evidence ............... 10

19                   3.    The Material Witnesses Are In New York, Or

20                         Are Easily Transported There ....................................... 11

                           a.    Phoenix's Witnesses............................................. 11

21                         b.    Other Witnesses .................................................. 12

22             B.    Plaintiffs' Choice Of Forum Merits Little Or No

23                   Deference ........................................................................ 13

24             C.    Transferring To New York Would Promote The
                     Interests Of Justice.......................................................... 14

25
                     1.    Transfer And Consolidation Promote Judicial
26                         Economy ....................................................................... 15

27

28

i

2.   To The Extent Any Other Factors Apply, They Favor Transfer Or Are Neutral ........................................ 19

a.   The Parties' Contacts With The Forum; and Contacts Relating To Plaintiffs' Claims In The Chosen Forum. ............................ 19

b.   Ease Of Access To Sources Of Proof .................. 19

c.   The Locations Where The Relevant Agreements Were Negotiated And Executed ............................................................. 20

d.   Availability Of Compulsory Process To Compel Attendance Of Unwilling Non-Party Witnesses ...................................................... 20

e.   Relative Court Congestion In The Two Forums ................................................................. 21

f.   Differences In The Cost Of Litigation In The Two Forums .................................................. 21

CONCLUSION ........................................................................ 22

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*A.J. Industries, Inc. v. United States District Court for the Central District of California*, 503 F.2d 384 (9th Cir. 1974) ........................................ 15

*Amini Innovation Corp. v. JS Imports Inc.*, 497 F. Supp. 2d 1093 (C.D. Cal. 2007) ................................................................................ 17

*Argonaut Insurance Co. v. MacArthur Co.*, 2002 WL 145400 (N.D. Cal., Jan. 18, 2002) ........................................................................ 17

*Bradley-Brown v. American Home Mortgage Servicing Inc.*, No. CV 11-1132 DOC, 2012 WL 254064 (C.D. Cal. Jan. 25, 2012) ........................... 13

*Callaway Golf Co. v. Corporate Trade Inc.*, No. 09cv384 L(POR), 2010 WL 743829 (S.D. Cal. Mar. 1, 2010) .......................................... 12, 18, 19

*Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19 (1960) ..................... 15

*Costco Wholesale Corp. v. Liberty Mutual Insurance Co.*, 472 F. Supp. 2d 1183 (S.D. Cal. 2007) ........................................... 21

*Frummer v. Hilton Hotels International, Inc.*, 227 N.E.2d 851 (N.Y. 1967) ...................................................... 9

*GLT Technovations, LLC v. Fownes Brothers & Co.*, No. 12-CV-466, 2012 WL 1380338 (N.D. Cal. Apr. 20, 2012) ..................................... 17, 20

*Jolly v. Purdue Pharma L.P.*, No. 05-CV-1452H, 2005 WL 2439197 (S.D. Cal. Sept. 28, 2005) ......................................................... 17

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir.). ........................ 8

*Madani v. Shell Oil Co.*, 2008 WL 268986 (N.D. Cal. Jan. 30, 2008) ............ 14, 17

*Metz v. United States Life Insurance Co.*, 674 F. Supp. 2d 1141 (C.D. Cal. 2009) ......................................................... 8, 13

*Mussetter Distrib., Inc. v. DBI Beverage Inc.*, No. 09-1442, 2009 WL 1992356 (E.D. Cal. July 8, 2009) ........................................ 14, 15, 17

*Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949 (9th Cir. 1968) ................ 13

*Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152 (S.D. Cal. 2005) ................................ 18

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) .............................. 8

*Szegedy v. Keystone Food Products, Inc.*, No. CV 08-5369 CAS, 2009
    WL 2767683 (C.D. Cal. Aug. 26, 2009) ........................................... 15

*Turner v. Harrah's New Orleans Hotel & Casino*, No. CV 10-5879-
    PA, 2011 WL 1666925 (Apr. 7, 2011). ............................................ 20

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ........................................... 8

**Statutes and Rules**

28 U.S.C. § 1332 ................................................................ 9

28 U.S.C. § 1391 ................................................................ 9

28 U.S.C. § 1404 ............................................................. 8, 10

N.Y. C.P.L.R § 301 ............................................................. 9

Fed. R. Civ. P. 45 ........................................................... 19, 20

**Miscellaneous**

Irish Stock Exchange "Listing Particulars" document applicable to Lima
LS plc (Dec. 21, 2010), *available at*
http://www.ise.ie/debt_documents/ListingParticulars_ee9e09f3-3600-
48f4-af42-526b9736ce8c.PDF (Pflepsen Decl. Ex. 1) .............................. 2

Irish Stock Exchange "Listing Particulars" document applicable to Lima
LS plc (Aug. 12, 2011), *available at*
http://www.ise.ie/debt_documents/ListingParticulars_501e5b69-c72e-
41cb-8ac7-9e0338e5653e.PDF (Pflepsen Decl. Ex. 2) ............................. 2

Admin. Office of the U.S. Courts, Federal Judicial Caseload Statistics
Table C-5 (Mar. 31, 2011), *available at*
http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/Federal
JudicialCaseloadStatistics/2011/tables/C05Mar11.pdf. (Pflepsen Decl.
Ex. 11) ...................................................................... 21

iv

Pursuant to 28 U.S.C. § 1404(a), defendant PHL Variable Insurance Company respectfully moves for an order transferring this case to the United States District Court for the Southern District of New York.

## PRELIMINARY STATEMENT

This motion seeks a transfer from the Central District of California, which has no substantial interest in any of these parties or claims, to the Southern District of New York, a forum that will better serve the convenience of the parties and witnesses, as well as the interests of justice. New York is the more convenient venue because it is there that: (1) the parties and key witnesses are concentrated; (2) all of the decisions and actions relevant to the claims and defenses in this action occurred; and (3) related litigation involving identical allegations is transpiring.

There are currently two civil actions, including a putative class action, pending in the Southern District of New York before the same judge. They involve the same claims and the same underlying factual allegations as this action. There, as here, owners of the same universal life insurance product allege that Phoenix's implementation of certain cost of insurance rate adjustments was unlawful and contrary to the policies' terms. All three actions share common issues of fact focusing on Phoenix's actuarial and pricing bases for implementing the rate adjustments, which in each action will require discovery of the same documents and testimony. Given their significant overlap, and because they are all at preliminary stages, these actions are ideally suited for consolidation in the Southern District of New York. Such consolidation would promote convenience and efficiency by avoiding the cost of duplicative, burdensome, and unnecessary discovery, the risk of inconsistent rulings, and the needless consumption of limited judicial resources.

Because these, and all other, relevant factors weigh heavily in favor of transferring this action to the United States District Court for the Southern District of New York, Phoenix respectfully requests that the Court grant its motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     The Parties And Policies.

The defendant in this action, PHL Variable Insurance Company ("PHL"), is a Connecticut corporation. It maintains its corporate headquarters in Connecticut and a customer call center in New York. PHL is a wholly owned subsidiary of PM Holdings, Inc., which is a wholly owned subsidiary of Phoenix Life Insurance Company ("PLIC"), which is domiciled in New York. References in this memorandum to "Phoenix" are intended to encompass both PHL and PLIC.

The nominal plaintiff in this action, U.S. Bank National Association (the "Bank"), brings this lawsuit in its capacity as securities intermediary for the real party in interest, Lima Acquisition LP ("Lima") (collectively, the "Plaintiffs"). Lima is a Delaware limited partnership that maintains its office and principal place of business in New York. The Bank is headquartered in Ohio. Am. Compl. ¶ 9.

Lima's general partner is Lima LS plc ("Lima LS"). Lima LS has the full, exclusive, and complete discretion in the management and control of the business and affairs of Lima, and therefore makes all decisions regarding Lima's business. Both Lima LS and Lima were established as special purpose entities for the primary purpose of owning an interest in a portfolio of life insurance policies and premium finance loans, including the policies at issue here, which portfolio Lima LS acquired from Pacifica Group LLC, a Delaware entity, pursuant to a Unit Purchase Agreement dated November 10, 2010.[1]   Neither Lima LS nor Lima engages in any material

---

[1] Lima LS later issued securities backed by these portfolio assets on the Irish Stock Exchange, and in connection with that listing distributed two separate Listing Particulars detailing the underlying transaction. The facts set forth above are derived from these two Listing Particulars, which were approved by the Irish Stock Exchange and released on December 21, 2010 and August 12, 2011, and which are attached to the Declaration of Waldemar J. Pflepsen Jr. In Support Of Defendant PHL Variable Insurance Company's Motion For Transfer Pursuant to 28 U.S.C. § 1404 (the "Pflepsen Decl.") as Exhibits 1 and 2, respectively.

1   activities or operations other than those that are incidental to its limited purpose.

2   Neither entity has any employees or office space of its own.  Both are wholly owned,

3   directly and indirectly, by the same parent, Lima Holdings LLC, a Delaware entity,

4   which itself is wholly owned by Fortress Investment Group LLC ("Fortress"), the

5   New York-headquartered investment management firm actually behind this lawsuit.

6       The dispute between these parties arises from the Bank's current ownership,

7   on Lima's behalf, of twelve Phoenix Accumulator Universal Life ("PAUL") policies.

8   Neither the Bank nor any of the interests it represents are the original owners of the

9   policies.  *See* Am. Compl. ¶ 13, Ex. 2 at 56, Ex. 3 at 101 (Docket No. 47).  The

10  policies were originally issued by Phoenix to various individual, non-party owners,

11  who subsequently transferred their policies to investors.  In late 2010, Lima acquired

12  ownership interests in the policies on the secondary market, and the policies were

13  then transferred to the Bank as securities intermediary for Lima.

14      Premiums paid into a PAUL policy accumulate, net of contract charges and

15  expenses, as the policy's "cash" or "accumulation" value.  Each PAUL policy

16  provides that it will remain in force for as long as there are sufficient funds in the

17  policy account to cover certain monthly deductions described in the policy.  Am.

18  Compl. ¶ 14.  The monthly deductions consist of various charges – *e.g.*, a sales

19  charge, issue charge, and service charge – including a cost of insurance charge.  *Id.*

20  The cost of insurance charge, and any increases to the charge's applicable rate, is

21  governed by each policy's express terms.

22      Phoenix may periodically reset its cost of insurance rates, the determination of

23  which is subject to the guarantee that they will never be higher than the maximum

24  provided in the policy's schedule pages.  *See, e.g.,* Am. Compl. Ex. 2 at 33-34

25  (Section 9: Policy Value); Am. Compl. Ex. 3 at 70 (Brief Summary of Main

26  Provisions) & 79-83 (Part 5: Policy Values).  Nothing in any policy's provisions

27  requires Phoenix to disclose to the policyholder the reasons why any adjustment to

28

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404

1  the cost of insurance rates will occur, just as nothing in the policy requires Phoenix
2  to disclose its proprietary calculation of the rates it set at the time of issuance.
3  Indeed, one of the policy forms simply states that "[a]t least 31 days before the start
4  of the Policy Year, We will send You a notice of any *change* in rates," *id.* at 81
5  (emphasis added), and neither policy form further requires Phoenix to explain or
6  justify the rate adjustment.

7       Beginning in March 2010, Phoenix announced that a group of policies,
8  including ten policies owned by the Bank, would be subject to a cost of insurance
9  rate increase (the "first cost of insurance rate increase").  Am. Compl. ¶ 21.  In
10 October 2011, Phoenix announced that another group of policies, including two
11 policies owned by the Bank, would be subject to a separate cost of insurance rate
12 increase (the "second cost of insurance rate increase").  *Id.* ¶ 29.  A number of
13 owners whose policies were subject to the first or second cost of insurance rate
14 increases elected to challenge the propriety of the increases by filing lawsuits against
15 Phoenix.

16 **II.    This Lawsuit.**

17      The Bank filed the complaint commencing this lawsuit on November 16,
18 2011.  As alleged in the original complaint, this action involved eleven PAUL
19 policies originally issued to owners in California and *Wisconsin,* all of which policies
20 were subsequently subject only to the first cost of insurance rate increase.  Compl.
21 ¶ 21, Ex. 1 (Docket No. 1).  The original complaint asserted claims for breach of
22 contract, breach of the implied covenant of good faith and fair dealing, violation of
23 Cal. Bus. & Prof. Code § 17200, violation of Cal. Bus. & Prof. Code § 17500, and
24 declaratory relief.  *Id.* at 1.

25      On April 25, 2012, the Court issued an Order dismissing all of the Bank's
26 original claims against Phoenix except for the breach of contract claim, which
27 Phoenix had not moved to dismiss, and the implied covenant and declaratory

28

1  judgment claims, which survived dismissal only to the extent they relate to the

2  contractual claim.  Order at 13 (Docket No. 38).

3       On May 21, 2012, the Bank filed an amended complaint (the "Amended

4  Complaint"), which is now the operative complaint.  Significantly, with the filing of

5  the Amended Complaint, some of the policies at issue in this action have changed.

6  Exhibit 1 of the Amended Complaint now lists, for the first time, two policies that

7  were subject to the *second cost of insurance rate increase*, and one policy that was

8  originally issued to an owner in *Minnesota*.  The breach, implied covenant, and

9  declaratory judgment claims remain in the Amended Complaint, but the dismissed

10  California statutory causes of action are now replaced by claims alleging violation of

11  the Connecticut Unfair Trade Practices Act and the Connecticut Unfair Insurance

12  Practices Act.

13  **II.**  **The Related New York Lawsuits.**

14       **A.**  **Fleisher.**

15  *Fleisher v. Phoenix Life Insurance Company*, No. 11 Civ. 8405, is a putative

16  class action filed in the United States District Court for the Southern District of New

17  York on November 18, 2011, two days after *U.S. Bank*.[2]  The plaintiffs are Jonathan

18  Berck, as trustee of the John L. Loeb, Jr. Insurance Trust, and Martin Fleisher, as

19  trustee of the Michael Moss Irrevocable Life Insurance Trust II, on behalf of

20  themselves and two putative classes of PAUL policy owners subject to the first and

21  second cost of insurance rate increases.

22       The *Fleisher* plaintiffs allege in their complaint that both the first and second

23  cost of insurance rate adjustments breached their policies' provisions in several

24  ways:

25

26  [2] Genuine and authentic copies of the PACER docket and operative complaint for

27  this action are attached as Pflepsen Decl. Exhibits 3 and 4, respectively.

28

1    (a)    Phoenix breached the policies by increasing COI rates based on a
2           policy's accumulated policy value because accumulated policy
            value is not one of the permissible and enumerated bases for
3           increasing cost of insurance rates;

4    (b)    Phoenix breached the policies by increasing the COI rates on
            bases that does [sic] not apply uniformly to a class of insureds,
5           and which discriminates unfairly between insureds of the same
            class;

6    (c)    Phoenix breached the policies because Phoenix's COI rate
7           adjustments were not based on the permissible factors stated in
            the policies, such as Phoenix's expectations of future mortality
8           and persistency;

9    (d)    Phoenix breached the policies because the COI rates are not
            "based on the Insured's age at issue, risk class and sex, and on
10          policy duration." Loeb Policy at 11.

11   (d)    Plaintiffs are informed and believe and on that basis allege that
            Phoenix breached the policies because its COI increases were
12          designed to recoup past losses; and

13   (e)    With respect to at least the policies in the First COI Increase
            Class, Phoenix breached the contract by decreasing credited
14          interest rates on a discriminatory basis and not on the basis of any
            of the permitted, enumerated factors set forth in the policies.

15   Pflepsen Decl., Ex. 4 ¶ 47.

16          Phoenix moved for partial dismissal of the *Fleisher* complaint and, on May 2,

17   2012, Judge McMahon issued a 23-page memorandum opinion and order granting

18   that motion.  In particular, the court dismissed, with prejudice, the plaintiffs' claims

19   for breach of the implied covenant of good faith and fair dealing, alleged violations

20   of New York General Business Law § 349, and for declaratory relief.  Phoenix did

21   not move to dismiss the plaintiffs' breach of contract claim, the action's lone

22   remaining count.[3]  Phoenix filed its answer on May 25, 2012.

23          Fact discovery has been underway since earlier in 2012.  The parties have each

24   served written discovery requests and responses and objections thereto, and Phoenix

25   has begun producing responsive documents to the plaintiffs.  No depositions have

26   _____
     [3] A genuine and authentic copy of Judge McMahon's May 2, 2012 decision is
27   attached as Pflepsen Decl. Exhibit 5.

28

1   been taken or scheduled.  Judge McMahon has not yet entered any scheduling orders,

2   set any deadlines for the completion of discovery or the submission of dispositive

3   motions, or set a trial date.

4         **B.**    **Tiger Capital.**

5         *Tiger Capital, LLC v. PHL Variable Insurance Company*, No. 12 Civ. 2939, is

6   an individual action that was filed in the Supreme Court for the County of New York

7   on March 14, 2012, and removed to the United States District Court for the Southern

8   District of New York on April 13, 2012.  On April 19, 2012, the action, through

9   docket minute entry by Judge McMahon, was "ACCEPTED AS RELATED" to the

10  *Fleisher* litigation.[4]

11        The plaintiff, Tiger Capital, owns more than 130 policies issued by PHL in

12  *Minnesota*, South Dakota, *California*, and Rhode Island.  These policies were subject

13  to the second cost of insurance rate increase.  Like the plaintiffs in *Fleisher* and *U.S.*

14  *Bank*, Tiger Capital's complaint alleges breaches of contract related to the second

15  cost of insurance rate increase, including alleging that "PHL cannot provide any

16  basis to increase the Cost of Insurance," Pflepsen Decl., Ex. 7 ¶ 19, and "PHL cannot

17  provide any basis that the increase in Cost of Insurance does not unfairly within any

18  class of insureds," *id.* ¶ 21.  It seeks a "refund of all additional increases in premium

19  it may incur as the result of the increase for the Cost of Insurance charged by PHL."

20  *Id.* ¶¶ 15, 23-23.  Tiger Capital also seeks an injunction barring future cost of

21  insurance rate adjustments.  *Id.* ¶ 25.

22        Phoenix answered Tiger Capital's complaint on May 18, 2012.  On May 24,

23  2012, Judge McMahon has entered a scheduling order, which sets a January 1, 2013,

24  deadline for the completion of discovery and a March 1, 2013, deadline for the

25  submission of dispositive motions.  Pflepsen Decl., Ex. 8.

26  ---

27  [4] Genuine and authentic copies of the PACER docket and operative complaint for this action are attached as Exhibits 6 and 7 to the Pflepsen Decl., respectively.

28

## APPLICABLE LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted).  A motion for transfer lies within the broad discretion of the district court, and is subject to an "individualized, case-by-case consideration of convenience and fairness."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  This analysis occurs in two parts.  The Court initially must consider whether the matter "might have been brought" in the district to which transfer is sought.  *See, e.g., Metz v. United States Life Ins. Co.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).  If so, the Court then determines whether the transfer would serve the convenience of the parties and witnesses, and whether it would promote the interests of justice.  *Id.*; *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988) ("Section 1404(a) directs a district court to ... weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'") (citation omitted).

## ARGUMENT

### I.   The Case "Might Have Been Brought" In The Southern District Of New York.

To establish that an action "might have been brought" in the district to which transfer is sought under § 1404(a), the moving party must first show that subject matter jurisdiction, personal jurisdiction, and venue would have been proper if the plaintiff had filed the action in the district to which transfer is sought.  *See, e.g., Metz*, 674 F. Supp. 2d at 1145.  If subject matter jurisdiction is based on the parties' diversity of citizenship, venue is proper in "a judicial district in which any defendant

8

1 resides, if all defendants reside in the same State" or, alternatively, in "a judicial

2 district in which a substantial part of the events or omissions giving rise to the claim

3 occurred."  28 U.S.C. § 1391(b)(1)-(2).  A corporate defendant "resides" in any

4 judicial district in which it is subject to personal jurisdiction at the time the action is

5 commenced.  28 U.S.C. § 1391(c).

6      Here, the Southern District of New York would have had subject matter

7 jurisdiction over this action based on diversity of citizenship because the Bank and

8 Phoenix are citizens of different states, Ohio and Connecticut, respectively, and

9 because the amount in controversy exceeds $75,000, exclusive of interests and costs.

10 28 U.S.C. § 1332(a)(1).

11      PHL would have been subject to personal jurisdiction in New York based on

12 its presence in that state.  Indeed, PHL was sued there in the *Tiger Capital* action.

13 Pursuant to the New York general jurisdiction statute, a foreign corporation is

14 subject to personal jurisdiction in New York if it is found to be "doing business" in

15 the state.  N.Y. C.P.L.R § 301.  Included among the classic indicia of the permanent

16 and continuous activities deemed to satisfy the statute's "doing business in New

17 York" requirement are "the existence of an office in New York" and "the presence of

18 employees in New York."  *See, e.g.*, *Frummer v. Hilton Hotels Int'l, Inc.*, 227

19 N.E.2d 851, 853 (N.Y. 1967).  Phoenix's East Greenbush, New York office is a

20 customer service center where Phoenix employees handle customer calls for all

21 Phoenix products, including those with New York policy owners and brokers, and

22 those relating to PAUL policies issued by PHL.

23      Because Phoenix would have been subject to personal jurisdiction in New

24 York at the time this action was commenced, it also would have been deemed to

25 "reside" there, 28 U.S.C. § 1391(c), and venue would have been proper in the

26 Southern District of New York.  28 U.S.C. § 1391(b)(1).

27

28

II.   **The Relevant Factors Heavily Favor Transfer Of This Action To The Southern District Of New York.**

    A.   **New York Is A More Convenient Forum For The Parties And Witnesses.**

Typically, a district court considering the convenience of parties and witnesses in connection with a motion to transfer pursuant to 28 U.S.C. § 1404(a) must weigh the inconvenience likely to be suffered by one group if the motion is granted against that likely to be suffered by a competing group if the motion is denied.  Such analysis is unnecessary here, because the Southern District of New York is the more convenient forum for *all of the parties and witnesses* in this action.

    1.   **New York Is A More Convenient Forum For The Parties And The Interests They Represent.**

All of the named parties and the real parties in interest are located either in or near New York.  Phoenix maintains offices in Connecticut and New York, but not in California.  Thus, from Phoenix's perspective, New York would be a substantially more convenient forum.

The same is true for the plaintiffs.  The nominal plaintiff, the Bank, is headquartered in Ohio, a state geographically closer to the Southern District of New York than to the Central District of California.  More important, the real party in interest, security entitlement holder Lima, is a Delaware limited partnership that maintains its office and principal place of business in New York City.  As already discussed, Lima is an indirect subsidiary of the entity actually behind this lawsuit, Fortress, which shares its New York City office with Lima.

    2.   **New York And Connecticut Are The Locus Of The Relevant Operative Facts And Evidence.**

In addition to being where the parties and real parties in interest are located, the East Coast also is where Phoenix's decisions regarding the first and second cost of insurance rate adjustments were made, and where the decisions and transactions leading to the Bank's acquisition of ownership interests in the policies occurred.  It is

10

also where the documentary and testimonial evidence relevant to the parties' claims and defenses is concentrated.

Phoenix's decisions regarding the cost of insurance rate increases were made at its corporate offices in Connecticut or New York, which is where the majority of evidence relevant to the Bank's breach, implied covenant, and declaratory judgment claims challenging the propriety of Phoenix's motives, analysis, and actions related to the cost of insurance rate increases will also be located. Similarly, all allegedly false, misleading, and deceptive statements likewise originated, if at all, in Phoenix's offices, so that is where evidence relevant to the Amended Complaint's two Connecticut statutory claims will be located.

New York also appears to be the focal point of the complex web of business relationships and series of transactions by which the Bank became owner of the policies. Both Fortress and Lima maintain their offices in New York and, in November 2010, acquired ownership interests in the policies pursuant to the Unit Purchase Agreement, which was made in New York. On October 20, 2011, Lima LS sued Pacifica Group LLC and KBC Bank N.V. in the Supreme Court for New York County, New York, alleging breaches of the Unit Purchase Agreement, for which KBC Bank is the guarantor of Pacifica Group's obligations, as well as alleging negligent misrepresentation, fraud, and fraudulent inducement in the sale of the transferred limited liability companies, and the portfolio assets held thereby, from Pacifica Group to Lima LS. The case is styled *Lima LS plc v. Pacifica Group LLC et al.*, Index No. 652882/2011.

### 3. The Material Witnesses Are In New York, Or Are Easily Transported There.

#### a. Phoenix's Witnesses.

Phoenix has disclosed the following corporate officers and employees, all of whom are located in its Connecticut offices, as individuals likely to have discoverable information relating to Phoenix's review of, and decision on, the cost of

11

insurance rate adjustments:   Gina C. O'Connell, Byron Frank, Thomas M. Buckingham, Philip K. Polkinghorn, and Brian Lemek.   Def.'s R. 26(a)(1) Initial Disclosures at 5.  Phoenix has separately identified the following corporate officers and employees, all of whom are located in its Connecticut offices, as individuals with knowledge regarding the involvement of individual departments in the design and development of the PAUL policies:  Deborah Culliton; Stuart Kwassman and Byron Frank; Joseph DeCrese; and Christopher Kelly.  Def.'s Further Supplemental Answers and Objs. to Pl.'s 1st Set of Interrogs. at 1.

As the primary actors and decision-makers at Phoenix behind the cost of insurance rate increases that are at the heart of this lawsuit, these witnesses are likely to possess the knowledge most critical to the adjudication of the Bank's claims, which elevates the importance of their convenience.  *See Callaway Golf Co. v. Corporate Trade Inc.*, No. 09cv384 L(POR), 2010 WL 743829, at *6-7 (S.D. Cal. Mar. 1, 2010) (in addition to considering witnesses' locations, court must also consider the nature and quality of their testimony in relationship to the issues in the case) (citation and internal quotation omitted).  Given their proximity to the Southern District of New York, and their likely future involvement in the *Fleisher* and *Tiger Capital* actions already pending there, that district would obviously be a more convenient forum for these witnesses.

### b.    Other Witnesses.

New York is also the more convenient forum for the deposition and trial testimony of other party and non-party witnesses, among other reasons.   The individuals disclosed by the Bank as having discoverable information about the twelve policies identified as being at issue in this action, including information about "Plaintiff's performance under the Policies" and "the impact of the increase in cost of insurance rates," are employed by Fortress Investment Group LLC, which is headquartered in New York.  Pl.'s R. 26(A)(1) Initial Disclosures at 1-2.  These

include Brandon Baer, Andrew Berman, Rodney Hutter, Regang Ou, and Ann Marie
Juliano, who are managing directors at Fortress in New York; Douglas Thomas, Ola
Ericksson and James Rous, who are managing directors and a vice president,
respectively, at Fortress in London; and Douglas Cardoni, the chief administrative
officer at Fortress in New York.   The Bank has not disclosed any individual
witnesses who reside in or near California.

Other key witnesses are located in New York.  These include representatives
of Barrett Advisors, LLC, which manages the Portfolio Assets for Lima/Fortress,
including Scott B. Rose.  These individuals likely will have information relevant to
the purported damages in this action and the policies' acquisition and servicing.

Based on the location of the parties, real parties in interest, and other witnesses
likely to provide the most relevant testimony, there does not appear to be any dispute
that the Southern District of New York is the more convenient forum.

### B.   Plaintiffs' Choice Of Forum Merits Little Or No Deference.

Any deference accorded to a plaintiff's choice of forum is heavily discounted
upon a showing that (1) the operative facts have not occurred within the plaintiff's
chosen forum; (2) the forum has no particular interest in the parties or subject matter;
(3) the forum is not the primary residence of either the plaintiff or defendant; or (4)
the subject matter of the litigation is not substantially connected to the forum.  *See,
e.g.*, *Metz*, 674 F. Supp. 2d at 1146; *see also Pac. Car & Foundry Co. v. Pence*, 403
F.2d 949, 954 (9th Cir. 1968) (a plaintiff's choice of forum commands less
consideration where the operative facts have not occurred within the forum and the
forum has no particular interest in the parties or subject matter); *Bradley-Brown v.
Am. Home Mortg. Servicing Inc.*, No. CV 11-1132 DOC, 2012 WL 254064, at *4
(C.D. Cal. Jan. 25, 2012).

Here, each of these exceptions is implicated, so that the Bank's choice of
forum should not be given any weight.  The Central District of California does not

1   have any substantial interest in these particular parties, as none of them reside in

2   California.  Nor does the Central District of California appear to have any substantial

3   connection with the subject matter being litigated: (1) the interpretation and

4   application of the disputed insurance contract provisions, and (2) the determination

5   of whether certain statements allegedly made in and near New York violated

6   *Connecticut* statutes.  The Court found in its April 26 Order that "Plaintiff's injury

7   did not occur in California."   Order at 11 (Docket No. 38).   Finally, Phoenix's

8   decisions regarding the first and second cost of insurance rate adjustments were

9   made on the East Coast, as was the acquisition of the policies.

10        Based on these factors, the Bank's choice of forum should receive no

11  deference from this Court.  This is especially true where, as here, overriding interests

12  of justice – and, in particular, judicial economy – strongly favor transfer.   *See*

13  *Mussetter Distrib., Inc. v. DBI Beverage Inc.*, No. 09-1442, 2009 WL 1992356, at *6

14  (E.D. Cal. July 8, 2009) ("while a defendant must make a strong showing of

15  inconvenience to warrant upsetting the plaintiff's choice of forum, this premise does

16  not implicate the court's power to transfer an action where the interests of justice so

17  require") (internal citation and quotation omitted); *see also Madani v. Shell Oil Co.*,

18  No. CV 07-4296, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008) ("The question

19  of which forum will better serve the interest of justice is of predominant importance

20  on the question of transfer, and the factors involving convenience of parties and

21  witnesses are in fact subordinate.") (quotation omitted).

22        **C.     Transferring To New York Would Promote The Interests of Justice.**

23        In analyzing the "interests of justice" factor, district courts may consider

24  numerous subordinate factors, including:   (1) the location where the relevant

25  agreements were negotiated and executed, (2) the state that is most familiar with the

26  governing law, (3) the plaintiffs choice of forum, (4) the respective parties' contacts

27  with the forum, (5) the contacts relating to the plaintiffs cause of action in the chosen

28

forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof, (9) the enforceability of the judgment; (10) the relative court congestion in the two forums; and (11) which forum would better serve judicial economy.  *See, e.g.*, *Szegedy v. Keystone Food Prod., Inc.*, No. CV 08-5369 CAS (FFMx), 2009 WL 2767683, at *2 (C.D. Cal. Aug. 26, 2009) (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988)); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

Applying these factors to the circumstances presented by this case, it is clear that the interests of justice would be best served by transferring venue to the Southern District of New York.

### 1.      Transfer And Consolidation Promote Judicial Economy.

The pendency of a related case in the transferee forum is an important consideration in determining whether the interests of justice dictate a transfer of venue.  *See, e.g.*, *Callaway Golf Co. v. Corporate Trade Inc.*, No. 09cv384 L(POR), 2010 WL 743829, at *7 (S.D. Cal. Mar. 1, 2010); *see also Mussetter Distrib.*, 2009 WL 1992356, at *6 ("[T]he Supreme Court and the Ninth Circuit have long recognized that '[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.") (quoting *Cont'l Grain Co. v. Barge FBL-585,* 364 U.S. 19, 26 (1960), and citing *A.J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974) ("[T]he pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties.")).

Here, there are already two other related cases pending before the same judge in the Southern District of New York.  Transferring this case so that it may be

1    consolidated with those two actions would serve the interests of justice by

2    eliminating, or at least reducing, duplicative discovery, and by minimizing the

3    possibility of conflicting pretrial rulings.

4         The claims at issue in this action are closely related to those at issue in the

5    *Fleisher* and *Tiger Capital* actions.  In each action, plaintiffs assert contract-based

6    claims premised on the theory that Phoenix's decision to increase the cost of

7    insurance rates for some, but not all, PAUL policies was based on consideration of

8    factors other than those prescribed by the express terms of the policies.  *See* Am.

9    Compl. ¶¶ 1 (allegation in *U.S. Bank* that Phoenix's "unlawful increases of the cost

10   of insurance rates on a targeted group of [Phoenix's] in-force universal life insurance

11   policies ... amounts to breaches of contract"), 8, 32-40; *see also* Pflepsen Decl., Ex. 4

12   ¶¶ 1, 45-50 (allegation in *Fleisher* that Phoenix's supposedly "unlawful and

13   discriminatory cost of insurance increases ... violate the plain terms of the subject

14   insurance policies."); Ex. 7 ¶¶ 19, 21 (allegation in *Tiger Capital* that Phoenix

15   "cannot provide any basis to increase the Cost of Insurance" and "cannot provide any

16   basis that the increase in Cost of Insurance does not unfairly discriminate within any

17   class of insureds").

18        Discovery in this action also overlaps that in the two New York actions.  In an

19   attempt to validate their shared theory, plaintiffs have sought, and will likely

20   continue to seek, broad and duplicative discovery not only of the voluminous

21   actuarial and pricing data and other documents concerning the factors that Phoenix

22   was permitted to consider (and did consider) in support of the cost of insurance rate

23   adjustments, but also of documents concerning purportedly "impermissible" factors

24   the plaintiffs allege, on information and belief, were Phoenix's "actual" reasons for

25   the rate adjustments (*e.g.*, targeting of policies owned by life settlement investors,

26   recoupment of past losses, response to ratings downgrades).  Phoenix is obligated to

27   respond to these multiple requests seeking the same information and, absent transfer

28

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404

1  and consolidation or coordination, will also have to produce the same witnesses for

2  multiple depositions and, potentially, multiple trials on opposite sides of the country.

3      Moreover, once issues currently the subject of numerous discovery disputes

4  are narrowed and ripen into pretrial motions, there will be a very real possibility that

5  separate courts deciding such motions might issue inconsistent, if not wholly

6  divergent, rulings and impose conflicting obligations on Phoenix.

7      Under such circumstances, Ninth Circuit courts have consistently held that the

8  transfer and consolidation of related actions within a single district effectively

9  promotes judicial economy by eliminating or reducing duplicative discovery and

10  avoiding the possibility of conflicting pretrial rulings.  *See Mussetter Distrib.*, 2009

11  WL 1992356, at *6 ("In addition to the possible consolidation of discovery and the

12  conservation of time, energy and money, centralizing the adjudication of similar

13  cases will also avoid the possibility of inconsistent judgments."); *see also Jolly v.*

14  *Purdue Pharma L.P.*, No. 05-CV-1452H, 2005 WL 2439197, at *2 (S.D. Cal. Sept.

15  28, 2005) ("Litigation of related claims in the same tribunal is strongly favored

16  because it facilitates efficient, economical and expeditious pre-trial proceedings and

17  discovery and avoids duplic[ative] litigation and inconsistent results."); *Argonaut*

18  *Ins. Co. v. MacArthur Co.*, No. CV 01-3878, 2002 WL 145400, at *4 (N.D. Cal. Jan.

19  18, 2002) ("The best way to ensure consistency is to prevent related issues from

20  being litigated in two separate venues."); *Amini Innovation Corp. v. JS Imports Inc.*,

21  497 F. Supp. 2d 1093, 1112 (C.D. Cal. 2007) ("The 'interest[s] of justice' include

22  such concerns as ensuring speedy trials, trying related litigation together, and having

23  a judge who is familiar with the applicable law try the case."); *Madani*, 2008 WL

24  268986, at *2 ("Judicial resources are conserved when an action is adjudicated by a

25  court that has already committed judicial resources to the contested issues and is

26  familiar with the facts of the case.") (citation and internal quotation omitted); *GLT*

27  *Technovations, LLC v. Fownes Bros.*, No. 12-CV-00466 RMW, 2012 WL 1380338

28

at *6 (N.D. Cal. Apr. 20, 2012) (transfer granted for better coordination with already pending action involving substantially the same subject matter and parties, and because transfer reduced the possibility of either party "benefitting by taking inconsistent positions and allow all disputes to be heard by a judge who is familiar with the parties and their arguments.") (citation and internal quotation omitted).[5]

---

[5] Although the Bank may contend that Phoenix delayed in seeking transfer, the Bank only recently amended its claims to encompass, for the first time, the second cost of insurance rate increase and a Minnesota policy, creating a substantial overlap between this action and both the *Fleisher* action and more recently filed *Tiger Capital* action, such that judicial economy would be served by a transfer.  Indeed, until *Tiger Capital* was filed, the New York litigation did not involve any claims addressing  a cost of insurance rate increase outside of New York.  The recent filing of the Amended Complaint in this case, which added claims regarding the second increase (as did Tiger Capital), thus created a compelling overlap – *e.g.*, both cases challenge the second increase with respect to policies issued in California and Minnesota – which was absent before the Amended Complaint filing.  Moreover, none of the three actions is scheduled for trial or has progressed to such an advanced stage that the parties, counsel, and witnesses would not still benefit significantly from consolidation in the Southern District of New York.  These considerations of procedural developments and judicial economy are far more determinative of a transfer motion than the number of days that have passed since the lawsuit commenced.  *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1168 (S.D. Cal. 2005) (supposed undue delay in bringing motion to transfer was not excessive, particularly where case is far from trial and transfer would not entail unnecessary expense or result in the waste of time on the part of the parties).

Similarly, the Bank may also contend that the original complaint in this action was filed two days before the *Fleisher* complaint, and that the doctrine of federal comity known as the "first-to-file rule" generally "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction."  *See, e.g., Callaway*, 2010 WL 743829, at *2 (citation omitted).  Assuming *arguendo* that the first-to-file rule applies at all, an exception to that rule applies where, as here, "the balance of convenience weighs in favor of the later-filed action."  *Id.* at *3 ("This is analogous to the 'convenience of parties and witnesses' on a transfer of venue motion pursuant to 28 U.S.C. § 1404(a)") (citation omitted).  Little consideration should be given to this rule for the additional reasons that the two-day difference in filing is trivial, and

(*footnote continued on next page*)

18

### 2.   To The Extent Any Other Factors Apply, They Favor Transfer Or Are Neutral.

#### a.   The Parties' Contacts With The Forum; and Contacts Relating To Plaintiffs' Claims In The Chosen Forum.

To the extent the respective parties have contacts in the Central District of California based on general business activities, those activities are unrelated to the Bank's causes of action.  As already discussed, the contacts relevant to this action are in or near the Southern District of New York, where all of the parties and real parties in interest are physically located and conduct their businesses.  Of these, the presence of Phoenix's corporate offices within (or in close proximity to) that forum is a particularly significant contact, because the Bank's claims challenge the propriety of decisions and statements that were made there.  These two factors weigh in favor of transfer.

#### b.   Ease Of Access To Sources Of Proof.

Notwithstanding the suggestion of some courts that the location of evidence may not be a significant factor in a basic contract interpretation case, *see Callaway Golf*, 2010 WL 743829, at *7, as already discussed, the locations of the vast majority of the evidence relevant to the claims and defenses in this action, including nearly all of the party witnesses that have been disclosed, are New York and neighboring Connecticut.  Witnesses not located near New York, including non-party purchasers and insureds, can be deposed without difficulty in their home states.  *See* Fed. R. Civ. P. 45(b)(2).  This factor weighs in favor of transfer.

---

that the filing of the Amended Complaint is a more accurate time from which to compare the cases.  Thus, if the Court agrees that the Southern District of New York would better serve the convenience of the parties and witnesses in this action, the first-to-file rule is no impediment to the venue transfer sought by this motion.

19

### c.     The Locations Where The Relevant Agreements Were Negotiated And Executed.

The locations where the PAUL policies underlying the Bank's causes of action were issued is irrelevant for purposes of the Court's consideration of this transfer motion, because the Bank was not a party to any of those contracts at the time they were issued.   As the Court's April 26 Order stated, "Plaintiff had no pecuniary interest in these policies until they were securitized and sold for investment purposes – a transaction entirely unrelated to the original issuance by the Defendant to the original policy holders."   Order at 11 (Docket No. 38).   Rather, the Bank acquired ownership of the policies through purchase on the secondary market, and the agreements governing that transaction, including the Unit Purchase Agreement, were executed in New York.   Insofar as those agreements are relevant to Phoenix's defenses in this action, this factor weighs in favor of transfer.

### d.     Availability Of Compulsory Process To Compel Attendance Of Unwilling Non-Party Witnesses.

It is foreseeable that there might be some unwilling non-party witnesses (*e.g.*, current employees of Barrett Advisors, former employees of Phoenix, Fortress, or Lima) whose attendance at a deposition or trial will need to be compelled by subpoena.   These non-party witnesses with potentially important testimony will likely be more heavily concentrated within the 100-mile reach of the Southern District of New York than that of the Central District of California.   *See* Fed. R. Civ. P. 45(b)(2) (court's subpoena power to compel testimony of non-party witnesses extends to anywhere within the district and/or one hundred miles of the place of trial); *see also GLT Technovations*, 2012 WL 1380338 at *5 (observing likelihood that "because the alleged misconduct underlying [plaintiff's] complaint took place in the Northeast, other non-party witnesses who have yet to be identified will probably also find the Southern District of New York more convenient than this forum."); *see also Turner v. Harrah's New Orleans Hotel & Casino*, No. CV 10-5879-PA, 2011

1   WL 1666925, at *6 (C.D. Cal. Apr. 7, 2011) ("It appears from the allegations in the
2   Complaint that compulsory process would be more readily available to compel
3   attendance of unwilling witnesses in the district in which the majority of such
4   witnesses are likely to reside.").  Moreover, the nature and quality of the testimony
5   of witnesses beyond the scope of this Court's subpoena power (*i.e.*, unwilling non-
6   party witnesses in and around New York) will likely be more important than that of
7   the testimony of witnesses beyond the Southern District of New York's subpoena
8   power, which is one indication that New York is the more appropriate forum.  *Cf.*
9   *Costco Wholesale Corp. v. Liberty Mut. Ins. Co*., 472 F. Supp. 2d 1183, 1193 (S.D.
10  Cal. 2007).  This factor likewise weighs in favor of transfer.

11              **e.     Relative Court Congestion In The Two Forums.**

12          The most recent, publicly available statistics suggest the litigation would
13  proceed more expeditiously in New York than it would in California.  For the period
14  ending March 31, 2011, the median time from filing to pretrial disposition in the
15  Southern District of New York was 13.1 months; the same statistic for the Central
16  District of California was 14.8 months.  *See* Pflepsen Decl., Ex. 9.  To the extent the
17  Court considers this factor, it too weighs in favor of transfer.

18              **f.     Differences In The Cost Of Litigation In The Two**
19                      **Forums.**

20          Transfer of this case would reduce the cost of litigation for both parties.
21  Phoenix would avoid the increased costs of a trial on the other side of the country,
22  including the travel costs of party witnesses.  The Bank could realize savings by
23  sharing the costs of depositions and trial with the *Fleisher* and *Tiger Capital*
24  plaintiffs and, while the convenience of counsel is not significant to the § 1404(a)
25  analysis, *see, e.g.*, *Costco*, 472 F. Supp. 2d at 1196, the Bank would also not have to
26  incur the extra cost of retaining local counsel, because it already has counsel of
27  record operating out of New York City law offices.  This factor also weighs in favor
28  of transfer.

21

## CONCLUSION

For all of the foregoing reasons, the Court should enter an order transferring this action to the United States District Court for the Southern District of New York.

Dated:  July 23, 2012          By:    */s/ Scott O. Luskin*

Daniel L. Rasmussen (SBN 120276)
dlr@paynefears.com
Scott O. Luskin (SBN 238082)
sol@paynefears.com
PAYNE & FEARS LLP
801 S. Figueroa Street, Suite 1150
Los Angeles, California 90017
Telephone:   (213) 439-9911
Facsimile:   (213) 439-9922

*and*

Waldemar J. Pflepsen, Jr. (*pro hac vice*)
wjp@jordenusa.com
Stephen J. Jorden (*pro hac vice*)
sj@jordenusa.com
Jason H. Gould (*pro hac vice*)
jhg@jordenusa.com
Brian P. Perryman (*pro hac vice*)
bpp@jordenusa.com
JORDEN BURT LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007
Telephone:   (202) 965-8100
Facsimile:   (202) 965-8104

*Attorneys for Defendant*
*PHL Variable Insurance Company*

252133

4828-1134-5680.3

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404